**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JONATHAN TAN, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> NIO INC., BIN LI, and LOUIS T. HSIEH, <br><br> Defendants, | No. 1:19-CV-01424-NGG-VMS <br><br> Honorable Nicholas G. Garaufis |
| BABULAL TARAPARA, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> NIO INC., BIN LI, LOUIS T. HSIEH, LIHONG QIN, PADMASREE WARRIOR, TIAN CHENG, XIANG LI, HAI WU, YAQIN ZHANG, XIANPING ZHONG, ZHAOHUI LI, MORGAN STANLEY & CO. LLC, GOLDMAN SACHS (ASIA) L.L.C., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, DEUTSCHE BANK SECURITIES INC., CITIGROUP GLOBAL MARKETS INC., CREDIT SUISSE SECURITIES (USA) LLC, UBS SECURITIES LLC, and WR SECURITIES, LLC, <br><br> Defendants. | No. 1:19-cv-02777 (unassigned) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF THE NIO INVESTOR GROUP FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF CO-LEAD COUNSEL**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................................... 3

ARGUMENT ................................................................................................................................. 5

I.      THE RELATED ACTIONS SHOULD BE CONSOLIDATED ...................................... 5

II.     MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF ........................................... 6

        A.      The PSLRA Standard for Appointing Lead Plaintiff ............................................ 6

        B.      Movant is the "Most Adequate Plaintiff" ................................................................ 8

                1.      Movant's Motion Is Timely ...................................................................... 8

                2.      Movant Has a Substantial Financial Interest ......................................... 8

                3.      Movant Satisfies Rule 23's Typicality and Adequacy Requirements ......... 9

                        a.      Movant's Claims Are Typical of Those of the Class ...................... 9

                        b.      Movant Satisfies the Adequacy Requirement of Rule 23 ............. 10

III.    MOVANT'S SELECTION OF CO-LEAD COUNSEL MERITS APPROVAL ............. 11

CONCLUSION ............................................................................................................................ 11

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Faig v. Bioscrip, Inc.*,
   No. 13 Civ. 06922 (AJN), 2013 WL 6705045 (S.D.N.Y. Dec. 19, 2013)..............................7, 8

*Foley v. Transocean Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011) ........................................................................................6

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
   No. 08, MDL No. 1963(RWS), 2009 WL 50132 (S.D.N.Y. Jan. 5, 2009) ................................8

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)..............................................................................................9

*In re Elan Corp. Sec. Litig.*,
   No. 1:08-cv-08761-AKH, 2009 WL 1321167 (S.D.N.Y. May 11, 2009) ..................................8

*In re Third Ave. Mgmt. LLC Sec. Litig.*,
   No. 16-cv-02758 (PKC), 2016 WL 2986235 (S.D.N.Y. May 13, 2016)...................................7

*Kemp v. Universal Am. Fin. Corp.*,
   No. 05 Civ. 9883 (JFK), 2006 WL 1190691 (S.D.N.Y. May 1, 2006) ....................................7

*Kux-Kardos v. VimpelCom, Ltd.*,
   151 F. Supp. 3d 471 (S.D.N.Y. 2016).................................................................................7

*Micholle v. Ophthotech Corp.*,
   No. 17-CV-210 (VSB), 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018)................................6, 8

*Randall v. Fifth St. Fin. Corp.*,
   No. 15-cv-7759 (LANK), 2016 WL 462479 (S.D.N.Y. Feb. 1, 2016)......................................7

**Statutes**

15 U.S.C. § 78u-4(a)(3) ..........................................................................................*passim*

**Rules**

Fed. R. Civ. P. 23.......................................................................................................2, 5, 7, 8

Proposed Lead Plaintiff Movant The Nio Investor Group – Richard and Jane Resnick, Yuri Valentino Simione and Mohammed Hamood Alhnaity – ("The Nio Investor Group" or "Movant") respectfully submit this Memorandum of Law pursuant to Section 21(D)(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), and the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in support of its motion for the entry of an Order: (i) consolidating the above-captioned related actions (the "Related Actions"); (ii) appointing the Nio Investor Group as Lead Plaintiff; (iii) approving Movant's selection of Berger Montague PC ("Berger Montague") and Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") as Co-Lead Counsel for the Class; and (iv) granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

Movant respectfully submits that it should be appointed Lead Plaintiff on behalf of all investors or entities who purchased or otherwise acquired Nio Inc. ("Nio") American Depository Shares ("ADS") during the period of September 12, 2018 through March 5, 2019, inclusive, (the "Class Period"), and who were damaged as a result of defendants' alleged fraud.[1]  The Related Actions allege violations of the Exchange Act and the Securities Act against Nio and certain of its executive officers, and its underwriters (collectively, the "Defendants").

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. §§ 78u-4(a)(3)(B)(i); 77z-1(a)(3)(B)(i).  In that regard, the Court is

---

[1] In addition to the Related Actions, at least two other related federal securities class actions have been filed on behalf of Nio investors.  Two actions, *Sidoli v. Nio Inc.*, No. 3:19-cv-01320-WHO (N.D. Cal.) and *Jeo v. Nio, Inc.*, No. 5:19-cv-01644-LHK (N.D. Cal.), were filed in the U.S. District Court for the Northern District of California.  Because Movant anticipates that the Related Actions will proceed as one consolidated action, Movant has simultaneously filed a motion and supporting materials for lead plaintiff appointment in this Court and the Northern District of California.  For purposes of this motion, Movant has provided its financial interest in the Class Period alleged in the complaints in *Jeo* and *Tan*.

required to determine which movant has the "largest financial interest" in the relief sought by the Class, and also whether such movant has made a prima facie showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. §§ 78u-4(a)(3)(B)(iii)(I); 77z-1(a)(3)(B)(iii)(I).

Movant respectfully submits that it should be appointed Lead Plaintiff because it has the "largest financial interest" in this litigation and has made the requisite showing of typicality and adequacy required by the standards of the PSLRA.  As set forth in detail below, Movant incurred over $185,188.00 in losses as a result of its Class Period transactions in Nio ADSs, as calculated on a last-in-first-out ("LIFO") and first-in-first-out ("FIFO") basis.[2]  In light of this significant loss, Movant has a substantial financial interest in directing this litigation and recovering losses attributable to Defendants' violations of federal securities laws—an interest believed to be greater than that of any other qualified movant.

In addition to asserting a substantial financial interest in this litigation, Movant also meets the typicality and adequacy requirements of Rule 23 as required by the PSLRA, because its claims are typical of those of absent Class members and because it will fairly and adequately represent the interests of the Class.  Movant fully understands a Lead Plaintiff's obligations under the PSLRA.

Movant has demonstrated its adequacy through its selection of Kaplan Fox and Berger Montague as Co-Lead Counsel on behalf of the Class. Both Kaplan Fox and Berger Montague are

---

[2] The following Certifications set forth all of the transactions of The Nio Investor Group in Nio ADSs during the Class Period.  A copy of the Certification of Richard and Jane Resnick is attached as Ex. A to the Declaration of Jeffrey P. Campisi (the "Campisi Decl.").  A copy of the Certification of Yuri Valentino Simione is attached as Ex. B to the Campisi Decl.  A copy of the Certification of Mohammed Hamood Alhnaity is attached as Ex. C to the Campisi Decl.  Tables reflecting calculations of financial losses sustained by The Nio Investor Group on its Class Period transactions in Nio ADSs are attached as Ex. D to the Campisi Decl.  Declarations of members of The Nio Investor Group are attached as Ex. E.

2

nationally recognized securities class action firms that have recovered hundreds of millions of dollars for the benefit of injured investors, and have the expertise and resources necessary to handle litigation of this complexity and scale.

Accordingly, Movant requests that the Court appoint it Lead Plaintiff, its chosen counsel as Co-Lead Counsel and otherwise grant its Motion.

## FACTUAL BACKGROUND

Nio, which designs, manufactures and sells electric vehicles in the People's Republic of China, the U.S., Germany and the U.K., launched its first electric vehicle, the seven seater "ES8," in December 2017 and started delivering vehicles to customers in June 2018. On September 11, 2018, Nio closed its initial public offering of 160 million ADSs at an offering price of $6.26 per ADS, raising over $1 billion.

In December 2018, Nio launched a five-seater ES6, with delivery expected to begin in late March 2019, and a six-seater version of the ES8. During the Class Period, Defendants represented that sales of Nio's ES8 were significantly growing, reaching 11,348 vehicles for the year ended December 31, 2018; Nio experienced "solid ramp-up in production and delivery in 2018, which demonstrated our execution capabilities;" and demand for the ES8 and ES6 was strong. In the third quarter of 2018, Nio delivered 3,268 ES8s. In the fourth quarter of 2018, Nio delivered 7,980 ES8s, representing growth of over 144% in ES8 deliveries. However, unknown to investors, by the beginning of the Class Period, demand for Nio's vehicles was materially declining and Nio was experiencing material adverse trends that were negatively affecting its sales and revenue. Defendants' representations through the Class Period caused Nio ADSs to trade at artificially inflated prices.

On February 24, 2019, a segment aired on 60 Minutes concerning Nio. Defendant Li represented that Nio exceeded its goal of delivering 10,000 cars in 2018 and was ramping up production. On February 25, 2019, the following trading day, Nio ADSs increased from a close on February 22, 2019 of $8.17 per ADS, to close at $9 per ADS on February 25, 2019, an increase of over 10% on very heavy volume of over 52 million ADSs.

Only 9 days after the 60 Minutes segment, on March 5, 2019, after the close of the market, Nio disclosed its fourth quarter and full year ended December 31, 2018 financial results, shocking investors when they disclosed that for January 2019, Nio delivered only 1,805 ES8s, a decline of over 45% from December 2018, and for February 2019, Nio delivered only 811 ES8s, a decline of over 55% from January 2019 deliveries. Further, Nio stated that it expected between 3500 and 3800 ES8 sales for the quarter ending March 31, 2019—just 884 to 1184 sales in March 2019, representing a decline of more than 52% over fourth quarter 2018 sales.

Defendant Hsieh explained the reasons why Nio ES8 deliveries materially declined:

We expect a greater-than-anticipated sequential decline in deliveries in the first quarter of 2019, partially due to accelerated deliveries made in the end of last year in anticipation of EV subsidy reductions in China in 2019; number two, seasonal slowdown surrounding the January 1 and Chinese New Year holidays; number three, soft macroeconomic conditions in China, particularly in the auto sector. As a result we expect ES8 deliveries in the first quarter to total between 3,500 and 3,800 units.

Defendant Hsieh further stated that the trends negatively affecting Nio sales that were experienced in the first quarter of 2019 would continue into the second quarter of 2019, indicating that the material decline in Nio's ES8 sales went beyond first quarter seasonality: "[w]e expect deliveries in the second quarter of 2019 to reflect continued weakness as we await the result of the 2019 EV subsidy policy in China and improvement in the macroeconomic conditions."

Further, Defendant Li disclosed that Defendants had been experiencing material manufacturing difficulties with Nio's "made-to-order" business model for at least six months:

4

ES8 is our first product. And from manufacturing to delivery, in terms of the readiness of supply chain, quality and software, we need to improve a lot. And for the past six months, we've experienced a lot of challenges. And some days we need to manufacture at least 100 or 200 cars and we need to deliver that many cars every day, and this is a huge pressure for us. And I guess to say that we have to overcome that period of time, and I – we appreciate our team for this great contribution.

On March 6, 2019, Nio's ADSs declined from a closing price on March 5, 2019 of $10.19 per ADS, to close at $8.01 per ADS, a decline of $2.01 per ADS or over 21%, on heavy trading volume of over 73 million ADSs. On March 7, 2019, Nio's ADSs declined an additional $0.92 per ADS or over 11% to close at $7.09 per ADS.

## ARGUMENT

## I.      THE RELATED ACTIONS SHOULD BE CONSOLIDATED

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this title [] has been filed," courts shall appoint a lead plaintiff "after the decision on the motion to consolidate is rendered."  15 U.S.C. § 78u-4(a)(3)(B)(ii); 15 U.S.C. § 77z-1(a)(3)(B)(ii); *see also Faig v. Bioscrip, Inc.*, No. 13-cv-6922, 2013 WL 6705045, at *1 (S.D.N.Y. Dec. 19, 2013) ("The Court must decide whether to consolidate the actions before deciding on the competing motions for appointment as lead plaintiff.").  There are at least two related securities class actions pending in this District on behalf of investors who purchased Nio securities during the Class Period at artificially inflated prices.

Under Rule 42(a), consolidation is appropriate where the actions involve common questions of law or fact.  *See Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007); *Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*, No. CV 09-3007(SJF)(AKT), 2010 WL 3924862, at *2 (E.D.N.Y. Aug. 17, 2010); and *Baughman v. Pall Corp.*, 250 F.R.D. 121, 124 (E.D.N.Y. 2008).  The Court has "broad discretion to determine whether consolidation is appropriate" under Rule 42(a).  *Bioscrip*, 2013 WL 6705045, at *1 (citing *Johnson v. Celotex Corp.*,

5

899 F.2d 1281, 1284 (2d Cir. 1990)). Courts have recognized that class action shareholder suits are well-suited for consolidation because unification conserves judicial resources, expedites pretrial proceedings, reduces case duplication, and lessens the confusion and delay that may result from prosecuting related class action cases separately. *See, e.g., Kaplan*, 240 F.R.D. at 92 (consolidating securities class actions with common allegations noting "the well[-]recognized principle that the consolidation of stockholders' suits often benefits both the courts and the parties by expediting pretrial proceedings, avoiding duplication of discovery, and minimizing costs") (citation omitted).

The Related Actions concern the same or similar parties, arise out of the same or similar courses of misconduct during substantially similar class periods, and involve substantially similar alleged issues of fact and law. Because consolidation will promote judicial efficiency and conserve the resources of the Class and all other parties, consolidation is appropriate pursuant to Rule 42(a), and the Court should grant the motion for consolidation of the Related Actions.

## II. MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

Movant respectfully submits that it should be appointed Lead Plaintiff because it filed the instant motion in a timely manner, has a substantial financial interest in this litigation, and satisfies the typicality and adequacy requirements of Rule 23.

### A. The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA provides a straightforward, sequential procedure for selecting a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. §§ 78u-4(a)(3)(B); 77z-1(a)(3)(B) (setting forth procedure for selecting lead plaintiff). First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-

6

oriented publication or wire service, a notice advising members of the purported plaintiff class –

(I) of the pendency of the action, the claims asserted therein, and the purported class period; and

(II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i); 15 U.S.C. § 77z-1(a)(3)(A)(i).

Next, pursuant to the PSLRA, a court is to consider any motion made by class members to serve as Lead Plaintiff and appoint the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i); 15 U.S.C. § 77z-1(a)(3)(B)(i). In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person or group of persons who: (1) filed a complaint or timely filed a motion to serve as Lead Plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) who otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); 15 U.S.C. § 77z-1 (a)(3)(B)(iii)(I); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011). This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II); *see also Micholle v. Ophthotech Corp.*, No. 17-CV-210 (VSB), 2018 WL 1307285, at *4 (S.D.N.Y. Mar. 13, 2018).

Under the framework established by the PSLRA, Movant is the most presumptive adequate plaintiff and should be appointed Lead Plaintiff.

### B.       Movant is the "Most Adequate Plaintiff"

#### 1.       Movant's Motion Is Timely

Movant filed this motion to serve as Lead Plaintiff in a timely manner. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the plaintiff in the first filed *Sidoli* Action caused notice regarding this case to be published on *PRNewswire*, a widely-circulated, national, business-oriented news wire service, on March 12, 2019.  *See* Notice, Campisi Decl., Ex. F.  Thus, pursuant to the PSLRA, any person who is a member of the proposed Class may apply to be appointed lead plaintiff within sixty days after publication of the notice, *i.e.*, on or before March 13, 2019.  Movant filed its motion seeking appointment as Lead Plaintiff within this deadline and thus has satisfied the procedural requirements of the PSLRA.

#### 2.       Movant Has a Substantial Financial Interest

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii); 15 U.S.C. § 77z-1 (a)(3)(B)(i); *Kemp v. Universal Am. Fin. Corp.*, No. 05 Civ. 9883 (JFK), 2006 WL 1190691, at *2 (S.D.N.Y. May 1, 2006).

Movant incurred a substantial loss of over $185,188.00 on its transactions in Nio ADSs on a LIFO and FIFO basis during the Class Period.  *See* Campisi Decl., Ex. D; *see also Faig v. Bioscrip, Inc.*, No. 13 Civ. 06922 (AJN), 2013 WL 6705045, at *2 (S.D.N.Y. Dec. 19, 2013) (finding the movant with the largest financial interest to be the presumptive "most adequate plaintiff").  Accordingly, Movant has a substantial financial interest as a qualified movant seeking Lead Plaintiff status, and is the presumptive "most adequate plaintiff."  *See* 15 U.S.C. § 78u-

4(a)(3)(B)(iii); 15 U.S.C. § 77z-1(a)(3)(B)(iii); *Randall v. Fifth St. Fin. Corp.*, No. 15-cv-7759 (LANK), 2016 WL 462479, at *1 (S.D.N.Y. Feb. 1, 2016) (same).

### 3.   Movant Satisfies Rule 23's Typicality and Adequacy Requirements

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See In re Third Ave. Mgmt. LLC Sec. Litig.*, No. 16-cv-02758 (PKC), 2016 WL 2986235, at *1 (S.D.N.Y. May 13, 2016). At the lead plaintiff selection stage, all that is required to satisfy Rule 23 is a preliminary showing that the lead plaintiff's claims are typical and adequate. *See Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 477 (S.D.N.Y. 2016); s*ee also Faig*, 2013 WL 6705045, at *3 ("[A]t this stage of the litigation, a moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.") (citation omitted). Here, Movant unquestionably satisfies both requirements.

### a.   Movant's Claims Are Typical of Those of the Class

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims, and plaintiff's claims are based on the same legal theory. *See Faig*, 2013 WL 6705045, at *3. Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id*.

Movant's claims are typical of the claims asserted by the proposed Class. Like all members of the Class, Movant alleges that Defendants made material misstatements and omissions regarding demand for Nio's vehicles in violation of the federal securities laws. Movant, as did all of the members of the Class, purchased Nio ADSs in reliance on Defendants' alleged misstatements and omissions and was damaged thereby. Because Movant's claims arise from the

9

same course of events as the claims of other class members, the typicality requirement is satisfied. *See Ophthotech*, 2018 WL 1307285, at *6.

### b.   Movant Satisfies the Adequacy Requirement of Rule 23

Movant likewise satisfies the adequacy requirement of Rule 23.   The adequacy of representation requirement of Rule 23(a)(4) is satisfied when a representative party establishes that it "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).   Courts assess a movant's adequacy based on: "(1) the size, available resources and experience of the proposed lead plaintiff; (2) the qualifications of the proposed class counsel; and (3) any potential conflicts or antagonisms rising among purported class members." *In re Elan Corp. Sec. Litig.*, No. 1:08-cv-08761-AKH, 2009 WL 1321167, at *2 (S.D.N.Y. May 11, 2009) (citing *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, No. 08 MDL No. 1963(RWS), 2009 WL 50132, at *8 (S.D.N.Y. Jan. 5, 2009)).

Movant will fairly and adequately represent the interests of the proposed Class.  Movant has resources sufficient to pursue the Action to a successful conclusion.   Movant has also retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, *see infra* at Section III, and timely submitted its choice to the Court for approval, in accordance with the PSLRA. *See* 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (B)(v); 15 U.S.C. §§ 77z-1 (a)(3)(A)(i)(II) and (B)(v).

Furthermore, no antagonism exists between Movant's interests and those of the absent Class members; rather, the interests of Movant and Class members are squarely aligned.  Movant suffered substantial losses due to Defendants' alleged misconduct and, therefore, has a sufficient interest in the outcome of this case to ensure vigorous prosecution of this action.

Finally, Movant is not "subject to unique defenses that render such plaintiff incapable of representing the class" and there is no proof that it is subject to any such unique defenses. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II). Accordingly, Movant satisfies the adequacy requirement.

### III.   MOVANT'S SELECTION OF CO-LEAD COUNSEL MERITS APPROVAL

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); 15 U.S.C. § 77z-1(a)(3)(B)(v); *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001) (stating that "the Reform Act evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention"). Consistent with Congressional intent, a court should not disturb the lead plaintiff's choice of counsel unless it is "necessary to protect the interests of the plaintiff class." *See* H.R. Rep. No. 104-369, at 35 (1995) (Conf. Rep.), reprinted in 1995 U.S.C.C.A.N. 730, 734.

Here, Movant has selected Kaplan Fox and Berger Montague to represent the Class. Kaplan Fox and Berger Montague have excelled as lead counsel in numerous actions on behalf of defrauded investors. *See* Campisi Decl., Ex. G (Firm Resume of Kaplan Fox); Ex. H (Firm Resume of Berger Montague). In light of the foregoing, the Court should approve Movant's selection of Kaplan Fox and Berger Montague as Co-Lead Counsel for the Class. The Court can be assured that, by approving Movant's choice of counsel, the Class will receive the highest caliber of representation.

**CONCLUSION**

For the foregoing reasons, Movant respectfully requests that the Court grant its motion and enter an Order: (i) consolidating the Related Actions; (ii) appointing The Nio Investor Group as

Lead Plaintiff; (iii) approving Movant's selection of Kaplan Fox and Berger Montague as Co-Lead

Counsel for the Class; and (iv) granting such other and further relief as the Court may deem just

and proper.

Dated: May 13, 2019                          Respectfully submitted,
New York, New York

                                             */s/ Jeffrey P. Campisi*
                                             Jeffrey P. Campisi
                                             KAPLAN FOX & KILSHEIMER LLP
                                             850 Third Avenue, 14th Floor
                                             New York, NY 10022
                                             Tel: (212) 687-1980
                                             Email: jcampisi@kaplanfox.com

                                             Michael Dell'Angelo
                                             Barbara A. Podell
                                             BERGER MONTAGUE PC
                                             1818 Market Street, Suite 3600
                                             Philadelphia, PA 19103
                                             Tel: (215) 875-3000
                                             Email: mdellangelo@bm.net
                                             Email: bpodell@bm.net

                                             *Attorneys for Lead Plaintiff Movant The Nio*
                                             *Investor Group and Proposed Co-Lead Counsel for*
                                             *the Class*

12

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2019, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

_/s/ Jeffrey P. Campisi_
Jeffrey P. Campisi