**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JONATHAN TAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NIO INC., BIN LI, and LOUIS T. HSIEH,<br><br>Defendants. | Civil Action No.: 1:19-cv-01424-NCG<br><br><br><br>CLASS ACTION |
| BABULAL TARAPARA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NIO INC., BIN LI, LOUIS T. HSIEH, LIHONG QIN, PADMASREE WARRIOR, TIAN CHENG, XIANG LI, HAI WU, YAQIN ZHANG, XIANPING ZHONG, ZHAOHUI LI, MORGAN STANLEY & CO. LLC, GOLDMAN SACHS (ASIA) L.L.C., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, DEUTSCHE BANK SECURITIES INC., CITIGROUP GLOBAL MARKETS INC., CREDIT SUISSE SECURITIES (USA) LLC, UBS SECURITIES LLC, and WR SECURITIES, LLC,<br><br>Defendants. | Civil Action No.: 1:19-cv-02777-ERK<br><br><br><br>CLASS ACTION |

**THE NIO INVESTOR GROUP'S MEMORANDUM OF LAW IN OPPOSITION TO**
**COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

I.    BACKGROUND ............................................................................................................ 1

II.   ARGUMENT .................................................................................................................. 4

    A.    The NIO Investor Group Possesses the Largest Financial Interest ................................ 4

        1.    Exchange Act Losses .......................................................................................... 4

        2.    Securities Act Losses .......................................................................................... 7

    B.    The NIO Investor Group Satisfies the Typicality and Adequacy Requirements ............ 8

        1.    Typicality ............................................................................................................ 9

        2.    Adequacy .......................................................................................................... 10

    C.    No Proof Exists to Rebut the Presumption in Favor of the NIO Investor Group ......... 13

    D.    Competing Movants Are Inadequate Under Rule 23 ..................................................... 14

    E.    The NIO Investor Group's Choice of Counsel Should Be Approved ........................... 16

III.  CONCLUSION .............................................................................................................. 16

## TABLE OF AUTHORITIES

**Cases**

*Atanasio v. Tenaris S.A.*,
No. 18-CV-7059-RJD-SJB, 2019 U.S. Dist. LEXIS 75750 (E.D.N.Y. Apr. 29, 2019) ............. 6

*Brady v. Top Ships Inc.*,
324 F. Supp. 3d 335 (E.D.N.Y. 2018) .................................................................................. 13

*Carvelli v. Ocwen Fin. Corp.*,
No. 17-80500-CIV, 2017 U.S. Dist. LEXIS 222283 (S.D. Fla. July 13, 2017) ...................... 16

*Chahal v. Credit Suisse Grp. AG*,
No. 18-CV-02268 (AT)(SN), 2018 U.S. Dist. LEXIS 104185 (S.D.N.Y. June 21, 2018)....... 14

*China Agritech, Inc. v. Resh*,
138 S. Ct. 1800 (2018) ....................................................................................................... 11

*Cullinan v. Cemtrex, Inc.*,
287 F. Supp. 3d 277 (E.D.N.Y. 2018) .................................................................................. 13

*Emerson v. Genocea Biosciences, Inc.*,
No. 17-12137-PBS, 2018 U.S. Dist. LEXIS 22228 (D. Mass. Feb. 12, 2018).................. 12, 13

*Francisco* v. *Abengoa, S.A.*,
No. 15 Civ. 6279 (ER), 2016 U.S. Dist. LEXIS 68145 (S.D.N.Y. May 24, 2016) .................... 5

*In re BioScrip, Inc. Sec. Litig.*,
95 F. Supp. 3d 711 (S.D.N.Y. 2015).................................................................................... 8

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
No. 17-CV-4846 (WFK)(PK), 2017 U.S. Dist. LEXIS 207531 (E.D.N.Y. Dec. 15, 2017) . 11, 12

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)............................................................................................... 12

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) 4, 5, 7

*In re Drexel Burnham Lambert Group, Inc.*,
960 F.2d 285 (2d Cir. 1992)............................................................................................... 10

*In re Facebook, Inc.*,
288 F.R.D. 26 (S.D.N.Y. 2012) .......................................................................................... 14

*In re Initial Pub. Offering Sec. Litig.*,
227 F.R.D. 65 (S.D.N.Y. 2004) ............................................................................................ 9

*In re Initial Pub. Offering Sec. Litig.*,
471 F.3d 24 (2d Cir. 2006).................................................................................................. 9

*In re Olsten Corp. Securities Litig.*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998........................................................................... 3, 5

*In re Sequans Communs. S.A. Sec. Litig.*,
  289 F. Supp. 3d 416 (E.D.N.Y. 2018) ............................................................... 12, 14

*In re Star Gas Sec. Litig.*,
  No. 3:04cv1766(JBA),2005 U.S. Dist. LEXIS 5827 (D. Conn. Apr. 8, 2005) ......................... 4

*In re Surebeam Corp. Sec. Litig.*,
  No. 03 CV 1721 JM (POR), 2004 U.S. Dist. LEXIS 25022 (S.D. Cal. Jan. 5, 2004).............. 16

*In re Third Ave. Mgt. LLC Sec. Litig.*,
  No. 16-cv-02758 (PKC), 2016 U.S. Dist. LEXIS 72344 (S.D.N.Y. May 13, 2016)............... 17

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) ........................................................................ 10

*Lax* v. *First Merchants Acceptance Corp.*,
  No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ............................... 3, 5

*Maliarov v. Eros Int'l PLC*,
  No. 15-CV-8956 (AJN), 2016 U.S. Dist. LEXIS 46082 (S.D.N.Y. Apr. 5, 2016)................. 17

*Marsch v. Feng*,
  No. 12 Civ. 9456 (JSR), 2013 U.S. Dist. LEXIS 89853 (S.D.N.Y. June 12, 2013)................. 11

*Murphy v. JBS S.A.*,
  No. 17-CV-3084, 2017 U.S. Dist. LEXIS 166262 (E.D.N.Y. Oct. 6, 2017)............. 6, 9, 11, 14

*Reimer v. Ambac Fin. Grp., Inc.*,
  No. 08 Civ. 411 (NRB), 2008 U.S. Dist. LEXIS 38729 (S.D.N.Y. May 9, 2008) ................... 10

*Rosian v. Magnum Hunter Res. Corp.*,
  No. 13 Civ. 2668 (KBF), 2013 U.S. Dist. LEXIS 146236 (S.D.N.Y. Oct. 7, 2013)............... 17

*Silverberg v. Dryships Inc.*,
  No. 17-CV-4547 (SJF)(ARL), 2018 U.S. Dist. LEXIS 225563 (E.D.N.Y. Aug. 21, 2018) ... 12, 13

*Simmons v. Spencer*,
  No. 13 Civ. 8216 (RWS), 2014 U.S. Dist. LEXIS 58743 (S.D.N.Y. Apr. 24, 2014)............... 12

*Springer v. Code Rebel Corp.*,
  No. 16-cv-3492 (AJN), 2017 U.S. Dist. LEXIS 29983 (S.D.N.Y. Mar. 2, 2017)............. 15, 17

*Takata v. Riot Blockchain, Inc.*,
  No. 18-2293 (FLW) (TJB), 2018 U.S. Dist. LEXIS 189585 (D.N.J. Nov. 6, 2018)............... 16

*Weisman v. Darneille*,
  78 F.R.D. 669 (S.D.N.Y. 1978) ........................................................................ 15

*Weltz v. Lee*,
  199 F.R.D. 129 (S.D.N.Y. 2001) ........................................................................ 12

*Xianglin Shi v. SINA Corp.*,
  No. 05 Civ. 2154 (NRB), 2005 U.S. Dist. LEXIS 13176 (S.D.N.Y. July 1, 2005)................. 16

*Xu v. Gridsum Holding, LLC*,
  No. 18 Civ. 3655 (ER), 2018 U.S. Dist. LEXIS 158497 (S.D.N.Y. Sep. 17, 2018) ............... 11

iv

**Statutes**

15 U.S.C. §§78u-4(a)(3)(B)(i) ................................................................................ 4

15 U.S.C. §77k(e) ........................................................................................ 4, 8

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) ..................................................................... 3, 11

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc) ...................................................................... 9

15 U.S.C. §78u-4(a)(3)(B)(iii)(II) ..................................................................... 4, 14

15 U.S.C. §78u-4(a)(3)(B)(v) .......................................................................... 17

15 U.S.C. §78u-4(e)(2) ............................................................................... 1, 7

**Other Authorities**

Private Securities Litigation Reform Act of 1995 .................................................. passim

**Rules**

Fed. Rules of Evidence 609(a)(2) ....................................................................... 15

## PRELIMINARY STATEMENT

Movants Gary Leung, Stephen Pandur, David Ge, Erik De La Cruz, and Mario Castorena (collectively, the "NIO Investor Group" or "Group") respectfully submit this memorandum of law in opposition to the competing motions for appointment as lead plaintiff.[1] Dkt. Nos. 10, 15, 22, 25. Pursuant to the Private Securities Litigation Reform Act ("PSLRA"), the NIO Investor Group is presumptively the most adequate lead plaintiff because it has the largest financial interest in the Related Actions and satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). As no ***proof*** of the Group's inadequacy exists to rebut this presumption, the NIO Investor Group must be appointed as lead plaintiff.

Moreover, other movants have ***improperly inflated*** their claimed losses by disregarding the damage cap applied to securities retained through the class period and then sold before the expiration of the 90-day period thereafter. 15 U.S.C. §78u-4(e)(2). Additionally, competing movant Mark Mundy ("Mundy") was admittedly convicted of "bankruptcy fraud" and served fifteen months in jail for his dishonest acts, rendering him inadequate to serve in such an important representative capacity as a lead plaintiff.[2] Finally, two of the other group movants failed to submit ***any*** evidence of their cohesiveness and ability to jointly prosecute the Related Actions. For these reasons and those set forth herein, the Court should grant the NIO Investor Group's Motion and deny the competing motions.

## I.   BACKGROUND

On March 12, 2019, Plaintiff Jonathan Tan ("Plaintiff Tan") filed a complaint (the "*Tan Action*") alleging violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the

---

[1] All movants agree that the above-captioned related actions (the "Related Actions") should be consolidated. To date, Defendants have not taken a position on the issue of consolidation.

[2] *See* Declaration of Shannon L. Hopkins in Support of the NIO Investor Group's Opposition ("Hopkins Decl.") at Exhibit A, Notice of Motion and Motion of Mark Mundy disclosing conviction of "Bankruptcy Fraud, a felony."

1

"Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5, on behalf of a class of all persons and entities who purchased or otherwise acquired the American Depositary Shares ("ADSs" or "Shares") of NIO Inc. ("NIO" or the "Company") between September 12, 2018 and March 5, 2019, inclusive (the "Class Period"). Plaintiff Tan duly caused a notice to be filed in a widely circulated national business-oriented wire service advising other class members of their right to seek appointment as a representative party. *See* Dkt. No. 20-4 (Notice).

Then—one business day before the lead plaintiff deadline—Plaintiff Babulal Tarapara filed a complaint (the "*Tarapara* Action") alleging violations of §§11 and 15(a) of the Securities Act of 1933 (the "Securities Act") based on substantially the same facts and circumstances alleged in the *Tan* Action.[3] Both the *Tan* Action and the *Tarapara* Action allege that the disclosure correcting NIO's false statements or omissions occurred on March 5, 2019, (the "Corrective Disclosure"), when the Company released its earnings report for the fourth quarter of 2018. *Tarapara* Action, Dkt. No. 1 at ¶52; *Tan* Action, Dkt. No. 1 at ¶22. On this news, "shares of NIO fell $3.07 per share or over 30% over the next two trading days to close at $7.09 on March 7, 2019." *Tan* Action, Dkt. No. 1 at ¶23; *Tarapara* Action, Dkt. No. 1 at ¶53.

On May 13, 2019, the NIO Investor Group and five other movants filed motions to be appointed Lead Plaintiff in the Related Actions. As of the date of this filing, the remaining movants are:[4] (1) Emily Chou and Xie Jian Feng (the "Chou Group"), (Dkt. No. 10); (2) Mundy, (Dkt. No.

---

[3] In addition to the Related Actions, two other related cases were filed in the United States District Court for the Northern District of California making similar allegations against the Company. *Sidoli v. NIO Inc., et al.*, Case No. 5:19-cv-01320 was filed on March 12, 2019 (the "*Sidoli* Action") and *Jeon v. NIO Inc., et al.*, Case No. 5:19-cv-01644 was filed on March 29, 2019 (the "*Jeon* Action"). The *Sidoli* and *Jeon* Actions were subsequently transferred to this District on May 22, 2019.

[4] One other Movant, the NIO Investor Group 2 comprised of Richard Resnick, Jane Resnick, Yuri Valentino Simione, and Mohammed Hamood Alhnaity, previously sought lead plaintiff appointment in this action. Dkt. No. 13. The NIO Investor Group 2 has since filed a Notice of Non-Opposition stating that they recognize the NIO Investor Group

15); (3) Babulal Tarapara ("Tarapara"), (Dkt. No. 22); and (4) Bruce A. Bookbinder, Henri A. Malka, and Raam Muthusamy (the "NIO Investor Group 3"), (Dkt. No. 25). The NIO Investor Group should be appointed as Lead Plaintiff in the Related Actions pursuant to the PSLRA because it has the largest financial interest in the relief sought by the class and satisfies the typicality and adequacy requirements of Rule 23. U.S.C. §78u-4(a)(3)(B)(iii)(I).

Specifically, under the Exchange Act claims, the NIO Investor Group has the largest financial interest pursuant to *all four* of the *Lax/Olsten* factors, which have been relied on by this Court and are widely accepted by courts in this Circuit, District, and throughout the country as appropriate for determining the largest financial interest. *See Lax* v. *First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *17 (N.D. Ill. Aug. 6, 1997); *In re Olsten Corp. Securities Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *see also In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878, at *8 (E.D.N.Y. Mar. 2, 2007) ("Courts have typically considered [] four factors, known as the 'Olsten-Lax' factors, to determine who has the greatest financial interest.").[5] Moreover, the NIO Investor Group retained 338,558 ADSs through the Corrective Disclosure—167,558 *more than* any other competing movant. *See id.*, at *22-25 (excluding losses incurred due to "in-and-out" transactions made before the "earliest corrective disclosures alleged in the complaint"). The Group also has the largest financial interest in the Securities Act claim pursuant to §11's statutory damage calculation, (15 U.S.C. §77k(e)), further requiring its appointment as lead plaintiff in the Related Actions.

---

satisfies all of the PSLRA's lead plaintiff requirements and, thus, should be appointed as lead plaintiff here. *See* Dkt. No. 28.

[5] Unless otherwise stated, all emphasis is added and all internal citations, quotations, and alterations are omitted.

## II.   ARGUMENT

In deciding which movant to appoint as lead plaintiff in cases brought under the PSLRA, the Court must consider losses suffered by the competing movants, from largest to smallest and appoint the movant with "largest financial interest in the relief sought by the class" who also "otherwise satisfies the requirements" of Rule 23. 15 U.S.C. §§78u-4(a)(3)(B)(i), (iii); *see also In re Star Gas Sec. Litig.*, No. 3:04cv1766(JBA), 2005 U.S. Dist. LEXIS 5827, at *8 (D. Conn. Apr. 8, 2005) (explaining that "the Court should not undertake a comprehensive review of all the lead plaintiff motions at once. Rather, the Court should consider the motions sequentially, from greatest to smallest loss…."). Once identified, the movant with the largest financial interest must be appointed lead plaintiff, unless a competing movant produces sufficient proof to rebut the presumption in its favor. *In re Star Gas Sec. Litig.*, 2005 U.S. Dist. LEXIS 5827, at *8; §78u-4(a)(3)(B)(iii)(II). This analysis starts and ends with the NIO Investor Group.

### A.   The NIO Investor Group Possesses the Largest Financial Interest

#### 1. Exchange Act Losses

To determine which movant has the greatest financial interest under the Exchange Act claims, courts commonly refer to the *Lax/Olsten* factors: (1) the total number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period. *Id.* "Most courts consider the fourth factor, the approximate loss a plaintiff suffered during the class period, to be the most influential in identifying the plaintiff with the largest financial interest." *In re Comverse Tech., Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at *8; *see also Francisco v. Abengoa, S.A.*, No. 15 Civ. 6279 (ER), 2016 U.S. Dist. LEXIS 68145, at *14 (S.D.N.Y. May 24, 2016) ("courts have consistently held that… the magnitude of the loss suffered,

4

is most significant."). As the following table demonstrates, the NIO Investor Group possesses the largest financial interest under all four *Lax/Olsten* factors:[6]

| Exchange Act Losses[7] | | | | | |
|---|---|---|---|---|---|
| **Movant** | **Total ADSs Purchased** | **Net ADSs Purchased During Class Period** | **Net Funds Expended During Class Period** | **Total Class Period Loss (LIFO)[8]** | **Excluding In-and-Out Losses** |
| The NIO Investor Group | *388,700* | *338,558*[9] | *$1,691,940.22* | *$1,026,978.00* | *$1,015,666.42*[10] |
| Mundy | 200,000 | 100,000 | $1,214,000.00 | $646,000.00 | $441,000.00 |
| The NIO Investor Group 3 | 188,300 | 113,300 | $938,223.60 | $297,092.66 | $291,392.66 |
| Tarapara | 96,000 | 86,000 | $567,542.00 | $110,810.33 | $110,810.33 |
| The Chou Group | 23,933 | 23,933 | $252,343.77 | $82,845.45 | $82,845.45 |

The NIO Investor Group indisputably has the largest financial interest. Under each of the four *Lax/Olsten* factors, the Group doubles or nearly doubles the next highest movant. *See Murphy v. JBS S.A.*, No. 17-CV-3084, 2017 U.S. Dist. LEXIS 166262, at *11-12 (E.D.N.Y. Oct. 6, 2017)

---

[6] *See* Hopkins Decl. at Ex. B, loss calculations for the remaining competing movants performed by counsel for the NIO Investor Group using transaction data submitted with initial lead plaintiff motions. These loss calculations exclude in-and-out losses for the competing movants.

[7] Minor discrepancies (*i.e.* not the artificial inflation specifically described *infra*) in LIFO figures claimed by opposing movants and calculated by counsel for the Group are due to differences in the 90-day lookback average being applied to shares retained through the end of the Class Period.

[8] LIFO stands for "last-in-first-out" and matches a movant's first share sold with its most recent share purchased. LIFO is heavily preferred over FIFO or "first-in-first-out" as the latter tends to artificially inflate losses. *See Atanasio v. Tenaris S.A.*, No. 18-CV-7059-RJD-SJB, 2019 U.S. Dist. LEXIS 75750, at *13 n.5 (E.D.N.Y. Apr. 29, 2019) ("Recently, courts have preferred LIFO and have generally rejected FIFO as an appropriate means of calculating losses…. The main advantage of LIFO is that, unlike FIFO, it takes into account gains that might have accrued to plaintiffs… whereas FIFO ignores sales occurring during the class period and hence may exaggerate losses.").

[9] The loss calculation for Mr. De La Cruz inadvertently represented his "Net Shares Retained" as 0. *See* Dkt. No. 20-2 at pp. 5. As demonstrated in his PLSRA Certification and his loss calculation, Mr. De La Cruz actually retained 39,100 ADSs through the end of the Class Period and then sold them on March 7, 2019 for a substantial loss.

[10] The NIO Investor Group only sold 50,142 of the 388,700 ADSs it purchased during the Class Period. Most of those sales resulted in a gain. *See e.g.* Dkt. No. 20-2 at pp. 4 (David Ge loss calculation with gains made on 9/13/2018 sale of 20,000 ADSs at $11.70); Dkt. No. 20-2 at pp. 5 (Erik De La Cruz loss calculation with gains made on 11/8/2018 sale of 20,000 ADSs at $6.54). However, Mr. De La Cruz did incur an in-and-out loss of on his 2/11/2019 sale of 20,000 ADSs at $7.40 and Mr. Castorena did incur in-and-out losses on his 1/11/2019 and 1/17/2019 sales of 117 and 25 ADSs at $6.59 and $6.63, respectively. Those in-and-out losses (but not gains) have been excluded from this figure.

(appointing movant as lead plaintiff where "all four factors indicate that [movant] has the largest financial interest in the action.") Importantly, when excluding in-and-out losses, the NIO Investor Group lost **over $1 million** in "recoverable losses -- *i.e.*, losses it sustained from selling [NIO ADSs] at reduced prices" after the March 5, 2019 Corrective Disclosure, the only corrective disclosure alleged in the Related Actions. *In re Comverse Tech., Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at *22.

Both Mark Mundy and the NIO Investor Group 3 improperly inflated their loss totals by disregarding the PSLRA's loss limitation on securities retained through the end of the class period, but sold before the conclusion of the 90 days following the "dissemination of information correcting the misstatement or omission," commonly referred to as the "90-Day Lookback". 15 U.S.C. §78u-4(e)(2). When a plaintiff:

> Sells. . . the subject security prior to the expiration of the [90-Day Lookback] . . . the plaintiff's damages **shall not exceed** the difference between the. . . sale price. . . received. . . and the mean trading price of the security during the period immediately after the dissemination of information correcting the misstatement or omission and ending on the date on which the plaintiff sells. . . the security.

*Id*.

Here, both Mundy and the NIO Investor Group 3 disregarded this limitation on damages and improperly inflated their losses:[11]

| Movant | Transaction | Actual Sales Price | Mean Close Price on Date | Loss Inflation |
|---|---|---|---|---|
| Mundy | 4/15/2019 sale of 100,000 ADSs | $4.96 | $5.68 | *$72,000* |
| Henri A. Malka | 3/29/2019 sale of 19,000 ADSs | $4.97 | $5.99 | *$19,380* |

Whether Mundy and the NIO Investor Group 3 inflated their loss totals by inadvertence or with intent to increase their chances of being appointed lead plaintiff is of no matter—with or

---

[11] *See* Hopkins Decl. at Ex. B, including loss calculations for Mundy and the NIO Investor Group 3 properly applying the PSLRA's limitation on damages.

without these corrections, their financial interests are still considerably smaller than that of the NIO Investor Group.

## 2. Securities Act Losses

The *Tarapara* Action alleges violations of §11 of the Securities Act stemming from NIO's September 2018 initial public offering ("IPO"), beginning on September 12, 2018 and offering ADSs at $6.26 per share. To have standing to asset a §11 claim, a plaintiff must have "purchased shares issued pursuant to, or traceable to the public offering[]." *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 746 (S.D.N.Y. 2015). It is beyond question that the NIO Investor Group has standing to assert a §11 claim in the Related Actions because all of its purchases are pursuant or traceable to the offering and prior to the lock-up expiration. *See e.g.* Dkt. No. 20-1 (PSLRA Certifications attesting to purchases on *e.g.*, 9/12/2018, 9/13/2018, 9/14/2018, 9/17/2018, and 9/18/2018).

Losses under §11 of the Securities Act are calculated differently than losses under §10(b) of the Exchange Act. Pursuant to U.S.C. §77k(e), §11 losses:

> represent the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought….

*Id*.

Using §11's damage formula, the NIO Investor Group also has the largest financial interest under the Securities Act:[12]

---

[12] *See* Hopkins Decl. at Ex. C, Securities Act loss calculations for all competing movants, including the NIO Investor Group.

7

| Securities Act Losses | | |
| --- | --- | --- |
| **Movant** | **Total ADSs Purchased** | **Loss/(Gain)** |
| The NIO Investor Group | *388,700* | *$326,411.74* |
| Tarapara | 181,100 | $251,132.00 |
| Mundy | 200,000 | $51,000 |
| The Chou Group | 29,933 | ($7,203.72) |
| The NIO Investor Group 3 | 188,300 | ($62,444.11) |

As demonstrated above, the NIO Investor Group *also* has the highest loss pursuant to the Securities Act claims. Moreover, the Chou Group and the NIO Investor Group 3 actually have *gains* under the Securities Act. Thus, they lack standing to represent a §11 class and are subject to unique defenses making them atypical of the class. *See In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 120-21 (S.D.N.Y. 2004) *rev'd on other grounds*, *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) (§11 "grants a right of recovery only to plaintiffs who sold their securities below the offering price" and "the foreclosure of any hope for recovery calls into question her motivation to fairly and adequately protect the interests of the class."). In sum, under all assertible claims and any conceivable measure of damages, the NIO Investor Group has the largest financial interest at stake.

### B.  The NIO Investor Group Satisfies the Typicality and Adequacy Requirements

In addition to the largest financial interest requirement, the PSLRA also requires that the lead plaintiff "otherwise satisfies the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). "At the lead plaintiff stage, however, the moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met." *Murphy*, 2017 U.S. Dist. LEXIS 166262, at *12. *See also Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 397 (S.D.N.Y. 2008) ("At this stage in the litigation, a *prima facie* showing that the requirements of Rule 23 are met is sufficient").

8

A lead plaintiff's claims are typical of the claims of the class if they purchased artificially inflated securities during the class period while relying on the alleged misrepresentations and suffered losses as a result. *See Reimer v. Ambac Fin. Grp., Inc.*, No. 08 Civ. 411 (NRB), 2008 U.S. Dist. LEXIS 38729, at \*12 (S.D.N.Y. May 9, 2008) (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) ("[Typicality] is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."). A lead plaintiff satisfies the adequacy requirement with a preliminary showing that: (1) lead counsel is qualified; (2) there is no conflict between the lead plaintiff and the class; and (3) the lead plaintiff has a sufficient interest to ensure vigorous advocacy. *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007). Here, the NIO Investor Group satisfies both the typicality and adequacy prongs of Rule 23, requiring its appointment as Lead Plaintiff.

### 1. Typicality

There can be no dispute that the NIO Investor Group satisfies the typicality requirement. Like all members of the class, the NIO Investor Group: (1) purchased NIO ADSs during the Class Period and/or pursuant or traceable to the IPO; (2) at prices artificially inflated by the false and misleading statements and/or omissions by defendants; and (3) suffered heavy losses as a result. Because of this, the NIO Investor Group's claims are substantially similar, if not identical, to those of the other class members who purchased NIO ADSs during the Class Period and suffered losses from the alleged misconduct on the part of the defendants. *See In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK)(PK), 2017 U.S. Dist. LEXIS 207531, at \*9 (E.D.N.Y. Dec. 15, 2017) (typicality satisfied where movant's claims arise "out of the course of events alleged in the Complaint and do not differ with regard to how Defendants' liability would be proved."); *Xu*

*v. Gridsum Holding, LLC*, No. 18 Civ. 3655 (ER), 2018 U.S. Dist. LEXIS 158497, at *11 (S.D.N.Y. Sep. 17, 2018) (noting that lead plaintiff's claims need not be identical with those of the class to satisfy the typicality requirement).

### 2.  Adequacy

The NIO Investor Group also readily satisfies the adequacy requirement of Rule 23. Levi & Korsinsky, LLP ("Levi & Korsinsky") and Bragar Eagel & Squire, P.C. ("BES") proposed co-lead counsel for the class, are highly experienced in securities class actions such as this and are well qualified to litigate the Related Actions. *See* Dkt. Nos. 20-5, 20-6 (firm résumés of Levi & Korsinsky and BES). Moreover, the NIO Investor Group has no conflicts with absentee class members, can act as a representative party on behalf of both Exchange Act and Securities Act claims, and is highly motivated to recover its Exchange Act losses of over $1 million. *See Murphy*, 2017 U.S. Dist. LEXIS 166262, at *14 (the movant "with by far the largest financial loss, appears to have interests that are aligned with the other members of the class as well as the motivation to vigorously pursue its claims"); *see also Marsch v. Feng,* No. 12 Civ. 9456 (JSR), 2013 U.S. Dist. LEXIS 89853, at *5 (S.D.N.Y. June 12, 2013) (adequacy satisfied where movants suffered heavy losses to "ensure vigorous advocacy on behalf of the class.").

Anticipating a potential argument from competing movants attacking the composition of the Group, the PSLRA expressly permits a "person or *group of persons*" to serve as lead plaintiff so long as that group possesses the largest financial interest and satisfies Rule 23. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *see also China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n.3 (2018) ("District courts often permit aggregation of plaintiffs into plaintiff groups."); *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001) ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff.").

Courts in this District and Circuit routinely appoint groups to serve as lead plaintiff where the group is small and therefore presumably cohesive and when there has been a showing of a willingness and ability to manage the litigation. *See Simmons v. Spencer*, No. 13 Civ. 8216 (RWS), 2014 U.S. Dist. LEXIS 58743, at *13 (S.D.N.Y. Apr. 24, 2014) ("[a] group consisting of persons that have no pre-litigation relationship may be acceptable as a lead plaintiff candidate so long as the group is relatively small, such as here with only five members, and therefore presumptively cohesive."); *Silverberg v. Dryships Inc.*, No. 17-CV-4547 (SJF)(ARL), 2018 U.S. Dist. LEXIS 225563, at *24 (E.D.N.Y. Aug. 21, 2018) (appointing lead plaintiff group and noting that the fact that an individual movant "may have suffered the greatest loss of any individual member of the putative class is insufficient to override the presumption in favor of the *group* with the largest loss.") (emphasis in original).[13]

In determining the viability of a group's appointment as lead plaintiff, courts have examined: "(i) the size of the [group]; (ii) any evidence that the group was formed in bad faith; and (iii) the relationship between the parties." *In re Sequans Communs. S.A. Sec. Litig.*, 289 F. Supp. 3d 416, 423 (E.D.N.Y. 2018). Other courts have looked to: "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." *Silverberg*, 2018 U.S. Dist. LEXIS 225563, at *29.

---

[13] *See also*, *In re Blue Apron Holdings, Inc. Sec. Litig.*, 2017 U.S. Dist. LEXIS 207531, at *12 (appointing group as lead plaintiff where not so "large as to be unwieldly and impracticable, and [] avers it is prepared to work cooperatively to serve the best interests of the class."); *Emerson v. Genocea Biosciences, Inc.*, No. 17-12137-PBS, 2018 U.S. Dist. LEXIS 22228, at *8 (D. Mass. Feb. 12, 2018) (courts generally permit the "aggregation of unrelated plaintiffs"); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) (appointing a group of seven people and recognizing that "appointing a group of people as co-lead plaintiffs is allowable under the PSLRA").

11

Here, the NIO Investor Group consists of just five sophisticated investors who decided to retain Levi & Korsinsky and BES as co-lead counsel, and who are motivated to recover the losses they and the class suffered. *See* Dkt. No. 20-3 ("Joint Declaration"). In support of its motion, the Group submitted its Joint Declaration that established the Group is made up of, *inter alia*: (1) an executive; (2) two business owners; and (3) an engineer. *Id.* at ¶¶2-6. Further, the members of the Group hold two advanced degrees and boast a combined 127 years of investing experience. *Id. See Emerson*, 2018 U.S. Dist. LEXIS 22228, at *15-16 (noting sophistication of group members with approval); *see also Varghese,* 589 F. Supp. 2d at 392 (considering the sophistication of group members).

Beyond their unquestionable sophistication and ability to serve as lead plaintiff, the Joint Declaration also details the Group members' communication thus far and plans for coordination in the future including: (1) the decision to join together and serve as lead plaintiff as a group; (2) the discussion of and agreement on attorney fees; (3) a strategy for prosecuting the action; (4) the importance of joint-decision making and remaining in communication to discuss and make timely decisions; (5) a tie-breaking mechanism and a failsafe procedure in the event a majority vote cannot be reached; and (6) the overall driving directive that the litigation be conducted in a cost-effective manner to obtain "the largest recovery possible for the Class." Joint Decl. at ¶¶11-21. *See Cullinan v. Cemtrex, Inc.*, 287 F. Supp. 3d 277, 286 (E.D.N.Y. 2018) (appointing a group as lead plaintiff where filings indicate the "group members' plans for cooperation and involvement in the litigation."); *Brady v. Top Ships Inc.*, 324 F. Supp. 3d 335, 346 (E.D.N.Y. 2018) (relying on joint declaration detailing "plans for cooperation and coordination" to find proposed group "is not the type of lawyer-driven group that other courts have cautioned against approving."); *In re Sequans Communs. S.A. Sec. Litig.*, 289 F. Supp. 3d at 424 (submission of joint declaration with moving

12

papers "provides sufficient assurances that the [] investors are capable of working together if chosen as Lead Plaintiffs.").

In fact, the NIO Investor Group has already acted upon its commitment to stay informed of, and oversee this litigation by communicating with one another and participating in a second conference call after lead plaintiff motions were filed and executing its Second Joint Declaration detailing their actions and involvement the filing of lead plaintiff motions and reaffirming the Group's commitment to serving as lead plaintiff. *See* Hopkins Decl. at Ex. D (detailing discussion of lead plaintiff proceedings thus far and commitment to work together in future); *see also Chahal v. Credit Suisse Grp. AG*, No. 18-CV-02268 (AT)(SN), 2018 U.S. Dist. LEXIS 104185, at *17-18 (S.D.N.Y. June 21, 2018) (relying on initial and supplemental declaration that prove "the group is sufficiently involved to allay any concerns that it will not exercise control over its counsel" and noting that "courts have appointed similar groups as lead plaintiffs upon submission of sworn declarations.").

### C.  No Proof Exists to Rebut the Presumption in Favor of the NIO Investor Group

Having demonstrated that the NIO Investor Group is the presumptive Lead Plaintiff in the Related Actions, that strong presumption can be rebutted only with ***proof*** that the movant with the largest financial interest is atypical or inadequate. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II); *see also In re Facebook, Inc.,* 288 F.R.D. 26, 40 (S.D.N.Y. 2012) ("***exacting proof***" necessary to "rebut the PSLRA's presumption" in favor of most adequate lead plaintiff); *Murphy*, 2017 U.S. Dist. LEXIS 166262, at *14-15 ("Exacting proof" necessary to rebut the presumption as "[c]onclusory assertions and mere speculation will not suffice."). The Group has no conflicts with the members of the class and is motivated to recover the heavy losses it suffered. Moreover, as a small and cohesive group of sophisticated investors, the presumption in favor of the Group cannot be

rebutted. *See Chahal,* 2018 U.S. Dist. LEXIS 104185, at *18 (presumption not rebutted where group members are sophisticated, where group chose counsel and not vice versa, and where joint declaration shows commitment to litigation and plans to cooperate).

### D.  Competing Movants Are Inadequate Under Rule 23

Besides lacking the largest financial interest in this litigation—the key factor in appointing a lead plaintiff—Mundy, the Chou Group, and the NIO Investor Group 3 are inadequate for different reasons. Specifically, movants are required to affirmatively make "a sufficient preliminary showing that they can satisfy the relevant requirements of [Rule 23]." *Springer v. Code Rebel Corp.*, No. 16-cv-3492 (AJN), 2017 U.S. Dist. LEXIS 29983, at *6 (S.D.N.Y. Mar. 2, 2017).

Mundy disclosed in the motion he filed in the *Sidoli* Action in the Northern District of California (but not in the Related Actions) that he was "convicted of Bankruptcy Fraud, a felony" and "served 15 months in jail" for his transgressions. *See* Hopkins Decl. at Ex. A. Mr. Mundy's motion should be denied for failing to demonstrate candor to *this* Court, where the litigation will proceed now that the motions to transfer have been granted, and for failing to make even a preliminary showing of adequacy. Mundy's felony conviction for fraud gives rise to a unique defense that defendants would use at the class certification stage to disqualify him as a class representative. Further, his dishonest conduct seriously undermines his credibility to act in a representative role on behalf of a class.

"As a fiduciary for the class, [Mundy] would be required to adhere to the highest standards of honesty and integrity." *Weisman v. Darneille*, 78 F.R.D. 669, 671 (S.D.N.Y. 1978) (disqualifying class representative with felony fraud conviction); *see also* Fed. Rules of Evidence 609(a)(2) (in impeaching a witness's character for truthfulness "for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the

14

elements of the crime required proving…*a dishonest act or false statement*.”). When considering past felony convictions for dishonest acts “[o]n more than one occasion courts have found that an individual is [an] inadequate lead plaintiff due to unrelated misconduct which implicates the individual’s ability to serve as a fiduciary.” *In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721 JM (POR), 2004 U.S. Dist. LEXIS 25022, at *21-22 (S.D. Cal. Jan. 5, 2004) (collecting cases). In fact, in similar situations at the lead plaintiff stage, lead plaintiff applications have rightfully been denied on this basis. *See Xianglin Shi v. SINA Corp.*, No. 05 Civ. 2154 (NRB), 2005 U.S. Dist. LEXIS 13176, at *14 (S.D.N.Y. July 1, 2005) (denying lead plaintiff motion of movant convicted in 1995 of a felony for providing false information to a financial institution noting that “*convictions of fraud or other forms of dishonesty undermine the qualifications of a potential class representative*” and for this reason “numerous courts have rejected the appointment of convicted felons as class representatives”) (collecting cases); *see also Carvelli v. Ocwen Fin. Corp.*, No. 17-80500-CIV, 2017 U.S. Dist. LEXIS 222283, at *15-16 (S.D. Fla. July 13, 2017) (lead plaintiff’s fraudulent bankruptcy activity suggests he lacks “the awareness and ethical standards needed to perform this role. Accordingly, this Court is compelled to conclude [movant] is woefully unqualified to lead this class action.”).

The Chou Group and the NIO Investor Group 3 are equally inadequate, albeit for different reasons. Unlike the Group, neither the Chou Group nor the NIO Investor Group 3 “include[d] any facts in their moving brief detailing the relationship between the plaintiffs that comprise the group…. [W]hich could, by itself, be a basis for denying lead plaintiff status.” *Takata v. Riot Blockchain, Inc.*, No. 18-2293 (FLW) (TJB), 2018 U.S. Dist. LEXIS 189585, at *13 (D.N.J. Nov. 6, 2018). In addition to failing to demonstrate the largest financial interest required of a lead plaintiff, the Chou Group and the NIO Investor Group 3 failed to “proffer an evidentiary showing

15

that unrelated members of a group will be able to function cohesively and effectively manage the ligation apart from their lawyers." *In re Third Ave. Mgt. LLC Sec. Litig.*, No. 16-cv-02758 (PKC), 2016 U.S. Dist. LEXIS 72344, at *8-9 (S.D.N.Y. May 13, 2016); *see also Rosian v. Magnum Hunter Res. Corp.*, No. 13 Civ. 2668 (KBF), 2013 U.S. Dist. LEXIS 146236, at *12 (S.D.N.Y. Oct. 7, 2013) (rejecting movant group where there had been "insufficient evidence that the members of the group will act collectively and separately from their lawyers").

In sum, the motions of Mundy, the Chou Group, and the NIO Investor Group 3 should be denied because, not only do they have a lower financial interest than the Group, they also are inadequate to serve as lead plaintiff under Rule 23.

### E.  The NIO Investor Group's Choice of Counsel Should Be Approved

The Court should also approve the NIO Investor Group's selection of Levi & Korsinsky and BES as co-lead counsel for the putative class. The PSLRA vests authority in the lead plaintiff to select and retain counsel for the class subject to approval of the Court. 15 U.S.C. §78u-4(a)(3)(B)(v). There is a strong presumption in favor of approving "a properly-selected lead plaintiff's decision as to counsel." *Maliarov v. Eros Int'l PLC*, No. 15-CV-8956 (AJN), 2016 U.S. Dist. LEXIS 46082, at *20 (S.D.N.Y. Apr. 5, 2016) (internal citations omitted); *see also Springer*, 2017 U.S. Dist. LEXIS 29983, at *8 (approving co-lead counsel in securities class action). The attorneys at Levi & Korsinsky and BES are highly experienced in securities and class action litigation and will prosecute the Related Actions effectively and expeditiously.

## III.    CONCLUSION

Based on the foregoing, the NIO Investor Group respectfully requests that the Court grant its motion: (1) consolidating the Related Actions; (2) appointing the NIO Investor Group as Lead

Plaintiff; (3) approving the NIO Investor Group's selection of Levi & Korsinsky and BES as Co-Lead Counsel.

 DATED: May 28, 2019                          Respectfully Submitted,

                                             **LEVI & KORSINSKY, LLP**

                                             */s/ Shannon L. Hopkins*
                                             Shannon L. Hopkins (SH-1887)
                                             1111 Summer Street, Suite 403
                                             Stamford, CT 06905
                                             Tel.: (203) 992-4523
                                             Fax: (212) 363-7171
                                             Email: shopkins@zlk.com

                                             **BRAGAR EAGEL & SQUIRE, P.C.**
                                             Lawrence P. Eagel
                                             885 Third Avenue, Suite 3040
                                             New York, NY 10022
                                             Tel.: (212) 308-5858
                                             Fax: (212) 214-0506
                                             Email: eagel@bespc.com

                                             *Counsel for Movant and [Proposed] Co-Lead*
                                             *Counsel for the Class*

17

## CERTIFICATE OF SERVICE

I, Shannon L. Hopkins, hereby certify that this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 28th day of May 2019.

/s/Shannon L. Hopkins

Shannon L. Hopkins