**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Plaintiff and Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JONATHAN TAN, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>NIO INC., BIN LI, and LOUIS T. HSIEH,<br><br>    Defendants. | **CASE No.: 1:19-cv-01424-NGG-VMS**<br><br>**REPLY IN FURTHER SUPPORT OF MARK MUNDY'S LEAD PLAINTIFF MOTION**<br><br>**<u>CLASS ACTION</u>** |

[Caption continues on following page]

<table>
<tr><td>

BABULAL TARAPARA, Individually and On Behalf of All Others Similarly Situated,

     Plaintiff,

     v.

NIO INC., BIN LI, LOUIS T. HSIEH, LIHONG QIN, PADMASREE WARRIOR, TIAN CHENG, XIANG LI, HAI WU, YAQIN ZHANG, XIANPING ZHONG, ZHAOHUI LI, MORGAN STANLEY & CO. LLC, GOLDMAN SACHS (ASIA) L.L.C., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, DEUTSCHE BANK SECURITIES INC., CITIGROUP GLOBAL MARKETS INC., CREDIT SUISSE SECURITIES (USA) LLC, UBS SECURITIES LLC, and WR SECURITIES, LLC,

     Defendants.

</td><td>

**CASE No.: 1:19-cv-02777-ERK-PK**

**<u>CLASS ACTION</u>**

</td></tr>
</table>

Mark Mundy ("Movant" or "Mundy") respectfully submits this reply in further support of his lead plaintiff motion.

<u>**PRELIMINARY STATEMENT**</u>

Remaining before are the court are two competing motions for appointment as lead plaintiff, Mundy's and the NIO Investor Group's. While the NIO Investor Group claims losses larger than Mundy, it suffers from two fatal deficiencies; specifically, that it is a large group of unrelated investors lacking a preexisting relationship created by counsel to amass the largest financial interest, and that it submitted insufficient evidence in support of its motion— namely a conclusory and vague joint declaration and materially inaccurate PSLRA certifications. Mundy, as an individual investor with the largest individual financial interest, encounters none of the

1

aforementioned issues and satisfies the requirements of Rule 23. The Court should refuse to aggregate the losses of the NIO Investor Group and appoint Mundy as lead plaintiff.

## ARGUMENT

First, the Court should not aggregate the losses of the NIO Investor Group because they have failed to make the requisite showing that their proposed group of unrelated investors can function cohesively and manage the litigation effectively apart from their lawyers. Courts in the Second Circuit do allow unrelated investors to aggregate their losses, but only on a case-by-case basis depending on whether such a grouping best serves the class.

The NIO Investor Group did not, and cannot, present any evidence that the members of its proposed group had any prior relationship before being brought together by counsel.  The members of the group are geographically dispersed, haling from Hong Kong, Pennsylvania, Maryland, Florida, and California. *See Takata v. Riot Blockchain, Inc.*, No. CV182293FLWTJB, 2018 WL 5801379, at *5 (D.N.J. Nov. 6, 2018) (rejecting group of geographically dispersed plaintiffs that did not state how they were joined together). How could such a group have come about? The answer is clear: The lawyers grouped them together. *See Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 532 (S.D.N.Y. 2015) ("Many courts—including this one— have turned away pastiche plaintiffs whose grouping appears to be solely a product of the litigation, because, 'To allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff.'") (quoting *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997)).

As explained in Mundy's opposition, from the circumstances it is clear that the impetus behind the creation of the NIO Investor Group was solely to amass the largest loss. After learning there were investors with larger losses than that of their clients, the law firms Levi &

Korsinsky LLP and Bragar Eagle & Squire, P.C. teamed up for the sole purpose of amalgamating a larger loss of "high six" to "seven figures." Courts typically refuse to aggregate groups stitched together for such inappropriate purpose. *See In re Razorfish, Inc. Sec. Litig.*, 143 F.Supp.2d 304, 308 (S.D.N.Y. 2001) (rejecting proposed group because it was "simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff'").

Moreover, the NIO Investor Group's Joint Declaration raises more questions than it answers and fails to demonstrate they will be able to function cohesively. For example, Paragraph 11 of the Joint Declaration refers to four members and excludes Mr. Castorena, an apparent last-minute addition to the group. Furthermore, courts have rejected similarly worded joint declarations submitted by the NIO Investor Group's counsel because they fail to demonstrate the necessary cohesiveness or independence sufficient to allay concerns inherent to appointing a loose, attorney-driven group of investors. *See e.g.*, *Kniffin v. Micron Tech., Inc.,* No. 19CV2136, 2019 WL 2119613 at \*2 (S.D.N.Y. Apr. 30, 2019) (rejecting unrelated group proffered by NIO Investor Group's counsel, submitting nearly identical joint declaration); *Takata*, 2018 WL 5801379, at \*5 (rejecting unrelated group proffered by NIO Investor Group's counsel, submitting nearly identical Joint Declaration). All the NIO Investor Group proffered are vague discussions of general communication protocols and status reports hashed out over preliminary conference calls that "do little to show the groups' involvement in the litigation." *Kniffin*, 2019 WL 2119613 at \*2. The boilerplate, conclusory plans and assurances of cooperation are "insufficient." *Id.* In addition, the "individual members investing experience and sophistication carry little weight if the group appears to be lawyer-driven." *Id.* (citing *Khunt*, 102 F.Supp.3d at 532).

The cases cited by the NIO Investor Group are distinguishable. In *Brady v. Top Ships Inc.*, all remaining movants were investor groups. Hence, the court had no option except to appoint a group as lead plaintiff, which is not the case here. Similarly, in *Simmons v. Spencer*, the court appointed the individual movant and the proposed group as co-lead plaintiffs "to ensure that all losses alleged by members of the class were equally advanced." *Simmons v. Spencer*, No. 13 CIV. 8216 RWS, 2014 WL 1678987, at *6 (S.D.N.Y. Apr. 25, 2014). No such issues are alleged here.

*In re Sequans Commc'ns S.A. Sec. Litig.* is also not on point, and runs contrary to the NIO Investor Group. There, a small group of two investors suffered $144,271 in losses, while the two competing individual movants lost only $1,209 and $45,948 respectively. *In re Sequans Commc'ns S.A. Sec. Litig.*, 289 F. Supp. 3d 416, 421 (E.D.N.Y. 2018). The decision to aggregate hinged on the fact that individual with the largest overall claimed loss ($108,303) was a member of the group. *Id.* (explaining that "potential lead plaintiffs are not being deprived of the PSLRA presumption by the aggregation of parties"). The court further explained that the predominant feature of cases where unrelated investors were deemed to not be adequate representatives was "where aggregation of class members is done solely to create an artificially large financial interest." *Id.* Such is the case here. Similarly, in *Cullinan v. Cemtrex, Inc.*, though the court ultimately permitted aggregation, a member of the group had a larger loss than the opposing individual movant. Unlike in *Sequans* or *Cullinan*, Mundy has a larger loss than any individual member of the NIO Investor Group, and there is evidence that the group was constructed solely to create an artificially large financial interest.

Second, as described in detail in Mundy's opposition, several members of the NIO Investor Group submitted certifications containing significant errors that have not been

4

corrected. Both Pandur and De La Cruz's sworn certifications contain material inaccuracies – each describes trades that could not be correct based on the historical price data. Errors in the PSLRA certification are sufficient to disqualify a lead plaintiff movant. *See Tomaszewski v. Trevena, Inc.,* No. CV 18-4378, 2019 WL 2288267, at \*4 (E.D. Pa. May 29, 2019) (lead plaintiff movant with largest loss disqualified because submitted certification inaccurately reflected number of trades and price per share).

Finally, Mundy satisfies Rule 23 adequacy and typicality requirements. Mundy's filing in the Northern District of California mistakenly contained a footnote stating that he had a previous conviction of bankruptcy fraud. This footnote was inaccurate, Mundy has no previous conviction of bankruptcy fraud. A Notice of Errata was promptly filed in that Court correcting the record. *See* Dkt. No. 44. While the mistake is certainly regrettable, it was clerical in nature as opposed to deliberate, and was remedied before any undue prejudice was suffered by any party. *See In re Initial Pub. Offering Sec. Litig.,* 224 F.R.D. 550, 555 (S.D.N.Y. 2004) (permitting plaintiffs' counsel to correct motions when they mistakenly filed lead plaintiff motion on behalf of the wrong movant). Mundy asserted a substantial individual loss of $718,000 under the Securities Exchange Act of 1934, larger than any individual member of the NIO Investor Group. Mundy has the largest individual loss even according to the NIO Investor Group's chart that purports to exclude in-and-out losses. *See* Dkt. No. 33-3 at 4.

*    *    *

The Rosen Law Firm is particularly well-suited to lead a securities class action involving a Chinese issuer like NIO. The firm employs fluent Chinese speakers and has leveraged the firm's capabilities to successfully litigate against other Chinese issuers and obtain significant recoveries. Three other movants in their notice of non-oppositions supported Mundy's motion,

5

citing the Rosen Law Firm's experience and expertise in pursuing fraud claims against Chinese companies. *See* Dkt. Nos. 29, 30, 31.

## CONCLUSION

For the foregoing additional reasons, the Court should grant Mundy's motion and deny the competing motion.

Dated: June 4, 2019                              Respectfully submitted,

                                                 **THE ROSEN LAW FIRM, P.A.**

                                                 /s/ Phillip Kim
                                                 Phillip Kim, Esq. (PK 9384)
                                                 Laurence M. Rosen, Esq. (LR 5733)
                                                 275 Madison Avenue, 34th Floor
                                                 New York, New York 10016
                                                 Telephone: (212) 686-1060
                                                 Fax: (212) 202-3827
                                                 Email: pkim@rosenlegal.com
                                                 Email: lrosen@rosenlegal.com

                                                 *[Proposed] Lead Counsel for Plaintiff and Class*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of June 2019, a true and correct copy of the foregoing **REPLY IN FURTHER SUPPORT OF MARK MUNDY'S LEAD PLAINTIFF MOTION** was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Phillip Kim