**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JONATHAN TAN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> NIO INC., BIN LI, and LOUIS T. HSIEH, <br><br> Defendants. | Civil Action No.: 1:19-cv-01424-NCG <br><br><br><br> <u>CLASS ACTION</u> |
| BABULAL TARAPARA, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> NIO INC., BIN LI, LOUIS T. HSIEH, LIHONG QIN, PADMASREE WARRIOR, TIAN CHENG, XIANG LI, HAI WU, YAQIN ZHANG, XIANPING ZHONG, ZHAOHUI LI, MORGAN STANLEY & CO. LLC, GOLDMAN SACHS (ASIA) L.L.C., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, DEUTSCHE BANK SECURITIES INC., CITIGROUP GLOBAL MARKETS INC., CREDIT SUISSE SECURITIES (USA) LLC, UBS SECURITIES LLC, and WR SECURITIES, LLC, <br><br> Defendants. | Civil Action No.: 1:19-cv-02777-ERK <br><br><br><br> <u>CLASS ACTION</u> |

**THE NIO INVESTOR GROUP'S REPLY MEMORANDUM OF
LAW IN RESPONSE TO COMPETING MOVANT MARK MUNDY'S
OPPOSITION AND IN FURTHER SUPPORT OF ITS MOTION FOR
<u>APPOINTMENT AS LEAD PLAINTIFF AND SELECTION OF COUNSEL</u>**

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ...................................................................................... 1

II.   ARGUMENT.................................................................................................................. 3

    A.  The NIO Investor Group Has the Largest Financial Interest of Any Competing Movant and Satisfies Rule 23............................................................................................... 3

    B.  The Rosen Law Firm Will Not Provide Adequate Representation.................................... 9

    C.  The NIO Investor Group's Choice of Counsel Should be Approved ............................... 10

CONCLUSION.................................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*Barnet v. Elan Corp., PLC*,
   236 F.R.D. 158 (S.D.N.Y. 2005) ........................................................................... 7

*Brady v. Top Ships, Inc.*,
   324 F. Supp. 3d 335 (E.D.N.Y. 2018) ............................................................. 4, 7, 8

*Chahal v. Credit Suisse Grp. AG*,
   No. 18-CV-02268 (AT)(SN), 2018 U.S. Dist. LEXIS 104185 (S.D.N.Y. June 21, 2018)..... 8, 9

*China Agritech, Inc. v. Resh*,
   138 S. Ct. 1800 (2018) ........................................................................................ 7

*Cohen v. U.S. Dist. Court for N. Dist. of California*,
   586 F.3d 703 (9th Cir. 2009) ............................................................................. 10

*Cullinan v. Cemtrex, Inc.*,
   287 F. Supp. 3d 277 (E.D.N.Y. 2018) .................................................................. 7

*Emerson v. Genocea Biosciences, Inc.*,
   Civil Action No. 17-12137-PBS, 2018 U.S. Dist. LEXIS 22228
   (D. Mass. Feb. 12, 2018)................................................................................ 4, 6, 7

*In re Aqua Metals Sec. Litig.*,
   No. 17-cv-07142-HSG, 2018 U.S. Dist. LEXIS 86889 (N.D. Cal. May 23, 2018) .............. 4, 7

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
   No. 17-cv-4846 (WFK)(PK), 2017 U.S. Dist. LEXIS 207531
   (E.D.N.Y. Dec. 15, 2017) ............................................................................... 5, 6, 7

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)................................................................................. 7

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06-CV-1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) ........ 4

*In re Sequans Communs. S.A. Sec. Litig.*,
   289 F. Supp. 3d 416 (E.D.N.Y. 2018) ................................................................. 6, 7

*In re Snap Inc. Sec. Litig*,
   2019 U.S. Dist. LEXIS 88379 (C.D. Cal. Apr. 1, 2019) .......................................... 7

*Jiehua Huang v. Airmedia Grp., Inc.*,
   2015 U.S. Dist. LEXIS 178083 (S.D.N.Y. Nov. 10, 2015) ....................................... 1

*Maliarov v. Eros Int'l PLC*,
   No. 15-CV-8956 (AJN), 2016 U.S. Dist. LEXIS 46082, (S.D.N.Y. Apr. 5, 2016).................. 10

*Silverberg v. Dryships Inc.*,
   No. 17-CV-4547 (SJF)(ARL), 2018 U.S. Dist. LEXIS 225563 (E.D.N.Y. Aug. 21, 2018) ...... 6

*Simmons v. Spencer*,
   No. 13 Civ. 8216 (RWS), 2014 U.S. Dist. LEXIS 58743 (S.D.N.Y. Apr. 24, 2014)................ 6

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008)....................................................................................... 6

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii) ................................................................................................... 3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)......................................................................................... 1, 4

15 U.S.C. § 78u-4(a)(3)(B)(v) ................................................................................................. 10

iv

## I.     PRELIMINARY STATEMENT

Movants Gary Leung, Stephen Pandur ("Pandur"), David Ge, Erik De La Cruz ("De La Cruz"), and Mario Castorena ("Castorena") (collectively, the "NIO Investor Group" or "Group")[1] respectfully submit this reply memorandum of law in response to the opposition filed by competing movant Mark Mundy ("Mundy") (Dkt. No. 32, the "Mundy Opposition" or "Mundy Opp.") and in further support of its Motion for Consolidation of the Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel.

Two competing motions for appointment as lead plaintiff remain before the Court.[2]  Mundy does not dispute that the Group suffered the largest loss of any competing movant or that the Group suffered *over $1 million in losses*, retained 338,588 NIO ADSs through the Corrective Disclosure and end of the Class Period, and has claims typical of those of the Class.  Instead, Mundy claims that the NIO Investor Group is not an adequate class representative because it is a lawyer-driven group.  Mundy's Opposition falls well short of the proof required to rebut the presumption that the NIO Investor Group is the most adequate movant and should be appointed lead plaintiff.  15 U.S.C. §78u-4(a)(3)(B)(iii)(II); *Jiehua Huang v. Airmedia Grp., Inc.*, 2015 U.S. Dist. LEXIS 178083, at *6-7 (S.D.N.Y. Nov. 10, 2015) ("'speculative and hypothetical' allegations should not prevent the appointment of a lead plaintiff").

Indeed, the NIO Investor Group is a small, cohesive group of sophisticated investors who demonstrated their adequacy by: (1) having the largest financial interest at stake, indicating they

---

[1]  Unless otherwise noted, all capitalized defined terms shall have the same meaning as set forth in the NIO Investor Group's opening Memorandum of Law in Support of its Motion (the "Group's Opening Motion") (Dkt. No. 18) and its Memorandum of Law in Opposition to Competing Motions (the "Group's Opposition") (Dkt. No. 33).

[2] Movants Babulal Tarapara ("Tarapara"), the NIO Investor Group 2 (comprised of Richard Resnick, Jane Resnick, Yuri Valentino Simione, and Mohammed Hamood Alhnaity), the NIO Investor Group 3 (comprised of Bruce A. Bookbinder, Henri A. Malka, and Raam Muthusamy), and the Chou Group (comprised of Emily Chou and Xie Jian Feng) have all filed Notices of Non-Opposition. *See* Dkt. Nos. 28-31.

1

will litigate vigorously to recover their significant losses; (2) retaining experienced counsel and timely filing a motion seeking to represent the Class; (3) executing and submitting their Joint Declaration (Dkt. No. 20-3); and (4) executing and submitting their Second Joint Declaration (Dkt No. 33-5). Through these joint declarations, the Group has demonstrated that its members have communicated with one another both prior to and after filing the Group's Opening Motion, understand the responsibilities of and are willing to serve as a lead plaintiff pursuant to the PSLRA, and are prepared to prosecute this action diligently on behalf of the Class. Accordingly, there is no *proof* of inadequacy to rebut the presumption in favor of appointing the Group as Lead Plaintiff.

Moreover, Mundy's claims that he is more adequate to represent the interests of the Class because he purportedly possesses the largest individual loss and his counsel, The Rosen Law Firm, P.A. ("Rosen"), has litigated cases against China-based companies before are made-up criteria not found anywhere in the PSLRA's straightforward statutory framework. Unsurprisingly, Mundy's Opposition contains no mention of the *Lax/Olsten* Factors or Rule 23—criteria that are used by courts to assist in determining the movant with the largest financial interest as required by the PSLRA in appointing lead plaintiff. Additionally, Mundy does not argue that the Group's choice of counsel renders it inadequate or that Levi & Korsinsky, LLP ("Levi & Korsinsky") and Bragar Eagel & Squire, P.C. ("BES") are not qualified to litigate this action—nor could he.

For the reasons set forth herein, Mundy's arguments are without merit and the NIO Investor Group respectfully submits that it should be appointed as lead plaintiff, and its choice of Levi & Korsinsky and BES as co-lead counsel should be approved.

## II.   ARGUMENT

### A.   The NIO Investor Group Has the Largest Financial Interest of Any Competing Movant and Satisfies Rule 23

Under the PSLRA there is a strong presumption that the "person or **group of persons** that . . . has the largest financial interest in the relief sought by the class" is the "most adequate plaintiff." 15 U.S.C. §78u-4(a)(3)(B)(iii) (emphasis added). As fully discussed in the Group's Opening Motion, the Group's Opposition brief, and as demonstrated in the following chart, the Group possesses the largest financial interest of any competing lead plaintiff movant under every *Lax/Olsten* factor.[3]

| | | Exchange Act Losses | | | |
|---|---|---|---|---|---|
| **Movant** | **Total ADSs Purchased** | **Net ADSs Purchased During Class Period** | **Net Funds Expended During Class Period** | **Total Class Period Loss (LIFO)** | **Excluding In-and-Out Losses** |
| The NIO Investor Group | *388,700* | *338,558* | *$1,691,940.22* | *$1,026,978.00* | *$1,015,666.42* |
| Mundy | 200,000 | 100,000 | $1,214,000.00 | $646,000.00 | $441,000.00 |

"Most courts consider the fourth factor, the approximate loss a plaintiff suffered during the class period, to be the most influential in identifying the plaintiff with the largest financial interest."

---

[3] In the process of re-confirming Pandur's after-hours purchase on March 5, 2019, it was discovered that he had additional sales and purchases during the Class Period. Pandur mistakenly believed he was only required to provide information for those purchases he had losses on. A revised certification identifying Pandur's transactions, as well as a revised chart calculating his individual losses, will be forthcoming. Courts observe that correcting a certification is not an obstacle to lead plaintiff appointment. *See Hansen v. Ferrellgas Partners, L.P.*, No. 16-cv-7840 (RJS), 2017 U.S. Dist. LEXIS 8145, at *20 (S.D.N.Y. Jan. 19, 2017) (correcting a certification "fall[s] well short of 'proof' that the [movant] 'will not fairly and adequately protect the interests of the class'"); *Rao v. Quorum Health Corp.*, 221 F. Supp. 3d 987, 989 (M.D. Tenn. 2016) ("courts have allowed lead plaintiff movants to amend their certifications if issues arose.") (collecting cases); *In re Williams Sec. Litig.*, No. 02-CV-72-H(M), 2002 U.S. Dist. LEXIS 29738, at *33 n.8 (N.D. Okla. July 8, 2002) ("corrected errors in [movant]'s certification and loss calculation do not provide a sufficient basis for denying his motion to be appointed lead plaintiff"). While Pandur's updated trade information will change the *Lax/Olsten* factor calculations as provided in the Group's Opposition, the NIO Investor Group continues to possess the largest financial interest under every *Lax/Olsten* Factor. This is true even if Pandur was excluded from the Group entirely, as follows: Total ADSs Purchased 358,700; Net ADSs Purchased During Class Period 308,558; Net Funds Expended During Class Period $1,406,850.22; Total Class Period Loss (LIFO) $901,788; and Excluding In-and-Out Purchases $890,476.42.

3

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878, at \*8 (E.D.N.Y. Mar. 2, 2007). Here, when excluding in-and-out losses suffered by Mundy, the Group has demonstrated that it suffered approximately **double** the losses suffered by Mundy. Importantly, the NIO Investor Group retained **three times as many** NIO ADSs through the Corrective Disclosure and the end of the Class Period. *See id* at \*13 ("In short, it is clear that under <u>Dura</u> and its progeny, any losses that P&P may have incurred before Comverse's misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in this litigation.").

Mundy's claim that he should be appointed lead plaintiff because he has the largest individual loss should be rejected. The PSLRA provides that the movant who is the "person or **group of persons**" with the largest financial interest is the presumptive most adequate plaintiff and nowhere requires that the movant be an individual. It is clear that the "greatest individual member loss does not rebut the presumption in favor of the [group movant]." *Brady v. Top Ships, Inc.*, 324 F. Supp. 3d 335, 350 (E.D.N.Y. 2018) (appointing a group with the greatest aggregate loss as lead plaintiff instead of a competing group that included a member with the highest individual loss); *see also In re Aqua Metals Sec. Litig.*, No. 17-cv-07142-HSG, 2018 U.S. Dist. LEXIS 86889, at \*7-8 (N.D. Cal. May 23, 2018) (appointing group with larger aggregate loss over competing individual with largest individual loss); *Emerson v. Genocea Biosciences, Inc.*, Civil Action No. 17-12137-PBS, 2018 U.S. Dist. LEXIS 22228, at \*11-16 (D. Mass. Feb. 12, 2018) (same). Having suffered the largest loss of any competing movant, the NIO Investor Group is the presumptive most adequate lead plaintiff and should be appointed as such here.

The PSLRA presumption can be rebutted only with **proof** that the movant with the largest financial interest is atypical or inadequate. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). Mundy mounts two

4

challenges to the Group's adequacy.  As discussed below, Mundy's challenges lack merit and he has failed to provide the requisite proof needed to rebut the presumption.

*First*, while Mundy does not dispute that his financial interest in this litigation pales in comparison to the Group's, he *incorrectly* claims three purported discrepancies between the ADS prices reported in Pandur's and De La Cruz's certifications and the closing ADS prices for the corresponding days equate to "significant errors in [their] submissions" rendering them inadequate. Mundy Opp. at 5-6.  Mundy is wrong as the data submitted by Pandur and De La Cruz is correct.  The loss charts submitted with the Group Opening Motion explicitly note that Pandur's March 5, 2019 purchase occurred after hours, explaining the difference between NIO's reporting trading prices that day.  *See* Dkt. 20-2 at p. 3.  Similarly, the purchases represented in De La Cruz's certification are completely accurate, meaning that any discrepancy between the prices reported on his monthly trade statements and the historical trading data on September 17, 2018 and December 27, 2018 were similarly likely due to after-hours trading.[4]  Thus, there are no errors in De La Cruz's and Pandur's certifications.

*Second*, Mundy argues the NIO Investor Group is "an improper lawyer-made group." Mundy Opp. at pp. 3-5.  This argument, too, fails. Courts consider several factors in determining whether the "group[] would best serve the class." *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-cv-4846 (WFK)(PK), 2017 U.S. Dist. LEXIS 207531, at *10 (E.D.N.Y. Dec. 15, 2017).  These factors include: "(1) the existence of a pre-litigation relationship between group members; (2) the involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice

---

[4] *See* Declaration of Shannon L. Hopkins in Support of the NIO Investor Group's Reply at Exhibit A (redacted trade statements of De La Cruz confirming purchase price on his PSLRA certification).

versa." *Silverberg v. Dryships Inc.*, No. 17-CV-4547 (SJF)(ARL), 2018 U.S. Dist. LEXIS 225563, at *29 (E.D.N.Y. Aug. 21, 2018). The Group's Opposition details how the Group satisfies these considerations and thus "would best serve the class." *See* Dkt. No. 33 at pp. 10-13.

In particular, the NIO Investor Group is a small, cohesive partnership of sophisticated investors with more than 127 years of investment experience, all of whom incurred significant losses in connection with their purchases of NIO securities. *See Emerson*, 2018 U.S. Dist. LEXIS 22228, at *15-16 (noting sophistication of group members with approval); *see also Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008) (considering the sophistication of group members). Moreover, the Group's Joint Declaration and Second Joint Declaration demonstrate, *inter alia*, the members' decision to join together prior to moving for lead plaintiff, that the members have communicated with one another and with their counsel, a mechanism for resolving potential disputes and the members' dedication to staying informed and driving the litigation. *In re Sequans Communs. S.A. Sec. Litig.*, 289 F. Supp. 3d 416, 424 (E.D.N.Y. 2018) (submission of joint declaration with moving papers "provides sufficient assurances that the [] investors are capable of working together if chosen as Lead Plaintiffs"); *Blue Apron*, 2017 U.S. Dist. LEXIS 207531, at *12 (finding group which submitted a declaration "aver[ring] it is prepared to work cooperatively" to be "qualified to serve as lead plaintiffs on the basis of their representations to the Court"); *Simmons v. Spencer*, No. 13 Civ. 8216 (RWS), 2014 U.S. Dist. LEXIS 58743, at *13 (S.D.N.Y. Apr. 24, 2014) ("A group consisting of persons that have no pre-litigation relationship may be acceptable as a lead plaintiff candidate so long as the group is relatively small, such as here with only five members, and therefore presumptively cohesive.") (citations omitted).

6

As Mundy himself recognizes, courts in this District and across the country routinely appoint small groups of unrelated investors such as this to serve as lead plaintiff. *See* Mundy Opp. at p. 3, citing *Brady*, 324 F. Supp. 3d at 350 (appointing a group with the greatest aggregate loss as lead plaintiff instead of a competing group that included a member with the highest individual loss); *see also Blue Apron* 2017 U.S. Dist. LEXIS 207531, at *12 (appointing unrelated group **represented by Rosen** as lead plaintiff although the group's members had no "relationship with one another beyond their participation in this litigation"); *Cullinan v. Cemtrex, Inc.*, 287 F. Supp. 3d 277, 286 (E.D.N.Y. 2018) (appointing a group as lead plaintiff where filings indicated the "group members' plans for cooperation and involvement in the litigation"); *In re Aqua Metals Sec. Litig.*, No. 17-cv-07142-HSG, 2018 U.S. Dist. LEXIS 86889, at *7-8 (N.D. Cal. May 23, 2018) (same); *Emerson*, 2018 U.S. Dist. LEXIS 22228, at *11-16 (same); *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n. 3 (2018) ("District courts often permit aggregation of plaintiffs into plaintiff groups."); *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding that "there can be no doubt" that the PSLRA permits appointment of groups and appointing as lead plaintiff a group of six unrelated individual investors); *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001) ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff") (citation omitted).[5]

---

[5] Not only is the evidence of cohesion submitted thus far by the NIO Investor Group sufficient proof of adequate representation, but **much lesser showings** have been found sufficient to justify the appointment of a lead plaintiff group. *See, e.g.*, *Brady*, 324 F. Supp. 3d at 346 (appointing an investor group that submitted a joint declaration which failed to identify any members by name except in individual signature pages attached at the end); *Sequans*, 289 F. Supp. 3d at 416 (appointing Pomerantz and **Rosen** as co-lead counsel even where one of the group member's certifications only authorized one firm (Rosen) to file a complaint and the other group member's certification failed to reference any law firm); *Blue Apron*, 2017 U.S. Dist. LEXIS 207531, at *13 (appointing an investor group, represented by co-lead counsel Pomeranz and **Rosen**, that filed a joint declaration only in the response papers); *In re Snap Inc. Sec. Litig*, 2019 U.S. Dist. LEXIS 88379, at *12-13 (C.D. Cal. Apr. 1, 2019) (appointing lead plaintiff based on "joint declaration, which establishe[d] the members' commitment to vigorously pursue the litigation, to oversee counsel to ensure the case is efficiently litigated in the class's best interests, to work collaboratively, and to proceed quickly").

The submission of the Joint Declaration and Second Joint Declaration rebuts a "lawyer-driven" argument. *See, e.g.*, *Brady*, 324 F. Supp. 3d at 346 (relying on joint declaration detailing "plans for cooperation and coordination" to find proposed group "is not the type of lawyer-driven group that other courts have cautioned against approving"); *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-02268 (AT)(SN), 2018 U.S. Dist. LEXIS 104185, at *17-18 (S.D.N.Y. June 21, 2018) (relying on initial and supplement declaration that prove "the group is sufficiently involved to allay any concerns that it will not exercise control over its counsel" and noting that "courts have appointed similar groups as lead plaintiffs upon submission of sworn declarations").

Mundy's reliance on an email exchange between his counsel and BES is without merit. Mundy Opp. at 4. Not only is this argument premised on speculation, but the timing of the email exchange and the scheduling of the Group's joint call demonstrate the call was scheduled ***prior to*** the email exchange. Indeed, dial-in information for the Group's call was circulated at 10:40 a.m. on May 8, 2019, while the email exchange did not occur until later that evening between 6:07 p.m. and 10:57 p.m. Moreover, Mundy's assumption-based argument that Castorena was a "last-minute addition to the Group" similarly fails (Mundy Opp. at 5) and does not provide the necessary proof to rebut the presumption in favor of appointing the NIO Investor Group.

If anything, *Mundy's* challenge to the NIO Investor Group's appointment is lawyer-driven. The Notices of Non-Opposition filed by former movants Tarapara, NIO Investor Group 3, and the Chou Group are nearly identical, providing a clear indication of an arrangement among the law firms representing these three movants and Rosen. Each notice similarly states that Mundy possesses the largest individual loss and that Rosen has "Chinese attorneys on staff with experience litigating matters against Chinese securities issuers." *See, e.g.*, Dkt No. 29. Notably, Mundy's opening brief did not argue his counsel's experience with Chinese litigation, so Tarapara, the NIO

8

Investor Group 3, and the Chou Group likely included this language at the insistence of Rosen. This, of course, is not a factor under the PSLRA that courts may consider in appointing a lead plaintiff and has never been considered probative by any court in the history of securities fraud class actions. Specifically, there is nothing "unique" or more difficult about litigating securities class actions (which are, by their nature, complex against any defendant) against Chinese issuers than domestic corporations and Mundy does not even attempt to argue that Levi & Korsinsky or BES are unqualified to serve as lead counsel here.

In sum, it is undisputed that the NIO Investor Group has the largest financial interest as required by the PSLRA. The Second Circuit and this District consistently appoint groups as lead plaintiff, even where the members are unrelated, as long as the group would best serve the class. The Group's Joint Declaration and Second Joint Declaration are of the type that have been found to show that the Group "is sufficiently involved to allay any concerns that it will not exercise control over its counsel." *Credit Suisse Grp. AG*, 2018 U.S. Dist. LEXIS 104185, at \*18. Mundy has offered no viable proof otherwise, and the NIO Investor Group should be appointed Lead Plaintiff.

**B.      The Rosen Law Firm Will Not Provide Adequate Representation**

Notably, while attempting to discredit the NIO Investor Group based on perceived errors, Mundy is silent on the significant errors he (or likely, his counsel) made in his submission. On May 29, 2019, *over fifteen days after* submitting the opening motion and after the NIO Investor Group pointed out Mundy's apparent bankruptcy conviction in the Group's Opposition, Rosen filed an errata in this Action and in the Northern District of California to correct a footnote found in Mundy's opening motion filed in the Northern District of California that stated in relevant part: "Movant acknowledges that he was convicted of Bankruptcy Fraud, a felony, in 2001. He served 15 months in jail and satisfied the terms of his supervised release. He has put the past behind him

9

and is ready to proceed as lead plaintiff." Dkt. No. 34.  Contrary to this admission, Rosen then stated that the footnote was a careless and glaring mistake and that Mundy was never convicted of bankruptcy fraud.  Further, in filing the opening motion in the Eastern District of New York, Rosen filed papers on behalf of a Mark Murphy (*see* Dkt. Nos. 15 and 16, filing on behalf of Mark *Murphy*) rather than Mundy.  It could be that a Mr. Murphy had committed the bankruptcy fraud, but more likely than not, Rosen filed a motion using the wrong name and disclosing a crime Mundy apparently did not commit.  Finally, in disputing De La Cruz's purchase prices, Mundy/Murphy states that the September 17, *2019* purchase prices were incorrect.  These glaring inaccuracies indicate the general lack of attention that Rosen is giving to this case.

Finally, the claim that Rosen would be more capable as lead counsel because of the firm's litigation experience involving Chinese companies is both incorrect and irrelevant.  On selecting and retaining lead counsel for the putative class, the PSLRA states that the "most adequate plaintiff [here, the NIO Investor Group] shall, subject to the approval of the court, select and retain counsel to represent the class."   15 U.S.C. § 78u-4(a)(3)(B)(v).   Nowhere in this straightforward application does the statutory framework allow for consideration of the nationality of defendants or counsel's purported experience against defendants from a certain country.  *See Cohen v. U.S. Dist. Court for N. Dist. of California*, 586 F.3d 703, 709 (9th Cir. 2009) ("The ordinary reading of [the PSLRA's clause on class counsel] merely gives the district court the limited power to accept or reject the lead plaintiff's selection"); *see also Maliarov v. Eros Int'l PLC*, No. 15-CV-8956 (AJN), 2016 U.S. Dist. LEXIS 46082, at *20 (S.D.N.Y. Apr. 5, 2016) ("There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel.")

### C.    The NIO Investor Group's Choice of Counsel Should be Approved

The Court should also approve the NIO Investor Group's choice of counsel.  Mundy does not dispute that Levi & Korsinsky and BES are qualified to represent the Class—nor could he.  As

10

demonstrated in the Group's Opening Motion, Levi & Korsinsky and BES are both highly experienced in securities and class action litigation and will prosecute the Related Actions effectively and expeditiously. *See* Dkt. Nos. 20-5-6 (firm resumes of Levi & Korsinsky and BES listing many lead counsel appointments and settlements on behalf of classes of investors).

## CONCLUSION

Based on the foregoing, the NIO Investor Group respectfully requests that the Court grant its motion: (1) consolidating the Related Actions; (2) appointing the NIO Investor Group as Lead Plaintiff; (3) approving the NIO Investor Group's selection of Levi & Korsinsky and BES as Co-Lead Counsel; and (4) granting such other relief as the Court may deem to be just and proper.

11

DATED: June 4, 2019 Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

*/s/ Shannon L. Hopkins*
Shannon L. Hopkins (SH-1887)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel.: (203) 992-4523
Fax: (212) 363-7171
Email: shopkins@zlk.com

**BRAGAR EAGEL & SQUIRE, P.C.**
Lawrence P. Eagel (LE4505)
885 Third Avenue, Suite 3040
New York, NY 10022
Tel.: (212) 308-5858
Fax: (212) 214-0506
Email: eagel@bespc.com

-and-

Melissa A. Fortunato (MF7182)
101 California Street, Suite 2710
San Francisco, California 94111
Telephone:  (415) 365-7149
Email:  *fortunato@bespc.com*

*Counsel for Movant and [Proposed] Lead Counsel for the Class*

12

## CERTIFICATE OF SERVICE

I, Shannon L. Hopkins, hereby certify that this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 4th day of June 2019.

                                        */s/Shannon L. Hopkins*
                                        Shannon L. Hopkins

13