UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JONATHAN TAN, individually and on behalf of all others similarly situated,

                Plaintiff,

    -against-


NIO INC., BIN LI, and LOUIS T. HSIEH,

                Defendants.
------------------------------------------------------------------X
MARKUS JEON, individually and on behalf of all others similarly situated,

                Plaintiff,

    -against-


NIO INC., BIN "WILLIAM" LI, and LOUIS T. HSIEH A/K/A TUNG-JUNG HSIEH,

                Defendants.
------------------------------------------------------------------X
MARK SIDOLI, individually and on behalf of all others similarly situated,

                Plaintiff,

    -against-


NIO INC., BIN "WILLIAM" LI, and LOUIS T. HSIEH A/K/A TUNG-JUNG HSIEH,

                Defendants.
------------------------------------------------------------------X



**MEMORANDUM & ORDER**

19-CV-1424 (NGG) (VMS)

19-CV-3212 (NGG) (VMS)

19-CV-3188 (NGG) (VMS)

NICHOLAS G. GARAUFIS, United States District Judge.

    Plaintiffs filed putative class actions under the Private Securities Litigation Reform Act ("PSLRA") alleging, *inter alia*, that Defendants misled investors regarding the manufacturing

1

capabilities of Defendant NIO Inc. ("NIO"), a Chinese corporation that sells electric vehicles ("EVs"), as well as regarding the anticipated effect of a reduction in Chinese government subsidies to EV purchasers on the company's profitability in violation of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, as well as Rule 10b-5 promulgated thereunder.[1]

Now before the court are competing motions by Gary Leung, Stephen Pandur, David Ge, Erik De La Cruz, and Mario Castorena (collectively, the "NIO Investor Group") on the one hand, and Mark Mundy on the other, to consolidate these actions under Federal Rule of Civil Procedure 42(a), to appoint a lead plaintiff under 15 U.S.C. § 78u-4(a)(3)(B), and to appoint class counsel under Federal Rule of Civil Procedure 23. (*See* Mot. to Appoint NIO Inv'r Grp. Lead Pl. ("NIO Mot.") (Dkt. 17); Mem in Supp. of NIO Mot. ("NIO Mem.") (Dkt. 18); Mundy Mem. in Opp. to NIO Mot. ("NIO Opp.") (Dkt. 33); Reply in Supp. of NIO Mot. ("NIO Reply") (Dkt. 38); Mot. to Appoint Mark Mundy Lead Pl. ("Mundy Mot.") (Dkt. 19); Mem. in Supp. of Mundy Mot. ("Mundy Mem.") (Dkt. 21); NIO Inv'r Grp. Mem. in Opp. to Mundy Mot. ("Mundy Opp.") (Dkt. 32); Reply in Supp. of Mundy Mot. ("Mundy Reply") (Dkt. 37); Joint Letter Mot. to Consolidate Add'l Actions (Dkt. 43).) Mundy also seeks leave to file a sur-reply, which the NIO Investor Group opposes. (*See* Mundy Mot. for Leave to File Sur-Reply (Dkt. 40); Mundy Proposed Sur-Reply (Dkt. 40-1); NIO Inv'r Grp. Obj. to Proposed Sur-Reply (Dkt. 41).)

For the reasons that follow, the actions are consolidated, Mundy's motion for appointment as lead plaintiff and to appoint The Rosen Law Firm as class counsel is GRANTED, and the NIO Investor Group's motion for appointment as lead plaintiff and to appoint Levi & Korsinsky LLP and Bragar Eagel & Squire, P.C. jointly as class counsel is DENIED. As the

---

[1] A fourth action was filed but voluntarily dismissed before this decision was issued. *See* Not. of Voluntary Dismissal, *Tarapara v. NIO, Inc.*, No. 19-cv-2777 (NGG) (E.D.N.Y. Feb. 3, 2020), ECF No. 6.

court reaches this disposition without considering the arguments raised in Mundy's proposed sur-reply, his motion for leave to file that document is DENIED AS MOOT.

## I. FACTUAL BACKGROUND

The following factual summary is synthesized from the complaints in these actions, the allegations of which the court accepts as true for the purpose of resolving these motions.

NIO is a Chinese company that purportedly designs, manufactures, and sells luxury electric vehicles in China, the U.S., Germany, and the U.K. Li is NIO's CEO and the Chairman of its Board of Directors; Hsieh is the company's CFO.

In September 2018, NIO filed a Form F-1/A Registration Statement with the Securities and Exchange Commission (the "SEC") to coincide with its initial public offering on the New York Stock Exchange. In the Registration Statement, NIO claimed to be developing its own manufacturing facility in Shanghai, which it anticipated opening by the end of 2020. NIO explained that the Shanghai facility would permit it to expand its manufacturing capabilities for existing and future EV models. During a November 2018 earnings call, Li explained to investors that anticipated reductions in Chinese government subsidies to EV purchasers would not have an impact on the company's bottom line because the company's sales price already factored in the subsidy reduction. In a January 10, 2019 press release, NIO declared that it had delivered over 11,348 units of its flagship ES8 model EV in 2018, over 3,000 of which had been delivered in December 2018. On a January 30, 2019 call with investors (as reported by UBS), NIO again reassured investors that the reduction in subsidies would have a minimal impact on NIO as compared to mass-market EV manufacturers because the company's customers were generally less price sensitive than the average consumers. NIO further boasted that the increased ES8 deliveries in 2018 had yielded strong demand for both the ES8 as well as the company's ES6 model, which was scheduled to launch in June 2019. Finally, in a February 24, 2019 appearance

3

on *60 Minutes*, Li indicated that the company was ramping up production of EVs. Throughout this period, the price of NIO shares, on balance, increased.

Less than two weeks after Li's *60 Minutes* appearance, on March 5, 2019, NIO released its fourth-quarter earnings report in which it disclosed, *inter alia*, that: (1) it was terminating its agreement with the Shanghai government to build its own plant and would instead continue to contract with JAC, a lesser-known Chinese manufacturer, to build its vehicles; (2) its ES8 deliveries had declined from over 3,000 vehicles in December 2018 to 1,805 vehicles in January 2019 and 811 vehicles in February 2019; (3) this decline was primarily caused by decreased demand driven by the anticipated reduction in subsidies; and (4) the company expected the reduced demand to continue at least through the following quarter. In the two days following this announcement, NIO shares lost over 30% of their value.

## II. PROCEDURAL HISTORY

Tan filed the first of four actions against NIO on March 12, 2019 in this court. Later that same day, Sidoli filed his complaint against the Defendants in the Northern District of California. On March 29, 2019 Jeon filed his complaint against the Defendants in the Northern District of California. Finally, Babulal Tarapara filed his complaint against the Defendants before Judge Korman in this district on May 10, 2019. On May 22, 2019, Judge William Orrick of the Northern District of California granted unopposed motions to transfer the *Sidoli* and *Jeon* actions to this district, and both actions were transferred on May 30, 2019. On September 9, 2019, the *Sidoli*, *Jeon*, and *Tarapara* actions were reassigned to this court. Tarapara voluntarily dismissed his complaint under Federal Rule of Civil Procedure 41(a)(1) on February 3, 2020.

Briefing on motions to consolidate the actions and for appointment as lead plaintiff was completed in the first-filed *Tan* action on May 22, 2019.[2] Although six individuals or groups of individuals initially sought appointment as lead plaintiff, four of the six withdrew from contention by filing notices of non-opposition. Three initial movants indicated non-opposition to the appointment of Mundy as lead plaintiff, and one indicated non-opposition to the appointment of the NIO Investor Group as lead plaintiff.

On August 2, 2019, by joint letter, Mundy and the NIO Investor Group moved the court to consolidate the *Jeon* and *Sidoli* actions (in addition to the then-pending *Tarapara* action) with the *Tan* action.

## III. MOTIONS TO CONSOLIDATE

"Consolidation of cases is appropriate where actions before the court involve a common question of law or fact." *Khunt v. Alibaba Grp. Holding, Ltd.*, 102 F. Supp. 3d 523, 530 (S.D.N.Y. 2015) (citation and internal quotation marks omitted); *see also* Fed. R. Civ. Pro. 42(a).

Consolidation of these matters is unopposed and, in any event, warranted. Although the allegations in the *Tan*, *Sidoli*, and *Jeon* complaints vary to some degree in terms of the level of detail they provide, the complaints all assert the same claims arising out of largely the same alleged misrepresentations made over the same time period. Accordingly, all the actions are hereby consolidated for all purposes under the caption "*In re NIO, Inc. Securities Litigation*." All filings shall be maintained as one file under docket number 19-cv-1424.

## IV. MOTIONS TO APPOINT LEAD PLAINTIFF

The PSLRA directs the court to appoint a lead plaintiff "[a]s soon as practicable" after making a determination as to whether to consolidate multiple actions. *See* 15 U.S.C. § 78u-

---

[2] Because the *Jeon* and *Sidoli* actions had not yet been transferred, none of the initial motions to consolidate included those actions.

4(a)(3)(B)(ii). Having determined that the actions shall be consolidated, the court accordingly now turns to the issue of appointment of lead plaintiff.

For the following reasons, the court declines to aggregate the NIO Investor Group's losses and accordingly appoints Mundy, who suffered the largest individual loss, lead plaintiff.

### A. Legal Standard

The PSLRA creates a rebuttable presumption that the "most adequate plaintiff" is the "person or group of persons" that: (1) either filed the complaint or moved to be appointed as lead plaintiff; (2) has the largest financial interest in the action; and (3) otherwise satisfies the requirements of Federal Rule of Civil Procedure 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc). Of these, the second prong (financial interest) is generally considered the "pivotal factor under the PLSRA." *Reimer v. Ambac Fin. Grp., Inc.*, No. 08-cv-411 (NRB), 2008 WL 2073931, at *2 (S.D.N.Y. May 8, 2009). Further, at this stage, satisfaction of the third prong requires only that the movant "make a preliminary showing that it will satisfy the typicality and adequacy requirements of Rule 23." *Clark v. Barrick Gold Corp.*, No. 13-cv-3851 (RPP), 2013 WL 5300698, at *2 (S.D.N.Y. Sept. 20, 2013) (quoting *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173 (S.D.N.Y. 2010)).

Once a prospective lead plaintiff has discharged this initial burden, a competing movant may rebut it only by evidence that the prospective lead plaintiff either will not fairly and adequately protect the interests of the class or is subject to unique defenses not applicable to other class members. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb).

While the language of the PSLRA permits a "group of persons" to be appointed as lead plaintiff, it is a long-standing rule in this and other circuits that "pastiche plaintiffs whose grouping appears to be solely the product of the litigation" are generally not suitable to serve as lead plaintiff. *Khunt*, 102 F. Supp. 3d at 532. This is because "[o]ne of the principal legislative

purposes of the PSLRA was to prevent lawyer-driven litigation ... [and, as such,] [t]o allow lawyers to designate unrelated plaintiffs as a 'group' ... would allow and encourage lawyers to direct the litigation." *In re Donnkenny Inc. Secs. Litig.*, 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997) (citations omitted); *see also, e.g., Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 262-63 (S.D.N.Y. 2019).

Where a group of investors seeks appointment as lead plaintiff "[t]he overarching concern is whether the related members of the group can function cohesively and effectively manage the litigation apart from their lawyers." *Int'l Union of Operating Engineers Local No. 478 Pension Fund v. FXCM, Inc.*, No. 15-cv-3599 (KMW), 2015 WL 7018024, at * 2 (S.D.N.Y. Nov. 12, 2015). In determining whether a proposed group will function in a sufficiently cohesive manner to permit its appointment as lead plaintiff, courts in this circuit consider: "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008).

**B.  Discussion**

　　1.　Financial Interest

While ordinarily the court would begin with a determination of which of the two aspiring lead plaintiffs "has the largest financial interest," that issue does not appear to be disputed. The NIO Investor Group concedes that, under the metrics generally relied upon by courts in this circuit,[3] Mundy has the largest financial interest of any individual (*see* NIO Reply at 3); likewise, Mundy implicitly concedes that the NIO Investor Group has the largest financial interest if its

---

[3] *i.e.* the *Lax/Olsten* factors, derived from *Lax v. First Merchants Acceptance Corp.*, No. 97-cv-2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) and *In re Olsten Corp. Secs. Litig.*, 3 F. Supp. 2d 286 (E.D.N.Y. 1998).

7

members are permitted to aggregate their losses (*see* NIO Opp. at 2). The court has also reviewed the supporting documentation the parties submitted substantiating their losses and cannot discern a basis to conclude otherwise.

As such, the only question that the court must resolve to determine which of the prospective lead plaintiffs has the greatest losses is whether the *Varghese* factors weigh in favor of permitting the NIO Investor Group to consolidate their losses. In short, they do not.

In support of their motion for appointment of lead plaintiff, the NIO Investor Group submitted a joint declaration setting forth the nature of their relationship with one another (and with their counsel) and their plans for the conduct of this litigation. (*See* Joint Decl. of NIO Investor Grp. ("Joint Decl.") (Dkt. 20-3).)[4] While the group appears to consist of reasonably sophisticated and experienced investors, the declaration is entirely silent as to any pre-litigation relationship that may have existed among them. The declaration refers to a group conference call that occurred on May 9, 2013 (Joint Decl. ¶ 12) (though it is unclear whether Mr. Castorena participated in the call), but there is no indication that any of group's members—who live in California, Florida, Maryland, Pennsylvania, and Hong Kong respectively—had communicated with one another prior to that. In other words, like many similar declarations that courts have found insufficient, "the Joint Declaration does not provide any information regarding how these apparent strangers from different states [and countries] found each other." *Takata v. Riot Blockchain*, No. 18-cv-2293 (FLW), 2018 WL 5801379, at *5 (D.N.J. Nov. 6, 2018) (quoting *Stires v. Eco Science Sols., Inc.*, No. 17-cv-3707, 2018 WL 5784817, at *15 (D.N.J. Feb. 13, 2018) (internal quotation marks omitted) (alterations adopted)).[5] While the lack of a pre-

---

[4] The NIO Investor Group submitted a second joint declaration (Dkt. 33-5) that adds no useful information. As such, the court disregards it.

[5] Moreover, the most rational inference to be drawn from the fact that each member (except Castorena) testified that they "contacted Levi & Korsinsky and [Bragar Eagel & Squire] to inquire about participating in the Actions . . .

litigation relationship is not always dispositive, when confronted with similar groups of plaintiffs, courts have not hesitated to decline their invitation to be treated as a unit. *Khunt*, 102 F. Supp. 3d at 533 (declining to appoint proposed group as lead plaintiff where they "effectively admit[ted] to having no pre-litigation relationship . . . [and] [t]heir only involvement in the litigation thus far appears to have been a single conference call.")

In the absence of a pre-litigation relationship, "courts have typically required that plaintiffs lacking such a relationship present a more compelling showing" that they will be able to work cohesively for the benefit of the class. *Jakobsen v. Aphria, Inc.*, No. 18-cv-11376 (GBD), 2019 WL 1522598, at *3 (S.D.N.Y. Mar. 27, 2019) (quoting *Elstein v. Net1 UEPS Techs., Inc.*, No. 14-cv-9100 (ER), 2014 WL 3687277, at *5 (S.D.N.Y. July 23, 2014)). The NIO Investor Group, however, fails to make such a showing. Indeed, the group's testimony about the members' involvement in the case thus far and their plans for cooperation moving forward (*see, e.g.*, Joint Decl. ¶¶ 16-19) represent little more than the type of "conclusory assurances" the courts have repeatedly rejected as inadequate. *See, e.g., Kniffin*, 379 F. Supp. 3d at 263 (S.D.N.Y. 2019) ("vague discussions of general communication protocols and status reports hashed out over preliminary conference calls . . . [and] boilerplate plans for cooperation" did not establish that proposed group would work effectively and cohesively as lead plaintiff) (citing *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191-92 (S.D.N.Y. 2011)); *see also Jakobsen*, 2019 WL 1522598, at *3 (same); *Nakamura v. BRF S.A.*, No. 18-cv-2213 (PKC), 2018 WL 3217412, at *3 (S.D.N.Y. July 2, 2018) (same); *Micholle v.*

---

[and] [t]hrough these discussions . . . learned of each other's interest in serving as [l]ead [p]laintiff," (Joint Decl. ¶ 11) is that the law firms introduced the members to one another after each inquired separately, which would also explain how two law firms came to be involved. Needless to say, this does not work in the NIO Investor Group's favor. *See, e.g., Kniffin* 379 F. Supp. 3d at 263 (S.D.N.Y. 2019) (declining to aggregate losses where, *inter alia*, the "groups [were] silent on whether they chose counsel or vice versa").

9

*Ophthotech Corp.*, No. 17-cv-210 (VSB), 2018 WL 1307285, at *8-9 (S.D.N.Y. Mar. 3, 2018) (same).[6]

Accordingly, the court declines to aggregate the NIO Investor Group's losses. Having done so, the court concludes that Mark Mundy has the largest financial interest.

2.  Rule 23

While Mundy has the largest financial interest, the PSLRA also demands that he satisfy the requirements of Rule 23 if he is to be appointed lead plaintiff. As previously discussed, the Rule 23 inquiry at this stage "need not be as complete as would be a similar determination for the purpose of class certification." *Micholle*, 2018 WL 1307285, at *6 (quoting *In re eSpeed, Inc. Secs. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005)). As such, at this point in the litigation, Mundy must only make a prima facie showing that he meets Rule 23's typicality and adequacy requirements. *See, e.g., Varghese*, 589 F. Supp. 2d at 397.

Mundy has succeeded in making this preliminary showing. His claims "appear to be typical because, like all members of the class, he alleges that he purchased [NIO] stock during the class period and suffered losses after it was discovered that [NIO's] misleading statements artificially inflated the stock price during that period." *Jakobsen*, 2019 WL 1522598, at *5 (citing *eSpeed*, 232 F.R.D. at 102). Likewise, given his significant losses, Mundy "clearly has a sufficient interest in the outcome of the case to ensure vigorous [advocacy]." *Kniffin*, 379 F. Supp. 3d at 265 (quoting *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 296 (S.D.N.Y. 2010)).

---

[6] As further evidence of the boilerplate nature of the Joint Declaration, the court notes that the NIO Investor Group's members have determined to resolve any disputes as to how to proceed by means of a majority vote and, "in the event of a deadlock," to present their views to a neutral arbitrator. (Joint Decl. ¶ 19.) Setting aside the fact that the side litigation contemplated by this provision would necessarily create inefficiencies in the prosecution of the action were the NIO Investor Group appointed lead plaintiff, it is unclear to the court how a group of five could conceivably "deadlock."

The NIO Investor Group's only meaningful argument that Mundy would not adequately represent the class centers around its assertion that Mundy has a prior felony conviction for bankruptcy fraud. (*See, e.g.*, Mundy Opp. at 14.) While a prior felony conviction, particularly one for fraud, might render a proposed lead plaintiff inadequate, it appears that Mundy does not actually have any such prior fraud conviction. Rather, his counsel inadvertently made the representation that he did have such a conviction in the *Sidoli* action, only to later correct the record in the *Sidoli* action and, after the NIO Investor Group raised the issue in its opposition papers, in this court. (*See* Mundy Not. of Errata (Dkt. 34).)

Accordingly, the court finds that Mundy satisfies the requirements of Rule 23 and is entitled to a presumption that he serve as lead plaintiff. Since no party has rebutted this presumption, the court appoints Mundy lead plaintiff.

## V.   MOTION TO APPOINT LEAD COUNSEL

Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). As such, "the [c]ourt should not disturb the lead plaintiff's choice of class counsel unless necessary to protect the interests of the class." *Khunt*, 102 F. Supp. 3d at 540 (citation and internal quotation marks omitted).

Mundy has selected The Rosen Law Firm as his counsel. While the firm, with its considerable experience as lead counsel in PSLRA actions generally (and against Chinese firms specifically), appears well qualified, the NIO Investor Group's counsel argues that certain errors in the Rosen firm's submissions suggest that it would not be able to adequately represent the class. (*See* NIO Reply at 9-10.) Though perhaps an apt occasion to do so, the court will not use this opportunity to remind the NIO Investor Group's counsel of the familiar adage about those

who reside in glass houses; suffice it to say, the errors identified are not so concerning as to lead the court to conclude that The Rosen Law Firm is not qualified to serve as class counsel.

Accordingly, The Rosen Law Firm is appointed class counsel.

## VI. CONCLUSION

For the foregoing reason, Mark Mundy's (Dkt. 19) Motion to Consolidate Cases and for Appointment of Lead Plaintiff and Class Counsel is GRANTED, the NIO Investor Group's (Dkt. 17) Motion to Consolidate Cases and for Appointment of Lead Plaintiff and Class Counsel is DENIED, and Mark Mundy's Motion (Dkt. 40) for Leave to File a Sur-Reply is DENIED AS MOOT.

The actions are hereby consolidated for all purposes under the caption "*In re NIO, Inc. Securities Litigation.*" All filings shall be maintained as one file under docket number 19-cv-1424. Mark Mundy is appointed lead plaintiff and The Rosen Law Firm is appointed class counsel.

The parties are directed to contact the chambers of Magistrate Judge Vera Scanlon concerning the next steps in this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
March 3, 2020

NICHOLAS G. GARAUFIS
United States District Judge