UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
                         :    19-cv-1424 (NGG) (VMS)
                         :
*In re NIO, Inc. Securities Litigation*     :    **Oral Argument Requested**
                         :
                         :
------------------------------------------------------------- x

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS

| | |
|---|---|
| Scott D. Musoff | Scott Edelman |
| Robert A. Fumerton | Jed Schwartz |
| Michael C. Griffin | Micaela Manley |
| **SKADDEN, ARPS, SLATE,** | **MILBANK LLP** |
|   **MEAGHER & FLOM LLP** | 55 Hudson Yards |
| One Manhattan West | New York, NY 10001-2163 |
| New York, NY 10001 | Phone: (212) 530-5000 |
| Telephone:    (212) 735-3000 | |
| Facsimile:    (212) 735-2000 | |

*Attorneys for Defendants NIO Inc. and Padmasree Warrior*

*Attorneys for Defendants Morgan Stanley & Co. LLC, Goldman Sachs (Asia) L.L.C., J.P. Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Inc., Deutsche Bank Securities Inc., Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, UBS Securities LLC and WR Securities, LLC*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ............................................................................................................................. 2

I.    PLAINTIFFS FAIL TO ALLEGE ANY ACTIONABLE
      MISREPRESENTATION OR OMISSION........................................................................ 2

      A.    Plaintiffs Fail To Allege Any Misrepresentation
            About the Construction Of The Shanghai Facility ................................................. 2

            1.    Plaintiffs Fail to Allege That Construction Did Not Begin ...................... 2

            2.    Plaintiffs Fail to Allege Materiality ......................................................... 4

      B.    Plaintiffs Fail to Allege Any Actionable Omission Regarding
            the Risk That the Shanghai Facility Might Not Be Completed ............................. 6

II.   PLAINTIFFS' EXCHANGE ACT CLAIMS ALSO FAIL BECAUSE
      PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED SCIENTER ........................... 8

III.  NO CAUSAL CONNECTION EXISTS BETWEEN THE
      PURPORTED MISREPRESENTATIONS AND ANY ALLEGED LOSS ..................... 9

IV.   PLAINTIFFS HAVE NOT ALLEGED CONTROL PERSON LIABILITY.................. 10

CONCLUSION.......................................................................................................................... 10

# TABLE OF AUTHORITIES

## CASES

*Altayyar v. Etsy, Inc.*,
   242 F. Supp. 3d 161 (E.D.N.Y. 2017),
   *aff'd*, 731 F. App'x 35 (2d Cir. 2018)................................................................................7

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)................................................................................................10

*In re Avon Securities Litigation*,
   No. 19 CIV. 01420 (CM), 2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019) ..........................8

*ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009)................................................................................................5

*Emerson v. Mutual Fund Series Trust*,
   393 F. Supp. 3d 220 (E.D.N.Y. 2019) ..............................................................................10

*Frankfurt-Trust Investment Luxemburg AG v. United Technologies Corp.*,
   336 F. Supp. 3d 196 (S.D.N.Y. 2018),
   *aff'd sub nom. Kapitalforeningen Lægernes Invest v. United Technologies Corp.*, 779 F.
   App'x 69 (2d Cir. 2019) .....................................................................................................9

*Ganino v. Citizens Utilities Co.*,
   228 F.3d 154 (2d Cir. 2000)................................................................................................5

*Indiana Public Retirement System v. SAIC, Inc.*,
   818 F.3d 85 (2d Cir. 2016)..................................................................................................6

*In re Innocoll Holdings Public Ltd. Co. Securities Litigation*,
   No. CV 17-341, 2020 WL 1479128 (E.D. Pa. Mar. 25, 2020)...........................................8

*Levine v. AtriCure, Inc.*,
   508 F. Supp. 2d 268 (S.D.N.Y. 2007)................................................................................9

*Levitin v. PaineWebber, Inc.*,
   159 F.3d 698 (2d Cir. 1998)................................................................................................6

*Lindsay v. Morgan Stanley (In re Morgan Stanley Information Fund Securities Litigation)*, 592
   F.3d 347 (2d Cir. 2010)......................................................................................................5

*Litwin v. Blackstone Group, L.P.*,
   634 F.3d 706 (2d Cir. 2011)................................................................................................5

*In re Merrill Lynch & Co. Research Reports Securities Litigation*,
   272 F. Supp. 2d 243 (S.D.N.Y. 2003)................................................................................9

*Meyer v. Jinkosolar Holdings Co.*,
    761 F.3d 245 (2d Cir. 2014)...................................................................................8

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)...................................................................................4

*In re Omnicom Group, Inc. Securities Litigation*,
    541 F. Supp. 2d 546 (S.D.N.Y. 2008)
    *aff'd*, 597 F.3d 501 (2d Cir. 2010) ......................................................................6

*Panther Partners, Inc. v. Ikanos Communications, Inc.*,
    538 F. Supp. 2d 662 (S.D.N.Y. 2008),
    *aff'd*, 347 F. App'x 617 (2d Cir. 2009)...............................................................6

*Panther Partners Inc. v. Ikanos Communications, Inc.*,
    681 F.3d 114 (2d Cir. 2012)...................................................................................7

*S.E.C. v. Constantin*,
    939 F. Supp. 2d 288 (S.D.N.Y. 2013)...................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)................................................................................................8

*In re UBS AG Securities Litigation*,
    No. 07 CIV. 11225 RJS, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012),
    *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d
    173 (2d Cir. 2014).................................................................................................3

Defendants respectfully submit this Reply Memorandum of Law in further support of their Joint Motion to Dismiss the Second Amended Class Action Complaint.[1]

## PRELIMINARY STATEMENT

The Complaint fails to identify any misrepresentation or actionable omission in NIO's Offering Documents.  First, the Opposition concedes that NIO's statement that construction of the Shanghai Facility was underway should not be interpreted on the basis of technical permitting rules, but construed in its ordinary plain meaning, as an investor would.  Under this standard advocated by Plaintiffs, the facts alleged in the Complaint confirm that there was no misstatement and foreclose Plaintiffs' inference that construction had not begun.  Moreover, because the Opposition acknowledges that no investor would have relied on the challenged statements in assessing the risk that the Shanghai Facility might not be completed, Plaintiffs concede that such statements were immaterial as a matter of law.

Second, NIO was under no duty to disclose that a downward trend in sales might cause the Company to terminate construction of the Shanghai Facility.  As Plaintiffs acknowledge, even if there was such a "trend," it did not materialize and was unknowable to NIO until four months *after* the IPO.  Even so, NIO did disclose this *risk* explicitly.  Plaintiffs quibble with the disclosures such as "capital expenditures will be significantly affected by user demand for our products," because the disclosure does not explicitly state that one of those capital expenditures is the multi-hundred million-dollar Shanghai Facility construction project.  But it is obvious to any reasonable investor that if demand for NIO's product changed, NIO as a rational company would reconsider one of its most significant capital expenditures.

---

[1]   References to Defendants' Motion to Dismiss are set forth as "Br. __"; references to Plaintiffs' Opposition are set forth as "Opp. __"; and references to the Complaint are set forth as "SAC ¶ __." Defined terms have the same meanings ascribed to them in the Motion to Dismiss.  Unless otherwise indicated, internal quotation marks and citations are omitted, and all emphases are added.

Finally, the Opposition confirms Plaintiffs' failure to (i) allege scienter, loss causation, and control person liability by regurgitating the Complaint's deficient claim that NIO's senior executives "must have known;" (ii) allege loss causation by clinging to the inconsequential distinction between negative causation and loss causation; and (iii) allege that the Individual Defendants controlled or culpably participated in the alleged violations.

## ARGUMENT

### I.   PLAINTIFFS FAIL TO ALLEGE ANY ACTIONABLE MISREPRESENTATION OR OMISSION

#### A.   Plaintiffs Fail To Allege Any Misrepresentation About the Construction Of The Shanghai Facility

##### 1.   Plaintiffs Fail to Allege That Construction Did Not Begin

The Opposition confirms that reasonable investors could not have been misled by NIO's statement that the Shanghai Facility "is currently being constructed by relevant Shanghai authorities" and similar statements. (Ex. A at 32.) Plaintiffs concede that investors do not read this statement through the prism of esoteric permitting rules or municipal approvals. Rather, Plaintiffs' position is that a "reasonable investor would have read [these] statements to mean that there were boots on the ground and workers had begun constructing the Shanghai Facility." (Opp. at 8.) To survive dismissal, Plaintiffs had to plead facts to show that this was false.[2] Not only does the Complaint fail to do so, it precludes any such inference.

The Complaint demonstrates that prior to the IPO, Shanghai authorities conducted work that would have required, in Plaintiffs' own words, "boots on the ground." (Opp. at 8.) As early

---

[2]   The Opposition wrongly asserts that Plaintiffs' Securities Act claims do not sound in fraud and are therefore subject only to Rule 8(a)'s notice-pleading standard. (Opp. at 6, 15.) However, Plaintiffs' nominal disclaimers of fraud do not change the fact that Plaintiffs based both their Securities Act and Exchange Act claims on the same allegedly fraudulent conduct. (*See* Br. at 9–10.) All of Plaintiffs' claims are subject to the heightened pleading requirements of Rule 9(b). (*Id.*)

2

as January 2018—eight months before the IPO—the Shanghai government announced its intention "to advance vigorously the construction of the project within the shortest time at the fastest speed." (Ex. C at 1.)  It is undisputed that this commitment was followed by action.  Days later, authorities announced the selection of a construction site, which clearly would have required "boots on the ground" before the site was picked.  (Ex. B at 1; *see* SAC ¶ 145.)  And critically, in May 2018, authorities completed an environmental assessment that necessarily would have required on-site testing and investigation to ascertain the project's impact on the land and surrounding environment (*e.g.*, testing the site's load-bearing capacity through trial piling).[3]  (SAC ¶ 84; Br. at 14.)  These facts render implausible Plaintiffs' claim that there were no workers on site or "boots on the ground" by the September 2018 IPO.  (Opp. at 8.)

Unable to grapple with the plain language definition of "construction," the Opposition retreats to the unsupported view that the absence of a construction permit and environmental approval must mean that no construction had begun.[4]  (Opp. at 7–8.)  But the Offering Documents never said that all permits had been obtained.  To the contrary, they disclosed that "some of the construction projects being carried out by us, are undergoing necessary approval procedures as required by law."[5]  (Ex. A at 32.)  Nor are these permits, as the Opening Brief explains and the

---

[3]   Plaintiffs do not dispute that such steps necessarily took place, and thus "concede[] [these points] through silence." *In re UBS AG Sec. Litig.*, No. 07 Civ. 11225(RJS), 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014).  Nor can they credibly argue that an environmental assessment could have been completed without bringing workers and equipment on site to assess the impact of the proposed structure on the environment.

[4]   Contrary to the Opposition, Defendants did not "proffer[] an unreasonably expansive definition of construction." (Opp. at 8.)  Rather, the Opening Brief states that "construction" was used "in its ordinary, plain English sense" (Br. at 15), which is consistent with Plaintiffs' view that "construction" "mean[s] that there were boots on the ground and workers had begun constructing." (Opp. at 8.)  Plaintiffs' cases, therefore, are of no help to them, because it is *Plaintiffs*, not Defendants, who attempt to "challenge the reader's critical wits" by implanting technical permitting requirements into the term "construction." (Opp. at 9 (quoting *Freudenberg v. E*Trade Fin. Corp.,* 712 F. Supp. 2d 171, 180 (S.D.N.Y. 2010).)

[5]   Plaintiffs erroneously state, without citation, that "Defendants concede that no construction planning permit or environmental impact approval was ever issued for the Shanghai Facility." (Opp. at 8.)  This is incorrect.

Opposition does not dispute, a prerequisite to the commencement of *all* types of construction work. (Br. at 13–14.)

FE1's allegations further support dismissal.  The Complaint itself states that "the Shanghai government would construct the building," and that NIO would separately outfit the building once it was completed.  (SAC ¶ 64 n.5.)  Although the Complaint alleges that FE1 was directly involved in the latter process (which Plaintiffs have given the hairsplitting term "construction-*planning*" to distinguish it from plain "construction" (Opp. at 9)), it contains *no* allegations that FE1 was in contact with Shanghai authorities or was otherwise involved in or knew about any actual "construction" work as Plaintiffs would define it.[6]  (*See* SAC ¶ 87.)  Plaintiffs thus fail to allege facts "to support the probability" that FE1 was in a position to know that "construction never began."  *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000); (SAC ¶ 89.)  If anything, the FE1 allegations only highlight the contradictory nature of Plaintiffs' claims.  If there had not been "boots on the ground"—Plaintiffs' criterion for when "construction began"—FE1 could not possibly have overseen "the *installation* of facilities and equipment *at . . . the Shanghai Facility*." (SAC ¶¶ 87–88.)  Plaintiffs do not allege that such equipment was capable of installing itself.

### 2.      Plaintiffs Fail to Allege Materiality

Dismissal is also appropriate because Plaintiffs fail to allege materiality.  Plaintiffs argue that the status of construction was material because if the parties had "less stake in the project . . . there would be significantly more risk of the project falling through."  (Opp. at 11.)  Even at the pleading stage, dismissal on the basis of materiality is appropriate if the alleged misstatement is

---

Defendants argued that even accepting Plaintiffs' allegations as true—as one must on a motion to dismiss— Plaintiffs had nonetheless failed to state a claim.  (Br. at 13–14.)

[6]    Similarly, FE3 is not alleged to have direct knowledge of construction of the building, and the Opposition abandons any reference to FE2, effectively conceding that FE2 was not in a position to know about construction. (Opp. at 10 & n.6; SAC ¶¶ 90–91.)  *UBS*, 2012 WL 4471265, at *11.

"so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance. " *ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009).  Here, the Opposition admits that any "reasonable investor would expect [that] any construction project" could experience unforeseen delays or termination, effectively conceding that no reasonable investor would rely upon the statement as a guarantee that the project would be completed.  (Opp. at 13.)  Because the Opposition confirms the immateriality of the statement, dismissal is required.  *See ECA*, 553 F.3d at 206 (affirming dismissal of securities complaint on the basis of materiality where "a reasonable investor would not depend on [the statement] as a guarantee").[7]

The statements are particularly immaterial in light of the total mix of information available to investors: (i) Shanghai authorities contractually agreed to construct the Shanghai Facility; (ii) the government publicly announced it would "advance vigorously the construction of the project within the shortest time at the fastest speed;" (iii) authorities completed an environmental assessment requiring on-site testing and investigation; (iv) NIO negotiated contracts with suppliers; and (v) NIO entered into contracts to secure financing.  (SAC ¶¶ 64 n.5, 84, 88; Ex. A at 94, 137; Ex. C.)  An investor weighing the risks associated with the Shanghai Facility thus had sufficient information to ascertain whether NIO and the Shanghai government had a significant stake in the project.  Nor does the fact that construction was ultimately terminated indicate that

---

[7]   The cases on which Plaintiffs rely are inapposite.  (Opp. at 11.)  *See Lindsay v. Morgan Stanley (In re Morgan Stanley Info. Fund Sec. Litig.)*, 592 F.3d 347, 360 (2d Cir. 2010) (affirming dismissal of complaint on other grounds, as "[t]he district court did not rely on materiality in its decision"); *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 166 (2d Cir. 2000) (declining to consider materiality of accounting methods, even where plaintiffs alleged favorable income projections were "due *entirely*" to improper accounting); *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 719 (2d Cir. 2011) (dismissal on the basis of materiality was inappropriate given defendants' statutory duty to disclose the omitted information).

NIO's statements were misleading.[8]  *In re Omnicom Grp., Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 552 (S.D.N.Y. 2008) ("A decision to reverse course, particularly in a dynamic business environment, does not imply that the earlier business strategy was a subterfuge."), *aff'd*, 597 F.3d 501 (2d Cir. 2010).

### B.    Plaintiffs Fail to Allege Any Actionable Omission Regarding the Risk That the Shanghai Facility Might Not Be Completed

Plaintiffs' second claim that NIO failed to disclose "that subpar sales or cash flow problems could jeopardize construction of the Shanghai Facility" also fails as a matter of law.  (Opp. at 12.)

First, the Opposition confirms that NIO had no duty to disclose the alleged trend because Plaintiffs admit that any such "trend" did not begin until *four months after the IPO*.  (Opp. at 14.) "Defendants are not expected to know the un-knowable, nor are they expected to disclose it." *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 670 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x 617 (2d Cir. 2009); *Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 95 (2d Cir. 2016) (companies must "disclose only those trends, events, or uncertainties that it actually knows of when it files the relevant report").  This alone defeats Plaintiffs' claim.[9]

Second, NIO *did* disclose the risk Plaintiffs allege was omitted—namely, that "*NIO may itself* choose to terminate the Shanghai Facility for financial reasons."  (Opp. at 13 (emphasis in

---

[8]    Plaintiffs fail to allege any facts to support their baseless claim that NIO's decision to terminate construction was troubling to investors, or was otherwise an unreasonable business decision. (SAC ¶ 57.)  In fact, documents referenced by the Complaint indicate that numerous analysts viewed the decision as "positive" given the potential return on invested capital. (Ex. L at 2; Ex. G at 11.)

[9]    Plaintiffs' claim that NIO "knew" of the generalized risk faced by all companies that "future sales may not meet expectations" also fails.  (Opp. at 14.)  First, as Plaintiffs admit, NIO *did* disclose this risk (*id.*), despite having no duty to disclose information "so basic that any investor could be expected to know it." *Levitin v. PaineWebber, Inc.*, 159 F.3d 698, 702 (2d Cir. 1998).  Second, Plaintiffs do not allege a single fact demonstrating that that NIO knew, at the time of the IPO, how a hypothetical sales drop might impact its future decisions, let alone whether it might "jeopardize the Shanghai Facility."  (Opp. at 14.)  Once again, Plaintiffs' "attempt to allege liability for disclosures not made because the material fact was unknowable or had not even occurred as of the critical date" constitutes impermissible "backwards pleading," and must be dismissed.  *Panther Partners*, 538 F. Supp. 2d at 673.

6

original).)  As an initial matter, the Complaint does not allege any facts demonstrating that the ultimate decision to terminate construction of the Shanghai Facility was NIO's alone to make.  In fact, the opposite is true.  (Ex. F at 7 (announcing that NIO "agreed in principle *with [its] contractual counterparties* to terminate the plan").)  In any case, as explained in the Opening Brief, NIO did warn of this precise risk.  (Br. at 17–19.)  Contrary to Plaintiffs' mischaracterization, NIO's disclosures were not "boilerplate" or "generic."  (Opp. at 14.)  When the "challenged statements [are] interpreted in the context of the Prospectus as a whole," *Altayyar v. Etsy, Inc.*, 242 F. Supp. 3d 161, 176 (E.D.N.Y. 2017), *aff'd*, 731 F. App'x 35 (2d Cir. 2018), it is clear that NIO's disclosures were sufficient to warn of the specific harm alleged:

> ***[W]e also expect to require significant capital and incur substantial costs in setting up, equipping and improving our future manufacturing plant in Shanghai, which could potentially face cost overruns. . . .*** We expect that our level of capital expenditures will be significantly affected by user demand for our products and services. . . . ***If we are unable to raise sufficient funds, we will have to significantly reduce our spending, delay or cancel our planned activities*** or substantially change our corporate structure. We might not be able to obtain any funding, and we might not have sufficient resources to conduct our business as projected, both of which could mean that we would be forced to curtail or discontinue our operations." (Ex. A at 26–27.)

Any reasonable investor would have understood that the Shanghai Facility was among the "capital expenditures" that might be canceled due to cash shortages or decreased demand for products. (*Id.* at 26.)  "In context, the challenged statements are not misleading, and it is only by ignoring the Prospectus's clear . . . language that the plaintiffs can say that they are." *Altayyar*, 242 F. Supp. 3d at 176.  Because these disclosures were sufficient to warn that NIO might decide to terminate construction of the Shanghai Facility for financial reasons, Plaintiffs' second claim should be dismissed.[10]

---

[10]   The cases on which Plaintiffs rely are readily distinguishable (Opp. at 14), not only because NIO warned of the *specific* risk Plaintiffs claim was omitted, but also because Plaintiffs do not allege that NIO omitted information that was *known* to the Company at the time of the IPO.  *See Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 681

7

## II.   PLAINTIFFS' EXCHANGE ACT CLAIMS ALSO FAIL BECAUSE PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED SCIENTER

Plaintiff's Exchange Act claims independently fail because the Complaint does not allege particularized facts giving rise to a strong inference of scienter.  Despite their reliance on *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, (Opp. at 17), Plaintiffs disregard its principal holding: "[T]he inference of scienter must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other explanations."  551 U.S. 308, 324 (2007).

Instead of offering a cogent and compelling inference of scienter, the Opposition simply asserts that "[i]t is not credible that NIO's senior executives were unaware of the status of the Shanghai Facility's construction."  (Opp. at 18.)  The Complaint alleges no facts suggesting the Individual Defendants did not have the "assurance that construction of the Shanghai Facility was progressing in a satisfactory manner."  (SAC ¶ 142.)  The Complaint also states the "Individual Defendants were, at the very least, reckless in telling investors that construction of the Shanghai Facility was underway *if* they did not verify that construction had actually commenced."  (SAC ¶ 143.)  Yet, Plaintiffs have failed to allege any facts to show that the Individual Defendants did not, in fact, conduct such verifications.  Beyond *ipse dixit* assertions and speculative hypotheticals, Plaintiffs have alleged nothing regarding what the Individual Defendants did or did not know about the status of construction.  As made clear in the Opening Brief, these allegations are insufficient and do not give rise to a more compelling inference than the more plausible explanation that Defendants believed construction was underway.  (Br. at 23–24.)[11]

---

F.3d 114, 117 (2d Cir. 2012) (generic warning of potential product defects failed to apprise investors of quality issues known to defendant); *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 251 (2d Cir. 2014) (generic warnings about regulatory obligations failed to warn about then-ongoing violations that were known to defendant).

[11]   The cases Plaintiffs cite are easily distinguishable.  *In re Innocoll Holdings Pub. Ltd. Co. Sec. Litig.*, No. CV 17-341, 2020 WL 1479128, at *9 (E.D. Pa. Mar. 25, 2020) (addressing motive of individual defendants); *In re Avon Sec. Litig.*, No. 19 CIV. 01420 (CM), 2019 WL 6115349, at *21 (S.D.N.Y. Nov. 18, 2019) (involving conduct

### III.   NO CAUSAL CONNECTION EXISTS BETWEEN THE PURPORTED MISREPRESENTATIONS AND ANY ALLEGED LOSS

All of Plaintiffs' claims also fail because there is no causal connection between the alleged misrepresentations and any loss.  The only corrective disclosure the Complaint identifies is NIO's March 6, 2019 announcement of Q4 2018 and FY 2018 financial results (SAC ¶ 11), which neither corrected any misstatement nor revealed any previously hidden information.  Moreover, the announcement regarding termination of the Shanghai Facility was mixed with various other disclosures that impacted the price of NIO ADSs, including a greater-than-anticipated slowdown in vehicle deliveries and a 5.2% decrease in gross margin.  (*See* Ex. F.)  While analysts attributed an excessive ADS price correction to "cautious 1Q 2019 guidance and potential market doubts on NIO's product demand," they viewed the termination of the Shanghai Facility as positive and "a more flexible option with potentially lower capex outlay for the company in the next few years." (Ex. L.)

The Opposition ignores these inconvenient facts and instead seizes on the inconsequential distinction between negative causation and loss causation.  (Opp. at 20-21.)  However, the absence of a causal link is fatal to Plaintiffs' claims whether considered as an affirmative defense of negative causation or as a failure to plead loss causation.  Indeed, Plaintiffs' own cases recognize that "[a]llowing a defendant to file a Rule 12(b)(6) motion asserting negative causation is merely an application of the general rule that an 'affirmative defense may be raised by a pre-answer motion to dismiss.'"  *Levine v. AtriCure, Inc.*, 508 F. Supp. 2d 268, 273 n.4 (S.D.N.Y. 2007); *In re Merrill*

---

where the only plausible inference would be fraud); *Frankfurt-Tr. Inv. Lux. AG v. United Techs. Corp.*, 336 F. Supp. 3d 196, 229, 231 (S.D.N.Y. 2018) (dismissing all securities fraud claims based on opinion statements), *aff'd sub nom. Kapitalforeningen Lægernes Invest v. United Techs. Corp.*, 779 F. App'x 69 (2d Cir. 2019); *S.E.C. v. Constantin*, 939 F. Supp. 2d 288, 309 (S.D.N.Y. 2013) (conduct alleged included broker-dealers including false information in "manufactured account statements" prepared for clients).  Plaintiffs cite no cases where a court rejected a more plausible, non-fraudulent explanation in favor of the type of unsupported, conclusory allegations made here.

*Lynch & Co. Rsch. Repts. Sec. Litig.*, 272 F. Supp. 2d 243, 261–262 (S.D.N.Y. 2003) (dismissing Section 11 claim where plaintiff failed to allege causal link between purported misrepresentation and alleged loss).  Because the Complaint itself makes clear that other operations and financial matters unrelated to the Shanghai Facility were the news that the market greeted negatively, the absence of loss causation independently requires the dismissal of Plaintiffs' claims.

## IV.   PLAINTIFFS HAVE NOT ALLEGED CONTROL PERSON LIABILITY

Because Plaintiffs failed to plead primary liability, their claims for control person liability under Section 15 and Section 20(a) also fail.  (Br. at 25.)  The Opposition's  irrelevant disquisition on the law in other Circuits cannot obscure the fact that the Complaint fails to allege that the Individual Defendants *controlled* or *culpably participated* in the alleged violations "beyond their positions of control and authority as senior officers."  (SAC ¶ 166.)  The law in this Circuit is clear that such "boilerplate allegations that a party controlled another based on officer or director status are insufficient." *Emerson v. Mut. Fund Series Tr.*, 393 F. Supp. 3d 220, 260 (E.D.N.Y. 2019); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) (Section 20(a) requires pleading each "defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud").  Hence, the Section 15 and Section 20(a) claims should also be dismissed.[12]

## CONCLUSION

For these reasons, the SAC should be dismissed in its entirety with prejudice.

---

[12]   The mere fact Individual Defendants signed the Registration Statement is likewise insufficient to give rise to control-person liability.  *See Emerson*, 393 F. Supp. 3d at 259–60 (dismissing a Section 15 claim where the defendants had signed the registration statement at issue).

Dated: New York, New York
        December 4, 2020

  /s/ Robert A. Fumerton
     Scott D. Musoff
     (scott.musoff@skadden.com)
     Robert A. Fumerton
     (robert.fumerton@skadden.com)
     Michael C. Griffin
     (michael.griffin@skadden.com)
     **SKADDEN, ARPS, SLATE,**
      **MEAGHER & FLOM LLP**
     One Manhattan West
     New York, NY 10001
     Telephone:   (212) 735-3000
     Facsimile:   (212) 735-2000

*Attorneys for Defendants NIO Inc. and Padmasree Warrior*

  /s/ Scott Edelman
     Scott Edelman
     (sedelman@milbank.com)
     Jed Schwartz
     (jschwartz@milbank.com)
     Micaela Manley
     (mmanley@milbank.com)
     **MILBANK LLP**
     55 Hudson Yards
     New York, NY 10001-2163
     Phone: (212) 530-5000

*Attorneys for Defendants Morgan Stanley & Co. LLC, Goldman Sachs (Asia) L.L.C., J.P. Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Inc., Deutsche Bank Securities Inc., Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, UBS Securities LLC and WR Securities, LLC*