1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

---------------------------------------x

In re:                                    19 CV 1424 (NGG)

    NIO, INC. SECURITIES LITIGATION    U.S. Courthouse
                                       Brooklyn, New York
---------------------------------------x
                                       September 2, 2020
                                       2:30 p.m.


        Transcript of Civil Cause for Premotion Conference

Before:      HONORABLE NICHOLAS G. GARAUFIS,
                         District Court Judge


                         APPEARANCES

Attorney for Plaintiff:
THE ROSEN LAW FIRM, P.A.
275 Madison Avenue
New York, New York 10016
BY:  LAURENCE M. ROSEN, ESQ.
     YU SHI, ESQ.

Attorney for Defendant:
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
BY:  ROBERT A. FUMERTON, ESQ.
     CAITLYN CHELEDEN, ESQ.

MILBANK LLP
55 Hudson Yards
New York, New York 10001
BY:  JED M. SCHWARTZ, ESQ.
     MICAELA MANLEY, ESQ.

Official Court Reporter:
MICHELE NARDONE, CSR
Email:  Mishrpr@aol.com

Proceedings recorded by mechanical stenography.  Transcript
produced by computer-aided transcription.


MICHELE NARDONE, CSR -- Official Court Reporter

2

NIO, Inc. Securities Litigation

(Via videoconference.)

THE CLERK:  Civil cause for premotion conference.

Beginning with the plaintiffs, please state your appearances.

MR. ROSEN:  Good afternoon, Your Honor.  This is Laurence Rosen on behalf of the lead plaintiff in the class.

THE COURT:  Good afternoon, Mr. Rosen.

MR. SHI:  Good afternoon, Your Honor.  This is Yu Shi, from The Rosen Law Firm, for the plaintiffs.

THE COURT:  Yes.  Good afternoon, sir.

MR. FUMERTON:  Good afternoon, Your Honor.  Robert Fumerton and Caitlyn Cheleden, from Skadden Arps, for NIO.

THE COURT:  Good afternoon, sir, and good afternoon, ma'am.

MS. CHELEDEN:  Good afternoon.

MR. SCHWARTZ:  Good afternoon, Your Honor.  Jed Schwartz, from Milbank LLP, for the underwriter defendants. I'm joined by my colleague on the phone, Micaela Manley.

THE COURT:  Good afternoon to all of you.  All right.

This is a premotion conference.  The defense wishes to make a motion.  Mr. Rosen -- well, Mr. Musoff, is it?

MR. FUMERTON:  No.  Robert Fumerton, Your Honor, for NIO.

THE COURT:  Oh, I'm sorry.  Mr. Fumerton, yes.  You want to lead off here?

MICHELE NARDONE, CSR -- Official Court Reporter

3

NIO, Inc. Securities Litigation

MR. FUMERTON:  Sure.  Robert Fumerton, Skadden Arps, for NIO.

Judge, as set forth in our premotion letter, we believe that the amended complaint fails, as a matter of law, for at least three reasons.  First and foremost -- judge, can you still hear me?

THE COURT:  I certainly can.

MR. FUMERTON:  Thanks.  My screen just froze.

First and foremost, plaintiffs fail to allege any misstatement or omission, much less a material misstatement. Plaintiffs offer two theories of misstatement in the company's offering documents.  Both concern the Shanghai manufacturing facility that was being constructed by the Shanghai government and was to be leased by the company for manufacturing purposes.

The first theory is that NIO falsely stated that the facility was under construction, when plaintiffs claim it was not.  The second theory is that the company failed to warn investors that the construction of the facility depended on NIO having sufficient cash flow and sales.  So I will address briefly both in turn.

Your Honor, the first theory fails because plaintiffs haven't alleged any facts demonstrating that construction had not in fact begun as of the date of the September 2018 IPO. Plaintiffs rely entirely on two anonymous, purported former employees, who plaintiffs claim said that construction never

MICHELE NARDONE, CSR -- Official Court Reporter

NIO, Inc. Securities Litigation

4

started; but, as a matter of well-settled law in this circuit, for allegations from confidential witnesses to support a claim for securities fraud, plaintiffs must allege specific facts demonstrating the probability that these witnesses would actually possess the information attributed to them.

Here, plaintiffs claim that one of the confidential witnesses was, quote, in a senior sales position. They claim the other was a, quote, car design engineer; but neither, judge, is alleged to have been involved in any way in the planning or the construction of the Shanghai facility. Neither of them has had any discussion with management or firsthand information concerning the construction of the facility.

For example, plaintiffs do not allege that either witness actually went to the proposed construction site and observed that construction had not begun. The only thing plaintiffs point to in their letter, to try to bolster the car design engineer's position, is adding the fact that the car design engineer purportedly knew that an environmental assessment had already been completed for the Shanghai facility. That fact doesn't support at all an inference that he knew, if he knew, whether construction had actually begun; and, judge, we would submit that the fact that environmental assessment was completed supports, not negates, the inference that construction was underway.

The only other basis, judge, that plaintiffs claim or

MICHELE NARDONE, CSR -- Official Court Reporter

5

NIO, Inc. Securities Litigation

point to for asserting that construction never began is that more than a year after the project was terminated they could not locate a construction permit for the project on the Shanghai government's website.  Again, this was a facility to be constructed by the Shanghai government and to be leased by NIO.

The complaint doesn't allege any facts showing that a permit was required, much less that one would still be available more than a year after termination of the project. Plaintiffs allege nowhere in the complaint that where, as here, the government authorities are responsible for a construction -- we are not talking about construction by a private party -- that a permit is even required.  Plaintiffs don't allege the government's website keeps permits for projects that have been terminated for more than a year.

So we would submit, judge, that there are simply no well-pled facts demonstrating that construction had not in fact begun on this facility after the date of the IPO.

And, judge, just briefly, as to the issue of materiality, again, the only allegation, the only allegation of false statement is that the company stated construction had begun when plaintiffs claim it hadn't begun.  Whether construction had begun or was merely imminent or being planned, we would submit, would not significantly alter the total mix of information to investors; and there are certainly no facts in

MICHELE NARDONE, CSR -- Official Court Reporter

6

NIO, Inc. Securities Litigation

the complaint to demonstrate that requisite materiality.

Plaintiffs don't claim the company never intended to complete construction of this facility at the time of the IPO. In fact, as I just mentioned, they allege that an environmental assessment was completed. So certainly the project was underway.

Your Honor, turning to the second and remaining theory of misstatement, this theory of misstatement concerns NIO's post-IPO decision not to move forward with the completion of the facility. Plaintiffs claim that the offering documents failed to disclose that subpar sales or cash flow issues could lead to NIO terminating the construction of the facility. But, judge, if you look at the offering documents, they expressly state that construction might not be completed on time or at all. The offering documents specifically warn that construction may not be completed at all.

NIO had no duty in the offering documents to disclose all of the particular reasons why the project may or may not be completed on time or at all. And, moreover, judge, plaintiffs don't allege any facts in the complaint demonstrating that it was sales or cash flow issues that were the reason NIO terminated the completion of this facility.

The complaint itself alleges the reason. The complaint itself alleges that when NIO announced the termination, the company explained that the reason it was

MICHELE NARDONE, CSR -- Official Court Reporter

7

NIO, Inc. Securities Litigation

terminating was that there was a new regulatory policy directive that encouraged the type of partnership that NIO had used in the past, one with a third-party, JAC Motors, for the manufacturing of its cars.

So judge, we think that's the simplest and most straightforward basis that this complaint fails as a matter of law. Plaintiffs don't allege an actionable material misstatement or omission.

We also think that plaintiffs claims, The Exchange Act claims, fail for lack of scienter. Plaintiffs don't even attempt to plead any type of motive or opportunity.

Their allegations simply amount to the boilerplate, the executive must have known about these alleged misstatements given their positions. There are myriad cases in this circuit that have held that that's not sufficient to plead scienter.

And we also think plaintiffs fail to allege loss causation. Plaintiffs simply point to a negative earnings announcement, which coincided with an announcement of the facility -- completion of the facility was being terminated. They don't allege any facts demonstrating that the resulting stock price decline is attributable to the announcement of the facility being terminated as opposed to the negative earnings announcement.

So, judge, unless you have any questions, those are our anticipated bases for the motion.

MICHELE NARDONE, CSR -- Official Court Reporter

NIO, Inc. Securities Litigation

THE COURT:  All right.  Thank you.

Mr. Schwartz, do you have anything to add?

MR. SCHWARTZ:  Yes, Your Honor, just very briefly.

And, for the court reporter, Jed Schwartz of Milbank.

In addition to all of the arguments you just heard, the Section 1282 claim, which is asserted specifically against the underwriters, fails because the plaintiffs don't have standing to assert the claim.  The case law is clear that in order to have standing a plaintiff must have purchased in the offering, not in a secondary private transaction in the aftermarket, and the certifications that are incorporated by reference and attached to the complaint make clear that these plaintiffs purchased in the aftermarket.

The responsive letter doesn't really address that issue.  It addresses a different issue, which is:  Do the plaintiffs need to identify the particular underwriter from whom they purchased?  But we don't even get there, because they --

(Pause.)

THE COURT:  Could you just repeat what you just said?

MR. ROSEN:  Sure.  The responsive letter from plaintiffs addresses a separate issue, about whether plaintiffs need to plead a particular underwriter from whom they purchased; but we don't even get there because it's clear that they have not purchased from any underwriter.

MICHELE NARDONE, CSR -- Official Court Reporter

NIO, Inc. Securities Litigation

THE COURT:  Let me just ask this.

Mr. Rosen, basically what the defendants are saying, particularly the Defendant NIO defendant, is that you don't even get to discovery here because you fail to provide, in the complaint, sufficient detail and support for your claims.  I'm wondering how you address -- this is the amended complaint -- how you address the arguments that have been made by Mr. Fumerton.

MR. ROSEN:  Yes, Your Honor.  So these claims arise from a $1.1 billion IPO that NIO did in 2018.

Now, when they filed the registration statement, they told investors that they were planning to take 25 percent of that $1.1 billion, 276 million, and apply that to the construction and fitting out of a factory so that they could take control of the manufacturing of their vehicles.  Analysts and investors became very concerned because they had -- all the vehicles to date -- the current model being the ES8 at that time -- was being built by JAC Motors, a third-rate Chinese truck manufacturer.

So investors -- and they were trying -- NIO was trying to complete with Mercedes and Tesla electric vehicles; and analysts said how can this third-rate truck maker compete with a Mercedes or Tesla.  So NIO's response was, don't worry, we are building.  We have construction of the new factory in which we are going to take over the manufacturing of our

MICHELE NARDONE, CSR -- Official Court Reporter

NIO, Inc. Securities Litigation

electric vehicles to ensure that they are quality. So, that was a major consideration for investors when they invested in this IPO.

So that was untrue, and it was untrue because they had never begun construction, and this is corroborated by a number of sources. There are two -- excuse me -- one senior salesperson at NIO, who worked in the Shanghai office, which was just 15 miles from this supposed construction site, who said that there was only -- that construction, there was some planning done but never any construction begun. Number two, a second employee, a car design engineer, said that they had done an environmental assessment but they had never begun construction.

Now, the fact that the construction was being -- so, there are two aspects of construction. One is to build the shell of the factory. The other is to fit it out with the assembly line, the robotics, and all that. So in the prospectus, the company said that $650 million was necessary for NIO to spend to fit out the assembly line and get the manufacturing facilities ready to build cars.

So this was, you know, it wasn't just an investment by -- it wasn't just to see what Shanghai was building. It was the company investing $650 million. And this was very important to investors because this is what was going to make them competitive with Tesla and survive and thrive, and this

MICHELE NARDONE, CSR -- Official Court Reporter

NIO, Inc. Securities Litigation

was an important aspect.

In fact, in their registration statement they say -- they say that it's a, you know, one of the risks is -- one of the risks is that we don't currently manufacture our own cars and a lot of people are concerned that we are relying on JAC Motors for our cars.  So, the fix to that was this promised factory; and the factory was never under construction, and, you know, so that's a major -- so what's the motive?  Mr. Fumerton said there is no motive for them to lie about this?

Well, they were completing a $1.1 billion IPO, and that's a major motive; and they say, well, there is no evidence that construction hadn't begun, but the Shanghai government website does not have any construction permit.  And they say -- and this is pure speculation -- they say, well, maybe government projects don't require -- maybe government projects don't require permits.

Well, that's obviously incorrect.  We allege in our complaint that Tesla, their permit for their factory in Shanghai is available online; and the Tesla factory was built by Shanghai municipal government.  So that puts to rest that -- in addition, we found numerous other government projects that were available on the government website in Shanghai.

NIO points to the fact that there was another Shanghai government website that listed another government project on the same plot of land.  So, therefore, I'm not sure

MICHELE NARDONE, CSR -- Official Court Reporter

NIO, Inc. Securities Litigation

why they mention that, but all that shows is, yes, government projects are listed on the website.

And the fact that -- so this tract of land has got six -- each tract of land has got six square miles, six square miles. So the fact that another company could also have a factory on one of the six-square-mile plots doesn't mean that -- this has nothing to do with NIO. So that was a distraction. I'm not sure why the defense raises it.

But the point is -- the point is, the government projects are required to have permits. The law requires it, and those government projects are available on the website.

Number two, even though an environmental assessment was completed, it was never approved. If the government -- and, I think, the defense, in their premotion letter raises this. There is a government website that lists all the environmental assessments that are approved, and this is not -- the NIO site has never been approved.

So construction could never begin because the environmental assessment was never approved. In order to get approval, they have to give public notice, and the public gets a right to comment on it and then the Shanghai government votes on it, approves it or declines it. Here it was never acted on. So that's another reason -- and then never approved. So that's further evidence that the construction could never have begun.

So there are four or five different sources that

MICHELE NARDONE, CSR -- Official Court Reporter

NIO, Inc. Securities Litigation

corroborate the fact that construction was never underway.

THE COURT:  Well, I think one of the arguments being made is that the two anonymous former NIO employees' statements would not be sufficient to meet the requirements of the securities laws to go forward with this lawsuit.

How do you deal with that argument?

MR. ROSEN:  Well, I think the case law on this --

THE COURT:  Right.  The case law is the question.

MR. ROSEN:  Yes.  And I -- my understanding of the case law, Your Honor, is that we just have to plead that these individuals, being in the position they were in, are in the -- in the type of position in which they would have, its reasonable to believe that they could have or would have come into contact with that information, would have had access to that information.

Now, this is the first manufacturing plant for NIO that's being built.  It's 25 percent of the IPO proceeds.  It's a major milestone for this company.  Major milestone, to do their own manufacturing.

And the car design engineer obviously has to be involved in this.  The salesperson is going to be involved, because they are telling their sales channels, hey, don't worry, we are going to have our own manufacturing plant.  The car design engineer, I mean, the assembly line has to coordinate with the design team.

14
NIO, Inc. Securities Litigation

So this is, you know, this is not a secret, when they are building this plant.  Right?  And the fact it never even -- construction never came underway, it was never a secret to anyone; and it's totally reasonable for a person, car design engineer or senior salesperson, to have access to this information.

But, moreover, Your Honor, it's corroborating; and I think the case law also says that where these former employees' statements are corroborated by other reliable information, it gives further support and allows the court to consider as true these allegations.  The fact that the website doesn't have the permit when the Tesla permit was there and other government project permits were there, the fact that the environmental assessment was never approved and there is no -- on the environmental government website, you know, all shows that these allegations are accurate.  So they are fully corroborated.

THE COURT:  Well, even if the environmental assessment was approved, would that not be sufficient to show that they -- that NIO had the intention of constructing the project and that other extrinsic forces may have interfered with their ability to do so, whatever they might be, market forces or the availability of personnel or materials or some other factors that it could not control?

MR. ROSEN:  Well, Your Honor, perhaps I misspoke.

MICHELE NARDONE, CSR -- Official Court Reporter

NIO, Inc. Securities Litigation

What I meant to say is that the Shanghai government website for environmental approval does not list any application or approval for the NIO project.  And if it had been approved, it would be listed there, and it's not there.  So you have both government websites, one with no permit and one with no environmental approval.

THE COURT:  Mr. Fumerton, can you tell me where was NIO incorporated and headquartered?

I'm sorry.  You are on mute.

THE CLERK:  You are on mute.

MR. FUMERTON:  I'm sorry, judge.

It's headquartered in Shanghai and incorporated there.  The jurisdiction here is based on the ADS is freighted in New York.

THE COURT:  I see.  Is it currently in business building and selling cars with the assistance of another company?

MR. FUMERTON:  That's correct.

THE COURT:  Okay.  Let's go back to you, Mr. Rosen, on the question of the underwriter, the standing of your clients to sue the underwriters here?

MR. ROSEN:  Okay.  Yes, Your Honor.  Thank you for raising that.

There are two claims against the underwriters, Section 11, which is as a statutory defendant against the

MICHELE NARDONE, CSR -- Official Court Reporter

NIO, Inc. Securities Litigation

underwriters for false registration statement, and Section 12 for -- also for the registration statement. Section 12, unlike Section 11, requires privity of contract between the underwriter and one of the plaintiffs.

So, as I was preparing for the hearing, I realized that Mr. Schwartz was correct. Our plaintiffs did not purchase directly in the IPO and do not have privy with one of the underwriters. So, we would agree to dismiss the Section 12 claim; but the Section 11 claim against the underwriters and against NIO and the individual defendants remains intact.

THE COURT: So you are agreeable to dismissing the Section 11 claim?

MR. ROSEN: Just the 12 claim, Your Honor. The 11 claim remains intact.

THE COURT: I'm sorry, just the 12 claim.

MR. ROSEN: Yes, Your Honor.

THE COURT: All right. I take it the underwriter defendant has no objection to that.

MR. SCHWARTZ: That's correct, Your Honor.

THE COURT: So it's so ordered. The Section 12 claim is dismissed on consent of the parties, the relevant parties.

It would seem to me that we really do need to have full motion practice here. How much time do the -- have you discussed with each other the amount of time you need to submit a fully briefed motion to dismiss the claims against NIO and

MICHELE NARDONE, CSR -- Official Court Reporter

17

NIO, Inc. Securities Litigation

the remaining claim against the underwriters?

MR. FUMERTON:  Your Honor, Robert Fumerton for NIO.

We have not discussed this with plaintiffs, but defendants would be prepared to submit their opening brief within 30 days, if that's okay with Your Honor.

THE COURT:  That would be fine with me.

MR. ROSEN:  Your Honor, may I?

THE COURT:  Yes.

MR. ROSEN:  May I mention something?  This is Laurence Rosen.

THE COURT:  Always.

MR. ROSEN:  Thank you.

In researching some of the arguments that the defendants raised in their premotion letter, particularly some of these issues surrounding the Shanghai government website and the environmental assessment website and so on, some of the facts relevant to addressing the defendants' positions are not in the complaint.

Rather than seek judicial notice of them, what we would like to do is file an amended complaint that incorporates the information about the Shanghai website and other issues surrounding the premotion letter that the defendants wrote.  We ask to submit an amended complaint with those additional allegations, delete the Section 12 claim against the underwriters, because we have agreed to dismiss that.

MICHELE NARDONE, CSR -- Official Court Reporter

18

NIO, Inc. Securities Litigation

So if the court would allow us two weeks just to clean that up and submit an amended complaint, then, if defendants file a motion to dismiss 30 days later, we would be permitted -- we would be able to file our opposition 30 days after their motion to dismiss.

THE COURT: All right. Mr. Fumerton and Mr. Schwartz, do you have any objection to the plaintiffs filing a -- I think it's a second amended complaint. Is that right?

MR. ROSEN: Yes, Your Honor.

MR. FUMERTON: Yes.

THE COURT: Any objection?

MR. FUMERTON: Yeah. Your Honor, Robert Fumerton, on behalf of NIO.

I think if they are going to get what really is a third bite at the apple here, we would ask Your Honor that this be it, so if the complaint is dismissed the plaintiff not be given further leave to amend after that dismissal.

THE COURT: Well, I forgot to bring my crystal ball with me. So I think -- I think that the plaintiffs would be encouraged to include everything, and I would be reluctant -- let me put it this way -- to allow them the opportunity later on to further pursue the case; but I can't be sure that I would absolutely, without question, deny another application after we have had a full briefing and I have had the opportunity to

MICHELE NARDONE, CSR -- Official Court Reporter

NIO, Inc. Securities Litigation

review the law and run through everything.

But I understand your point. We don't want this process to go on forever; and I think your client has a right to have the plaintiffs include everything, to the best of their knowledge and ability at this point.

So while I'm not going to shut the door in advance to another round beyond the second amended complaint, I would look very much askance if the plaintiffs didn't do their job this time around because they know your position. You have made it clear. I think you have articulated it in a fashion that should not leave anything to anyone's imagination about your position and what it will be; and unless something arises in your papers that blows this whole thing out of the water with additional information and arguments that no one ever thought of before -- unless it's based on new case law that comes out next week in the Second Circuit or in the Supreme Court, for instance -- then, you know, I would strongly recommend to the plaintiffs that they include everything in the second amended complaint.

MR. FUMERTON: Yes.

THE COURT: So having said that, Mr. Schwartz, do you have anything to add? You have already -- half of your brief has already been disposed of.

MR. SCHWARTZ: No, Your Honor. On the basis that you just described, we would consent to move forward.

MICHELE NARDONE, CSR -- Official Court Reporter

NIO, Inc. Securities Litigation

THE COURT:  Okay.  So I'm going to set some dates now.

The second amended complaint should be filed and served by September 18, and then the defense motions by October 19, plaintiffs' response by the 20th of November.

And the reply, how long would you like for a reply?

MR. FUMERTON:  Your Honor, we would just recognize the Thanksgiving holiday.  So ordinarily we would only need a couple of weeks, but if we could have an extra week because of that, that would be great.

THE COURT:  How about the 4th of December?

MR. FUMERTON:  December 4?  Okay, Your Honor.

THE COURT:  All right.  If you have a problem, you know, let me know, but I think that will probably be enough time for everybody.  If you do, if anyone has a problem with meeting those deadlines, discuss this among yourselves; and, if you reach an agreement on extending anything, let me know.  If you don't reach an agreement, just send in your application and I will figure it out.  Okay?

MR. FUMERTON:  Yes, Your Honor.

MR. SCHWARTZ:  Yes, Your Honor.

THE COURT:  Is there anything else today from the plaintiffs?

MR. ROSEN:  Not from plaintiffs, Your Honor.

THE COURT:  From the defendants?

MICHELE NARDONE, CSR -- Official Court Reporter

21

NIO, Inc. Securities Litigation

MR. FUMERTON:  Nothing from defendants, Your Honor.

MR. SCHWARTZ:  No, Your Honor.

THE COURT:  All right.  Well, thank you, everybody. Stay safe and well.

And it's likely, after I read your submissions, that we will have an oral argument in this case; and we will schedule it once I have had a chance to review all of the submissions.  All right?

MR. ROSEN:  Yes, Your Honor.

THE COURT:  All right.  Thank you.

Have a good day.

(End of proceedings.)

o O o


Certified to be a true and accurate transcript.
/s/ Michele Nardone
MICHELE NARDONE, CSR -- Official Court Reporter


MICHELE NARDONE, CSR -- Official Court Reporter