SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST
NEW YORK, NY 10001
———
TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
(212) 735-3902
DIRECT FAX
(917) 777-3902
EMAIL ADDRESS
ROBERT.FUMERTON@SKADDEN.COM

October 7, 2021

**VIA ECF**

The Honorable Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       RE:    *In re NIO, Inc. Securities Litigation*, 19-cv-1424

Dear Judge Garaufis:

    We respectfully write to update the Court on the status of the related state court action, captioned *In re NIO Inc. Securities Litigation*, Index No. 653422/2019 (Sup. Ct. N.Y. Cnty.). On October 4, 2021, Justice Barry Ostrager issued the enclosed Decision and Order granting Defendants' motion to dismiss in its entirety.

                            Respectfully,

                            /s/ Robert A. Fumerton

                            Robert A. Fumerton

Encl.

cc:    All counsel of record (via ECF)

# SUPREME COURT OF THE STATE OF NEW YORK NEW YORK COUNTY

| PRESENT: | HON. BARRY R. OSTRAGER | PART | IAS MOTION 61EFM |
|---|---|---|---|
| | *Justice* | | |

-----------------------------------------------------------------X

In re NIO INC. SECURITIES LITIGATION

| INDEX NO. | 653422/19 |
|---|---|
| MOTION DATE | |
| MOTION SEQ. NO. | 008 |

**DECISION + ORDER ON MOTION**

-----------------------------------------------------------------X

HON. BARRY R. OSTRAGER

Before the Court is Motion 008 by Defendants NIO Inc., Puglisi & Associates, Donald Puglisi, Padmasree Warrior, Morgan Stanley & Co. LLC, Goldman Sachs (Asia) L.L.C., J.P. Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Inc., Deutsche Bank Securities Inc., Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, UBS Securities LLC and WR Securities, LLC (collectively, "Defendants") to dismiss the Consolidated Amended Class Action Complaint for Violations of the Securities Act of 1933 ('Complaint") (NYSCEF No. 134) pursuant to CPLR §§ 3211(a)(1) and (7) . The Court heard oral argument on Motion 008 via Microsoft Teams on September 30, 2021. In accordance with the proceedings and for the reasons stated on the record of September 30, 2021, the Court dismissed with prejudice all claims relating to the Chinese Government subsidy on electric vehicles. This decision and order addresses the balance of the claims in the Complaint.

## Background

This is a securities class action on behalf of all persons or entities who purchased the American Depositary Shares ("ADS") of NIO in and/or traceable to the Company's initial public offering on or about September 12, 2018 ("IPO"), seeking to pursue remedies under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "1933 Act").

NIO is an electric car company based in Shanghai, China. According to NIO, the Company specializes in developing and manufacturing premium electric vehicles ("EV"). As alleged in the Complaint, at the time of the IPO, NIO derived all of its revenue from sales of its first production model, the ES8, an EV sport utility vehicle, to consumers in China.

On September 11, 2018, the SEC declared NIO's Form F-1 registration statement effective, as amended, which incorporated a prospectus on Form 424B4 (the "Registration Statement"). Then, on September 12, 2018, NIO sold 184,000,000 ADS to the public in the IPO at a price of $6.26 per ADS and received net proceeds of approximately $1.095 billion therefrom. Following the IPO, NIO ADS were listed and traded on the New York Stock Exchange ("NYSE") under the symbol "NIO."

The Complaint alleges two categories of statements in the offering documents were materially misleading at the time they were made (1) statements regarding the quality of NIO's product – the EV8 and (2) statements regarding the Chinese Government's electric vehicle subsidy program.

The allegations falling under category (2) were dismissed with prejudice on the record of September 30, 2021. The allegations falling under category (1) are dismissed for the reasons set forth below, without prejudice to amendment by plaintiffs.

**Procedural History**

This action was commenced by Summons and Complaint on June 11, 2019 (NYSCEF Doc. No. 1). The action was subsequently stayed by this Court in favor of a related first-filed federal securities action (NYSCEF Doc. No. 86). Following the First Department's decision in *In re Qudian Sec. Lit*ig., 189 A.D.3d 449 (N.Y. App. Div. 2020), this Court lifted the stay and

restored the action to its docket on March 23, 2021 (NYSCEF Doc. No. 132). This action is based on allegations distinct from those raised in the federal court action.

**Legal Standards**

Defendants bring this motion to dismiss pursuant to CPLR 3211 (a)(1), based on a defense founded on documentary evidence and (a)(7) for failure to state a cause of action.

On a motion to dismiss pursuant to CPLR 3211, the court must afford the pleadings a liberal construction, accept the well-pleaded allegations as true, and determine whether the allegations fit within any cognizable legal theory. *See Leon v. Martinez*, 84 NY2d 83, 87-88 (1994).

The First Department has recently held that a complaint alleging violations of the 1933 Securities Act need only satisfy CPLR 3013's notice pleading standard, giving notice of the circumstances of the claims. *See Feinberg v Marathon Pat. Grp*., 193 A.D.3d 568, 570-71 (1st Dep't 2021) (notice pleading standard applies "when assessing the sufficiency of claims under section 11, section 12(a)(2), and section 15 of the Securities Act" rather than the heightened pleading standard applicable to fraud-based claims).

**Section 11 and 12 (a) (2) of the Securities Act**

Section 11 of the Securities Act of 1933 provides recourse to any person acquiring a security if "any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k. "The truth of a statement made in the registration statement is judged by the facts as they existed when the registration statement became effective." *In re Initial Pub. Offering Sec. Litig*., 358 F. Supp. 2d 189, 205 (S.D.N.Y. 2004). Section 12(a)(2) imposes liability under similar circumstances against

3

"a person who offers or sells a security . . . by means of a prospectus or oral communication" 15 U.S.C. § 77l(a)(2).

The Complaint alleges that the following statements (among others) in the Registration Statement were misleading:

- [The ES8] is equipped with our proprietary electric powertrain system, which is capable of accelerating from zero to 100 km per hour in 4.4 seconds and delivering a New European Driving Cycle, or NEDC, driving range of up to 355 km and a maximum range of up to 500 km in a single charge.

- Our ES8 is a 7-seater, all-wheel-drive SUV equipped with our in-house developed, 480kW dual motor powertrain system, consisting of high-performance e-drive system, high energy density battery pack and highly effective battery management system. The ES8 also uses an aerospace grade full-body aluminum architecture making it light weight.

- Our ES8 and other vehicles contain cutting edge technology, including our e-propulsion system which enables the ES8 to accelerate from zero to 100 kilometers per hour (kph) in just 4.4 seconds, all-aluminum alloy body and chassis, enabling high vehicle torsional stiffness and innovative luxury interior.

- The ES8 is the first car in China to have an all-aluminum alloy body and chassis featuring aerospace grade 7003 series aluminum alloy, enabling torsional stiffness of 44,140 Nm/Deg, and also features the highest amount of aluminum for any mass production car yet.

- We manufacture our powertrain, or e-propulsion system, our battery pack and engine driving system.

- We strongly emphasize quality management across all business functions including product development, manufacturing, supplier quality management, procurement, charging solutions, user experience, servicing and logistics.

Cmplt. ¶93.

Plaintiffs do not argue that any of the above statements were literally false, but rather argue that the above statements were materially misleading because NIO allegedly failed to disclose (1) that the ES8 was, and had been since at least June 2018 (pre-IPO), experiencing significant quality and design challenges and problems through and including the time of the IPO and (2) that the quality and design challenges and problems plaguing the ES8 had an amplified

4

Case 1:19-cv-01424-NGG-JRC   Document 88   Filed 10/07/21   Page 6 of 11 PageID #: 1729

negative impact on NIO's reputation due to the Company's positioning of the ES8 as a premium EV; and (3) as a result of the foregoing, Defendants lacked a reasonable basis for their positive statements about the Company and its prospects. Plaintiffs argue that the Registration Statement only discussed *potential* defects or problems with the ES8, thereby conveying that such defects or problems were not occurring at the time of the IPO.

According to the Complaint, certain NIO directors and NIO's Vice President of Vehicle Engineering attended several meetings during 2017 and the first half of 2018 that addressed numerous problems with the ES8, including electrical system defects. ¶73. These problems were documented in shared folders on the computer systems at NIO, including the minutes for the aforementioned meetings. ¶74. Further, it was known in the Chinese manufacturing plant used by NIO that the ES8 was experiencing battery problems, including batteries leaking, power loss, and other similar electrical system problems. ¶76.

While the Complaint alleges that on June 27, 2019, the Chinese Government forced NIO to recall 4,803 ES8s that were manufactured between April 2 and October 19, 2018, plaintiffs acknowledge that the recall does not serve as a basis to allege falsity of statements made in connection with the IPO months earlier. Plaintiffs argue that the recall only serves to demonstrate the severity of the alleged quality and design problems with the ES8.

Additionally, plaintiffs cite a statement by NIO CEO Defendant Bin Li made on March 6, 2019 (post-IPO) as evidence that NIO knew about "problems and challenges" with the ES8 at the time of the IPO. In response to a question from an analyst, Li stated:

> the ES8 is our first product. And from manufacturing to delivery, in terms of the readiness of supply chain, quality and software, we need to improve a lot. And for the past 6 months, we've experienced a lot of challenges. And some days we need to manufacture at least 100 or 200 cars and we need to deliver that many cars every day, and this is a huge pressure for us. And I guess to say we have

5

> overcome that period of time, and I – we appreciate our team for this great contribution.

Cmplt. ¶77.

The NIO Prospectus disclosed the following in the risk factors section:

> ***Our vehicles make use of lithium-ion battery cells, which have been observed to catch fire or vent smoke and flame.***
>
> The battery packs that we produce make use of lithium-ion cells. On rare occasions, lithium-ion cells can rapidly release the energy they contain by venting smoke and flames in a manner that can ignite nearby materials as well as other lithium-ion cells. *While we have designed the battery pack to passively contain any single cell's release of energy without spreading to neighboring cells, a field or testing failure of our vehicles or other battery packs that we produce could occur, which could subject us to lawsuits, product recalls, or redesign efforts, all of which would be time consuming and expensive.* Also, negative public perceptions regarding the suitability of lithium-ion cells for automotive applications or any future incident involving lithium-ion cells such as a vehicle or other fire, even if such incident does not involve our vehicles, could seriously harm our business. In addition, we store a significant number of lithium-ion cells at our facilities. Any mishandling of battery cells may cause disruption to the operation of our facilities. While we have implemented safety procedures related to the handling of the cells, a safety issue or fire related to the cells could disrupt our operations. Such damage or injury could lead to adverse publicity and potentially a safety recall. Moreover, any failure of a competitor's electric vehicle or energy storage product may cause indirect adverse publicity for us and our products. Such adverse publicity could negatively affect our brand and harm our business, prospects, financial condition and operating results.

NIOs Prospectus filed on Form 424(b)(4) (September 12, 2018 page 33 (NYSCEF Doc. 142)

(emphasis added).

> We have limited experience to date in high volume manufacturing of our electric vehicles. We cannot assure you that we will be able to develop efficient, automated, cost-efficient manufacturing capability and processes, and reliable sources of component supply that will enable us to meet the quality, price, engineering, design and production standards, as well as the production volumes required to successfully mass market the ES8 and future vehicles.

*Id.* at page 15.

> *Furthermore, our vehicles may contain defects in design and manufacture that may cause them not to perform as expected or that may require repair. We plan to deliver our vehicles with certain features of our NIO Pilot ADAS system initially disabled and plan to turn on additional features before the end of 2018. We cannot assure you that our NIO Pilot system will ultimately perform in line with*

6

>	*expectations. Our vehicles use a substantial amount of software code to operate and software products are inherently complex and often contain defects and errors when first introduced.* While we have performed extensive internal testing on our vehicles' software and hardware systems, we have a limited frame of reference by which to evaluate the long-term performance of our systems and vehicles. There can be no assurance that we will be able to detect and fix any defects in the vehicles prior to their sale to consumers. If any of our vehicles fail to perform as expected, we may need to delay deliveries, initiate product recalls and provide servicing or updates under warranty at our expense, which could adversely affect our brand in our target markets and could adversely affect our business, prospects and results of operations.

*Id.* at page 17 (emphasis added).

**Analysis**

To state a cause of action under either Section 11 or 12(a)(2), plaintiffs must allege that the offering documents contained either a material (1) misrepresentation, (2) omission in contravention of an affirmative legal disclosure obligation, or (3) omission of information necessary to prevent existing disclosures from being misleading. Here, plaintiffs contend that the above-quoted statements about the quality of the ES8 are accurate statements that were rendered misleading by NIO's alleged failure to disclose quality and design challenges.

Defendants argue that plaintiffs fail to allege any facts showing that there were problems or design challenges *at the time of the IPO*, which is the relevant consideration for determining whether there has been a Securities Act violation. In opposition, plaintiffs point to the internal NIO meetings in which design problems and challenges were allegedly discussed in 2017 and the first half of 2018 (pre-IPO). Defendants counter that the alleged problems and challenges may or may not have been resolved by the time of the IPO and that plaintiffs plead no facts to suggest that they were unresolved at the time of the IPO on September 11, 2018.

Moreover, defendants argue that NIO's generic statements regarding the "high energy density battery pack" and other qualities of the ES8 do not give rise to any duty to disclose the

7

everyday minutiae involved in developing a marketable EV. The Court agrees. *See Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001) ("Problems and difficulties" from daily work "[do] not make a lie out of any of the alleged false statements."). No reasonable investor would have found this information material, as it simply describes the normal quality control process for any electric car company. *See Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 673 (S.D.N.Y. 2008) (plaintiffs must allege "how much the defect experienced actually differed from the norm . . . especially . . . where, as here, the nature of the allegation is an exercise in 'backwards' pleading"), *aff'd*, 347 F. App'x 617 (2d Cir. 2009).

Critically, even taking plaintiffs' allegations as true as the Court must on a motion to dismiss, all statements about the quality of the ES8 (which appear limited to literally describing the components of the vehicle) are accompanied by the robust risk disclosure section. The above quoted risk factors section specifically and explicitly warns of the quality issues that plaintiffs suggest later materialized. Plaintiffs argue that the risk factors refer to future, potential risks, when allegedly NIO was *already* experiencing "quality and design" issues, but, as defendants argue, there are no facts pled in the Complaint to suggest that there were undisclosed problems with the ES8 at the time of the IPO.

The Court finds that the statements alleged in the Complaint as misrepresentations about the quality of the ES8 were not misleading, and that plaintiffs do not suggest any specific then-existing facts or circumstances that rendered the statements misleading at the time of the IPO.

Additionally, with respect to the final alleged misrepresentation that: "[w]e strongly emphasize quality management across all business functions including product development, manufacturing, supplier quality management, procurement, charging solutions, user experience, servicing and logistics[,]" this is a clear example of puffery and is too vague and general to be

8

actionable. *See In re Gen. Elec. Sec. Litig.*, No. 19CV1013 (DLC), 2020 WL 2306434, at 7 (S.D.N.Y. May 7, 2020) (citing *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 245 (2d Cir. 2016]) ("[p]uffery encompasses statements that are too general to cause a reasonable investor to rely upon them, and thus cannot have misled a reasonable investor. They are statements that lack the sort of definite positive projections that might require later correction"); *see e.g. Ong v. Chipotle Mexican Grill, Inc.,* 294 F. Supp. 3d 199, 232 (S.D.N.Y. 2018) ("the remainder of the statement—for instance, that Chipotle is "committed to serving safe, high quality food to [its] customers" and that its "food safety programs are also designed to ensure that [the Company] compl[ies] with applicable federal, state and local food safety regulations"—is inactionable puffery.) (quotations in original).

Accordingly, plaintiffs remaining claims under Sections 11 and 12 (a) (2) of the Securities Act of 1933 must be dismissed.

**Item 303 and Item 105**

Plaintiffs have likewise failed to demonstrate that defendants breached their independent duties under Item 303 and Item 105. Item 303 requires an issuer to "[d]escribe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material . . . impact on net sales or revenues or income from continuing operations." 17 C.F.R. § 229.303(a)(3)(ii). Item 105 requires "a discussion of the most significant factors that make an investment in the . . . offering speculative or risky" to be provided under the caption "Risk Factors." 17 C.F.R. § 229.105. As shown above, the NIO Prospectus contained a clear and robust Risk Factors section which explicitly discussed problems that could arise from the use of lithium-ion battery cells, including a warning that NIO would be subject to "lawsuits, product recalls, or redesign efforts."

### Section 15

Section 15 of the Securities Act of 1933 "creates liability for individuals or entities that 'control[ ] any person liable' under section 11 or 12". 15 U.S.C. § 77(o). *See In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358 (2d Cir. 2010). Because the Court has not found defendants liable under Section 11 or Section (12) (a)(2), the third cause of action for violation of Section 15 is dismissed as moot.

Accordingly, it is hereby

ORDERED that Defendants Motion to Dismiss the Consolidated Amended Class Action Complaint is granted; and it is further

ORDERED that plaintiffs' allegations regarding the Chinese Government electric vehicle subsidy are dismissed with prejudice, however plaintiffs' allegations regarding the quality of the EV8 are dismissed without prejudice to amendment, as plaintiff requested. Any motion to amend the Complaint must be made within 30 days. If no motion is efiled by November 5, 2021, the case will be marked disposed. A status conference is scheduled for November 1, 2021 at 10:00 am.

Dated: October 4, 2021

_____
BARRY R. OSTRAGER, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |