UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| *In re NIO, Inc. Securities Litigation* | Case No: 1:19-cv-01424-NGG-JRC |

**STIPULATION AND [PROPOSED] ORDER REGARDING THE PRODUCTION OF HARD-COPY DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

1. **PURPOSE**

Discovery requests and subpoenas served in the Action may call for the production of hard-copy documents and electronically stored information. Accordingly, the Parties hereby petition the Court to enter this stipulated order regarding the production of discovery material ("Order").

2. **DEFINITIONS**

2.1     Action: means the above-captioned action.

2.2     Document: has the broadest possible meaning ascribed to it in Federal Rule of Civil Procedure 34(a)(1)(A). The term "Document" shall include Hard-Copy Documents and ESI as defined herein.

2.3     Email: means electronic messages sent or received asynchronously via messaging applications, including, but not limited to, Microsoft Outlook, Google Gmail, Yahoo Mail, Lotus Notes, NetEase, QQ Mail, Sina Mail, or Sohu Mail.

2.4     Instant Messages: means real time communications sent via chat application, platform, or client or via SMS, XMPP, or any similar standard, including but not limited to Bloomberg Chat, Slack, Google Talk, Google Chat, Google Hangouts, Apple iMessage, WhatsApp, WeChat, QQ, Viber, Facebook Messenger, Microsoft Teams, Skype, Zoom, Discord,

Snapchat, Signal, Line, Telegram, AOL Instant Messenger, Huawei Cloud, Blackberry Messenger, ICQ, Pidgin, Audium, Trillian, or any proprietary Instant Messaging system.

2.5    ESI: an abbreviation of "electronically stored information," which has the broadest possible meaning ascribed to in Federal Rule of Civil Procedure 34(a)(1)(A).

2.6    Extracted Text: means text extracted from a Native Format file and includes at least all headers, footers, Document body information, and any hidden text, if available. The Extracted Text must not include text of characters that were not part of the text of the original Native Format file, including but limited to, Bates numbers and Endorsements (except in the cases of redactions as detailed in Section 4.4).

2.7    Hard-Copy Document: means Documents existing in paper form at the time of collection.

2.8    Hash Value: means the unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm, such as MD5 and SHA, applied to the characteristics of the data set.

2.9    Load File: means an electronic file that is used to import all required production information into a Document database, including, if available, Document images, Extracted Text or OCR text, Native Format files where required by this Order, and Metadata, as well as information indicating Document breaks, and Document relationships such as those between an Email or Instant Message and its attachments, and a Document and information related to embedded content.

2.10    Metadata: means (i) structured information about ESI that is created by the file system or application that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file, embedded in the Document or Email and sometimes

2

modified through ordinary business use; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system; (iii) information, such as Bates numbers, created during the course of processing Documents or ESI for production; and (iv) information collected during the course of collecting Documents or ESI, such as the name of the Media device on which it was stored, or the custodian or non-custodial data source from which it was collected.   Metadata of the ESI describes, *inter alia*, the characteristics, origins, usage, and validity of the collected ESI.

2.11    Native Format: means the format of ESI in the application in which such ESI was originally created.

2.12    OCR: means the optical character recognition technology used to read paper Documents or electronic images of Documents and output such Documents to a searchable text format.  The latter text is also referred to as the "OCR text" or simply "OCR."

2.13    Party: means any party to the Action, including all of its officers, directors, and employees.

2.14    Third-Party: means any other person or entity that is served a subpoena pursuant to Federal Rule of Civil Procedure 45.

2.15    Producing Party: means any Party or Third-Party in the Action that produces Documents.

2.16    Receiving Party: means a Party in the Action to whom Documents are produced.

2.17    ResponsiveDocument: means any Document that is responsive to any discovery request or subpoena served on the Producing Party in the Action and which the Producing Party has agreed or been ordered to produce, subject to the limitations set forth in the Federal Rules of

Civil Procedure and/or Court order.

2.18    Email Threading: means a single Email conversation that starts with an original Email (the beginning of the conversation), and includes all subsequent replies and forwards pertaining to that original Email.

2.19    Tagged Image File Format or TIFF: refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or paper Documents.

## 3.    SCOPE

The procedures and protocols set forth in this Order shall govern the production format of paper Documents and ESI in this Action, to the extent available.   This Order also governs procedures or criteria such as identification and preservation of potentially responsive data types and systems, custodian selection, and the use of keyword search terms. This Order has been agreed by the Parties at the outset of discovery and remains subject to modification by agreement of the Parties or by Court order. The Parties expect to continue to meet and confer regarding the topics addressed in this Order, and will cooperate in good faith on such matters.

### 3.1    Document and Data Sources

1.    Parties shall meet and confer and discuss non-custodial data sources which are likely to contain discoverable information.

2.    Sources of non-custodial Documents and ESI may include, but are not limited to: databases, file servers, storage area networks (SAN), network-attached storage (NAS), Email servers, instant messaging servers, web servers, on line data stores such as Dropbox, Box and Google Drive, on line Email systems such as Google Mail, Document management systems (DMS), record management systems (RMS), content management systems (CMS), departmental/project/collaborative/shared storage spaces, e-rooms, structured data stores,

application data, source code repositories, any cloud-based repository, social media and Hard-Copy Document repositories.

3.      Parties shall meet and confer and attempt in good faith to agree upon custodians reasonably tailored to capture relevant non-duplicative documents and ESI.

4.      Sources of custodial Documents and ESI may include, but are not limited to: Network Folders; Email; desktop hard drives; laptops; tablets and mobile devices including cell phones; removable storage media; on-line data storage such as Dropbox or Google Drive; social media; and physical files, including desks and desk drawers, file cabinets, storage boxes, and file rooms, where hard copy documents reside or may have resided during the relevant time period.

5.      After the Party's identification of custodial or non-custodial data sources, the Parties shall meet and confer and attempt in good faith to agree on any proposed limitations on the scope of discovery, including custodians, custodial and non-custodial sources, date ranges, file types, or any additional proposed method to cull documents for review (*i.e.*, search terms, technology-assisted-review, predictive coding), and any local law requirements that may apply to or restrict the review or production of potentially responsive Documents.

6.      The Parties reserve the right to request, at any time prior to the close of discovery, inclusion of additional custodians or non-custodial data sources, additional search terms, or an expansion of the relevant time period.  If a Party objects to the inclusion of such additional non-custodial or custodial sources, search terms, or time period expansion, the Parties will meet and confer to resolve the matter in good faith.  If the Parties cannot reach resolution, the Court will determine the matter.

### 3.2    Centralized Collections of Relevant Files

1.    The Parties will meet and confer to determine whether there are documents or categories of documents that are easily identifiable and segregable and likely to contain relevant documents or ESI (*e.g.*, ESI or hard copy file folders dedicated to a relevant topic) that can be collected without the use of search terms or other culling methodology.  Should such documents be available, the producing party will indicate which categories of documents will be produced with and without the use of search terms or other culling methodology.

### 3.3    Identification of Responsive Documents

1.    The Parties shall continue to meet and confer in an effort to conduct discovery in the most efficient and effective manner. Specifically, the Parties will attempt in good faith to come to an agreement on what constitutes responsive documents.

2.    The Parties agree to meet and confer over the use of search terms, date ranges, custodians and other parameters or methods to be used to cull data for review and production and to exchange search terms to the extent they intend to apply them to their respective ESI in an effort to reach agreement on them, including whether the use of certain hit reports and/or sampling would be reasonable and appropriate. Parties will disclose the platform which the search terms will be run on and provide metadata fields included in the search index that the terms are being run against.

3.    The Parties agree that the grounds for objections shall be supported by specific information. The Parties will not seek Court intervention without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

### 3.4    Re-Produced Documents

1.    The production specifications in this Order apply to Documents that are produced in the first instance in this Action.  To the extent any Party is required or agrees to re-produce

Documents in this Action that originally were produced by the Party or otherwise in other cases or government investigations, such Documents may be produced in the same format in which they originally were produced if the original production included substantially the same Metadata identified in this Order.  If such Documents originally were not produced with substantially the same Metadata identified in this Order, the Parties shall meet and confer to identify necessary additional fields and discuss an appropriate Metadata overlay or supplemental Metadata production for those Documents.  The Parties agree that this is not a request to produce the same electronically stored information or Documents in more than one form; rather, it is a process for identifying supplemental information that does not require reproduction of previously produced Documents.

2. Re-produced documents shall include their original Bates numbers, if any.

**4. PRODUCTION FORMAT**

4.1 <u>Format Guidelines</u>: The Parties shall, to the extent reasonably and technically possible, produce paper Documents and ESI according to the specifications provided in Exhibit A.

4.2 <u>De-Duplication</u>: A Party is only required to produce a single copy of a responsive Document. Each Party may remove exact duplicate Documents (*i.e.*, identical copies of the same Document), including but not limited to Email, to reduce the unnecessary cost of reviewing and producing exact duplicate Documents.  If a Party chooses to remove exact duplicate Documents, the Party shall make reasonable efforts to remove exact duplicate ESI according to the MD5/SHA-1 hashing method and shall identify all custodians of de-duplicated Documents in the Custodian field delimited by semicolons or in a MasterCustodian field delimited by semicolons (as set forth in Exhibit A).  Moreover, (a) de-duplication shall be performed only at the

Document family level[1] so that attachments are not de-duplicated against identical stand-alone versions of such Documents and vice versa, although each family member shall be hashed separately for purposes of populating the HashValue field in Exhibit A; (b) attachments to Emails, Instant Messages, or other Documents shall not be disassociated from the parent Email, Instant Message, or Document even if they are exact duplicates of another Document in the production, and (c) paper Documents shall not be eliminated as duplicates of responsive ESI. ESI that is not an exact duplicate according to the method specified in Exhibit A may not be removed. The Parties shall make reasonable efforts to reach agreement on any de-duplication criteria to be used.

4.3    Encryption: The Parties will make reasonable efforts to ensure that all encrypted or password-protected Documents are successfully processed for review and production under the requirements of this Order, and if produced in Native Format, the decrypted Document is produced. To the extent encrypted or password-protected Documents are successfully processed according to the requirements of this Order, the Parties have no duty to identify the prior encrypted status of such Documents but will produce the processed Document as a native overlay. If Documents are not successfully processed despite use of reasonable efforts, a placeholder TIFF image will be produced stating the file is password protected. Upon request from either Party, the Parties shall meet and confer in good faith regarding reasonable efforts or mechanisms to remove

---

[1] Unless otherwise agreed upon by the Parties, a family can only be removed through de-duplication if each and every member of the de-duplication candidate family has identical MD5/SHA-1 hashcodes to the corresponding members of another family. For example, if there is a two-member family with a parent and an attachment, the MD5 hashcodes of the parent must be identical and the MD5 hashcodes of the attachments must also be identical. If a Party de-duplicates globally, the Party shall identify the de-duplication priority order at the request of any other Party. To the extent any Party wishes to de-duplicate Emails in such a way as to eliminate earlier or incomplete chains of Email, the Parties shall confer in good faith about that request.

such security protection or the production of available Metadata.

4.4     Documents to Be Produced Natively: Microsoft Excel and other spreadsheet files, including comma or tab delimited text files, Microsoft Access and other database files, video files, audio files, and animation files shall be produced in Native Format. If a Document to be produced in Native Format contains privileged information, the Document will be produced by producing the Document in TIFF format with redactions and OCR text to remove the privileged material from the searchable text. If it is too burdensome to produce the redacted Document in TIFF format, the Producing Party retains the option to produce the redacted Document in Native Format provided that tools to redact Native documents are available. Each electronic file produced in Native Format shall be assigned a unique Document Number, as set forth in Section 4.10, and the database record for that file shall include a single page TIFF image branded with this unique Document Number in the lower right corner of the image as a Bates number, with the phrase "PRODUCED IN NATIVE FORMAT" (or similar language) branded in the center of the page. To protect the confidentiality of files produced in Native Format, any confidentiality designations pursuant to a protective order must appear on the associated TIFF placeholder in no less than 10-point font. Files produced in Native Format shall be given file names identical to the Document Number, followed by the file extension and include the confidentiality designation after the file number, e.g., NIO00000000_CONF.xlsx. For each file produced in Native Format, the Producing Party shall also indicate its native status in the Native File Metadata field described in Exhibit A. The Producing Party retains the option to produce ESI in alternative formats, which may include Native Format, or a combination of native and alternate formats if it would be burdensome to produce a particular file in TIFF.

4.5     Embedded Files: OLE embedded objects (embedded MS Office files, etc.) shall be

extracted as separate files and treated as attachments to the parent Document. Images embedded in Emails shall not be extracted and shall not be produced separately. The Document Number of the source file from which the embedded file was extracted shall be recorded in the "Embedded Source" metadata field. The Parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

4.6    Databases: Non-privileged raw data kept in enterprise databases (such as Oracle or SQL databases) that are maintained in the normal course of business will be produced in an electronic format. To the extent such databases exist, raw data from those types of databases will be produced in database or delimited text file format or as database reports. The Parties will discuss appropriate procedures and method of production prior to the production of any such enterprise database data.

4.7    Requests for Production of Documents in Native Format: Each Party reserves the right to request production of ESI, including previously produced ESI, in Native Format for any ESI that it believes is not adequately represented in the TIFF format specified in Exhibit A, and, upon a showing of reasonable need, such requests will not be denied. If the Parties are unable to agree as to the production of the requested Documents in Native Format, the Parties may submit the matter to the Court.

4.8    Attachments: The Parties agree that if any part of an Email or its attachments is responsive, the entire Email and attachments will be produced, except any attachments that must be withheld or redacted on the basis of privilege, immunity, or privacy laws.

4.9    Unitization and Scanning: In scanning paper Documents, each page of paper should be output to a single page TIFF file. In scanning paper Documents, Documents are to be produced as they are kept. Distinct, logical document breaks should be defined as such in a

10

standard Load File as described in Exhibit A. In the case of an organized compilation of separate Documents (*e.g.*, a binder containing several separate Documents behind numbered tabs) the Document behind each tab should be scanned separately, but any Document or family relationship among the scanned Documents in the compilation should be reflected in the data Load File at the appropriate standard fields. For Documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where practicable. Pages containing post-it notes or other detachable notes that obscure the underlying Document should be scanned once with the detachable note intact, and then again without it, and made part of the same Document. The Producing Party will use best efforts to unitize Documents correctly (*i.e.*, distinct Documents should not be merged into a single record, and a single Document should not be split into multiple records), and maintain Document relationships (*i.e.*, attachment status). Original Document orientation (*i.e.*, portrait v. landscape) should be maintained.

4.10    Document Numbers and Confidentiality Designations for TIFF Images: Each page of a Document produced in TIFF file format shall have a legible, unique fixed-length numeric identifier ("Document Number") containing at least ten (10) digits electronically "burned" onto the image in no less than 10-point font. Unless it would obscure, conceal, or interfere with any information originally appearing on the Document, the Document Number shall be burned on the lower right hand corner of the Document. Bates numbers and any confidentiality designation should not be included in the Extracted Text of ESI. Unless it would obscure, conceal or interfere with any information originally appearing on the Document, any confidentiality designation pursuant to a protective order filed with the Court in this Action will appear on the lower left hand side of each page of a Document produced, in no less than 10-point font. The Document Number for each Document shall be created so as to identify the Producing Party and the

11

Document Number (*e.g.*, "NIO000000"). There should not be an underscore or dash between the prefix and the Document Number. Each Party's Document numbering scheme shall use the unique identifying name agreed upon by the Parties.

4.11 <u>Metadata Fields and Processing</u>: Each of the Metadata and coding fields set forth in Exhibit A that can reasonably and technically be extracted or generated from a Document shall be produced for that Document. The Parties are not obligated to populate any of the fields in Exhibit A manually if such fields cannot be extracted or generated from a Document and its context in the source data, with the exception of the following fields, if available: (a) BegBates; (b) EndBates; (c) BegAttach; (d) EndAttach; (e) Custodian; (f) Redacted (Y/N); (g) Confidentiality; and (h) HashValue.[2] Metadata shall be provided in a Concordance-format delimited file with a .DAT file extension and ASCII 020 and 254 delimiters for column break and text qualifier. The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each Document. The Parties also agree that every production of previously unproduced Documents with a Concordance-format delimited file with a .DAT file extension shall contain all of the Metadata field headers from Exhibit A and that the Metadata field values for each Metadata field header will be mapped to the same Metadata field source, unless otherwise agreed in writing. For redacted items which were originally ESI, all Metadata fields will be provided and will include all non-privileged non-redacted data. Redacted Documents shall be identified as such in the Load File provided with the production. Nothing herein shall require a Producing Party to create or produce Metadata that does not exist, cannot be generated by ESI processing software, or is not reasonably or technically accessible. If the Producing Party is unable to produce Metadata for a particular field or ESI Document, it will provide an explanation of that

---

[2] In the case of Documents that were scanned from paper, the HashValue field is not required.

inability with its Document production.  The Parties shall then meet and confer to attempt to resolve the problems.

4.12    Production Media: The Producing Party shall produce Document images, Native Format files, load files, and Metadata on hard drives, CDs, DVDs, secure FTP, or other mutually agreeable media ("Production Media").  Each piece of Production Media shall include a unique identifying label corresponding to the identity of the Producing Party, the date of the production of Documents on the Production Media, and the Document Number ranges of the Documents in that production (e.g., "NIO Production November 1, 2021, NIO000123-NIO000456").  To the extent that the Production Media includes any confidential information protected under any protective order filed with the Court, the label on such Production Media shall indicate that the Production Media includes information so designated as required under the terms of any protective order entered in this Action.  Production Media shall include text referencing the case name and number.  Further, any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Document Number range that is being replaced.  All Production Media that is capable of write protection should be write-protected before production.  All Production Media may be encrypted, with the Producing Party to provide a decryption key at the time of production.  Productions should be accompanied by a cover letter identifying the custodians whose files are present in the production, if applicable, or otherwise describing the source(s) of the Documents present in the production.

4.13    Original Documents: Nothing in this Order shall eliminate or alter any Party's obligation to retain original and Native Format copies of Documents, including associated Metadata, of all ESI preserved for and produced in the litigation and/or original versions of all Hard Copy Documents preserved for and produced in the litigation.  Nothing in this section alters

13

a Party's obligation to retain data pursuant to the Federal Rules of Civil Procedure and/or Court Order.

4.14   Color: Paper Documents or redacted ESI that contain color necessary to decipher the meaning, context, or content of the Document or ESI shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. A Receiving Party may request that any document be reproduced in this color format if reasonably necessary to decipher the meaning, context, or content of the Document or ESI, which request shall not be unreasonably denied by the Producing Party.

4.15   Lost, Destroyed, or Irretrievable ESI: If a Producing Party learns that responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not occurring in the ordinary course of business, the Producing Party shall comply with its obligations under the Federal Rules of Civil Procedure to explain where and when the responsive ESI was last retrievable in its original format and to disclose the circumstances surrounding the change in status of that responsive ESI, whether that information is available from other sources, and whether any backup or copy of such original responsive ESI exists. Nothing in this paragraph is intended to expand or limit the obligations under the Federal Rules of Civil Procedure.

4.16   Relevance Redactions: Unless otherwise agreed, the Parties will not make any redactions based upon the purported irrelevance of all or part of a Document.

4.17   Compressed Files: Compressed file types (e.g., .ZIP, .RAR, .CAB, .Z, .7Z) shall be decompressed so that the lowest level document or file is extracted; provided, however, that packaged discovery materials may be compressed prior to production in order to facilitate electronic transmission.

4.18    Structured Data:  To the extent a response to discovery requires production of electronic information stored in a database, the Parties will meet and confer regarding methods of production.  The Parties will consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

5.    PROCESSING SPECIFICATIONS

The Producing Party will generate and preserve the MD5 or SHA-1 Hash Values of all ESI based on the Native Format file.  The Producing Party shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to its production:  Where Documents are not otherwise produced natively, all TIFF images shall display tracked changes, comments, and other rich data (including, but not limited to, hidden text, strikethrough text, etc.) as displayed in the Document, regardless of the display  setting for this information as  last saved by the custodian, to the extent reasonably and technically possible.  Producing Parties shall make reasonable efforts to process all ESI with a single time zone and a date and time setting that is consistent across all of the Parties' productions and shall make reasonable efforts for that time zone to be Eastern Standard Time.  The Parties agree to meet and confer in good faith with regard to any issues arising from this aspect of production that may arise.

6.    CONFIDENTIALITY

Documents produced in the Action shall be subject to the terms of any protective order agreed upon by the Parties, and entered by the Court, as well as Federal Rule of Civil Procedure 26(b)(5)(B).

7.    PRIVILEGE LOG

The terms of this Order are subject to the attorney-client privilege, work product doctrine,

and the privilege provisions of any protective order entered in this Action. The Parties agree to exchange privilege logs that comply with Federal Rule of Civil Procedure 26(b)(5) and E.D.N.Y. Local Civil Rule 26.2 in a form to be agreed upon by the Parties.

**8.      EMAIL THREADING**

Where Email Threading is available as a review tool, producing Parties agree that it can be employed in the review process but not to remove lesser included Emails in an Email thread from productions since this destroys the ability to search the To/From/CC/SentDate/SentTime/Subject Metadata Fields of the individual lesser-included Emails.

**9.      TECHNOLOGY ASSISTED REVIEW**

The Parties agree that if Predictive Coding or Technology Assisted Review ("TAR") will be employed to prioritize Documents for review and production, that the Parties will meet and confer in good faith regarding the adoption of a separate agreement, a Technology Assisted Review Protocol, to define and agree upon the process, benchmarks, and reporting obligations for the use of TAR.

**10.      AUTHENTICATION**

The Parties stipulate that their production of documents or ESI in response to a discovery request shall constitute stipulation to the authenticity of the document or ESI produced. Each Party further stipulates that they will not contest authenticity of any ESI such Party themselves produced so long as the MD5Hash of the documents ESI matches the MD5Hash identified at the time of production.

**11.      NON-ENGLISH LANGUAGE DOCUMENTS AND ESI**

The Parties expect that a substantial amount of Defendants' documents and ESI will be in languages other than English, and more specifically that a substantial amount of Defendants'

16

documents and ESI will be in Chinese.

11.1    <u>Language Disclosure</u>: Each Party shall identify and describe any relevant languages, dialects, or character sets (*e.g.*, traditional and simplified Chinese characters) that are regularly used in that Party's potentially discoverable ESI and documents.

11.2    <u>OCR Text</u>: All OCR shall be performed in a manner that takes into account the primary language contained in a document, so as to render the most useful resulting OCR text.

11.3    <u>ESI Search Terms</u>: For any ESI search terms to be utilized in this action, the Parties agree to cooperate in good faith in order to arrive at mutually agreeable translations of such search terms into any relevant languages, dialects, or character sets. One or more of the original and any translated forms of an ESI search term may be applied to search a Party's ESI, as agreed by the Parties.

## 12.    CROSS-BORDER DISCOVERY & DATA PRIVACY

The parties will meet and confer regarding any issues in cross-border discovery, including any limitations on the collection, review, and production of any Document imposed by the applicable laws of the People's Republic of China, including but not limited to data privacy law, cybersecurity law, and state secrecy law.[3]

## 13.    AMENDMENT OF ORDER

Nothing herein shall preclude the Parties from agreeing to amend the terms of this Order, and nothing herein shall preclude any Party from moving the Court to amend the terms of this Order for good cause shown, provided, however, that no Party may seek relief from the Court concerning compliance with the Order until it has met and conferred in good faith with any Parties involved in the dispute.

---

[3] Plaintiffs do not stipulate to the existence or applicability of any such limitations.

SO STIPULATED AND AGREED

Dated: December 10, 2021

/s/ Laurence Rosen
Laurence Rosen
Yu Shi
THE ROSEN LAW FIRM, P.A.
275 Madison Avenue, 40th Floor
New York, NY 10016
(212) 686-1060

Attorneys for Plaintiffs

Dated: December 10, 2021

/s/ Scott D. Musoff
Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
(212) 735-3000

/s/ Andrew J. Ehrlich
Andrew J. Ehrlich
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000

/s/ Jane B. O'Brien
Jane B. O'Brien
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
(202) 223-7300

Attorneys for Defendants

SO ORDERED.

s/ James R. Cho

JAMES R. CHO, U.S.M.J.

Dated: 1/19/2022

18

## **EXHIBIT A – DOCUMENT PRODUCTION SPECIFICATIONS**

**1.    PRODUCTION LOAD FILES**

There will be two Load/Unitization files accompanying all productions of ESI:

- The first will be a Metadata import file, in Concordance-format delimited file with a .DAT file extension that contains the agreed-upon Metadata fields. For all DAT files: if no non-English language is contained in the production, then UTF-8 text encoding is acceptable; however, if there will be non-English language Documents, the text encoding must be in Unicode.

- The second will be a cross-reference file that contains the corresponding image information [IDX] identifying document breaks. The acceptable formats for the cross-reference files are .log and .opt.

**2.    IMAGES**

- Produce Documents in Single Page Group IV TIFF black and white files.

- Image Resolution of at least 300 DPI.

- If either Party deems the quality of the Document produced in TIFF format to be insufficient, the Parties will meet and confer in good faith to determine whether the Producing Party must produce the Document as a JPEG file.

- File Naming Convention: Match Bates number of the page.

- Insert placeholder image for files produced in Native Format (see Paragraph 4.4.).

- Original Document orientation or corrected orientation shall be retained.

**3.    SPECIAL FILE TYPE INSTRUCTIONS**

- Certain file types shall be produced in Native Format, as specified in Paragraph 4.4.

- If redactions are required, see production requirements specified in Paragraph 4.4.

**4.    FULL TEXT EXTRACTION/OCR**

- Where available, produce full Extracted Text for all file types (Redacted text will not be produced).  Redacted Documents should be re-OCRed and the redacted text should be produced.

- Produce OCR text output for any paper Document.

- Produce OCR text output for any ESI where the source format was an image file (such as JPG, JPEG, GIF, BMP, PCX, PNG, TIF, TIFF etc.) where Extracted Text cannot be provided, using industry standard OCR technology (Redacted text will not be produced).

- *Production format*: Single text file for each Document, not one text file per page.

- *File Naming Convention*: Match Beg Bates Number.

**5.    ESI (AND PAPER TO THE EXTENT APPLICABLE) PRODUCTION METADATA FIELDS**

- <u>Source</u>: Name of Party Producing the Document.

- <u>BegBates</u>: Beginning Bates Number.

- <u>EndBates</u>: Ending Bates Number.

- <u>BegAttach</u>: Beginning Bates number of the first Document in a Document family range. Documents that are part of Document families, *i.e.*, containing parents and attachments should receive a value.

- <u>EndAttach</u>: Ending Bates number of the last Document in attachment range in a Document family range. Documents that are part of Document families, *i.e.*, containing parents or attachments, should receive a value.

- <u>Custodian</u>: Name of the Custodian of the Document Produced.

- <u>Duplicate Custodians</u>: Names of all custodians who had a copy of a Document that was removed through the de-duplication process, if applicable.

- <u>FileName</u>: Filename of the original source ESI as stored by the custodian.

- <u>NativeLink</u>: Path and filename to produced Native Format file (see Paragraph 4.4).

- <u>EmailSubject</u>: Subject line extracted from an Email message.

- <u>Title</u>: Title field extracted from the Metadata of a non-Email Document.

- <u>Author</u>: Author field extracted from the Metadata of a non-Email Document.

- <u>From</u>: From field extracted from an Email message, including both the display name and the SMTP address.

- <u>To</u>: To or Recipient field extracted from an Email message, including both the display name and the SMTP address.

- <u>Cc</u>: CC or Carbon Copy field extracted from an Email message, including both the display name and the SMTP address.

- <u>BCC</u>: BCC or Blind Carbon Copy field extracted from an Email message, including both the display name and the SMTP address.

- <u>DateSent</u>: Sent date and time of an Email message (mm/dd/yyyy format).

- <u>TimeSent</u>: Sent time of an Email message or Instant Message (hh:mm:ss format).

- <u>TimeZoneProcessed</u>: The originating time zone of the Document.

- <u>DateCreated</u>: The origination date of the Document (mm/dd/yyyy format).

- <u>DateLastModified</u>: Last modification date and time (mm/dd/yyyy format).

- <u>PageCount</u>: The number of pages of the Document, excluding the pages of Documents in the same family.

2

- [MD5/SHA1]HashValue: MD5 or SHA-1 Hash Value, but please specify using field name.

- File Extension: File extension of Document (.msg, .doc, .xls, etc.).

- ExtractedText: File path to Extracted Text/OCR File.

- Confidentiality: "Confidential," if a Document has been so designated under a protective order entered in this Action; otherwise, blank.

- Attach Count: Number of attached files.

- Message-ID: The Outlook Message ID assigned by the Outlook mail server, if applicable.

- Reference Chain: The Outlook message "Reference Chain," if applicable.

- Document Type: Descriptor for the type of Document. "E-document" for electronic Documents not attached to e-mails; "E-mail" for all e-mails; "E-attachment" for files that were attachments to e-mails; and "Physical" for hard copy physical Documents that have been scanned and converted to an electronic image.

- Importance: High Importance – indicates priority E-mail.

- Redacted (Y/N): Whether the Document contains redactions.

- Redaction Reason: Basis of redaction. If more than one, separate reasons by semi-colons.

- Embedded Source: The Document Number of the source file from which the embedded file was extracted (if applicable).

**6.    DE-DUPLICATION**

- De-duplication method: Parties may make reasonable efforts to de-duplicate stand-alone Documents or entire Document families globally using MD5 or SHA-1 Hash value matching.

- Common system files defined by the NIST library (http://www.nsrl.nist.gov/) need not be produced.

**7.    SEARCH TERM INDEX**

- If any Party applies search terms to identify or cull documents, the following specific Metadate Fields shall be included in the search index used, unless otherwise agreed between the Parties:
    - From
    - To/Recipients
    - CC
    - BCC
    - Extracted Text
    - Location (Path & file name in the ordinary course of business)
    - Message Header
    - File Name
    - Subject

3