# Exhibit P

**In the Matter Of:**

*In Re: NIO, Inc. Securities Litigation*

*EVA HUANG*

*September 06, 2022*



1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

CASE NO. 19-cv-1424 (NGG) (JRC)

-----------------------------------------X

IN RE:

NIO, INC. SECURITIES LITIGATION,

-----------------------------------------X

REMOTE DEPOSITION OF EVA HUANG

Tuesday, September 6, 2022

12:08 p.m. (EDT)

Reported by:

Joan Ferrara, RMR, FCRR

Job No. 2022-858475

Case 1:19-cv-01424-NGG-JRC    Document 121-18    Filed 12/23/22    Page 4 of 62 PageID
#: 2838
In Re: NIO, Inc. Securities Litigation

Eva Huang
September 06, 2022

2

September 6, 2022

12:08 p.m. (EDT)

Videotaped Deposition of EVA HUANG, held remotely via Zoom, before Joan Ferrara, a Registered Merit Reporter, Federal Certified Realtime Reporter and Notary Public.

REMOTE APPEARANCES:


THE ROSEN LAW FIRM, P.A.

Attorneys for Plaintiff and The Witness

      270 Madison Avenue, 40th Floor

      New York, New York 10016

BY:     YU SHI, ESQ.

      JING CHEN, ESQ.



SKADDEN ARPS SLATE MEAGHER & FLOM LLP

Attorneys for Defendants NIO, Inc.,

Padmasree Warrior, Bin Li, Louis Hsieh,

Lihong Qin, Yaqin Zhang, Tian Cheng, Hai Wu

and Xiang Li

      One Manhattan West

      New York, New York 10001

BY:     JUDITH A. FLUMENBAUM, ESQ.

      MICHAEL C. GRIFFIN, ESQ.

      ROBERT A. FUMERTON, ESQ.

REMOTE APPEARANCES:    (Continued)


PAUL WEISS RIFKIND WHARTON & GARRISON LLP

Attorneys for Defendants Xianping Zhong and

Zhaohui Li

          1285 Avenue of the Americas

          New York, New York 10019-6064

BY:       XINSHU SYLVIA SUI, ESQ.



MILBANK LLP

Attorneys for Defendants Morgan Stanley &

Co. LLC, Goldman Sachs (Asia) L.L.C.,

JPMorgan Securities LLC, Merrill Lynch,

Pierce, Fenner & Smith Inc., Deutsche Bank

Securities Inc., Citigroup Global Markets

Inc., Credit Suisse Securities (USA) LLC,

UBS Securities LLC, and WR Securities, LLC

          55 Hudson Yards

          New York, New York 10001-2163

BY:       ELVIRA RAZZANO, ESQ.

Case 1:19-cv-01424-NGG-JRC    Document 121-18    Filed 12/23/22    Page 7 of 62 PageID
In Re: NIO, Inc. Securities Litigation    #: 2841

Eva Huang
September 06, 2022

5

REMOTE APPEARANCES:    (Continued)


ALSO PRESENT:

     KENNETH PARRA, Videographer

     LINGLING MARTIN, Mandarin Interpreter

     David Aranda, Skadden Trial Consultant

THE VIDEOGRAPHER:  We are now on the record.  Today's date is September 6, 2022 and the time is 12:08 p.m.

This is the video deposition of Eva Huang in the matter of NIO, Inc. Securities Litigation filed in the United States District Court, Eastern District of New York, Case No. 19-CV-1424.

This deposition is taking place via web videoconference with all participants attending remotely.

My name is Kenneth Parra.  I am the videographer representing Lexitas.

Would counsel on the conference please identify yourselves and state whom you represent beginning with the questioning attorney.

MS. FLUMENBAUM:  Hi.  My name is Judith Flumenbaum from Skadden on behalf of the Company and I'm joined by Robert Fumerton and Michael Griffin.

MS. RAZZANO:  Good morning,

everybody.  My name is Elvira Razzano. I'm associated with the law firm Milbank LLP and I'm appearing on behalf of the underwriter defendants Morgan Stanley & Co., LLC, et al.

MS. SUI:  Good afternoon everyone.  My name is Xinshu Sui.  I'm from the law firm Paul Weiss.  I'm appearing on behalf of defendants Xianping Zhong and Zhaohui Li.

THE VIDEOGRAPHER:  Our court reporter today is Joan Ferrara representing Lexitas.

Would you please swear in our translator and our witness.

MR. SHI:  Sorry, I don't think plaintiff's counsel has made an appearance yet.

Okay.  This is Yu Shi from the Rosen Law Firm and joined by my colleague Jing Chen.  We are here for the witness and the Proposed Class.

*  *  *

Case 1:19-cv-01424-NGG-JRC   Document 121-18   Filed 12/23/22   Page 10 of 62
In Re: NIO, Inc. Securities Litigation   PageID #: 2844

Eva Huang
September 06, 2022

8

E. Huang

EVA HUANG,

    called as a witness, having been

    duly sworn by a Notary Public, was

    examined and testified as follows:

EXAMINATION BY

MS. FLUMENBAUM:

    Q    Good morning, Ms. Huang.  My name is Judy Flumenbaum and I am here on behalf of defendants today.

    Ms. Huang, we have an interpreter today.  But if you are able to answer the questions that I'm asking in English, you should feel free to do that, or we can just go through the translator, whatever is easier for you.

    THE INTERPRETER:  This is the interpreter speaking.  Her audio is coming in and out, sort of.  I'm not sure, is it just me or is it --

    MS. FLUMENBAUM:  No, I'm having that issue also.  I can't really hear her.

    A    I would like to go through the interpreter entirely.

Case 1:19-cv-01424-NGG-JRC    Document 121-18    Filed 12/23/22    Page 11 of 62
In Re: NIO, Inc. Securities Litigation    PageID #: 2845

Eva Huang
September 06, 2022

9

E. Huang

Q    Okay.

THE INTERPRETER:  Let me just tell her also to dial in on the phone as well.

MS. FLUMENBAUM:  Thank you.

THE INTERPRETER:  There might be echos, though.

MR. SHI:  It could be, if she's got a phone or another device close by, it might be causing the echo.

THE INTERPRETER:  She's saying that she's going to put the phone a little further away.

MS. FLUMENBAUM:  I wasn't hearing an echo.  Just her audio was cutting in and out.  So we just have to make sure she has a good connection where she is.

THE WITNESS:  Maybe give me a second.  I'm going to see whether my daughter is using the internet now.

(Pause).

MS. CHEN:  Judy, it would be easier for you to let her dial in over

Case 1:19-cv-01424-NGG-JRC   Document 121-18   Filed 12/23/22   Page 12 of 62
In Re: NIO, Inc. Securities Litigation   PageID #: 2846

Eva Huang
September 06, 2022

15

E. Huang

communicating with your attorneys on this matter?

A    Yes.

Q    Have you ever communicated with your attorneys on this matter without a translator?

A    No.

Q    What is your first language?

A    Cantonese.

Q    And when did you learn English?

A    I started to learn English after I came to the U.S.

Q    When did you come to the U.S.?

A    1987.

Q    And how did you learn English? Did you take a class?

A    I learned English for a very brief period of time at an adult school.

Q    And that was your only formal English training?

MS. CHEN:  The translation should be --

THE INTERPRETER:  Okay, let me do it again.

16

                    E. Huang

A      Yes.

Q      What other languages do you speak?

A      Mandarin.

Q      Can you read in English?

A      I can.

Q      When did you learn to read in English?

A      Through work.

Q      When did you learn to read in English?

A      Around 2,000, perhaps.

Q      How proficient would you say you are reading English?

A      Except for -- except for legal documents or some documents that are very technical, I can read the daily documents.

Q      What are the daily documents?

A      Just the notices or documents or the usual things that were mailed to me.

Q      How much English do you speak in your day-to-day life?

A      I speak very little English at home.  I would speak English when I go to

Case 1:19-cv-01424-NGG-JRC   Document 121-18   Filed 12/23/22   Page 14 of 62
In Re: NIO, Inc. Securities Litigation   PageID #: 2848

Eva Huang
September 06, 2022

17

E. Huang

work with my colleagues and I would also speak English when I go out to buy things.

Q    Do you watch the news in English?

A    Yes.

Q    Do you read the news in English?

A    Seldom.

Q    Now, you mentioned the legal or technical documents that you have trouble reading in English.

For this matter, did you get translated versions of any legal or technical documents?

A    Yes, my attorney gave me the translated documents.

Q    Which documents did you receive translated?

A    Documents pertaining to the complaint or filing the lawsuit.

Q    Did you receive a translated version of the complaint?

A    Yes.

Q    Did you receive a translated version of the second amended complaint?

Case 1:19-cv-01424-NGG-JRC   Document 121-18   Filed 12/23/22   Page 15 of 62
In Re: NIO, Inc. Securities Litigation   PageID #: 2849

Eva Huang
September 06, 2022

18

E. Huang

A     Yes.

Q     Did you receive a translated version of any briefs on the motion to dismiss?

A     That, no.  However, the attorney or attorneys explained it to me over the phone.

Q     Any other documents you remember receiving a translated version of from your attorneys here?

A     I can no longer recall.

Q     You can't answer one way or another?

A     I can no longer recall whether they have sent me any additional ones.

Q     Okay.  Did you review any information -- strike that.

Did you read any news about NIO in English?

A     No.

Q     Did you review -- did you read any news about NIO in Chinese?

A     Yes.

Q     What publications did you read?

19

E. Huang

A    I would just take a look at the comments on the stock information.  I would try to get some information, any information about the shares.  I did not read anything from any publication, though.

Q    Okay.  Where would you see these comments?

A    I would look at this information on the financial section of Yahoo, of Yahoo.

Q    And you accessed Yahoo Finance in Chinese?

A    Yes.

Q    Ms. Huang, have you been deposed before?

A    No.

Q    Have you ever testified in any arbitration, trial, or other legal proceeding?

A    No.

Q    Have you ever submitted any affidavits in any deposition, arbitration, trial or other legal proceedings?

A    Yes.

Case 1:19-cv-01424-NGG-JRC    Document 121-18    Filed 12/23/22    Page 17 of 62
In Re: NIO, Inc. Securities Litigation    PageID #: 2851

Eva Huang
September 06, 2022

20

E. Huang

Q    In what manner did you submit an affidavit?

A    I can no longer recall.

Q    Was it in the last 10 years?

A    I think it's more than 10 years ago.  I can no longer recall.

Q    Was it in the U.S?

A    Yes.

Q    What was the type of legal proceeding that you submitted an affidavit in?

A    Car accident.  I can no longer recall the details.

Q    Were you involved in the car accident?

A    Yes.

Q    Did you work with a translator in that action?

A    Yes.

Q    Were you a defendant in that action?

A    No.

Q    Have you ever been a defendant in any legal action?

Case 1:19-cv-01424-NGG-JRC   Document 121-18   Filed 12/23/22   Page 18 of 62
In Re: NIO, Inc. Securities Litigation        PageID #: 2852                    Eva Huang
September 06, 2022

21

                    E. Huang

A      No.

Q      Have you ever been involved in a securities litigation before?

A      No.

Q      How long have you lived at your current address?

A      13 years.

Q      Do you rent or own?

A      I own it.

Q      Are you currently employed?

A      No.

Q      When were you last employed?

A      2019.

Q      What did you do before you stopped working?

A      I was in the business of apparel.

Q      What did you do in the apparel business?

A      I make the paper mold.

Q      The paper mold for what?

A      Paper mold for clothing.

Q      And how long did you do that job?

Case 1:19-cv-01424-NGG-JRC   Document 121-18   Filed 12/23/22   Page 19 of 62
In Re: NIO, Inc. Securities Litigation   PageID #: 2853

Eva Huang
September 06, 2022

22

E. Huang

A    Over 20 years.

Q    And did you retire in 2019?

A    Currently, I am not working.

Q    Was it your decision to stop working?

A    Yes.

Q    Have you ever worked with or for lawyers?

A    No.

Q    Have you ever worked with or for an investment firm?

A    No.

Q    Have you ever worked with or for friends?

A    No.

Q    Did you graduate high school?

A    Yes.

Q    Where did you graduate high school?

A    China.

Q    Did you graduate from college?

A    No.

Q    Do you have any additional degrees?

Case 1:19-cv-01424-NGG-JRC    Document 121-18    Filed 12/23/22    Page 20 of 62
In Re: NIO, Inc. Securities Litigation    PageID #: 2854

Eva Huang
September 06, 2022

23

E. Huang

A    I have a diploma for making the paper mold.

Q    And no other schooling or training?

A    No.

Q    When did you first start investing?

A    I can no longer recall.

Q    Was it more than 10 years ago?

A    Yes.

Q    More than 20 years ago?

A    No.

Q    So somewhere between 10 and 20 years ago you started investing, correct?

A    Yes.

Q    Why did you first start investing?

A    I started with a 401(k).

Q    Were you investing your 401(k) yourself?

A    Yes.

Q    When did you first get a 401(k)?

A    Around 2,000.

Q    And why did you start to invest

32

E. Huang

a daily basis.

Q    And how would you determine whether things would be most needed by the society on a daily basis?

A    For example, currently the gas price is really high.  So I would invest some money on companies that are involved in energy savings, and also currently people need to purchase the daily consumables more and I would invest in some of those companies.

Q    And for the companies that you -- that had just done the IPOs, how did you determine whether -- how did you know whether they had just done their IPOs?

A    Sometimes I see it on the TV, I would hear it in the news, and some were things that my friends would tell me.

Q    Did your friends make investments as well?

A    Yes.

Q    And do you often talk about your investments with each other?

A    Yes.

Case 1:19-cv-01424-NGG-JRC   Document 121-18   Filed 12/23/22   Page 22 of 62
In Re: NIO, Inc. Securities Litigation   PageID #: 2856

Eva Huang
September 06, 2022

33

E. Huang

Q     Do you communicate with them on the phone about your investments?

A     Yes.

Q     Do you communicate in writing, like e-mail, text message, about your investments?

A     No.

Q     Did you communicate with them about your NIO investment?

A     Yes.

Q     What did you communicate with them about your NIO investment?

A     Friend or friends referred me about NIO.  Before then, I had never purchased any stocks of any Chinese companies.

        MR. SHI:  Objection to the
    translation.  I think she meant
    introduced rather than referred.

        THE INTERPRETER:  Okay.  Let me
    do it again.

        MS. FLUMENBAUM:  I'm not sure
    that makes a difference, but.

        THE INTERPRETER:  Let me just do

34

E. Huang

it again?

A    Friend or friends introduced NIO, the company, to me.  However, prior to that, I had never purchased any stocks of any Chinese companies.

Q    Who are the friends that introduced you to NIO?

A    A good friend of mine.

Q    And how did this good friend know about NIO?

A    Perhaps he or she found it through the news.  I am not sure.

Q    And what did this friend tell you about NIO?

A    He or she said that this company at the time was the first company in China that had its own batteries and that this company had a good future, and also because at the time that electrical vehicle was the direction of the future, something like that.

He basically said that this company should be a good one and that this company also manufactured SUVs and many

Case 1:19-cv-01424-NGG-JRC    Document 121-18    Filed 12/23/22    Page 24 of 62
In Re: NIO, Inc. Securities Litigation    PageID #: 2858

Eva Huang
September 06, 2022

35

E. Huang

people would like it.

He or she also said that this company built its own factory or factories in Shanghai.

Q    So this friend told you that NIO built its own factories in Shanghai?

A    I can't remember whether he or she told me that they were in the process of building the factory or factories or they had already built their factory or factories.  He or she saw that information through the news as well.

THE INTERPRETER:  I'm sorry, for the last sentence --

A    However, he saw this information through the news.

Q    How do you know he saw this information through the news?

A    He or she looked at the news, looked at a lot of news on a daily basis. So, however, I -- in terms of where he saw the news, what stories he got the news from, I'm not sure.

Q    Is this friend also invested in

Case 1:19-cv-01424-NGG-JRC    Document 121-18    Filed 12/23/22    Page 25 of 62
In Re: NIO, Inc. Securities Litigation    PageID #: 2859    Eva Huang
September 06, 2022

36

E. Huang

NIO?

A    Yes.

Q    Is this friend still invested in NIO?

A    No.

Q    When did this friend tell you, first tell you about NIO?

A    I would think it was around February 2019, prior to me purchasing the shares of NIO.

Q    Do you know -- was that -- strike that.

Have you ever invested in other companies that your friends have told you about?

A    Yes.

Q    What other companies?

A    Maybe, for example, Disney, McDonald.

Q    Any other companies soon after they became public company?

A    This was the first one.

Q    And did your friend tell you anything else about NIO prior to your

Case 1:19-cv-01424-NGG-JRC    Document 121-18    Filed 12/23/22    Page 26 of 62
In Re: NIO, Inc. Securities Litigation    PageID #: 2860    Eva Huang
September 06, 2022

37

E. Huang

investment?

A       No.

Q       How many conversations about NIO did you have with your friends before investing?

A       About twice.

Q       And your friends encouraged you to invest in NIO?

A       Yes.

Q       Anything else you can remember about any of these conversations with your friends about NIO?

A       No.  I can no longer recall.

Q       How would you describe your risk tolerance when you're investing in companies?

A       I tend to be more conservative because I am older in age and I did not or do not want to take too much risk.

Q       What would you constitute as a risky investment?

A       Just the ones that did not show much profit and the ones that people cannot see their performance.  Those I would

59

E. Huang

planning to build a factory?

Q    A    This factory never existed at all.  They had never built the factory to begin with.

So at the time when the investors bought the shares, I believe we were misled.  It hurt our interests.  I believe that the company was being dishonest.  I don't understand why that company would do something like that.  I don't understand.

Q    If NIO had started building the factory at the time of the IPO, would you still believe its statements were misleading?

A    It was said that the factory was under construction.  That means that the construction had already started.  It was not that they were preparing to do the construction.

Q    My question is, if construction had begun at the factory, would NIO's statements have been misleading?

A    If at the time they were already

60

E. Huang

in the middle of construction, if the

construction was already in the process,

then I would say it was not misleading.

However, the fact is that they

did not start the construction at all.

Q    Why did you believe that NIO did

not start construction at all of the

facility?

A    I requested my attorneys to look

into the situation and my attorneys said

that through the published information that

they had access to, it was indicated that

they did not start construction at all.

MR. SHI:  So I would just object

to the --

MS. FLUMENBAUM:  The answer is

already on the record.  You can't

object now.

MR. SHI:  Well, to the

interpretation, we can.

I mean to the extent that it

says the attorneys --

MS. FLUMENBAUM:  No, you have to

instruct her before the answer.

Case 1:19-cv-01424-NGG-JRC    Document 121-18    Filed 12/23/22    Page 29 of 62
In Re: NIO, Inc. Securities Litigation    PageID #: 2863                    Eva Huang
                                                                    September 06, 2022

61

E. Huang

MR. SHI:  No, I'm objecting to the translation.  How would I know what the translation was going to be before it was translated?  I'm not objecting to the question.  I'm objecting to the translation.

THE INTERPRETER:  What part you're objecting to, Mr. Shi?

MS. FLUMENBAUM:  I'm sorry, you can't object to the translation.  We can do this after, but you can't object to the translation now.

We'll have the video, we can all listen to it and see what was actually said, but you can't --

MR. SHI:  Okay.  I'll put it on the record that --

A    Can I correct myself, please?

Q    No, I mean --

MR. SHI:  Well, you have to give her a chance to correct her response.

MS. FLUMENBAUM:  She's being coached by you.

MR. SHI:  I mean, I don't know

70

E. Huang

A    At the time, I purchased their stock and I followed them then.

Currently, or now, I have not purchased any mire stocks and I'm not following them right now.  That's what I meant to say.

Q    So you stopped following the company when you stopped purchasing their shares?

A    Yes.

Q    So you just testified that when the company was going to build the factory or announced they were going to build the factory, you did follow the company.  What was that timeframe?

A    From 2018 to about 2021 -- no, to about 2020 -- I can no longer recall the exact timeframe.

Q    And how did the company announce that it was going to build the factory?

A    Their CEO mentioned that the company was in the middle of constructing the factory at the time.  And also, at the time of the IPO, the IPO indicated that

E. Huang

they had their own factory.

Q    Did you listen to any earnings calls the CEO spoke on?

A    No.

Q    Did you read any of the company's SEC filings?

A    No.

Q    So how did you know that the CEO mentioned that the company was in the middle of constructing the factory?

A    I saw it in the information.

Q    What information?

A    I found them in the comment sections in the two websites that I commonly used for looking at stocks.

Q    And was this at the time of the IPO?

A    Yes.

Q    So you knew about NIO before your friend told you in February 2020 -- or 2019, excuse me?

A    I did not know.  It was after my friend told me about it and after I purchased their stocks, I started to read

72

E. Huang

the information.

MR. SHI:  We've been going for about 2 hours.  Why don't you find a good time to take a short break.

MS. FLUMENBAUM:  Now is a fine time.

MR. SHI:  Okay.  Let's take a break.

THE VIDEOGRAPHER:  We are now off the record.  The time is 3:23 p.m.

(Recess taken 3:23 p.m.)

(Resumed 3:46 p.m.)

THE VIDEOGRAPHER:  We are now back on the record.  The time is 3:46 p.m.

BY MS. FLUMENBAUM:

    Q    Good afternoon, Ms. Huang.

         Do you know anyone who worked or works at NIO?

    A    I don't.

    Q    Besides Mr. Guan, is there anyone you've discussed NIO with?

    A    No.

    Q    Have you ever seen one of NIO's

Case 1:19-cv-01424-NGG-JRC   Document 121-18   Filed 12/23/22   Page 33 of 62
In Re: NIO, Inc. Securities Litigation   PageID #: 2867

Eva Huang
September 06, 2022

73

E. Huang

cars?

A     I've seen it on the photo.

Q     Where did you see the photo of NIO's car?

THE INTERPRETER:  Let the interpreter make a correction.

A     I've seen it on some images.

Q     Where did you see an image of NIO's cars?

A     Any news regarding NIO in the news, there would be images.

Q     Do you remember specifically what publication and when?

A     I no longer recall.

Q     Do you currently have a financial advisor?

A     No.

Q     Did you have a financial advisor when you first invested in NIO in March 2019?

A     No.

Q     Did anyone advise you at the time you bought or sold NIO shares besides your friend Mr. Guan?

Case 1:19-cv-01424-NGG-JRC   Document 121-18   Filed 12/23/22   Page 34 of 62
In Re: NIO, Inc. Securities Litigation   PageID #: 2868

Eva Huang
September 06, 2022

74

E. Huang

A      No.

MR. SHI:  Objection.  Please wait for me to object before responding.

Objection.  Misstates prior testimony.

A      No.

Q      So after you heard about NIO, what did you do to research the company before investing?

A      I no longer recall.

Q      But you didn't review the offering documents, correct?

MR. SHI:  Objection.  Asked and answered.

Q      You can answer.

A      I did not.

Q      What factors did you consider when deciding whether to invest in NIO?

MR. SHI:  Objection.  Asked and answered.  You may answer.

Lingling, we can't hear you.

MS. FLUMENBAUM:  I don't even see Lingling anymore.  Should we go

75

E. Huang

off the record?

Why don't we go off the record while Lingling is not here.

THE VIDEOGRAPHER:  We are now off the record.  The time is 3:52 p.m.

(Recess taken 3:52 p.m.)

(Resumed 3:53 p.m.)

THE VIDEOGRAPHER:  We are now back on the record.  The time is 3:53 p.m.

Q    What factors did you consider when deciding whether to invest in NIO?

MR. SHI:  Objection.  Asked and answered.

Q    You can answer.

A    I first considered whether the company had a good future and I would also consider whether the production capacity was large enough in terms of the number of vehicles produced and I would consider whether they had reached their expectation.

Q    How did you determine whether NIO had a good future?

MR. SHI:  Objection.  Asked and

Case 1:19-cv-01424-NGG-JRC   Document 121-18   Filed 12/23/22   Page 36 of 62
In Re: NIO, Inc. Securities Litigation   PageID #: 2870

Eva Huang
September 06, 2022

95

E. Huang

A       I no longer recall.

Q       Were you concerned about the company's direction?

MR. SHI:  Objection.  At what point in time are you asking?

MS. FLUMENBAUM:  After she retained counsel, but continued to purchase shares for 2 years.

A       No.

Q       We'll now introduce Plaintiffs 068.  I believe this will be Defendant's Exhibit 16.

(Exhibit 16, Bates Plaintiffs 068, was remotely introduced and provided electronically to the reporter, as of this date.)

Q       So this document indicates you purchased another 1,000 shares on June 6, 2019, correct?

A       Correct.

Q       And this is 3 months after you retained counsel?

A       Correct.

Q       Why did you purchase more NIO

Case 1:19-cv-01424-NGG-JRC   Document 121-18   Filed 12/23/22   Page 37 of 62
In Re: NIO, Inc. Securities Litigation   PageID #: 2871

Eva Huang
September 06, 2022

96

E. Huang

shares on June 6th?

A     Because its share price was low.

Q     Is that the only reason?

A     No, it was not.

Q     What was another reason?

A     I had shares that I bought at a higher price.  So I was hoping to average the purchase price out and then bring the purchase price lower, on average.

Q     Any other factors?

A     No.

Q     And this purchase was at a price of $2.06 per share, correct?

A     Yes.

MS. CHEN:  Correction, $2.60.

MS. FLUMENBAUM:  Excuse me, $2.60.  You're correct, sorry about that.

A     Correct.

Q     So the total cost of this investment was $2,600, correct?

A     Correct.

Q     And at this date, you still thought NIO was a good investment, correct?

Case 1:19-cv-01424-NGG-JRC    Document 121-18    Filed 12/23/22    Page 38 of 62
In Re: NIO, Inc. Securities Litigation    PageID #: 2872

Eva Huang
September 06, 2022

97

E. Huang

A    Yes.

Q    Okay.  We'll now introduce Plaintiffs 066 as Defendant's Exhibit 17.

(Exhibit 17, Bates Plaintiffs 066, was remotely introduced and provided electronically to the reporter, as of this date.)

Q    And this is your trading records from June 20th, correct?

A    Correct.

Q    So two weeks later you purchased another 1,000 shares?

A    Correct.

Q    Why did you decide to purchase 1,000 shares on June 20th?

A    Because at this point, I saw that the share price went up a little bit. It was 2.6 before and then it went up to 2.8.  So it was a little higher.  So I was hoping by purchasing more shares, I could try to make up the losses that I had before.

Q    Why would the share price being higher make up for losses that you had

Case 1:19-cv-01424-NGG-JRC    Document 121-18    Filed 12/23/22    Page 39 of 62
In Re: NIO, Inc. Securities Litigation    PageID #: 2873

Eva Huang
September 06, 2022

98

E. Huang

before?

A    Because at the time, I think I heard some news.  I could no longer recall. I think it was some good news.  Therefore, I decided to purchase a little more.

Q    So at this point, too, you believed NIO was a good investment, correct?

A    Yes.

Q    So now we'll introduce Plaintiffs 064 as Defendant's Exhibit 18.

(Exhibit 18, Bates Plaintiffs 064, was remotely introduced and provided electronically to the reporter, as of this date.)

Q    Now, if you look at the top left corner on this document, it says MFTC Custodian Roth IRA.

Do you know what that means?

A    I do know.

Q    Can you explain what that means?

A    This is my account where the money -- where the tax were deducted first and then the left over money was put into

99

E. Huang

IRA.  So later on, if I make any money, I will not have to deduct any taxes from it.

Q    So this is a separate account than the purchases we looked at earlier?

A    Yes.

Q    Why did you invest using this account?

A    Because I had money in this account and I wanted to buy -- and I wanted to buy some shares from this account.

Q    So if we go back to the full document, this indicates that you purchased 3,000 shares of NIO in July 2019, correct?

A    Correct.

Q    Why did you decide to purchase 3,000 shares at this point.

A    Because the stock came back up from the lowest point, and there is an opportunity for it to go higher.  So I decided to buy a little more.

Q    And do you have any idea why the stock price was climbing at this point?

A    I no longer recall -- or I don't recall.

Case 1:19-cv-01424-NGG-JRC   Document 121-18   Filed 12/23/22   Page 41 of 62
In Re: NIO, Inc. Securities Litigation   PageID #: 2875

Eva Huang
September 06, 2022

100

E. Huang

Q    So here you purchased 3,000 shares at a price of $3.42, approximately?

A    Yes.

Q    For a total investment of $10,253.40, correct?

A    Yes.

Q    And at this point, as well, you thought NIO was a good investment?

A    Yes.

Q    And at this point you had 7,000 shares outstanding all together?

MR. SHI:  Is that a question or not?

MS. FLUMENBAUM:  It was a question.

A    Correct.

Q    Now I'll introduce Plaintiffs 062 as Defendant's Exhibit 19.

(Exhibit 19, Bates Plaintiffs 062, was remotely introduced and provided electronically to the reporter, as of this date.)

Q    What does this trading record show?

101

E. Huang

A    It's too small.  I cannot see clearly.

Q    If you want to just focus on the middle, DJ, that might be -- yeah.

Does this indicate that you sold shares of NIO?

A    Yes.

Q    And this is the first time you sold any NIO shares, correct?

A    I no longer recall.

Q    But you have no reason to believe that you sold before this?

A    I no longer recall.

Q    In the middle it says:  We have acted as agent, lots without specific shares instructions will be depleted using first in, first out method.

Do you know what this means?

A    Perhaps the meaning is that they will use the shares that were first purchased to sell.  I think, roughly, that's what it means.

Q    Do you know if specific instructions were provided?

102

E. Huang

A    It was not provided.  Well, I could say -- I should say that I no longer recall.

Q    So you did not provide any specific instructions?

A    Correct.

Q    And so on August 6th you sold 2,000 shares.  Why did you decide to sell 2,000?

A    I no longer recall.

Q    Was there a reason you decided to hold on to 5,000 shares?

A    I no longer recall.

Q    And the price you sold these two shares was $3.06, correct had?

A    Correct.

Q    And this is actually a higher price than your two purchases you made in June 2019, correct?

A    I would think so.  I no longer recall.

Q    Why did you decide to sell shares in August 2019?

MR. SHI:  Objection.  Asked and

Case 1:19-cv-01424-NGG-JRC    Document 121-18    Filed 12/23/22    Page 44 of 62
In Re: NIO, Inc. Securities Litigation    PageID #: 2878

Eva Huang
September 06, 2022

103

E. Huang

answered.  You may answer.

A        I no longer recall.

Q        Have you reviewed any public statements NIO made around this time?

A        I no longer recall.

Q        Did you review any articles about NIO around this time?

A        I no longer recall.

Q        Did anyone direct to you sell your shares in NIO?

A        No.

Q        Now we'll introduce Plaintiffs 060 as Defendant's Exhibit 20.

        (Exhibit 20, Bates Plaintiffs 060, was remotely introduced and provided electronically to the reporter, as of this date.)

Q        So two weeks later you purchased more shares of NIO, correct?

A        Correct.

Q        Why did you decide to purchase more shares two weeks after you sold shares?

A        I thought at the time there were

Case 1:19-cv-01424-NGG-JRC    Document 121-18    Filed 12/23/22    Page 45 of 62
In Re: NIO, Inc. Securities Litigation    PageID #: 2879

Eva Huang
September 06, 2022

104

                    E. Huang

still opportunities and it was relatively

good that it has potential.  So I decided

to purchase a little more.

     Q     What made you think the company

had potential at the time of this purchase?

     A     I would think that they -- the

company issued some good news, perhaps.  I

can no longer recall.

     Q     So you don't remember

specifically any good news?

     A     Correct.

     Q     And so here on August 20th you

purchased an additional 2,000 shares,

correct?

     A     Correct.

     Q     And the price that you purchased

these shares was $3.14, correct?

     A     Correct.

     Q     So this is higher than the price

you sold your shares at two weeks ago.

           At the time, did you wish you

had held your shares?

     A     I can no longer recall.

     Q     Before you made this purchase,

Case 1:19-cv-01424-NGG-JRC   Document 121-18   Filed 12/23/22   Page 46 of 62
In Re: NIO, Inc. Securities Litigation   PageID #: 2880                    Eva Huang
September 06, 2022

105

E. Huang

had you reviewed any public statements NIO

made?

A     I no longer recall.

Q     Did you review any articles

about NIO before making this purchase?

A     I no longer recall.

Q     And in August 2019 when you

purchased these 2,000 shares, you thought

NIO was a good investment?

I didn't hear an answer, sorry.

A     Yes.

Q     Did you think the company would

succeed?

A     I no longer remember how I

thought or what I thought at the time.

Q     But you wouldn't have purchased

more stocks if you thought it was going to

fail, correct?

A     Correct.

Q     Now we'll introduce Plaintiffs

058 as Defendant's Exhibit 21.

(Exhibit 21, Bates Plaintiffs

058, was remotely introduced and provided

electronically to the reporter, as of this

106

E. Huang

date.)

Q    This indicates that on September 30, 2019 you purchased an additional 10,000 NIO shares, correct?

A    Correct.

Q    Why did you decide to purchase 10,000 shares?

A    I trusted that its future would become better.

Q    What made you believe that its future would become better?

A    Because I thought the Chinese Government would be supporting them and the company would not close down because of it, so I wanted to purchase more shares at the low share price.

Q    What do you mean that the Chinese Government would be supporting them?

A    Because the electric vehicle would get subsidy from the Chinese Government.  And also because it is a new company, the Chinese Government, for sure, would not let it close down because the

Case 1:19-cv-01424-NGG-JRC   Document 121-18   Filed 12/23/22   Page 48 of 62
In Re: NIO, Inc. Securities Litigation   PageID #: 2882                              Eva Huang
                                                                           September 06, 2022

107

E. Huang

Chinese Government would want to ensure

that any new company or new industry would

not close down.

Q     And what's the basis for your

belief that NIO would get a subsidy from

the Chinese Government?

A     I no longer recall.

Q     So you purchased these 10,000

shares at a price of $1.57, approximately,

correct?

A     Correct.

Q     And this was a total investment

of $15,650?

A     Correct.

Q     And at this point, in September

2019, you thought NIO was a good

investment?

A     Correct.

Q     Is $15,000 a normal or typical

investment for you?

A     That would depend on -- well, I

seldom buy this many shares.  This is not

my normal practice.

Q     So why did you decide to invest

Case 1:19-cv-01424-NGG-JRC    Document 121-18    Filed 12/23/22    Page 49 of 62
In Re: NIO, Inc. Securities Litigation    PageID #: 2883

Eva Huang
September 06, 2022

108

E. Huang

this much money in NIO in September 2019?

A    Because I was hoping to get back the losses that I incurred before.  I was hoping that I can get back from the losses that I made -- that I incurred before.

Q    Did you calculate your losses that you incurred here?

A    I no longer recall.  No, I did not.

Q    And so you continued purchasing NIO shares into 2021, correct?

A    Correct.

Q    You purchased NIO shares approximately 15 more times after this point?

A    I no longer recall how many times.

Q    Do you have any sense of how many times, any sort of range?

A    No.

Q    Well, I can represent to you that it's about 15 more times that you purchased after September 2019.

Now, for each of those

Case 1:19-cv-01424-NGG-JRC    Document 121-18    Filed 12/23/22    Page 50 of 62
In Re: NIO, Inc. Securities Litigation    PageID #: 2884
Eva Huang
September 06, 2022

109

E. Huang

instances, would you have thought NIO was a good investment if you purchased more shares?

A    Yes.

Q    And all of these purchases we're discussing were made after you learned that the facility would no longer be built?

A    Correct.

Q    Why did you decide -- why did you continue buying shares from a company that you thought was making false or misleading statements?

A    Because I wanted to make up for the losses that I incurred earlier on.  If I could purchase the shares at a low price, I could average the total purchase price to a lower point and possibly I could get a chance to get my principal back.

Q    So you were relying on the price of NIO's shares when making these investments, not any statements made by the company?

MR. SHI:  Objection.  Vague as to which investments are you talking

Case 1:19-cv-01424-NGG-JRC    Document 121-18    Filed 12/23/22    Page 51 of 62
In Re: NIO, Inc. Securities Litigation    PageID #: 2885

Eva Huang
September 06, 2022

110

E. Huang

about.

Q    You can answer.

A    No.

Q    So what else were you considering when making these purchases after you learned about the facility?

A    The other factors that I considered was that the vehicles, that they had other factory or manufacture, whether these vehicles can be delivered on time and whether the production capacity was stable and whether they can deliver according to their original planned timing.

Q    So if you continued making purchases, you believed that the vehicles were being delivered on time and that production capacity was stable and that they could deliver according to their original planned timing?

A    That's correct.

Q    Have you ever invested in other companies that you thought had made false or misleading statements in the past?

A    No.

Case 1:19-cv-01424-NGG-JRC    Document 121-18    Filed 12/23/22    Page 52 of 62
In Re: NIO, Inc. Securities Litigation    PageID #: 2886

Eva Huang
September 06, 2022

111

E. Huang

Q    Do you know if overall you've profited from your investments in NIO?

A    I don't recall, or no longer recall.

Q    Are you still currently invested in NIO?

A    No.

Q    So reviewing the trading records that your counsel provided to us, it indicates you've made approximately $55,000 from your investments in NIO.

Does that sound right to you?

A    I never calculated it.

Q    Is that normal, to not calculate how much you profited or lost from particular investments?

A    I know that I made some money. However, I no longer recall how much.

Q    Okay.

So, Ms. Huang, when did you first consider bringing a lawsuit against NIO?

A    It was after March 6th.  I cannot recall the specific date.

Case 1:19-cv-01424-NGG-JRC   Document 121-18   Filed 12/23/22   Page 53 of 62
In Re: NIO, Inc. Securities Litigation   PageID #: 2887
Eva Huang
September 06, 2022

112

                        E. Huang

        Q      And sorry, just to go back for a

question, do you know if you've ever made a

more -- if you've ever made a more

profitable investment than in NIO?

        A      I no longer recall, or I don't

recall.

        Q      Are there other investments in

companies you can think of today where

you've made more than $50,000?

        A      I don't recall, or I no longer

recall.

        Q      So you can't think of any other

investments?

        A      I don't recall, or no longer

recall.

        Q      What made you think you might

have a securities claim here?

             MR. SHI:  Objection to the

        extent that it asks for a legal

        conclusion.

             Ms. Huang, you may respond to

        the question if you could do so

        without revealing any attorney client

        communication.

Case 1:19-cv-01424-NGG-JRC   Document 121-18   Filed 12/23/22   Page 54 of 62
In Re: NIO, Inc. Securities Litigation   PageID #: 2888

Eva Huang
September 06, 2022

113

E. Huang

A     I think that all of the IPOs should not conceal any information and should provide truthful information and facts to the investors.

And if there were any concealing of information, according to the Securities and Exchange Act 10D, after 25 days of the IPO, the investor could apply to recover their losses.

Q     So that didn't really answer my question.

What made you think you have a securities claim here?

MR. SHI:  Same objection.  Calls for a legal conclusion.

Ms. Huang, you may respond, but do not reveal any attorney client communications.

A     My hope was that through this litigation, I could try to obtain the maximum compensation that the other investors are entitled to.  That's my purpose.  I could monitor the attorneys' work and communicate with the attorneys in

Case 1:19-cv-01424-NGG-JRC   Document 121-18   Filed 12/23/22   Page 55 of 62
In Re: NIO, Inc. Securities Litigation        PageID #: 2889

Eva Huang
September 06, 2022

125

E. Huang

extent it calls for attorney client communications.  You may respond.

A     This was after my discussion with my attorney.  Well, according to -- well, this was up to my attorney's decision because they would do their investigation.

Q     Did you agree with your attorney's decision?

A     I trust my attorneys and I entrust everything to my attorney to handle.

Q     And did you speak with your attorneys about the decision to remove these allegations?

MR. SHI:  Objection.

Q     You can answer yes or no.

MR. SHI:  You might answer it yes or no.

A     Yes.

Q     Now after the original complaint was filed, the Rosen Law Firm filed a motion for Mark Mundy to be lead plaintiff for the class, is that correct?

A     Correct.

126

E. Huang

Q    Why were you not lead plaintiff?

A    Because I did not request to be the lead plaintiff and I did not know at the time either, because if there were another person that would be the lead plaintiff, I can be the assistant.

Q    Do you want to be the lead plaintiff?

A    I am the lead --

MR. SHI:  No, no.

A    I am not the lead plaintiff. However, I am a plaintiff.

Q    Yes, but did you want to be lead plaintiff in the action?

A    About that, I need to discuss with my attorney.

Q    What do you need to discuss with your attorney?

A    I needed to see which way would benefit the class action the most.

Q    Have you discussed that with your attorney to date?

A    No.

Q    Have you ever communicated with

Case 1:19-cv-01424-NGG-JRC    Document 121-18    Filed 12/23/22    Page 57 of 62
In Re: NIO, Inc. Securities Litigation    PageID #: 2891    Eva Huang
September 06, 2022

127

E. Huang

Mark Mundy?

A       No.

Q       Do you know anything about Mark Mundy?

A       No.

Q       Who makes decisions regarding the litigation?

A       I would let my attorneys to make decisions.

Q       If you and Mr. Mundy disagree on any issues regarding the litigation, who would prevail?

A       I would listen to my attorney's advice.

Q       Do you know what Mr. Mundy's losses are?

A       I do not know.

Q       Why are both of you seeking to be class representatives instead of just one person?

MR. SHI:  Objection.  Ms. Huang, you may answer it without revealing any attorney client communications.

A       I don't know.

Case 1:19-cv-01424-NGG-JRC   Document 121-18   Filed 12/23/22   Page 58 of 62
In Re: NIO, Inc. Securities Litigation   PageID #: 2892

Eva Huang
September 06, 2022

128

E. Huang

Q    Now, you did file the amended complaint in this action, correct?

A    My attorneys sent it to me to review.

Q    So let's pull that up now, a document previously marked as Defendant's Exhibit 11.

Now, you said your attorneys sent you a draft. Did you review the amended complaint?

A    Yes.

Q    Did you receive a translated copy of the amended complaint?

A    Yes.

Q    How long did you spend reading the amended complaint?

A    I spent more than half a day of time to read it.

Q    Did you provide any comments?

A    No.

Q    Do you know if Mr. Mundy provided any comments?

A    I don't know.

Q    How many drafts of the amended

148

E. Huang

MS. FLUMENBAUM:  Thank you.

THE VIDEOGRAPHER:  This marks the end of today's deposition.  We are now off the record.  The time is 7:32 p.m.

(Time noted 7:32 p.m.)

* * *

_____

EVA HUANG

Subscribed and sworn to before me this     day of           , 20__

_____

NOTARY PUBLIC

149

```
--------------- I N D E X ----------------

WITNESS              EXAMINATION BY          PAGE

EVA HUANG

                    MS. FLUMENBAUM              8


  ------ EXHIBITS FOR IDENTIFICATION ------


EXHIBIT 13     Bates Plaintiffs 072     78

EXHIBIT 14     Bates Plaintiffs 070     83

EXHIBIT 15     ECF No. 48-1,            88
               Certification

EXHIBIT 16     Bates Plaintiffs 068     95

EXHIBIT 17     Bates Plaintiffs 066     97

EXHIBIT 18     Bates Plaintiffs 064     98

EXHIBIT 19     Bates Plaintiffs 062     100

EXHIBIT 20     Bates Plaintiffs 060     103
```

150

EXHIBITS FOR ID (Continued)


EXHIBIT 21      Bates Plaintiffs 058      105

151

                    C E R T I F I C A T E

STATE OF NEW YORK )

                  :  SS

COUNTY OF NASSAU  )


          I, Joan Ferrara, a Registered

Professional Reporter and Notary Public

within and for the State of New York, do

hereby certify:

          That EVA HUANG, the witness whose

deposition is hereinbefore set forth, was

duly sworn by me and that such deposition is

a true record of the testimony given by the

witness.

          I further certify that I am not

related to any of the parties to this action

by blood or marriage, and that I am in no

way interested in the outcome of this

matter.

          IN WITNESS WHEREOF, I have

hereunto set my hand this 6th day of

September, 2022.

                    _____
                         JOAN FERRARA