1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------x
                                        19-CV-1424(NGG)
IN RE: NIO, INC., SECURITIES
LITIGATION,

                                        United States Courthouse
                                        Brooklyn, New York

                                        May 22, 2024
                                        3:00 a.m.
-------------------------------x

        TRANSCRIPT OF CIVIL CAUSE FOR PREMOTION CONFERENCE
            BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
              UNITED STATES SENIOR DISTRICT JUDGE


APPEARANCES

Attorney for Plaintiff:   THE ROSEN LAW FIRM, P.A.
                          275 Madison Avenue
                          Suite 40th Floor
                          New York, New York 10016
                          BY:  YU SHI, ESQ.
                               LAURENCE MATTHEW ROSEN, ESQ.


Attorney for Defendant:   SKADDEN, ARPS, SLATE, MEAGHER
NIO, Inc.                 & FLOM, LLP
                          One Manhattan West
                          New York, New York, 1001-8602
                          BY:  ROBERT ALEXANDER FUMERTON, ESQ.
                               JUDITH FLUMENBAUM, ESQ.
                               MICHAEL CHARLES GRIFFIN, ESQ.


Attorney for Defendant:   PAUL, WEISS, RIFKIND, WHARTON
Xiangping Zhong           & GARRISON LLP
                          1285 Avenue of the Americas
                          New York, New York 10019-6064
                          BY:  ANDREW JAMES EHRLICH, ESQ.
                               XINSKU SUI, ESQ.

PROCEEDINGS                                    2

APPEARANCES (CONTINUED)


Attorney for Defendant:   MILBANK LLP
Morgan Stanley            55 Hudson Yards
                          New York, New York 10001
                          BY:  JED M. SCHWARTZ, ESQ.
                               ASHLEY A. SATTERLEE, ESQ.



Court Reporter:           LINDA D. DANELCZYK, RPR, CSR, CCR
                          Phone:  718-613-2330
                          Fax:    718-804-2712
                          Email:  LindaDan226@gmail.com


Proceedings recorded by mechanical stenography.  Transcript produced by computer-aided transcription.



                    *    *    *    *    *



          (In open court.)

          THE COURTROOM DEPUTY:  Civil cause for a premotion conference.

          Beginning with the plaintiffs, please state your appearances.

          MR. SHI:  Good afternoon, Your Honor.  Yu Shi, from The Rosen Law Firm for the plaintiffs.

          MR. ROSEN:  Laurence Rosen from The Rosen Law Firm for the plaintiffs.

          MR. FUMERTON:  Good afternoon, Your Honor.  Robert Fumerton, Judith Flumenbaum and Michael Griffin from Skadden

Arps for Defendant NIO.

MR. SCHWARTZ:  Good afternoon.  Jed Schwartz and Ashley Satterlee from Milbank LLP for Defendant Morgan Stanley.

MR. EHRLICH:  Good afternoon, Your Honor.  Andrew Ehrlich and Sylvia Sui on behalf of certain outside directors.

THE COURT:  All right, please be seated everybody.

All right.  Ms. Flumenbaum, where did you do to law school?

MS. FLUMENBAUM:  I went to Harvard, Your Honor.

THE COURT:  Are you related to any other lawyer who practices in New York?  Actually, two, one of whom practices and one of whom is former editor of the Law Journal?

MS. FLUMENBAUM:  I am.

THE COURT:  I announce to everybody that I went to Colombia College with the attorney's mother and father.

You now may be seated.  I embarrassed you, I apologize.

MS. FLUMENBAUM:  I appreciate it, Your Honor.

THE COURT:  Okay, all right.

Plaintiff wants to, in the class action, wants to make a motion for partial summary judgment.  So tell me about it.

MR. SHI:  Yes, Your Honor.  So --

THE COURT:  You don't have to stand.  This is the

PROCEEDINGS                                  4

post-COVID world.  If you are comfortable sitting, just make sure you speak into the microphone.

MR. SHI:  Yes, Your Honor.

So we intend to make a motion, a partial motion, for summary judgment on the issue of falsity, which is common to both the Exchange Act Claim and the Section 11 claim.  And it goes to the issue of whether NIO's registration statement was false and misleading for stating that their factory in Shanghai was already under construction as of the date of NIO's IPO.

THE COURT:  So I understand that.  Why is it necessary or appropriate or preferable to address that issue separately from everything else at this stage of the litigation?

MR. SHI:  So, Your Honor, one of the reasons why we wanted to make that motion was because we're almost three years into discovery and there's still over 80 percent of -- so over 80 percent of documents that NIO has identified for production has yet to be produced.  So we wanted a way to move this litigation along.

So, however, we since -- we filed our premotion letter, we learned that NIO intends to substantially complete their document production by the end of June.

THE COURT:  And so why don't we just wait?  I'm just wondering why we don't just wait until all of the discovery

has been completed and, you know, we can address all the issues on summary judgment at the same time.

MR. SHI:  Yes, Your Honor.

And this is another problem that we have is that -- so NIO claims that before they can produce documents to us, they need to get the Chinese government to review and approve those documents for production.  And although NIO says that they are going to substantially complete production by the end of June, there's still roughly 500 or so documents that they have not yet gotten the Chinese government's approval.

And sitting here today, there appears to be -- there's no indication whether NIO would ever or when NIO would get the Chinese government's approval to produce those documents.

So if we were to wait for discovery to be complete, I don't know how long we would be waiting, and we've already waited three years.  And so -- and unless Your Honor sets a hard deadline for NIO to complete production of all of the documents --

THE COURT:  Who's the magistrate judge on this?

MR. SHI:  Judge Cho.

THE COURT:  Have you spoken to Judge Cho about this?

MR. SHI:  We file status reports, but we haven't specifically asked for relief yet.

THE COURT:  I think that's the first place to go.

Talk to Judge Cho, have a conference with Judge Cho and attempt to work it out.  If you've got a problem and it can't be resolved with Judge Cho, then I would rely on his judgment as to whether I need to do anything to move the matter ahead.

And I'm concerned about piecemeal motion practice. That's my concern here.  And, you know, there are judges over in this court and in the Southern District who really don't support that kind of litigation strategy.

If there's a special reason, if we can't go forward with anything else, because we need an answer on a particular question, then it may be preferable to go ahead with the motion practice for partial summary judgment.  But I'm not hearing anything from you that would tell me that there is some, you know, burning need to engage in motion practice at this time.

But is there anything else that you can tell me that would give me that sense of urgency?

MR. SHI:  Your Honor, I think the primary reason why we wanted to bring that motion is to move this litigation along because, as you know, it has been stalled for a while, and so --

THE COURT:  Let me turn to the defense.  What is your position about the question of whether there's any issue, factual issue, that this facility that was planned never got off the ground?  And I do mean that literally, it never got

PROCEEDINGS                                    7

off the ground.

There's ground there.  Ground was cleared.  There was some, according to what I've seen from the discovery, there were -- what little I've seen, there was -- land was cleared and there were some digging somewhere, but you don't have an edifice to show me that would justify what was placed in your securities documents.

MR. FUMERTON:  Your Honor, no edifice, that's correct, but the discovery record thus far has revealed all sorts of types of construction activity that Your Honor did not have available to you, obviously, on the motion to dismiss.  Some of that activity was referred to in plaintiff's own premotion letter, and Your Honor mentioned the putting up temporary walls, the flattening and backfilling land, digging trenches for drainage, pile piling.

But there's far more that, Your Honor.  Remember here it's not NIO doing the construction.  NIO partners with a governmental entity called the Shanghai International Auto City that's responsible for this initial construction.  They confirmed, as part of the IPO due diligence, that in April 2018, the facility was already under construction. There's a document that shows that.

THE COURT:  Do you have a picture of this document as it existed at the time of the securities filing?

MR. FUMERTON:  We absolutely have the document, and

it's been produced to plaintiffs.  We can give you the Bates number.

THE COURT:  So do you want to resolve this issue of partial summary judgment now so that we can move on with the rest of the case?

I mean, if you've got documentation that, you know, you were well into construction, notwithstanding the fact that as a result of what happened, the market went down 30 percent in that stock.  You know, sometimes, you know, people vote with their -- vote with their pocketbooks.  And, you know, 30 percent diminution in the value of shares is a pretty strong indicator on the part of the investors that they don't believe what you said in your securities filing.

MR. FUMERTON:  Well, Your Honor, respectfully, the stock price declined following the announcement that the project was being terminated.

Plaintiffs do not argue here that the decision to terminate the project had been made as of the IPO.  This entire case rests on plaintiff's allegation that construction was not underway.

We think that there's more then enough in the record for Your Honor to rule on that issue, but we also recognize Your Honor's admonition not to do this piecemeal.  We do think we'll be substantially complete with documents by the end of June, and that there's going to be even more evidence.  So we

have enough already, but there's going to be more evidence of construction.

This governmental partner, Shanghai Auto City, it hired a contractor called Century III. Century III hired all sorts of subcontractors. They gave progress reports. Those have been produced. So we think the record, Your Honor, will be overwhelming here that construction was underway. But we don't disagree with Your Honor's first comment, which is why do this more than once, let's just do this at the conclusion of discovery.

So the short answer is, if Your Honor's prepared to let them go forward on this motion for partial summary judgment now, we intend to cross move on the issue of falsity.

Of course, if we prevail on falsity, it's dispositive of all the claims. If they prevail on falsity, it's just one necessary element. But we're prepared to cross move, and we've actually agreed on a schedule, but we're also fine if Your Honor does not want to do this piecemeal and wants to do it once at the end of discovery.

THE COURT: Well, is the end of discovery June 30th? Is that -- I mean, we're talking about weeks, not years.

MR. FUMERTON: So, Your Honor, in reference to Magistrate Judge Cho, he's been actively monitoring discovery. We've been providing status reports to Judge Cho. He's actually scheduled a conference for July 6th. The parties

have recognized the June 30th deadline will need to be extended, but we've extended the discovery deadlines on consent each time while updating Judge Cho.  We'll be before him on July 6th.  So we don't see any issue to completing discovery here.

THE COURT:  You know, the case is four years old now so, plus.  So I don't want to have any -- I want energy applied to this project rather than just saying, well, you know, I'll wait for you all to extend and extend and extend.  I'd like to get into the motion practice realm this summer.

In other words, I want you to start working on your motions, and if you go see Judge Cho and you extend discovery for a short period of time, then you can just send me your schedule for motion practice and we won't have to come back here to talk about it.

MR. FUMERTON:  That makes sense to us, Your Honor.  Actually, the parties have agreed on a schedule that will allow time to complete that document production and still go forward.

The schedule we've agreed on is that plaintiffs will file their motion in 90 days, that we would then oppose and file our cross motion in 90 days.

THE COURT:  From when?  Today?

MR. FUMERTON:  Today.

And then each side would have -- they would have

then 45 days to reply and oppose our cross motion, and we would have 45 days for the ultimate reply.

Plaintiffs told us today for the first time they intend to have a Chinese law expert as part of their motion papers. We need the opportunity, obviously, to depose that expert.

THE COURT: That's not a big deal, to depose one expert. You know, even if you close discovery otherwise, you can still get Judge Cho to reopen discovery for a very brief period of time so you can depose an expert. And then, of course, you'll have the opportunity to make any motions you have under 702.

MR. FUMERTON: Yes, agreed, Your Honor.

So we think that the schedule the parties have agreed on would give the opportunity to do all of that and operate within the -- and, obviously, have Judge Cho continue to supervise the completion of discovery.

And, Your Honor, just so Your Honor's aware, it's not like we've been sitting around not applying energy to this case. In fact, our PRC counsel has actually been working diligently with Mr. Rosen's PRC counsel. We don't need to get into all the details, but the documents were first submitted to the Ministry of Justice who said, no, don't submit them to us any more, so we went to the Cyberspace Administration. So they put a lot of just uncertainty about who to produce the

documents to for approval, but we've making progress and we're nearing the end we believe.

THE COURT:  I see.

Is that about right?

MR. SHI:  Your Honor, so actually when we filed the premotion letter, NIO's last status report said that they identified there was -- they'll produce a thousand -- roughly a thousand documents to us in the upcoming weeks.

So this status report was filed in the last week of March.  And then they said that there's 6,000 more documents that they will be giving, submitting to the Chinese government for review in the upcoming months.

So prior to showing up here today and being informed by Mr. Fumerton that they intend to produce about 5,500 of those 6,000 documents by the end of June, we were under the impression that they had not even submitted those 6,000 documents to the Chinese government yet.

THE COURT:  Well, you know, my view is that I'll make -- you know, I'll let Judge Cho deal with the close of discovery, but I'm going to take all the motions on the schedule that you've agreed to, and discovery will have to end before you start your motion practice, because I'm not going to go back and repeat these motions for summary judgment after there's additional discovery.

You need to tell Judge Cho the Court is going to

PROCEEDINGS                          13

take motions beginning the 30th of September with cross

motions for summary judgment, and we're going to go from

there.  And then whatever's left at the end of these motions,

we will go to trial, if anything.

MR. SHI:  I'm sorry, Your Honor, one minor

correction would be, although Mr. Fumerton said we agreed to

file our opening motion 90 days from today, we actually agreed

on 60 days from the -- from when defendants produce those

6,000 documents.

THE COURT:  But I don't --

MR. SHI:  So it's roughly --

THE COURT:  Well, 60 days from when they produce the

documents, that's an open ended 60 days.  I don't believe in

open-ended motions, I believe in dates.  That's why I said

September 30th.  I figured about 90 days with a little, you

know, a little extra for, you know --

MR. SHI:  For the opening motion.

THE COURT:  For the open motions, and then we go

from there.

MR. FUMERTON:  Yes, Your Honor, one clarification.

THE COURT:  I can't control what the Chinese

government's going to do, obviously.

MR. FUMERTON:  Understood.

THE COURT:  But I don't -- I'm not going to wait for

them either.  I don't want to wait.  A federal judge in New

PROCEEDINGS                    14

York does not wait for the Chinese government, or any other government, domestic or foreign, or any entity, to come up with the documents.

The documents you need to -- you know, I don't know what their rules are but, you know, if they -- if your documents are not provided in a timely way, the prejudice is to you, not to the plaintiff.  That's the way I view it.

MR. FUMERTON:  Understood, Your Honor.  Just one clarification on the schedule.

The schedule that the parties agreed on would be -- their opening -- their motion would be due 90 days, so roughly September 30th.  Then our opposition and cross motion will be due 90 days from that.

THE COURT:  Okay.

Is that agreeable to you?

MR. SHI:  So our opening motion due September 30th.

THE COURT:  Right.

MR. SHI:  And defendant's cross motion 90 days after.  Yes, that's agreeable.

THE COURT:  Okay, so we're moving right along here.

So September 30th and then December 30th for the response and the cross motion.  And then we're into 2025 -- let me look -- and March 31st for the response to the cross motion by the plaintiff, right?

MR. FUMERTON:  I think, Your Honor, I think it would

be 45 days from December 30th --

THE COURT:  Oh, you want --

MR. FUMERTON:  -- would be their opposition to the cross motion and the reply on their motion, and then we would have 45 days after that just for reply on the cross motion.

THE COURT:  Is that enough time for plaintiffs?

MR. SHI:  Judge, so the 45 days will be both our reply in support of our motion and also the opposition to defendant's cross motion, so I feel like 45 days might not be sufficient.

THE COURT:  It's not sufficient.  March 31st.

MR. FUMERTON:  And then we would have another 45 days --

THE COURT:  For the reply and response to the cross motion.

MR. FUMERTON:  Correct, Your Honor.

THE COURT:  And I will give you 45 days after that, which would be May 15th -- which will be May -- let's make it May 16th would be your response.

And it would be submitted, unless if you ask for oral argument, I certainly would consider it.  Oral argument in a case like this might be very useful, but you have to tell me why you think so.

MR. FUMERTON:  Understood, Your Honor.

THE COURT:  Okay?

And I think you have to go back to Judge Cho now and, you know, nail down the whole issue of the remaining documents and discovery, okay?  So please make an appointment with Judge Cho and go over that with him.

So anything else from plaintiff class for today?

MR. SHI:  No, Your Honor.

THE COURT:  Anything else from the defense?

MR. FUMERTON:  Nothing from defendants, Your Honor.

THE COURT:  Okay.  Well, thanks for coming in.

MR. FUMERTON:  Thank you very much, Your Honor.

THE COURT:  Have a nice day.

MR. SHI:  Thank you, Your Honor.

(Whereupon, the matter was concluded.)

*      *      *      *      *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

s/ Linda D. Danelczyk                    May 24, 2024

LINDA D. DANELCZYK                        DATE

*In Re:  NIO, Inc. Securities Litigation - 19cv1424(NGG)*                                    *1*

MR. EHRLICH: [1]  3/5
MR. FUMERTON: [18]
MR. ROSEN: [1]  2/22
MR. SCHWARTZ: [1]  3/2
MR. SHI: [17]
MS. FLUMENBAUM: [3]  3/10 3/14 3/19
THE COURT: [36]
THE COURTROOM DEPUTY: [1]  2/16

**-**

----------------------------x [2]  1/2 1/6

**1**

10001 [1]  2/3
1001-8602 [1]  1/16
10016 [1]  1/12
10019-6064 [1]  1/21
11 [1]  4/6
1285 [1]  1/20
1424 [1]  1/2
15th [1]  15/18
16th [1]  15/19
19-CV-1424 [1]  1/2

**2**

2018 [1]  7/21
2024 [2]  1/5 16/22
2025 [1]  14/22
22 [1]  1/5
2330 [1]  2/7
24 [1]  16/22
2712 [1]  2/7
275 [1]  1/11

**3**

30 percent [2]  8/8 8/11
30th [9]
31st [2]  14/23 15/11
3:00 [1]  1/6

**4**

40th [1]  1/12
45 [8]  11/1 11/2 15/1 15/5 15/7 15/9
 15/12 15/17

**5**

5,500 [1]  12/14
500 [1]  5/9
55 [1]  2/3

**6**

6,000 [4]  12/10 12/15 12/16 13/9
60 [3]  13/8 13/12 13/13
6064 [1]  1/21
6th [2]  9/25 10/4

**7**

702 [1]  11/12
718-613-2330 [1]  2/7
718-804-2712 [1]  2/7

**8**

80 percent [2]  4/17 4/18
8602 [1]  1/16

**9**

90 [7]  10/21 10/22 13/7 13/15 14/11
 14/13 14/18

**A**

a.m [1]  1/6
above-entitled [1]  16/20
absolutely [1]  7/25
according [1]  7/3
Act [1]  4/6
action [1]  3/21
actively [1]  9/23
activity [2]  7/10 7/12
additional [1]  12/24
address [2]  4/12 5/1
Administration [1]  11/24
admonition [1]  8/23
afternoon [4]  2/20 2/24 3/2 3/5
agreeable [2]  14/15 14/19
agreed [9]
ahead [2]  6/4 6/11
aided [1]  2/10
ALEXANDER [1]  1/17
allegation [1]  8/19
allow [1]  10/18
almost [1]  4/16
Americas [1]  1/20
ANDREW [2]  1/21 3/5
announce [1]  3/15
announcement [1]  8/15
answer [2]  6/10 9/11
apologize [1]  3/18
appearances [3]  1/10 1/22 2/19
applied [1]  10/8
applying [1]  11/19
appointment [1]  16/3
appreciate [1]  3/19
appropriate [1]  4/12
approval [3]  5/10 5/13 12/1
approve [1]  5/6
April [1]  7/21
April 2018 [1]  7/21
argue [1]  8/17
argument [2]  15/21 15/21
ARPS [2]  1/15 3/1
ASHLEY [2]  2/4 3/3
attempt [1]  6/2
Auto [2]  7/18 9/3
available [1]  7/11
Avenue [2]  1/11 1/20
aware [1]  11/18

**B**

backfilling [1]  7/14
Bates [1]  8/1
because [4]  4/16 6/10 6/20 12/22
beginning [2]  2/18 13/1
behalf [1]  3/6
big [1]  11/7
brief [1]  11/9
Brooklyn [1]  1/4
burning [1]  6/14

**C**

case [5]  8/5 8/19 10/6 11/20 15/22

CCR [1]  2/6
Century [2]  9/4 9/4
certain [1]  3/6
certainly [1]  15/21
certify [1]  16/20
CHARLES [1]  1/18
Chinese [8]  5/6 5/10 5/13 11/4 12/11
 12/17 13/21 14/1
Cho [15]
City [2]  7/19 9/3
CIVIL [2]  1/7 2/16
claim [2]  4/6 4/6
claims [2]  5/5 9/15
clarification [2]  13/20 14/9
class [2]  3/21 16/5
cleared [2]  7/2 7/5
close [2]  11/8 12/19
College [1]  3/16
Colombia [1]  3/16
comfortable [1]  4/1
coming [1]  16/9
comment [1]  9/8
common [1]  4/5
complete [6]  4/22 5/8 5/15 5/18 8/24
 10/18
completed [1]  5/1
completing [1]  10/4
completion [1]  11/17
computer [1]  2/10
computer-aided [1]  2/10
concern [1]  6/6
concerned [1]  6/5
concluded [1]  16/15
conclusion [1]  9/9
conference [4]  1/7 2/17 6/1 9/25
confirmed [1]  7/20
consent [1]  10/3
consider [1]  15/21
construction [9]
continue [1]  11/16
CONTINUED [1]  2/1
contractor [1]  9/4
control [1]  13/21
correct [3]  7/9 15/16 16/20
correction [1]  13/6
counsel [2]  11/20 11/21
course [2]  9/14 11/11
Courthouse [1]  1/4
COVID [1]  4/1
cross [13]
CSR [1]  2/6
CV [1]  1/2
Cyberspace [1]  11/24

**D**

DANELCZYK [3]  2/6 16/22 16/23
date [2]  4/9 16/23
dates [1]  13/14
deadline [2]  5/18 10/1
deadlines [1]  10/2
deal [2]  11/7 12/19
December [2]  14/21 15/1
December 30th [2]  14/21 15/1
decision [1]  8/17
declined [1]  8/15

In Re: NIO, Inc. Securities Litigation – 19cv1424(NGG)    2

**D**

Defendant [5]  1/15 1/19 2/2 3/1 3/3
Defendant NIO [1]  3/1
defendant's [2]  14/18 15/9
defendants [2]  13/8 16/8
defense [2]  6/22 16/7
depose [3]  11/5 11/7 11/10
details [1]  11/22
digging [2]  7/5 7/14
diligence [1]  7/20
diligently [1]  11/21
diminution [1]  8/11
directors [1]  3/6
disagree [1]  9/8
discovery [19]
dismiss [1]  7/12
dispositive [1]  9/15
DISTRICT [4]  1/1 1/1 1/8 6/7
document [5]  4/23 7/22 7/23 7/25 10/18
documentation [1]  8/6
documents [20]
domestic [1]  14/2
down [2]  8/8 16/2
drainage [1]  7/15
due [4]  7/20 14/11 14/13 14/16

**E**

EASTERN [1]  1/1
edifice [2]  7/6 7/8
editor [1]  3/13
EHRLICH [2]  1/21 3/6
either [1]  13/25
element [1]  9/16
Email [1]  2/8
embarrassed [1]  3/17
energy [2]  10/7 11/19
engage [1]  6/14
entire [1]  8/19
entitled [1]  16/20
entity [2]  7/18 14/2
ESQ [9]
evidence [2]  8/25 9/1
Exchange [1]  4/6
existed [1]  7/24
expert [4]  11/4 11/6 11/8 11/10
extend [4]  10/9 10/9 10/9 10/12
extended [2]  10/2 10/2
extra [1]  13/16

**F**

facility [2]  6/24 7/21
fact [2]  8/7 11/20
factory [1]  4/8
factual [1]  6/24
false [1]  4/8
falsity [4]  4/5 9/13 9/14 9/15
far [2]  7/9 7/16
father [1]  3/16
Fax [1]  2/7
federal [1]  13/25
figured [1]  13/15
file [4]  5/23 10/21 10/22 13/7
filed [3]  4/21 12/5 12/9
filing [2]  7/24 8/13

fine [1]  9/18
FIRM [3]  1/11 2/21 2/22
first [4]  5/25 9/8 11/3 11/22
flattening [1]  7/14
FLOM [1]  1/15
Floor [1]  1/12
FLUMENBAUM [3]  1/17 2/25 3/8
following [1]  8/15
foregoing [1]  16/20
foreign [1]  14/2
former [1]  3/13
forward [3]  6/9 9/12 10/19
four [1]  10/6
FUMERTON [4]  1/17 2/25 12/14 13/6

**G**

GARAUFIS [1]  1/8
GARRISON [1]  1/20
gmail.com [1]  2/8
government [5]  5/6 12/11 12/17 14/1 14/2
government's [3]  5/10 5/13 13/22
governmental [2]  7/18 9/3
GRIFFIN [2]  1/18 2/25
ground [4]  6/25 7/1 7/2 7/2

**H**

hard [1]  5/18
Harvard [1]  3/10
hired [2]  9/4 9/4
Honor [34]
Honor's [4]  8/23 9/8 9/11 11/18
HONORABLE [1]  1/8
Hudson [1]  2/3

**I**

identified [2]  4/18 12/7
III [2]  9/4 9/4
impression [1]  12/16
INC [2]  1/3 1/15
indication [1]  5/12
indicator [1]  8/12
informed [1]  12/13
initial [1]  7/19
intend [4]  4/4 9/13 11/4 12/14
intends [1]  4/22
International [1]  7/18
investors [1]  8/12
IPO [3]  4/10 7/20 8/18
issue [10]
issues [1]  5/2

**J**

JAMES [1]  1/21
JED [2]  2/4 3/2
Journal [1]  3/13
judge [19]
Judge Cho [14]
judges [1]  6/6
judgment [9]
JUDITH [2]  1/17 2/25
July [2]  9/25 10/4
July 6th [2]  9/25 10/4
June [6]  4/23 5/9 8/25 9/20 10/1 12/15
June 30th [2]  9/20 10/1

Justice [1]  11/23
justify [1]  7/6

**L**

land [2]  7/4 7/14
LAURENCE [2]  1/13 2/22
law [6]  1/11 2/21 2/22 3/8 3/13 11/4
lawyer [1]  3/11
learned [1]  4/22
left [1]  13/3
letter [3]  4/22 7/13 12/6
LINDA [3]  2/6 16/22 16/23
LindaDan226 [1]  2/8
literally [1]  6/25
litigation [5]  1/3 4/14 4/20 6/8 6/19
LLP [4]  1/15 1/20 2/2 3/3

**M**

Madison [1]  1/11
magistrate [2]  5/20 9/23
Manhattan [1]  1/16
March [3]  12/10 14/23 15/11
March 31st [2]  14/23 15/11
market [1]  8/8
matter [3]  6/4 16/15 16/20
MATTHEW [1]  1/13
May 15th [1]  15/18
May 16th [1]  15/19
MEAGHER [1]  1/15
mean [3]  6/25 8/6 9/21
mechanical [1]  2/10
mentioned [1]  7/13
MICHAEL [2]  1/18 2/25
microphone [1]  4/2
might [2]  15/9 15/22
MILBANK [2]  2/2 3/3
Ministry [1]  11/23
minor [1]  13/5
misleading [1]  4/8
monitoring [1]  9/23
months [1]  12/12
Morgan [2]  2/3 3/3
mother [1]  3/16
motion [31]
motions [9]
move [6]  4/19 6/4 6/19 8/4 9/13 9/17
moving [1]  14/20
Mr. Fumerton [2]  12/14 13/6
Mr. Rosen's [1]  11/21
Ms. Flumenbaum [1]  3/8

**N**

nail [1]  16/2
nearing [1]  12/2
necessary [2]  4/12 9/16
need [9]
never [2]  6/24 6/25
NGG [1]  1/2
nice [1]  16/11
NICHOLAS [1]  1/8
NIO [12]
NIO's [3]  4/7 4/10 12/6
Nothing [1]  16/8
notwithstanding [1]  8/7
number [1]  8/2

**O**

obviously [4]  7/11 11/5 11/16 13/22
old [1]  10/6
open [4]  2/15 13/13 13/14 13/18
open-ended [1]  13/14
opening [4]  13/7 13/17 14/11 14/16
operate [1]  11/16
opportunity [3]  11/5 11/11 11/15
oppose [2]  10/21 11/1
opposition [3]  14/12 15/3 15/8
oral [2]  15/21 15/21
otherwise [1]  11/8
outside [1]  3/6
overwhelming [1]  9/7
own [1]  7/13

**P**

P.A [1]  1/11
papers [1]  11/5
part [3]  7/20 8/12 11/4
partial [5]  3/22 4/4 6/12 8/4 9/12
particular [1]  6/10
parties [4]  9/25 10/17 11/14 14/10
partner [1]  9/3
partners [1]  7/17
PAUL [1]  1/19
percent [4]  4/17 4/18 8/8 8/11
period [2]  10/13 11/10
Phone [1]  2/7
picture [1]  7/23
piecemeal [3]  6/5 8/23 9/18
pile [1]  7/15
piling [1]  7/15
place [1]  5/25
placed [1]  7/6
plaintiff [5]  1/11 3/21 14/7 14/24 16/5
plaintiff's [2]  7/12 8/19
plaintiffs [8]  2/18 2/21 2/23 8/1 8/17
 10/20 11/3 15/6
planned [1]  6/24
plus [1]  10/7
pocketbooks [1]  8/10
position [1]  6/23
post [1]  4/1
post-COVID [1]  4/1
practice [6]  6/5 6/12 6/14 10/10 10/14
 12/22
practices [2]  3/12 3/12
PRC [2]  11/20 11/21
preferable [2]  4/12 6/11
prejudice [1]  14/6
premotion [5]  1/7 2/16 4/21 7/13 12/6
prepared [2]  9/11 9/16
pretty [1]  8/11
prevail [2]  9/14 9/15
price [1]  8/15
primary [1]  6/18
problem [2]  5/4 6/2
proceedings [2]  2/10 16/20
produce [7]  5/5 5/13 11/25 12/7 12/14
 13/8 13/12
produced [4]  2/10 4/19 8/1 9/6
production [6]  4/19 4/23 5/7 5/8 5/18
 10/18

progress [2]  9/5 12/1
project [3]  8/16 8/18 10/8
provided [1]  14/6
providing [1]  9/24
put [1]  11/25
putting [1]  7/13

**R**

rather [1]  10/8
RE [1]  1/3
really [1]  6/7
realm [1]  10/10
reason [2]  6/9 6/18
reasons [1]  4/15
recognize [1]  8/22
recognized [1]  10/1
record [4]  7/9 8/21 9/6 16/20
recorded [1]  2/10
reference [1]  9/22
referred [1]  7/12
registration [1]  4/7
related [1]  3/11
relief [1]  5/24
rely [1]  6/3
remaining [1]  16/2
Remember [1]  7/16
reopen [1]  11/9
repeat [1]  12/23
reply [6]  11/1 11/2 15/4 15/5 15/8 15/14
report [2]  12/6 12/9
Reporter [1]  2/6
reports [3]  5/23 9/5 9/24
resolve [1]  8/3
resolved [1]  6/3
respectfully [1]  8/14
response [4]  14/22 14/23 15/14 15/19
responsible [1]  7/19
rest [1]  8/5
rests [1]  8/19
result [1]  8/8
revealed [1]  7/9
review [2]  5/6 12/12
RIFKIND [1]  1/19
ROBERT [2]  1/17 2/24
ROSEN [5]  1/11 1/13 2/21 2/22 2/22
Rosen's [1]  11/21
roughly [4]  5/9 12/7 13/11 14/11
RPR [1]  2/6
rule [1]  8/22
rules [1]  14/5

**S**

SATTERLEE [2]  2/4 3/3
schedule [8]  9/17 10/14 10/17 10/20
 11/14 12/21 14/9 14/10
scheduled [1]  9/25
school [1]  3/9
SCHWARTZ [2]  2/4 3/2
seated [2]  3/7 3/17
Section [1]  4/6
Section 11 [1]  4/6
securities [4]  1/3 7/7 7/24 8/13
SENIOR [1]  1/8
sense [2]  6/17 10/16
separately [1]  4/13

September [5]  13/1 13/15 14/12 14/16
 14/21
September 30th [4]  13/15 14/12 14/16
 14/21
sets [1]  5/17
Shanghai [3]  4/9 7/18 9/3
shares [1]  8/11
SHI [2]  1/13 2/20
short [2]  9/11 10/13
side [1]  10/25
sitting [3]  4/1 5/11 11/19
SKADDEN [2]  1/15 2/25
SLATE [1]  1/15
somewhere [1]  7/5
sorts [2]  7/10 9/5
Southern [1]  6/7
special [1]  6/9
specifically [1]  5/24
spoken [1]  5/22
stage [1]  4/13
stalled [1]  6/20
stand [1]  3/25
Stanley [2]  2/3 3/4
start [2]  10/11 12/22
state [1]  2/18
statement [1]  4/7
STATES [3]  1/1 1/4 1/8
stating [1]  4/8
status [4]  5/23 9/24 12/6 12/9
stenography [1]  2/10
stock [2]  8/9 8/15
strategy [1]  6/8
strong [1]  8/12
subcontractors [1]  9/5
submit [1]  11/23
submitted [3]  11/22 12/16 15/20
submitting [1]  12/11
substantially [3]  4/22 5/8 8/24
sufficient [2]  15/10 15/11
SUI [2]  1/22 3/6
Suite [1]  1/12
summary [8]  3/22 4/5 5/2 6/12 8/4 9/12
 12/23 13/2
summer [1]  10/10
supervise [1]  11/17
support [2]  6/8 15/8
Sylvia [1]  3/6

**T**

temporary [1]  7/14
terminate [1]  8/18
terminated [1]  8/16
thousand [2]  12/7 12/8
three [2]  4/16 5/17
timely [1]  14/6
today [7]  5/11 10/23 10/24 11/3 12/13
 13/7 16/5
trenches [1]  7/15
trial [1]  13/4
turn [1]  6/22
two [1]  3/12
types [1]  7/10

**U**

ultimate [1]  11/2

*In Re:   NIO, Inc. Securities Litigation – 19cv1424(NGG)*       *4*

**U**

uncertainty [1]  11/25
Understood [3]  13/23 14/8 15/24
underway [2]  8/20 9/7
UNITED [3]  1/1 1/4 1/8
unless [2]  5/17 15/20
upcoming [2]  12/8 12/12
updating [1]  10/3
urgency [1]  6/17
useful [1]  15/22

**V**

value [1]  8/11
view [2]  12/18 14/7
vote [2]  8/9 8/10

**W**

wait [7]  4/24 4/25 5/15 10/9 13/24
 13/25 14/1
waited [1]  5/17
waiting [1]  5/16
walls [1]  7/14
wants [3]  3/21 3/21 9/19
week [1]  12/9
weeks [2]  9/21 12/8
WEISS [1]  1/19
West [1]  1/16
WHARTON [1]  1/19
whatever's [1]  13/3
whole [1]  16/2
wondering [1]  4/25
words [1]  10/11
world [1]  4/1

**X**

Xiangping [1]  1/20
XINSKU [1]  1/22

**Y**

Yards [1]  2/3
years [4]  4/17 5/17 9/21 10/6
YORK [12]
YU [2]  1/13 2/20

**Z**

Zhong [1]  1/20