February 26, 2025

**VIA ECF**

The Honorable James R. Cho
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *In re NIO Inc. Securities Litigation,* Case No. 1:19-cv-01424-NGG-JRC

Dear Judge Cho:

Pursuant to Rule F.4 of Your Honor's Individual Practices, Class Representatives Mark Mundy and Eva Huang ("Plaintiffs") and Defendant NIO Inc. ("NIO") respectfully submit their respective positions concerning a discovery dispute.

                    Respectfully submitted,

                    /s/ Laurence M. Rosen
                    *Counsel for Plaintiffs*

                    /s/ Robert A. Fumerton
                    *Counsel for NIO*

CC: All Counsel of Record Via ECF

**Plaintiffs' Position**

Plaintiffs respectfully seek an order requiring Defendant NIO Inc. to produce certain documents that it has withheld on the basis of PRC blocking statutes.

Background

On October 14, 2024, NIO served on Plaintiffs a categorical log of "Documents Withheld Pursuant to PRC Regulations." (Ex. 1; "Withholding Log"). The Withholding Log contains nine categories of documents, totaling 950 documents responsive to Plaintiffs' requests for production, that NIO has withheld on the grounds of Chinese law. Plaintiffs seek production of the documents in categories 1 to 4 of the Withholding Log.

There is No Conflict of Law

To determine "whether foreign law stands as a bar to discovery, the party opposing production bears the burden of proving what that law is and demonstrating why it impedes production." *S.E.C. v. Gibraltar Glob. Sec., Inc.*, 2015 WL 1514746, at *2 (S.D.N.Y. Apr. 1, 2015). NIO has not met this burden. NIO's bald assertion that the documents contain "sensitive government information" or "non-public information" does not make them so. In fact, NIO's counsel of record in this action has not even seen the withheld documents.

"Without a demonstrable conflict, no comity analysis is necessary." *In re Aphria, Inc. Sec. Litig.*, 2024 WL 4335819, at *3 (S.D.N.Y. Sept. 27, 2024).[1]

Even if a Conflict of Law Exists, a Comity Analysis Weighs in Favor of Compelling Production

"It is well settled that [foreign blocking] statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 & n.29 (1987). The Supreme Court has established five factors for courts to consider when conducting a comity analysis for foreign discovery: "(1) the importance to the ... litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located." *Id.*, at 544.

"The fifth factor - the balancing of national interests - is the most important, as it directly addresses the relations between sovereign nations." *S.E.C. v. Gibraltar Glob. Sec., Inc.*, 2015 WL 1514746, at *5 (S.D.N.Y. Apr. 1, 2015). This factor strongly favors disclosure here.

The U.S. has an undeniably strong interest in regulating its securities markets. *See S.E.C. v. Euro Sec. Fund*, 1999 WL 182598, at *4 (S.D.N.Y. Apr. 2, 1999); *S.E.C. v. Banca Della Svizzera Italiana*, 92 F.R.D. 111, 117 (S.D.N.Y. 1981) ("[t]he strength of the United States interest in

---

[1] Plaintiffs do not believe Your Honor's rule - requiring the submission of a 3-page joint letter prior to filing any discovery motion - countenances parties attaching expert reports as part of the joint letter. To the extent that NIO attaches an expert report as part of this submission *and* the Court is inclined to consider NIO's expert report, Plaintiffs respectfully request that they be permitted to supplement their submission with an expert report.

enforcing its securities laws to ensure the integrity of its financial markets cannot seriously be doubted."). As Judge McMahon of the S.D.N.Y. stated: "If you want to raise money in the [U.S.], the only laws that matter to me are the laws of the United States of America." *Christine Asia Co. Ltd. et al v. Ma et al*, No. 1:15-MD-02631 (S.D.N.Y.), 1/12/18 Status Conf. Tr. at 11.

The PRC's interest in protecting this information is less compelling. In *Valsartan*, a case concerning similar PRC blocking statutes, the court held that "factor 5 tips heavily in favor of U.S. interests and disclosure" because the PRC's "broad flexibility in defining state secrets" "can serve to justify nondisclosure of any information a PRC governmental agency wants to keep out of U.S. litigation, especially if that prohibition helps to sidestep the liability of large and successful PRC defendants." *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, 2021 WL 6010575, at *13 (D.N.J. Dec. 20, 2021). S*ee also, Philips Medical Sys. (Cleveland), Inc. v. Buan, et al.,* 2022 WL 602485 (N.D. Ill. Mar. 1, 2022) (holding that a PRC defendants' interpretation of Chinese blocking statutes "would in essence permit the [Chinese government] to oversee discovery decisions made by American courts regarding the responsibilities of Chinese litigants." The PRC blocking statute represents "an attempt to insert [the Chinese government] into the American legal process for the potential benefit of Chinese litigants. Not only would such a law infringe upon the sovereignty of the United States…but it would also severely disadvantage parties opposing Chinese litigants in American courts. As a result, the United States has a strong interest in not limiting discovery because of [the Chinese blocking statute]."

Moreover, there is no evidence that the PRC government has even objected to the disclosure of the documents at issue here. *See, e.g., Gucci Am., Inc. v. Curveal Fashion*, 2010 WL 808639, at *6 (S.D.N.Y. Mar. 8, 2010) ("the Malaysian government has not voiced any objections to disclosure in this case, which the Second Circuit has found 'militates against a finding that strong national interests of the foreign country are at stake.'") (citing *U.S. v. Davis,* 767 F.2d 1025, 1035 (2d Cir.1985). A defendant's self-serving representation that the Chinese government does not allow disclosure is not sufficient evidence of the Chinese government's objection. *In re DiDi Global Inc. Sec. Litig.,* 2025 WL 267893, at *3 (S.D.N.Y. Jan. 22, 2025) (holding that "there is no reliable evidence that the Chinese government has objected to disclosure of this information" just because the defendant claimed that it reached out to the Chinese government for guidance and was told that it was not permitted to disclose the information being sought).

The other *Aerospatiale* factors also weigh strongly in favor of disclosure:

Factor 1 (importance of information to the litigation) weighs heavily in favor of disclosures. This case concerns a factory that NIO had partnered with a Chinese state-owned entity to construct. Plaintiffs allege that construction of this factory had not started at the time of NIO's IPO, and that NIO eventually had to cancel plans to build this factory because of insufficient funds. NIO claimed that construction had started and that it cancelled the factory because of a government directive permitting joint-manufacturing. The documents in categories 1 to 4 include communications and agreements with the state-owned entity, as well as communications concerning government approvals and licenses (*i.e.*, prerequisites for construction). These documents, which cover the period from October 2017 (approximately when NIO and the state-owned entity entered into a framework agreement to build this factory) through February 2019 (right before NIO announced that it was terminating the factory), are important to this case because they could reveal, among

other things, what conditions and requirements the government placed on commencement of construction, who cancelled the agreement to build this factory, and for what reasons.[2]

Any suggestion that Plaintiffs "do not need" these documents is disingenuous since NIO's counsel of record has not even seen the documents being withheld, and is in no position to comment on their necessity. Moreover, Plaintiffs' request here is targeted: while NIO has withheld 9 categories of documents, Plaintiffs only seek those in categories 1 through 4.

Factors 2 (specificity of the request) and 4 (alternative means) further weigh in favor of disclosure. Plaintiffs' document requests were tailored to target relevant documents and further narrowed after meet-and-confers with NIO. Plaintiffs have no alternative means of obtaining the information. *DiDi,* 2025 WL 267893, at *3 ("[C]ourts in this district repeatedly have held that proceeding via the Hague Convention is 'not a viable alternative method' of securing discovery from China."). Further, parties are not required to "first resort to Convention procedures whenever discovery is sought from a foreign litigant." *Id.*[3]

While NIO might highlight the volume of documents produced in this action by all defendants, or that Plaintiffs will be taking depositions in the coming months, it is axiomatic that the number of documents produced by *all defendants* (the vast majority of which were produced by the Underwriters, not NIO) has no bearing on the importance of documents that *NIO* has withheld. Similarly, that Plaintiffs will be taking depositions that they are entitled to as of right under the FRCP does not obviate the need for, or displace Plaintiffs' right to, documents.

Some courts in the Second Circuit also consider two additional factors: the hardship that compliance imposes on the party resisting discovery, and whether they are acting in good faith. *Wultz*, 910 F. Supp. 2d at 553. These factors also weigh in favor of disclosure. First, NIO has failed to establish any hardship. Plaintiffs are not aware of any PRC-based company that was punished for abiding by the discovery orders of a U.S. court. *See, e.g., Concepts NREC, LLC v. Qiu*, 662 F. Supp. 3d 496, 532 (D. Vt.), *objections overruled,* 698 F. Supp. 3d 698 (D. Vt. 2023) (enforcing subpoena, in part, because "the Court has no information demonstrating that a Chinese individual or entity has been penalized under the [Data Security Law] or other Chinese laws for compliance with a discovery demand in a U.S. court"). To the extent NIO has to choose between being sanctioned in the U.S. or the PRC, NIO has no one but itself to blame. NIO and its counsel knew that going public in the U.S. would subject it to U.S. laws. NIO cannot use the U.S. markets to enrich themselves while escaping liability from U.S. investors. *See, e.g., Valsartan,* 2021 WL 6010575, at *18 ("Even though between a 'legal rock and hard place,' PRC defendants cannot enter the U.S. market expecting a possible shield from unfavorable discovery by PRC blocking statutes.").

Plaintiffs respectfully request that the Court order NIO to produce all documents in categories 1 to 4 of the Withholding Log.

---

[2] Indeed, as it related to Factor 5, it's not evident how the disclosure of documents concerning a factory that was never built harms Chinese data privacy, state secrets, or criminal laws.

[3] Factor 4 is intertwined with Factor 3 (origin of information); although the documents being sought here likely originated in China, where "the information cannot be easily obtained through alternative means, the origin of the information can be counterbalanced with the inability to obtain the information through an alternative means, thus favoring disclosure." *DiDi,* 2025 WL 267893, at *3 (internal citations omitted).

**NIO'S POSITION**

After Defendants produced over 100,000 documents and with depositions ongoing, Plaintiffs now seek to compel production of an additional approximately 700 documents from NIO's privilege log[1] (the "Privileged Documents") that NIO withheld pursuant to People's Republic of China ("PRC") regulations, many from years prior to NIO's IPO at issue in this litigation. NIO should not be required to produce the Privileged Documents for at least the following reasons:

I.      **THE PRIVILEGED DOCUMENTS ARE NOT NECESSARY FOR PLAINTIFFS TO PROVE THEIR CLAIMS.**

Plaintiffs cannot show any need for the Privileged Documents. Defendants have produced over 100,000 documents so far in this litigation, and Plaintiffs have already deposed NIO's 30(b)(6) corporate representative for over seven hours. Plaintiffs also plan to depose NIO's Founder, Chairman and CEO, NIO's Industrial Planning Manager, a current Board Member, a former Board Member, a representative from Citigroup Inc., and a 30(b)(6) corporate representative from Morgan Stanley in the coming months.

In any event, the four categories of documents Plaintiffs seek to compel have no bearing on the dispute in this case—*i.e.*, whether NIO misled investors in its September 2018 IPO Offering Documents about whether construction had begun on NIO's manufacturing plant (the "Shanghai Facility"). The Privileged Documents include communications between NIO, Shanghai Autocity (the government entity responsible for construction of the Shanghai Facility), and Century 3 (the company that managed construction) regarding cooperation memorandums and agreements with the Shanghai government (Categories 1, 2), government approval applications, (Category 3), and government licenses (Category 4). Critically, many of these communications pre-date the IPO *by almost one year*, and thus do not speak to NIO's knowledge of the status of construction at the time of its IPO. Moreover, any knowledge NIO had about pre-IPO construction work on the Shanghai Facility is reflected in the contemporaneous progress reports Century 3 provided to NIO. Because Defendants have already produced these progress reports to Plaintiffs, compelling production of the Privileged Documents would be unnecessarily cumulative.

II.     **NIO MUST BALANCE U.S. DISCOVERY DEMANDS WITH COMPETING PRC REGULATIONS AND RESTRICTIONS.**

NIO has made every effort to cooperate in discovery and provide information to Plaintiffs notwithstanding its obligation to comply with PRC regulations. NIO received guidance from the PRC government that disclosure of the Privileged Documents was prohibited. Specifically, the Privileged Documents involve discussions by and among the Shanghai government about approvals and licensing. Producing the Privileged Documents would require NIO to impermissibly disclose sensitive, non-public information about government administration and decision-making, in violation of applicable Chinese laws and regulations, including without

---

[1]     Citations to "Category __" refer to each of the enumerated categories of documents in the Categorical Log of Defendant NIO, Inc. for Documents Withheld Pursuant to PRC Regulations, exchanged October 14, 2024. (Ex. 1.)

limitation (i) the PRC Law on Guarding State Secrets, (ii) the Data Security Law, and (iii) the Interpretation of the Supreme People's Court on Several Issues Concerning Application of the Law to the Hearing of Cases of Stealing, Spying, Buying, or Illegally Providing State Secrets or Intelligence for Overseas Parties.  Disclosure of the Privileged Documents would constitute a direct violation of the relevant PRC regulations and subject NIO to penalties.

**III.    INTERNATIONAL COMITY WEIGHS AGAINST PRODUCTION.**

Where a conflict exists between a U.S. discovery request and Chinese law, a comity analysis is required.  *In re Commodity Exch., Inc., Gold Futures & Options Trading Litig.*, No. 14-MD-2548 (VEC), 2019 WL 1988525, at *2 (S.D.N.Y. May 6, 2019).  Courts in this Circuit have found that the most significant factors in the analysis are "the competing interests of the countries involved and the hardship imposed by compliance."  *Id*. (citation omitted).  Here, all factors weigh against production.

Importance of Information to the Litigation:  The Privileged Documents are largely irrelevant to this dispute, as many pre-date the IPO by over a year.[2]  Further, NIO's communications with government entities are relevant only to the extent they show whether NIO knew construction had begun on the Shanghai Facility, which is reflected in contemporaneous progress reports already produced to Plaintiffs.

Specificity of Request:  Given that Defendants have already produced over 100,000 documents, Plaintiffs must provide specific and compelling reasons that the Privileged Documents "are relevant and important to the case . . . notwithstanding the voluminous, unredacted production that Plaintiffs are otherwise receiving."  *In re Commodity Exch., Inc.*, 2019 WL 1988525, at *6.  Plaintiffs did not—and indeed, cannot—do so here.

Origin of Information:  Because the Privileged Documents originate in the PRC, this factor undoubtedly weighs against production.

Alternative Means:  If the requested information can be obtained elsewhere, "there is little or no reason to require a party to violate foreign law."  *CE Int'l Res. Holdings, LLC v. S.A. Mins. Ltd. P'ship*, No. 12-CV-08087 (CM) (SN), 2013 WL 2661037, at *10 (S.D.N.Y. June 12, 2013) (citation omitted).  The information Plaintiffs seek can be obtained through documents already produced.  Moreover, depositions have been scheduled for several witnesses in the upcoming months.  Plaintiffs should first probe those witnesses' non-privileged knowledge before seeking production.

---

[2]    By contrast, in Plaintiffs' cases, the courts found that the privileged information directly related to the allegations in those litigations.  *In re DiDi Glob. Inc. Sec. Litig.*, No. 21-CV-5807 (LAK), 2025 WL 267893, at *4 (S.D.N.Y. Jan. 22, 2025) (sought 30(b)(6) deposition of defendant in dispute about whether company failed to disclose directive from the PRC); *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, MDL No. 2875 (RBK), 2021 WL 6010575, at *14 (D.N.J. Dec. 20, 2021) (in drug contamination case, sought site inspections, safety evaluations, contamination reports); *SEC v. Banca Della Svizzera Italiana*, 92 F.R.D. 111 (S.D.N.Y. 1981) (in insider trading case, sought identities of alleged insider trading participants); *Gucci Am., Inc. v. Curveal Fashion*, No. 09-CV-8458 (RJS) (THK), 2010 WL 808639, at *3 (S.D.N.Y. Mar. 8, 2010) (enforcement of judgment required bank records).

Balance of National Interests:  It is indisputable that the PRC has a strong interest in enforcing its data privacy, state secrecy and criminal laws.[3] *Tiffany (NJ) LLC v. Andrew*, 276 F.R.D. 143, 156-57 (S.D.N.Y. 2011), *aff'd sub nom. Tiffany (NJ) LLC v. Andrew*, No. 10-CV-9471 (WHP), 2011 WL 11562419 (S.D.N.Y. Nov. 14, 2011) (limited exceptions to liability and multiple criminal and civil regulations on the same subject indicated strong foreign interest). The strength of the U.S.'s interest in obtaining discovery therefore turns on whether the substance of the discovery is "actually material to Plaintiffs' efforts to enforce this nation's . . . laws and, if so, whether that information can be obtained through alternative means."[4]  *In re Commodity Exch., Inc.*, 2019 WL 1988525, at *5; *see also Doubleline Cap. LP v. Odebrecht Fin., Ltd.*, No. 17-CV-4576 (GHW) (BCM), 2021 WL 4596561, at *13 (S.D.N.Y. Oct. 6, 2021). As discussed, the Privileged Documents are not "actually material to Plaintiffs' efforts" to pursue their remedy.  (*See supra* § I.)  Hence, China's interests predominate.

Hardship of Compliance:  Even a "slight" risk of potential liability strongly weighs against production.  *See Kashef v. BNP Paribas S.A.*, No. 16-CV-3228 (AKH) (JW), 2022 WL 1617489, at *4 (S.D.N.Y. May 23, 2022).  Here, producing the Privileged Documents would require NIO to violate PRC law, subjecting NIO to sanctions, criminal liability, restriction of political rights and other penalties.  The severity of these potential consequences strongly weighs against production.[5]

Good Faith:  NIO has made every effort to cooperate with discovery in good faith and produced a privilege log with narrowly tailored categories.  Notably, out of over 100,000 documents, Plaintiffs only dispute 700 Privileged Documents, which contain information that can be gleaned from documents already produced.

*** 

For at least the reasons demonstrated above, NIO respectfully submits that Plaintiffs' motion to compel be denied.

---

[3]  Plaintiffs' cases are inapposite.  Here, PRC authorities confirmed that disclosure would violate PRC laws and regulations.  *Banca Della Svizzera Italiana*, 92 F.R.D. at 117 (country did not oppose disclosure); *Gucci*, 2010 WL 808639 (same); *Valsartan*, 2021 WL 6010575, at *13 (documents "may" implicate PRC law); *Philips Med. Sys., Inc. v. Buan*, No. 19-CV-2648, 2022 WL 602485, at *1 (N.D. Ill. Mar. 1, 2022) (same); *SEC v. Euro Sec. Fund*, No. 98-CV-7347 (DLC), 1999 WL 182598, at *3-4 (S.D.N.Y. Apr. 2, 1999) (no conflict and only foreign interest was "Swiss secrecy").  Where, as here, "Defendants [had] a good faith reason to believe" that production violated PRC law, they were permitted to provide only a privilege log.  *Philips*, 2022 WL 602485, at *1.

[4]  Plaintiffs cases are unavailing.  In both, the U.S. had a particularly strong interest because the plaintiff was the S.E.C.  *Euro Sec. Fund*, 1999 WL 182598, at *4; *Banca Della Svizzera Italiana*, 92 F.R.D. at 117-18.

[5]  *See, e.g.*, *Tiffany (NJ) LLC*, 276 F.R.D. at 159 ("[B]ecause [PRC] regulations have been used to the detriment of banks in the past, and the potentially harsh sanctions are applicable to both the Banks and their personnel, the potential for hardship places this factor in favor of the Banks.").  Plaintiffs' citation to *Concepts* is factually inapposite.  There, Defendants had not sought guidance from the PRC authorities or obtained PRC guidance that production would violate the law.  *Concepts NREC, LLC v. Qiu*, 662 F. Supp. 3d 496, 532 (D. Vt. 2023), *objections overruled*, 698 F. Supp. 3d 698 (D. Vt. 2023).

3

# EXHIBIT 1

CONFIDENTIAL

| Categorical Log of Defendant NIO Inc. for Documents Withheld Pursuant to PRC Regulations<br>*In re NIO, Inc. Securities Litigation*, 19-cv-1424 (NGG) (JRC)<br>Exchanged October 14, 2024 | | | | | |
|---|---|---|---|---|---|
| **Category** | **Date Range** | **Key Individuals Involved** | **Category Description** | **Applicable Protection (PRC Regulations)** | **Document Count** |
| 1 | 10/22/2017 – 8/8/2018 | **NIO:** Colliven Ke; Jessie Wu; William Li; Lihong Qin; Jack Cheng; Charlie Zhang; Hannah Sun; Leilei Liu; Cindy Cao; Danting Shi; Heather Diwu; Ting Zhang; Fang Liu<br><br>**Other Parties:** Individuals from Shanghai International Automobile City (SIAC)<br><br>**Domain Names Involved:** @nio.com; @siac-autopark.com | Cooperation memorandum with a government partner and related documents containing sensitive government information | Law on Guarding State Secrets (Arts. 2, 13, 64);<br><br>Data Security law (Art. 36);<br><br>Supreme People's Court's Judicial Interpretation on Several Issues concerning the Specific Application of the Law in the Trial of Cases of Stealing, Spying on, Purchasing or Illegally Providing State Secrets or Intelligence to Entities outside the PRC Territory (Art. 5) | 75 |

CONFIDENTIAL

| Category | Date Range | Key Individuals Involved | Category Description | Applicable Protection (PRC Regulations) | Document Count |
|---|---|---|---|---|---|
| 2 | 12/28/2017 – 10/18/2018 | **NIO:** Ting Zhang; Jessie Wu; Colliven Ke<br><br>**Other Parties:** Individuals from SIAC<br><br>**Domain Names Involved:** @nio.com; @siac-sh.com | Agreements with a government partner and related documents containing sensitive government information | Law on Guarding State Secrets (Arts. 2, 13, 64);<br><br>Data Security law (Art. 36);<br><br>Supreme People's Court's Judicial Interpretation on Several Issues concerning the Specific Application of the Law in the Trial of Cases of Stealing, Spying on, Purchasing or Illegally Providing State Secrets or Intelligence to Entities outside the PRC Territory (Art. 5) | 17 |

2

CONFIDENTIAL

| Category | Date Range | Key Individuals Involved | Category Description | Applicable Protection (PRC Regulations) | Document Count |
|---|---|---|---|---|---|
| 3 | 10/25/2017 – 12/27/2018 | **NIO:** Colliven Ke; Jiale Xu; Henry Zheng; Yue Wang; Feng Xing<br><br>**Other Parties:** Individuals from SIAC<br><br>**Domain Names Involved:** @nio.com; @siac-autopark.com | Communications regarding non-public information relating to government documents, including applications for government's approvals government's decisions and feedbacks thereto | Law on Guarding State Secrets (Arts. 2, 13, 64);<br><br>Data Security law (Art. 36);<br><br>Supreme People's Court's Judicial Interpretation on Several Issues concerning the Specific Application of the Law in the Trial of Cases of Stealing, Spying on, Purchasing or Illegally Providing State Secrets or Intelligence to Entities outside the PRC Territory (Art. 5) | 55 |

3

CONFIDENTIAL

| Category | Date Range | Key Individuals Involved | Category Description | Applicable Protection (PRC Regulations) | Document Count |
|---|---|---|---|---|---|
| 4 | 11/30/2017 – 2/20/2019 | **NIO:** William Li; Lihong Qin; Jack Cheng; Charlie Zhang; Feng Shen; Louis Hsieh; Nick Wang; Fei Shen; Ping Jiang; Owen Zhou; Kelly Lu; Fang Liu; Jessie Wu; Susanna Wu; Qing Zhu; Cindy Cao; Colliven Ke; Feng Xing; Johnny Zhao; Danting Shi; Robert Yu; Henry Cao; Jinggang Xie; Haiying Lou; Ting Zhang; Henry Zheng; Biao Jiang<br><br>**Other Parties:** Individuals from Century 3[1]<br><br>**Domain Names Involved:** @nio.com; @century3inc.cn | Communications regarding non-public information relating to government licenses and attachments thereto | Law on Guarding State Secrets (Arts. 2, 13, 64);<br><br>Data Security law (Art. 36);<br><br>Supreme People's Court's Judicial Interpretation on Several Issues concerning the Specific Application of the Law in the Trial of Cases of Stealing, Spying on, Purchasing or Illegally Providing State Secrets or Intelligence to Entities outside the PRC Territory (Art. 5) | 562 |

---

[1] Century 3 is a company engaged for managing and supervising the construction work for the Shanghai plant.

4

CONFIDENTIAL

| Category | Date Range | Key Individuals Involved | Category Description | Applicable Protection (PRC Regulations) | Document Count |
|---|---|---|---|---|---|
| 5 | 10/31/2017 – 9/26/2018 | **NIO:** Colliven Ke; Biao Jiang; Henry Zheng; Haiying Lou; Yue Wang; Henry Cao; Joey Zhu; Feng Xing; Charlie Zhang; Jessie Wu; Junjun Shi; Qinxin Chi; Allen Ye; Gleen Guo; Hui Lin; Robert Yu; Bream Wang; Eric Wang; Amelie Wang; Leilei Liu; Howell Shen; Tracy Fang<br><br>**Other Parties:** Individuals from SIAC; Individuals from Shanghai Jianke Environmental Technology Co. Ltd. (JKENVC)[2];  Individuals from Ingenics[3]; Individuals from Wideshot[4]; Individuals from Century 3<br><br>**Domain Names Involved:** @nio.com; @jkenvc.com; @siac-autopark.com; @ingenics.de; @wideshot.at; @century3inc.cn | Documents containing non-public geographical mapping information and related email correspondence | Data Security Law (Arts. 21, 36);<br><br>Provisions on the Scope of State Secrets in the Administration of Geographical Mapping Information (Art. 2);<br><br>Administrative Measures for Data Security in the Field of Natural Resources (Arts. 9, 10)<br><br>Security Assessment Measures for Cross-border Data Transfer (Arts. 8, 19) | 178 |

---

[2] JKENVC is a company that provided environmental impact assessment services in relation to the Shanghai plant.

[3] Ingenics is a company that provided consulting services in relation to the procurement and production processes of the Shanghai plant.

[4] Wideshot is a company that provided consulting services in relation to the layout design of the Shanghai plant.

CONFIDENTIAL

| Category | Date Range | Key Individuals Involved | Category Description | Applicable Protection (PRC Regulations) | Document Count |
|---|---|---|---|---|---|
| 6 | 2/1/2018 – 5/21/2018 | **NIO:** Susanna Wu, Charlie Zhang, Jenny Yu<br><br>**Other Parties:** N/A<br><br>**Domain Names Involved:** @nio.com | Communications regarding non-public information relating to government subsidies and attachments thereto | Law on Guarding State Secrets (Arts. 2, 13, 64);<br><br>Data Security law (Art. 36);<br><br>Supreme People's Court's Judicial Interpretation on Several Issues concerning the Specific Application of the Law in the Trial of Cases of Stealing, Spying on, Purchasing or Illegally Providing State Secrets or Intelligence to Entities outside the PRC Territory (Art. 5) | 6 |

CONFIDENTIAL

| Category | Date Range | Key Individuals Involved | Category Description | Applicable Protection (PRC Regulations) | Document Count |
|---|---|---|---|---|---|
| 7 | 10/16/2018 – 10/19/2018 | **NIO:** Colliven Ke, Qing Zhu<br><br>**Other Parties:** N/A<br><br>**Domain Names Involved:** @nio.com | Communications discussing government policies and attachments thereto | Law on Guarding State Secrets (Arts. 2, 13, 64);<br><br>Data Security law (Art. 36);<br><br>Supreme People's Court's Judicial Interpretation on Several Issues concerning the Specific Application of the Law in the Trial of Cases of Stealing, Spying on, Purchasing or Illegally Providing State Secrets or Intelligence to Entities outside the PRC Territory (Art. 5) | 22 |

7

CONFIDENTIAL

| Category | Date Range | Key Individuals Involved | Category Description | Applicable Protection (PRC Regulations) | Document Count |
|---|---|---|---|---|---|
| 8 | 11/7/2017 – 12/1/2017 | **NIO:** Colliven Ke<br><br>**Other Parties:** N/A<br><br>**Domain Names Involved:** @nio.com | Communications regarding events involving government officials | Law on Guarding State Secrets (Arts. 2, 13, 64);<br><br>Data Security law (Art. 36);<br><br>Supreme People's Court's Judicial Interpretation on Several Issues concerning the Specific Application of the Law in the Trial of Cases of Stealing, Spying on, Purchasing or Illegally Providing State Secrets or Intelligence to Entities outside the PRC Territory (Art. 5) | 3 |
| 9 | N/A | N/A | Blank files attached to documents withheld pursuant to PRC regulations | | 32 |

8