The Rosen Law Firm
INVESTOR COUNSEL

Laurence Rosen
lrosen@rosenlegal.com

May 15, 2025

**VIA ECF**

The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *In re NIO, Inc. Securities Litigation,* Case No. 1:19-cv-01424-NGG-JRC

Dear Judge Garaufis:

We represent Class Representatives Mark Mundy and Eva Huang ("Plaintiffs") in the above-captioned securities class action.

The current deadline for Plaintiffs to serve their combined brief in opposition to Defendants' Motion for Summary Judgment and in further support of Plaintiffs' Motion for Partial Summary Judgment ("Plaintiffs' Brief") is May 30, 2025. Plaintiffs seek an extension of this deadline and related deadlines to a date after a final adjudication of Plaintiffs' forthcoming renewed motion to compel Defendant NIO Inc. to produce documents that NIO is withholding on the basis of Chinese blocking statutes. Plaintiffs believe that the documents being withheld are critical to the summary judgment motions.[1]

**Background**

NIO is a Shanghai-based electric vehicles company that raised approximately $1.1 billion USD in its initial public offering ("IPO") on the New York Stock Exchange on September 12, 2018. ¶9.[2] NIO, which did not have its own manufacturing plant and outsourced its vehicle production to a Chinese state-owned company (¶51), was able to raise this sum on the strength of a Registration Statement that told investors that Shanghai government authorities were currently

[1] Defendants oppose Plaintiffs' request for extension.
[2] Citations to ¶ refer to paragraphs of the Second Amended Class Action Complaint for Violation of the Federal Securities Laws ("Complaint," ECF No. 67).

building NIO's own manufacturing plant in Shanghai (the "Shanghai Facility"). Specifically, the Registration Statement made the following representations:

- "Construction has started on our own manufacturing facility in Shanghai[.]" ¶61.
- "Our own manufacturing facility in Shanghai is currently under construction by certain Shanghai government entities." ¶62.
- "We are developing our own manufacturing facility in Shanghai which we expect to be ready by the end of 2020. Such manufacturing facility is currently being constructed by relevant Shanghai authorities." ¶62.

The Registration Statement also stated that the Shanghai government was responsible for paying for the land and for the costs of constructing the factory building. ¶64, n. 5. The Shanghai government was to pay approximately 2.43 billion RMB for the land and building. (Exhibit 1 at NIO0000000006, Article 4). Approximately six months after the IPO, NIO announced that it was not going to build the Shanghai Facility after all and would continue to employ its contract-manufacturing model. ¶65.

The Complaint alleges that the statements were false because construction had never started on the Shanghai Facility.

**<u>What Discovery has Revealed</u>**

While Plaintiffs' Complaint focused on the falsity of NIO's representation that construction of the Shanghai Facility had started, documents that NIO produced towards the end of discovery[3] show the statements are false for two additional reasons: (1) the Shanghai government had withdrawn its 2.43 billion RMB of funding for the Shanghai Facility and was no longer planning to finance or oversee construction of the factory for NIO, and (2) with the project halted due to the Shanghai government's withdrawal and NIO needing to secure alternative sources of funding, the Shanghai Facility – if it was going to be built at all - was not going to be completed by the end of 2020. For example:

- On September 30, 2018 (approximately two weeks after the IPO), an internal NIO email chain stated that certain approval documents needed to be modified because "the construction entity is no longer Jiawei Auto Parts Co, Ltd., and the new entity has not yet been confirmed." (Exhibit 2 at NIO0000168028). Jiawei Auto Parts ("Jiawei") was the project company established by the Shanghai Jiading District government, through its wholly owned governmental entity Shanghai

[3] Although Plaintiffs served their initial Requests for Production in the fall of 2021, discovery in this case was severely delayed by NIO's purported need to obtain the Chinese government's approval to produce documents. This process was further hampered when NIO claimed, midway through discovery, that the government entity responsible for this review had changed, and NIO could not figure out which government entity was taking over this approval process. *See, e.g.*, ECF No. 130.



THE ROSEN LAW FIRM, P.A. ♦ 275 MADISON AVENUE, 40TH FLOOR ♦ NEW YORK, NY 10016 ♦ TEL: (212) 686- 1060 ♦ FAX: (212) 202 - 3827

Autocity, to acquire the land and construct the Shanghai Facility for NIO. (Exhibit 3 at ¶¶4-5).

- That the Shanghai government had pulled out of the project was further confirmed in an October 10, 2018 email, in which two NIO employees circulated a spreadsheet spelling out alternative funding options for the Shanghai Facility. (Exhibit 4). According to the spreadsheet, the "base case" now featured GLP[4] as the major investor for the land and construction, with NIO noting that non-monetary considerations for this option included whether the Shanghai government would consider GLP, as well as "SEC disclosure risks." *Id.* The original scenario appears in the spreadsheet as "Alt 3," with NIO noting "Will the government ***reconsider***?" *Id.* Of course, there would be no need for the government to "reconsider" if it had not pulled out of the project. Notably, for this option, NIO does not mention "SEC disclosure risks" as a non-monetary consideration. Also notable is that for each of the scenarios, the construction start date is no earlier than December 30, 2018 (*i.e.* ***more than three months <u>after</u>*** the IPO).

- On October 25, 2018, an internal NIO email chain circulated a list of contracts that Jiawei had entered into for the Shanghai Facility project, with the suggestion that NIO take over all of the contracts from Jiawei. (Ex 5 at NIO0000171567). That NIO was taking over Jiawei's contracts indicated that Jiawei was no longer going to be involved in this project.

- The next day, on October 26, 2018, a NIO employee circulated a draft letter of intent to be sent to Century 3 (Shanghai) Inc., a project management company that Jiawei had hired to manage the Shanghai Facility construction project, stating that Century 3's project management service contract with Jiawei was suspended, and that Shanghai NIO (NIO's operating entity in China) would replace Jiawei in the original project management contract. (Exhibit 6).

- Subsequently, during a NIO board meeting that took place on November 5, 2018, the board authorized NIO management to work on a "most optimal solution" regarding the Shanghai Facility – one that would require as little cash investment as possible by NIO. (Exhibit 7 at NIO0000171391, Paragraph 10). The need to work on a "solution" indicates that a problem had arisen with the original plan.

Accordingly, the documents show that by September 30, 2018 ***at the latest***, NIO knew that the Shanghai government had pulled out of the Shanghai Facility project, withdrawing its funding for the land and construction of the factory. But it is clear that the Shanghai government informed NIO of this decision much earlier. This type of detailed spreadsheet laying out various alternative financing scenarios – including precise dollar amounts of investments by third parties

---

[4] Global Logistic Properties is a major Singaporean industrial real estate developer. Alt 2 listed Shanghai Electric Group, a large PRC state owned enterprise as the new source of financing.

such as GLP and Shanghai Electric – was likely not prepared in two weeks. Indeed, NIO had to have already been in discussions with these new investors to have prepared such detailed financing alternatives.

**<u>Why the Documents Being Withheld are Critical to the Summary Judgment Motions</u>**

Plaintiffs believe that the documents NIO is withholding (the bulk of which are communications and agreements with the government) will reveal, among things, when exactly NIO learned that the Shanghai government was pulling out of the Shanghai Facility construction project. (Exhibit 8 – NIO's log of documents withheld on the basis of PRC Law). The proximity of this development to NIO's IPO date (*i.e.* September 12, 2018) makes this a critical fact for the summary judgment motions. If the Shanghai government had informed NIO before September 12, 2018 that it would no longer fund and construct the Shanghai Facility, then NIO's representation in the Registration Statement that the Shanghai Facility was under construction by Shanghai government authorities is false. And if the Shanghai government had pulled out of the project by the IPO date, NIO's risk warnings and disclosures under SEC Regulation S-K would be false, and NIO would have been required to make entirely new risk factor disclosures warning investors that, for example, it may not be able to secure an alternative investor to fund the Shanghai Facility, as NIO now had a 2.43 RMB billion (approximately $337 million USD) hole in its financing plan for the factory, *and* that all progress on development of the project had been halted.

The withheld documents are also critical to the issue of whether construction began. Plaintiffs argued in their motion for partial summary judgment that construction did not begin because the Shanghai Facility construction project had not obtained any of the necessary permits and approvals for starting construction, including a Construction Work Commencement Permit. Defendants argued, among other things, that permits were not necessary for construction to begin. However, if documents showed that Jiawei or NIO attempted to obtain those permits, or urged the relevant Shanghai authorities to expedite those permits so that construction may commence, that would seriously undermine Defendants' argument. Indeed, one of the categories of documents being withheld are communications regarding "government documents, including applications for government's approvals and government's decisions and feedbacks thereto." (Exhibit 8 at Page 3).

Accordingly, not only are the documents critical to the element of falsity, for which both Plaintiffs and Defendant seek summary judgment, the documents are also important for scienter and loss causation, elements for which Defendants have moved for summary judgment. The withheld documents will very likely show the real reason why NIO cancelled its plan to build the Shanghai Facility (*e.g.* because the Shanghai government was no longer going to fund the land and the construction), rendering as false exculpatory statements what NIO told investors as the reasons for terminating the project, which supports scienter. Moreover, loss causation is also impacted. If NIO knew prior to the IPO that the Shanghai government was no longer paying for the land and construction of the Shanghai Facility, then NIO's risk warnings (which Defendants rely on) are false and misleading, further supporting a materialization of risk theory of loss causation.



THE ROSEN LAW FIRM, P.A. ♦ 275 MADISON AVENUE, 40TH FLOOR ♦ NEW YORK, NY 10016 ♦ TEL: (212) 686- 1060 ♦ FAX: (212) 202 - 3827

**Plaintiffs' First Motion to Compel and the Ruling Thereon**

On February 26, 2025 - less than a month after Defendants served their summary judgment papers and more than three months before the due date for Plaintiffs' Brief - Plaintiffs moved to compel production of the withheld documents in the form of a joint submission with NIO, in accordance with Judge Cho's rules. Following a hearing on May 2, 2025, Judge Cho denied Plaintiffs' motion without prejudice. *See* ECF Minute Entry dated May 2, 2025. Judge Cho's ruling was based in part on the fact that most of the depositions of NIO witnesses were scheduled to take place in the coming weeks, and stated on the record that: "Yes, you are welcomed [sic] to renew your motion. I am finding that you likely could obtain this information from alternative sources. But if you are unable to for whatever reason, you are allowed to renew your motion." (Exhibit 9, Hearing Transcript, at 20:19 – 20:23).

**Plaintiffs' Forthcoming Renewed Motion to Compel**

Plaintiffs have not been able to obtain this information from the depositions that have taken place so far (the only other source for this information is the Chinese government. Plaintiffs cannot subpoena the Chinese government). Not surprisingly, no NIO witness has admitted that the Shanghai government ever pulled out of the project, let alone before the IPO. For example, NIO's CEO Bin Li said he has no idea why NIO employees created the spreadsheet of alternative funding scenarios for the Shanghai Facility.[5] A manager in NIO's industrial planning department who was the main liaison between NIO and Jiawei claimed to not know why Jiawei suspended its contract with Century 3 and never sought an explanation for it.[6] There is one more fact witness deposition scheduled for June 20. Plaintiffs do not anticipate that they will get testimony that will reveal the truth that is in all likelihood contained in the documents NIO is withholding.

As such, Plaintiffs intend to make a renewed motion to compel within two weeks after the June 20th deposition.

---

[5] Exhibit 10, excerpt from Bin Li Deposition Transcript at 147:2-4 ("I don't really know the details. I don't really know why they had such a consideration, or what details were considered.").

[6] Exhibit 11, excerpt from Colliven Ke Deposition Transcript at 55:6-55:23:

Q: So did Jiawei ever tell you why their service contract with C3 was suspended?
A: Based on what I remember, no.
Q: Did you ask Jiawei?
A: No.
Q: Were you curious about why the contract was suspended?
A: I was not curious.

**Plaintiffs' Proposed Extension for Plaintiffs' Summary Judgment Brief**

With such critical evidence still outstanding, Plaintiffs do not believe that it serves justice or judicial economy for Plaintiffs to serve Plaintiffs' Brief on May 30, 2025 (or for Defendants to serve their reply papers and complete the parties' summary judgment briefing on July 16, 2025).

Plaintiffs believe that the remaining summary judgment (and expert discovery) deadlines should be continued until after a final adjudication – including any appeals of Judge Cho's ruling to Your Honor - of Plaintiffs' forthcoming renewed motion to compel production of documents withheld under PRC blocking statutes. Accordingly, Plaintiffs respectfully propose the following schedule:

**Scenario A: If Plaintiffs' Motion to Compel is Denied**

| Event | Current Deadline | Proposed Deadline |
|---|---|---|
| Last day for Plaintiffs to serve combined brief (a) in further support of Plaintiffs' motion for partial summary judgment, and (b) in opposition to Defendants' cross-motion for summary judgment. | May 30, 2025 | 21 days after a final adjudication denying Plaintiffs' Motion to Compel |
| Last day for Defendants to serve reply in further support of Defendants' cross-motion and e-file fully briefed summary judgment motions. | July 16, 2025 | 45 days after Plaintiffs serve Plaintiffs' Brief |
| Last day for affirmative expert disclosures. | July 16, 2025 | 45 days after Plaintiffs serve Plaintiffs' Brief |
| Last day for rebuttal expert disclosures | September 15, 2025 | 60 days after affirmative expert disclosures |

**Scenario B: If Plaintiffs' Motion to Compel is Granted (in Whole or in Part)**

| Event | Current Deadline | Proposed Deadline |
|---|---|---|
| Last day for Plaintiffs to serve combined brief (a) in further support of Plaintiffs' motion for partial summary judgment, and (b) in opposition to Defendants' cross-motion for summary judgment. | May 30, 2025 | 45 days after NIO produces the documents ordered to be produced[7] |

[7] To permit time for Plaintiffs to translate (most if not all of the withheld documents will likely be in Chinese) and review the documents.



THE ROSEN LAW FIRM, P.A. ♦ 275 MADISON AVENUE, 40TH FLOOR ♦ NEW YORK, NY 10016 ♦ TEL: (212) 686- 1060 ♦ FAX: (212) 202 - 3827

| | | |
|---|---|---|
| Last day for Defendants to serve reply in further support of Defendants' cross-motion and e-file fully briefed summary judgment motions. | July 16, 2025 | 45 days after Plaintiffs serve Plaintiffs' Brief |
| Last day for affirmative expert disclosures. | July 16, 2025 | 45 days after Plaintiffs serve Plaintiffs' Brief |
| Last day for rebuttal expert disclosures | September 15, 2025 | 60 days after affirmative expert disclosures |

Other than the four deadlines listed above, no other deadlines are affected.

This is Plaintiffs' second request for an extension of the deadline for Plaintiffs' Brief.[8]

Respectfully submitted,

*/s/ Laurence Rosen*

[8] Plaintiffs previously sought a 30-day extension, from April 30 to May 30, so that Plaintiffs could finish taking the depositions of NIO witness based on the deposition schedule that NIO proposed.



THE ROSEN LAW FIRM, P.A. ♦ 275 MADISON AVENUE, 40TH FLOOR ♦ NEW YORK, NY 10016 ♦ TEL: (212) 686- 1060 ♦ FAX: (212) 202 - 3827