# EXHIBIT 12

# NIO Pure Electric Vehicle Factory Project

# Investment Agreement

**Jiading District, Shanghai, China**

**[Month] ___, 2017**

Confidential.    NIO0000104795

## NIO Battery Electric Vehicle Factory Project

## Investment Agreement

**Party A:**

**Shanghai International Automobile City (Group) Co., Ltd.**

Address: No. 79, Moyu Road, Anting Town, Jiading District, Shanghai

**(Project Company: Shanghai Jiawei Automobile Parts Co., Ltd.)**

**Party B:**

**Shanghai NIO Automobile Co., Ltd.**

Address: No. 20, Lane 56, Antuo Road, Shanghai

（**Project Company: Shanghai NIO New Energy Automobile Co., Ltd.）**

Party A and Party B are collectively referred to as **"the Parties"** and individually as **"a Party"** in this Agreement.

**Whereas,**

Party B has signed a Memorandum of Understanding with the Jiading District People's Government on MM / DD , 2017 and entered into a Framework Agreement with Party A on November 28, 2017, making preliminary arrangements for the implementation of Party B's project (as defined below) and cooperation between the Parties.

For the mutual benefit of both parties, this Investment Agreement (hereinafter referred to as **"this Agreement"**) has been reached in accordance with relevant national and local laws, regulations, and policies. Based on the principles of sincere cooperation, equality, mutual benefit, and common development, Parties A and B, through friendly consultation, have agreed on specific matters related to the development of the "NIO Pure Electric Vehicle Factory Project."

### Article I        Basic Information of the Investment

1.1  Project Name: NIO Pure Electric Vehicle Factory Project.

1.2  Project Location: Shanghai New Energy Vehicle and Key Components Industrial Base (hereinafter referred to as **"Industrial Base"**).

1

Confidential.

NIO0000104796

1.3 <u>Project Description</u>: Party B and Shanghai NIO Technology Co., Ltd. (hereinafter referred to as **"NIO Technology"**) will establish Shanghai NIO New Energy Vehicle Co., Ltd. (hereinafter referred to as **"NIO New Energy"**) within the Industrial Base in accordance with the terms and conditions of this Agreement. Through NIO New Energy, Party B will operate the "NIO Pure Electric Vehicle Factory Project" by renting project facilities developed on the land by a project company designated by Party A (**"Shanghai Jiawei Automobile Parts Co., Ltd."**). Upon the project's completion, it is expected to reach full production capacity within two years, with the annual production of pure electric vehicles projected to reach 100,000 units in double shifts, an estimated annual sales revenue of RMB 36 billion, and an expected annual tax contribution of RMB 1.946 billion.

1.4 <u>Total Project Investment and Registered Capital</u>:

    1.4.1 The total project investment is approximately RMB 6.13 billion. Among them, the land investment is RMB 800 million, the construction investment is RMB 1.63 billion, the equipment investment is RMB 2.22 billion, the supplier mold investment is RMB 730 million, other investments are RMB 130 million, the initial working capital is RMB 500 million, and the production preparation and commissioning costs are RMB 120 million.

    1.4.2 NIO Project Company plans to raise RMB 3.7 billion on its own (of which, RMB 1.5 billion will be coordinated and provided for financing by Party A), of which the registered capital of NIO Project Company is RMB 1.28 billion, to be paid in installments by Party B and NIO Technology according to NIO New Energy's actual operational needs.

    1.4.3 Jiawei Company will invest in customized factory buildings for NIO New Energy according to Party B's construction needs, with the total investment not exceeding RMB 2.43 billion, based on the final design and construction settlement.

## Article II       Establishment of NIO New Energy

2.1 Party A shall urge relevant government departments to actively support the establishment approval procedures, project establishment, application for relevant qualifications, leasing of project plant, and other related approval and licensing matters for NIO New Energy, and shall provide cooperation and assistance for other approval and licensing matters after the establishment of NIO New Energy.

2.2 Party A will coordinate with relevant government departments to ensure that the approved business scope of NIO New Energy includes "research and development, sales, provision of after-sales services, and provision of relevant technical consultation, technical services, and technology transfer for new energy vehicle components; import and export of new energy vehicles and components; self-managed and agency-based import and export of various commodities and technologies; computer software development" and other related content (subject to the determination of the Industrial and Commercial Bureau, but the final approved business scope should still include the above expressions or similar related content). Furthermore, if NIO New Energy plans to engage in the production of new energy vehicles and/or automotive parts in the future, Party A will ensure that relevant government departments include such activities in the approved business scope of NIO New Energy.

2

2.3    [Upon signing this agreement, from the establishment date of NIO New Energy, all rights and obligations of Party B under this agreement related to NIO New Energy shall be automatically and completely transferred to NIO New Energy. Party A's signing of this agreement shall be deemed as consent to such transfer by Party B, and Party A shall sign the necessary documents as required by Party B.]

**Article III        Land Plot and Project Factory Building**

3.1    <u>Area and Location of the Land Plot</u>

    3.1.1    <u>Land Plot</u>

The land for this project is located within the Shanghai New Energy Vehicle and Key Components Industrial Base, with a planned net land area of approximately 788.6 mu (see the actual measurement report issued by the planning and land department for details) (hereinafter referred to as the **"Land Plot,"** the survey report and red line map are attached in <u>Appendix 1</u> of this agreement.

    3.1.2    <u>Nature and Usage Term of the Land</u>

The land is designated for industrial use, with a usage term of fifty (50) years.

3.2    <u>Acquisition of the Land</u>

Party A confirms that it will urge the land authorities of Jiading District to publish the transfer notice for the bidding, auction, and listing procedures of the State-owned construction land use rights (hereinafter referred to as **"Land Tendering and Auction Procedure"**) within [6] months after the signing of this Agreement. The land plot will be announced for transfer based on the planning indicators jointly determined by Party A and Party B and in alignment with the planning conditions. Jiawei Company will legally participate in the Land Tendering and Auction Procedure organized by the local land bureau; once Jiawei Company lawfully acquires the land plot, Party A will urge and assist the land bureau to promptly deliver the land plot to Jiawei Company following the signing of the "Transfer Contract" for the land plot.

3.3    <u>Development of the Project Plant</u>

After Jiawei Company acquires the land plot and before the construction of the project begins, Jiawei shall enter into a "Pre-build/Lease Agreement" (hereinafter referred to as the **"Lease Agreement"**) with NIO New Energy: Jiawei Company shall complete the design, procurement, construction, and other building works for the corresponding factory buildings and ancillary facilities on the land (hereinafter referred to as **"Project Factory Building"**) according to the requirements and standards mutually agreed upon by both parties, and pass the acceptance of NIO New Energy (for specific main construction and design indicators, construction standards, and energy requirements of the Project Factory Building, please refer to Appendix II of this Agreement). After the Project Factory Building passes the acceptance of NIO New Energy and completes the quality inspection upon completion of the construction project, Jiawei Company shall deliver the Project Factory Building to NIO New Energy for its operational use according to the Lease

3

Agreement and concurrently proceed with the completion acceptance filing when conditions are ripe.

The initial lease term for the Project Plant under the Lease Agreement is ten lease years, calculated from the date when Party B's first vehicle is announced to roll off the production line. NIO New Energy has the right to request a lease renewal before the expiration of the initial term, with the lease term being extended accordingly based on mutual agreement between the parties. The first five lease years from the date Party B's first vehicle is announced to roll off the production line will be rent-free. The property itself will be managed by NIO New Energy, and Party A is responsible for repairs and maintenance within the statutory construction warranty period. Real estate taxes and other taxes arising from the leasing of the Project Plant shall be borne separately by each party in accordance with relevant national laws and regulations. For the subsequent five leasing years, Party A agrees to determine the rental rate by first applying appropriate discounts to the market price based on the local factory market rental prices, the actual construction costs, and in consideration of Party B's contributions to the local economy. The parties agree to handle the rent-related agreements from a tax-optimal perspective. If the provisions regarding rent exemption and/or rent discount in this clause result in Party B or its project company having to bear any taxes or fees, Party A shall proactively coordinate with the relevant authorities to seek further consultation.

3.4 Estimated Construction Progress Timeline for the Project Plant

Party A confirms that after securing the land use rights, Jiawei Company will complete the construction of the project plant according to the schedule set out in Annex III of this Agreement.

**Article IV        Party A's Support**

4.1 Party A's Support

Considering the positive impact of the project on the overall development of the industrial base, Party A agrees to support NIO New Energy with the cooperation of relevant government departments and institutions. The relevant support projects can be found in Annex IV.

4.2 Changes in Fiscal and Tax Policies

Party A shall promptly notify Party B or NIO New Energy in writing of any significant changes in national or local fiscal and tax policies. If there are substantial changes in policies related to national or local industries, finance and taxation, land use, planning, etc., Party A will endeavor to ensure that the benefits actually enjoyed by NIO New Energy are not less favorable than those listed in Article 4.1 above. Should policy changes render NIO New Energy eligible for additional incentives, Party A will assist NIO New Energy in applying for and enjoying such additional preferential policies.

**Article V        Obligations and Commitments of Party B or NIO New Energy**

Confidential.                                                                        NIO0000104799

5.1 Party B shall complete the establishment of NIO New Energy with the assistance of Party A in accordance with the terms and conditions of this Agreement. Party B will strive to achieve the target of a production value of 36 billion yuan and tax revenue of 1.946 billion yuan in accordance with the memorandum signed with Jiading District.

5.2 NIO New Energy must comply with relevant Chinese laws and regulations and pay taxes according to the law during its production and operation (but this does not affect the financial support granted to NIO New Energy under this agreement).

5.3 NIO New Energy must comply with relevant national laws and regulations regarding fire safety, environmental protection, and safe production during its production and operation.

5.4 Party B promises that the Shanghai NIO Automobile Sales and Service Co., Ltd. established in Jiading District (**"NIO Sales Company"**) is the exclusive national sales headquarters, and vehicles produced by NIO New Energy can only be distributed through NIO Sales Company and Party B. If Party B needs to establish sales branches in other locations for business expansion, Party B commits that under normal operations reaching target capacity, it will not affect NIO New Energy's tax contribution rate to Jiading District.

5.5  Under the same conditions and in line with Party B's strategic development plan, Party B will prioritize developing its various businesses in Jiading District.


**Article VI        Obligations of Party A**

6.1 Party A hereby confirms that it has obtained the appropriate authorization from the relevant government departments and/or other authorized entities and is fully capable of performing all its obligations under this Agreement and assuming corresponding responsibilities.

6.2 Party A shall actively facilitate the communication and coordination between Party B and the national and Shanghai Development and Reform Commission, the Ministry of Industry and Information Technology, local industrial and information technology departments, land departments, environmental protection departments, commercial authorities, and other relevant departments, to facilitate the establishment and project approval of NIO New Energy. This includes completing energy-saving assessment and review for fixed asset investment projects, new energy vehicle manufacturing, road motor vehicle enterprise and product admission, land use pre-assessment, environmental impact assessments, and other necessary procedures. Party A shall also vigorously promote NIO New Energy in obtaining the qualification approval for the establishment of a new pure electric passenger vehicle enterprise. Party B shall provide assistance to Party A in its work.

Both parties, together with other member units, shall jointly establish a project construction coordination working group (hereinafter referred to as **"working group"** see Appendix V) responsible for promoting the swift completion of the aforementioned government procedures, approvals, and qualifications. Party A is responsible for the overall coordination work, and Party B assists Party A in conducting coordination work. Other member units provide service support for the coordination work. The People's Government of Jiading District shall take the lead in coordinating with relevant national ministries and commissions to approve the vehicle qualification of Party B's project and assist Party B in having the leasing model for the project plant, as determined by this agreement, approved by relevant national departments.

5

 NIO0000104800

6.3 Party A hereby confirms that Jiawei Company will lawfully obtain the land use rights for the plot and, at its own cost, complete the construction of the project plant in accordance with this Agreement, Appendix II, Appendix III, the lease agreement, and other requirements of Party B at that time. Jiawei Company shall be responsible for handling all certifications and approvals related to the design and construction of the project plant.

6.4 Party A shall be responsible for approving and handling the planning permits, land transfers, and related matters (including, but not limited to, geological surveys and environmental impact assessments) and assisting Party B with the project approval procedures. Party A shall urge relevant government departments to actively support and provide all necessary cooperation and assistance for the establishment approval procedures of NIO New Energy and other relevant approvals and licensing matters of this project.

6.5 Party A shall provide guidance to Party B on the project proposals, business plans, etc., furnished for this project, and promote their compliance with relevant national laws, regulations, and policies (including, but not limited to, investment industry policies, environmental protection policies, etc.), so as to facilitate the smooth approval and construction of the project.

6.6 Party A shall not interfere with the normal business activities of Party B and NIO New Energy. Party A is responsible for providing a favorable social and surrounding environment to ensure that Party B's construction and operations within the industrial base are not subject to external interference. Party A shall, within the scope permitted by law, assist NIO New Energy in recruiting employees and handling employee disputes and other related issues.

6.7 Party A shall provide access to public utilities such as electricity and water to the land and, in principle, shall promote and ensure uninterrupted electricity and water supply for this project seven days a week, 365 days a year, unless force majeure occurs. If the supply of public utilities must be interrupted due to maintenance by relevant departments, Party A shall ensure that NIO New Energy is informed in advance.

6.8 Party A hereby warrants that NIO New Energy will be granted financial support in accordance with the terms and conditions stipulated under this Agreement (including, but not limited to, the financial support projects mentioned in Appendix IV).

6.9 Party A undertakes that the land and project plant provided do not violate any laws and regulations related to environmental protection in China. Party B shall ensure that the factory is designed in accordance with national and local environmental protection laws and regulations, and conduct daily business activities such as production and manufacturing. Provided that Party B fully fulfills its environmental protection responsibilities, if the construction and operation activities of NIO New Energy on the land and project facilities cause any objections, complaints, resistance, dissatisfaction, or social conflicts from surrounding residents or other third parties, Party A promises to assist the relevant government departments in handling and resolving such social conflicts.

6.10 Jiawei Company, as the owner and construction unit of the project plant, agrees to jointly negotiate with Party B and determine various types of professional contractors and suppliers for the project construction in accordance with the procedures prescribed by relevant laws and regulations. ~~Party B is entitled to autonomously select all types of professional contractors not involved in the construction content designated to Party A, in compliance with the law.~~

 NIO0000104801

~~and suppliers, Party A shall cooperate.~~

> **Commented [CK Ke1]:** Susanna modified the description. The principle is "joint consultation by both parties."

## Article VII        Force Majeure

7.1   Neither party shall be liable for the partial or total non-performance of this agreement due to force majeure; however, each party must take all necessary measures to prevent or reduce the losses caused by force majeure.

7.2   If either party is unable to perform this Agreement due to severe natural disasters, fire, war, or other unforeseeable events which cannot be prevented or avoided, the affected party shall immediately notify the other party via mail or fax. They must provide, within thirty (30) days, documentation specifying the force majeure event and reasons for the total or partial non-performance of the Agreement or the necessity for delayed performance. Such certification documents shall be issued by the notarial authority in the area where the force majeure occurs, or if such documents cannot be obtained, other valid evidence shall be provided. The party affected by the force majeure shall thereby be exempted from corresponding liabilities. If such force majeure events last for more than one hundred and twenty (120) days, either party shall have the right to terminate this Agreement by notifying the other party in writing, and within the scope affected by the force majeure, neither party shall be liable for breach of contract.

## Article 8        Termination of Agreement and Liability for Breach of Contract

8.1   If Party A commits any of the following breaches of contract, Party B shall have the right to terminate this Agreement and require Party A to compensate Party B for the losses suffered by Party B as a result. At the time Party B terminates this Agreement, if NIO New Energy has been established, Party A shall ensure relevant government departments actively support and cooperate with the approvals, registrations, and licenses involved in subsequent matters, including the relocation of NIO New Energy to another location or its disposal through liquidation, deregistration, equity transfer, or other methods:

   8.1.1   The key approvals related to the project mentioned under Article 6.2 of this Agreement cannot be obtained, or NIO New Energy cannot be established, due to reasons not attributable to Party B;

   8.1.2   Within [8*] months after signing this agreement, Jiawei Company still fails to acquire the land use rights, or the planning conditions of the land are significantly inconsistent with those stipulated in this agreement, or the project plant constructed by Jiawei Company significantly does not meet Party B's requirements;

   8.1.3   Due to reasons attributable to Party A, NIO New Energy is unable to obtain the related support stipulated in Article 4.1 of this agreement, and, after Party B's written reminder, it has still not been provided within [6] months, causing a significant negative impact on NIO New Energy and the project;

7

8.1.4   If Party A fails to perform other obligations or responsibilities as stipulated in this Agreement and, after receiving a written notice from Party B, still fails to do so within one (1) month, it causes a significant negative impact on NIO New Energy and the project. This is except for delays or failures to perform due to force majeure as defined in Article 7 of this Agreement.

8.2   Liability for breach of contract of Party B

If, on the premise that neither party has violated this Agreement and both parties have made their best efforts, the Project Company fails to pass the project approval, fails to obtain the approval for the construction of new pure electric passenger vehicles and the access to produce road motor vehicles and new energy vehicles, or fails to obtain other key approvals resulting in the actual inability to perform this project, the Parties may terminate this Agreement by mutual consent and amicably resolve subsequent related matters through friendly negotiations.

8.3   If either Party violates the confidentiality obligations stipulated in Article 12 of this Agreement, it shall be responsible for compensating the other Party for its actual losses.

## Article IX        Dispute Resolution

9.1   Any disputes arising in connection with this Agreement, including those during its performance, shall first be resolved through amicable negotiations between the Parties. The parties shall commence negotiations immediately after either party communicates a request for negotiation in writing to the other party.

9.2   If within thirty (30) days from the date of receipt of the written notice requesting negotiation of the dispute, the parties do not initiate negotiations or are unable to reach an agreement, either party shall have the right to submit the dispute to the Shanghai International Economic and Trade Arbitration Commission/Shanghai International Arbitration Center ("**Arbitration Center**") for arbitration in accordance with the arbitration rules in effect at that time.

9.3   The arbitration shall be conducted by an arbitral tribunal consisting of three (3) arbitrators, with one (1) arbitrator designated by Party A, one (1) arbitrator designated by Party B, and the third (chief) arbitrator jointly appointed by both parties, or by the chair of the arbitration committee if the parties cannot reach an agreement.

9.4   The arbitration proceedings shall be conducted in Shanghai.

9.5   The arbitration award shall be final and binding on both parties. Both parties shall promptly implement the arbitration award as required.

9.6   During the arbitration, both parties shall continue to perform this Agreement except for the disputed terms.

8

Confidential.                                                        NIO0000104803

9.7   The allocation of arbitration costs shall be determined by the arbitral tribunal. The losing party in the arbitration shall bear the attorney fees of the winning party.

### Article X        Severability of Terms

Each provision of this Agreement shall be severable and independent of the other provisions. If at any time any one or more provisions of this Agreement become invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not be affected thereby.

### Article XI        Governing Law

The execution, validity, interpretation, performance, and resolution of disputes under this Agreement shall be governed by the relevant laws of the People's Republic of China (for the purposes of this Agreement, excluding the Hong Kong Special Administrative Region, the Macau Special Administrative Region, and Taiwan).

### Article XII        Confidentiality

12.1 Each party undertakes to keep any information related to this Agreement confidential and shall not disclose it to any other person without the prior written consent of the other party.

12.2 The confidentiality obligations under Clause 12.1 do not apply to such information:

  (a)   has become publicly available through no fault of either party;

  (b)   was lawfully known to one party before receipt or possession and without any confidentiality obligation;

  (c)   is disclosed to that party's directors, officers, employees, agents, shareholders, professional consultants, or representatives, provided that such persons are subject to the same confidentiality obligations as that party; or

  (d)   information is disclosed in accordance with any applicable laws, regulations, government orders, stock exchange listing rules, or as required by a court with jurisdiction over either party. However, before making such disclosures, the party must notify the other party in advance of the content and manner of the information to be disclosed and consult with the other party to determine how to minimize the adverse effects of such disclosure.

### Article XIII        Effectiveness of the Agreement

Both parties agree that this Agreement shall become effective upon signature by the authorized representatives of both parties.

### Article XIV        Miscellaneous Provisions

9

Confidential.                                                        NIO0000104804

14.1 If the superior government (including national and Shanghai municipal authorities) adjusts or changes the name, regional scope, etc. of Party A and/or the industrial base in the future, Party A and its superior governing bodies must ensure the complete and continuous validity of this agreement.

14.2 Any notice given by either party to the other party shall be sent via prepaid registered mail or fax to the following addresses and contact information. It shall be deemed to have been delivered to the recipient seven (7) days after mailing or twenty-four (24) hours after faxing to the recipient's correct address and fax number.

(a) Party A's address, recipient, and fax number are as follows:

Address: [Please fill in]

Telephone: ［Please fill in］

Fax: ［Please fill in］

Recipient: ［Please fill in］

(b) Party B's address, recipient, and fax number are as follows:

Address: ［Please fill in］

Telephone: ［Please fill in］

Fax: [Please fill in]

Recipient: ［Please fill in］

14.3 All the relevant documents attached to this Agreement are appendices to this Agreement and have equal legal effect. For matters not mentioned in this Agreement, the parties may sign a written supplementary agreement through mutual negotiation and consensus.

14.4 This Agreement constitutes the entire agreement between the parties with respect to the subject matter of this Agreement and supersedes any prior oral or written discussions, letters of intent, memoranda of understanding, meeting records, or communications between the parties regarding such matters.

14.5 This Agreement is made in four (4) original copies, each of which shall have equal force and effect. Party A holds two (2) original copies, and Party B holds two (2) original copies.

[No text below]

10

Confidential.                                                    NIO0000104806

[Investment Agreement Signature Page]

**Party A：**

**Shanghai International Automobile City (Group) Co., Ltd.**

Legal Representative or Authorized Representative:

Signature (Seal):

**Party B：**

**Shanghai NIO Automobile Co., Ltd.**

Authorized Representative:

Signature:

Date:

12

Confidential.                                                                                                    NIO0000104807

**Appendix I: Schematic Diagram of the Plot**

*[To be inserted]*

13

Confidential.                                                    NIO0000104808

**Appendix II: Main Planning, Design, and Construction Requirements of the
Project Plant**

1.      *[Please have the engineering staff list the main conditions]*

14

**Appendix III**

**Construction Schedule**

| ~~Key Milestones~~ | ~~Date:~~ |
|---|---|
| ~~Construction Project Approval and Environmental Impact Assessment~~ | |
| ~~Conceptual Design~~ | |
| ~~Design Proposal Review~~ | |
| ~~Preliminary Design Approval~~ | |
| ~~Construction Drawing Design Review~~ | |
| ~~Engineering Planning Permit~~ | |
| ~~Construction Permit~~ | |
| ~~Concealed Works and Mid-term Inspection~~ | |
| ~~Completion Acceptance and Filing~~ | |

**[Note: Subject to adjustment based on actual circumstances and mutual agreement.]**

15

Confidential.                                                            NIO0000104810

**Appendix IV: Support Policies**

1.   <u>Financing Support</u>

Party A shall ensure that it or its designated third party legally provides NIO New Energy with RMB 1.5 billion in equity and/or debt financing. The specific plan is as follows:

(1)   Debt Financing: Party A commits to prioritize coordination with financial institutions to provide NIO New Energy with RMB 1.5 billion in debt financing through legal forms such as loans.

(2)   Equity Financing: If the financing amount provided by the aforementioned financial institutions is less than RMB 1.5 billion, or if funds cannot be disbursed within the credit limit, resulting in NIO New Energy securing less than RMB 1.5 billion in actual financing, Party A commits to covering the shortfall. This will be accomplished by Party A or a Party A-designated third party, satisfactory to Party B, injecting capital into NIO Technology, either by subscribing for additional shares or through other means agreed upon by Party B. In this situation, if Party A and/or its designated third party injects capital into NIO Technology as an equity investment through the district industrial fund, Party A shall ensure that this capital injection is made in a timely manner and according to Party B's actual funding needs.

(3)   In the case of equity financing, Party A agrees that any entity investing in NIO Technology (including Party A and/or a third party designated by Party A) must, prior to investment, sign a concerted action agreement with NIO Technology's other shareholders, as required by Party B. The agreement stipulates that any directors, supervisors, and other senior management personnel with voting rights, if any, appointed by the investing entity will act in concert with the representatives appointed by other shareholders of NIO Technology, ensuring their actions are consistent with such representatives unless such voting results in NIO

16

Confidential.                                                     NIO0000104811

New Energy engaging in illegal activities.

(4) Party A will provide a supporting policy for NIO New Energy under this clause for financing, offering "full interest subsidy for the first five years, followed by interest renegotiation for the next five years." This means that all the financing interest costs that NIO New Energy should bear for the first five years will actually be coordinated by Party A, with the finances assuming and paying these costs.

(5) The loans formed from the aforementioned interest subsidies are to be used exclusively for project equipment investment, with NIO New Energy retaining ownership of the equipment. Party A agrees that such financing will be secured only by the equity of NIO New Energy and NIO New Energy's own assets, without requiring additional guarantees from NIO New Energy's shareholders or any individual shareholders, and Party A shall ensure that the financial institution providing the financing accepts the aforementioned conditions.

2. Special Fund Support Policy (Party A will establish a special fund), for the portions of the VAT and corporate income tax retained by the district and town levels paid by NIO New Energy, as well as the personal income tax of senior management, from the commencement year of taxation for the first five years, the same amount will be fully paid to NIO New Energy as a support subsidy within [6] months of receiving a written request from NIO New Energy each year in various forms, including, but not limited to, R&D subsidies, talent policies, etc.; the support subsidy ratio for subsequent years will be negotiated separately by Party A and Party B. The income tax for senior management personnel, using mid-to-high-level employees with an annual salary of 600,000 RMB or more (capped at 50 people) as the base, will utilize up to 70% of the company's individual income tax retained portion in Jiading District (22% of the total) as a talent reward fund for NIO Automotive, with a support duration of 5 years.

3. Preferential Treatment Party A shall ensure that Party B and NIO New Energy benefit from preferential policies regarding funding, finance, taxation, etc. If, five years after the project is put into production and operates stably, the economic benefits of NIO New Energy exceed current expectations, the parties

17

may separately discuss alternative cooperation methods and support policies at that time.

4.  <u>Policy Support</u>  Without affecting the special fund support policies mentioned in item 2 above, Party A promises to coordinate with relevant government departments to ensure that Party B's project benefits from the relevant preferential terms of the corresponding types of investment promotion and industry support policies. Furthermore, Party A will assist NIO New Energy in securing preferential policies from national and various levels of government (including, but not limited to, municipal and national special funds for smart manufacturing, strategic emerging industry development, industrial upgrading, and technological transformation) and support NIO New Energy in applying for qualifications like high-tech enterprise and R&D center recognition. Party A commits to providing comprehensive support through coordination with relevant government departments in attracting talents for NIO New Energy, assisting in handling related procedures, and delivering policy implementation services. This clause shall not detract from the policy support obligations that Party A must fulfill under Section 2 "Tax Incentives."

5.  <u>Talent Apartments</u> Party A shall provide NIO New Energy with no less than 【\*】 units of talent apartments around the site at a preferential rental price, with the applicable rental standard being: 【\*】 。

18

Confidential.                                   NIO0000104813

MetaData

| | |
|---|---|
| NIO0000104795 | **DocID** |
| | **BegDoc** |
| NIO0000104795 | **EndDoc** |
| NIO0000104813 | **DocID_BEGATT** |
| NIO0000104794 | **DocID_ENDATT** |
| NIO0000104813 | **Custodian** |
| KE, Colliven | **Parent_Attachment** |
| A | **Attachment Count** |
| | **Attachment List** |
| | **From** |
| | **Recipients** |
| | **CC** |
| | **BCC** |
| | **Title** |
| INVESTMENT AGREEMENT | **Creation Date** |
| | **Date Created** |
| 3/1/2018 | **Last Modified Date** |
| 3/1/2018 | **Sent Date** |
| | **Application Name** |
| | **Page Count** |
| 19 | **EM Relative Path** |
| | **Location** |
| | **File Name** |
| 投资协议_20180302_双方讨论稿.docx | **File Extension** |
| DOCX | **File Size** |
| | **MD5Hash** |
| 66EA97F01CD6282464E33DE180B98FB3 | **Hidden Data** |

morningtrans.com



# TRANSLATION CERTIFICATION

Date: May 28, 2025

To whom it may concern:

This is to certify that the attached translation is an accurate representation of the documents received by this office. The translation was completed from:

- Chinese (PRC)

To:

- English (USA)

The documents are designated as:

- NIO-SH Auto City Investment Agreement - Draft

Emily Paras, Project Manager in this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

_____
Signature of Emily Paras

QUESTEL CONFIDENTIAL

4001 S 700 East, Suite 500 #B17
Salt Lake City, UT 84107

# 蔚来纯电动整车工厂项目

# 投资协议

**中国·上海市嘉定区**

**2017 年＿＿月**

Confidential.

NIO0000104795

**蔚来纯电动车工厂项目**

**投资协议**

**甲方：**

**上海国际汽车城（集团）有限公司**

住所：上海市嘉定区安亭镇墨玉路 79 号

**(项目公司：上海嘉蔚汽车部件有限公司)**

**乙方：**

**上海蔚来汽车有限公司**

住所：上海市安拓路56弄20号

**（项目公司：上海蔚来新能源汽车有限公司）**

甲方和乙方在本协议中合称为"**双方**"，单独称为"**一方**"。

**鉴于，**

乙方已于 2017 年 ＿月＿日与嘉定区人民政府签署了一份《合作备忘录》，并于 2017 年 11 月 28 日与甲方签署了一份《框架协议》，对乙方项目（如下定义）落地及各方合作予以初步约定。

为了双方利益，根据国家和地方有关法律、法规和政策的规定，甲乙双方本着诚信合作、平等互利、共同发展的原则，通过友好协商，就"蔚来纯电动整车工厂项目"开发的具体事宜达成本投资协议（以下简称"**本协议**"）。

**第一条　投资的基本信息**

1.1　项目名称：蔚来纯电动车工厂项目。

1.2　项目位置：上海新能源汽车及关键零部件产业基地（以下简称"**产业基地**"）。

1

Confidential.

NIO0000104796

1.3  项目简介：乙方和上海蔚来科技有限公司（以下简称"**蔚来科技**"）将根据本协议的条款和条件在产业基地内设立上海蔚来新能源汽车有限公司（以下简称"**蔚来新能源**"），并通过蔚来新能源以租用甲方指定的项目公司（"**上海嘉蔚汽车部件有限公司**"）在地块上开发建设的项目厂房的方式运营"蔚来纯电动车工厂项目"，项目建成后，预计两年后达产，届时纯电动汽车年产量预计可达双班 10 万台，预计年销售额人民币 360 亿元，预计年纳税可达人民币 19.46 亿元。

1.4  项目总投资与注册资本：

1.4.1  项目总投资约 61.3 亿元人民币。其中土地投资 8 亿元，建筑投资 16.3 亿元，设备投资 22.2 亿元，供应商模具投资 7.3 亿元，其他投资 1.3 亿元，铺底流动资金 5 亿元，生产准备和调试费用 1.2 亿元。

1.4.2  蔚来项目公司计划自筹人民币 37 亿元（其中 15 亿元由甲方协调提供融资），其中蔚来项目公司注册资本人民币 12.8 亿元，将根据蔚来新能源实际运营需求由乙方及蔚来科技分批进行缴纳。

1.4.3  嘉蔚公司出资按乙方建设需求为蔚来新能源定制厂房，厂房建设总投资不高于 24.3 亿元人民币，最终以实际设计及建设决算为准。

**第二条  蔚来新能源的设立**

2.1  甲方应促使相关政府部门对蔚来新能源的设立审批程序、立项、申请相关资质、租赁项目厂房以及项目的其他各项相关审批及许可事宜予以积极支持，并应在蔚来新能源设立后对其他各类审批和许可事宜提供配合和协助。

2.2  甲方将协调相关政府部门促使蔚来新能源经审批后的经营范围涵盖"新能源汽车零部件的研发、销售、提供售后服务，以及提供相关的技术咨询、技术服务和技术转让；新能源整车及零部件进出口；自营和代理各类商品和技术的进出口业务；计算机软件开发"等相关内容（以工商局核定为准，但最终核准的经营范围仍应涵盖以上的表述或类似的相关内容），并且若蔚来新能源后续拟从事新能源整车生产和/或汽车零部件生产的经营活动，甲方将促使相关政府部门确保蔚来新能源经审批后的经营范围涵盖该等内容。

2

Confidential.

NIO0000104797

2.3    【本协议签署后，自蔚来新能源设立之日起，乙方在本协议项下所有与蔚
来新能源有关的权利和义务将自动且全部转让给蔚来新能源；甲方签署本
协议即视为其已同意乙方的该等转让，且甲方应根据乙方的要求签署必要
的文件。】

**第三条　地块和项目厂房**

3.1    地块的面积和位置

  3.1.1    地块

    本项目地块位于上海新能源汽车及关键零部件产业基地内，项目规
划净用地面积约为 788.6 亩（详见规土部门出具的实测报告）（以下
简称"**地块**"，测绘报告及红线图见本协议<u>附件一</u>）。

  3.1.2    地块的性质和使用期限

    地块的土地使用性质为工业用地，使用期限为五十（50）年。

3.2    地块的取得

甲方确认，其将促使嘉定区的国土部门在本协议签署后的[6]个月内公布国
有建设用地使用权招标拍卖挂牌程序（以下简称"**土地招拍挂程序**"）的出让
公告，按照甲乙双方共同认定并符合规划条件的规划指标将地块公告出让。
嘉蔚公司将依法参加由当地国土局组织的土地招拍挂程序；一旦嘉蔚公司
依法竞得地块，甲方将促使并协助国土局在地块的《出让合同》签署后尽
快向嘉蔚公司交付地块。

3.3    项目厂房的开发

在嘉蔚公司竞得地块后且于项目动工建设前，嘉蔚公司应当与蔚来新能源
签署一份"定建预租/租赁协议"（以下简称"**租赁协议**"）：由嘉蔚公司根据双
方共同协商认定后的要求和标准在地块上完成相应厂房等配套设施（以下
简称"**项目厂房**"）的设计采购施工等建造工作,并通过蔚来新能源的验收( 提
出合理的项目厂房的主要建造和设计指标、建设标准、及能源需求请见本
协议<u>附件二</u>）；在项目厂房取得蔚来新能源验收并完成建设项目的质监验收

3

Confidential.

NIO0000104798

后，嘉蔚公司应根据租赁协议将项目厂房交付给蔚来新能源使用供其运营项目并在条件成熟时同步办理竣工验收备案。

租赁协议项下项目厂房的初始租期为十个租赁年度，自乙方首辆车宣布下线之日起计算，且蔚来新能源有权在初始租期届满前要求续租，届时租期将根据双方协商结果相应顺延。自乙方首辆车宣布下线之日起的前五个租赁年度免租，物业由蔚来新能源自行管理，甲方负责在国家规定的建筑保修期内的维修与保养。；项目厂房租赁产生的房产税等税金按照国家相关法律法规由双方各自承担。后五个租赁年度内的租金标准，甲方同意根据当地厂房市场租赁价格及厂房实际建造成本，参考乙方对当地经济贡献，给予市场价格适当的优惠后确定。双方同意从税务最优的角度对与租金相关的约定进行处理。如果因本条关于免租和/或租金优惠的约定，导致乙方或乙方项目公司需要就此承担税费的，甲方将积极协调相关部门另行协商。

3.4  项目厂房的预计建设进展时间表

甲方确认在竞得地块使用权后，嘉蔚公司将按照本协议附件三列明的进度安排完成项目厂房的建设。

**第四条  甲方的支持**

4.1 甲方的支持

考虑到项目对产业基地整体发展的积极推动作用，甲方同意在相关政府部门和机构的配合下对蔚来新能源进行支持，相关的支持项目见附件四。

4.2 财政和税务政策变更

甲方应及时书面通知乙方或蔚来新能源有关国家或地方财税政策的任何重大变更，如因国家或地方相关产业、财税、用地、规划等方面政策发生重大变更，甲方将尽力争取蔚来新能源实际享受的相关优惠不低于上述第 4.1 条中所列明的情形；如因政策变更导致蔚来新能源有资格获取额外优惠，甲方将协助蔚来新能源申请和享受该等额外优惠政策。

**第五条  乙方或蔚来新能源的义务与承诺**

4

Confidential.

NIO0000104799

5.1　乙方将在甲方的协助下根据本协议的条款和条件完成蔚来新能源的设立。乙方将按照与嘉定区签署的备忘录，努力实现达产产值 360 亿，达产税收 19.46 亿的目标。

5.2　蔚来新能源在生产运营过程中必须遵守中国的有关法律和法规并依法纳税（但不影响蔚来新能源在本协议下被授予的财政支持）。

5.3　蔚来新能源在生产运营过程中，必须符合国家法律、法规在消防、环保、安全生产等方面的有关规定。

5.4　乙方承诺在嘉定区已设立的上海蔚来汽车销售服务有限公司（"**蔚来销售公司**"）是全国唯一的销售总公司，蔚来新能源生产的车辆只能通过蔚来销售公司和乙方分销。若乙方因业务拓展需要在异地设立销售分公司，乙方承诺在正常经营达产的情况下，不影响蔚来新能源对嘉定区的税收贡献率。

5.5　在同等条件，并且符合乙方战略发展规划的前提下，乙方将优先考虑在嘉定区发展其各项业务。

**第六条　甲方义务**

6.1　甲方在此确认，其已取得相关政府主管部门和/或其他有权单位的适当授权，且其能够全面履行其在本协议项下的各项义务并承担相应的责任。

6.2　甲方应大力推动乙方与国家及上海市发改委、工业与信息化部及地方工信部门、国土部门、环保部门及商务主管部门以及相关部门沟通协调，促使蔚来新能源设立及项目顺利立项、完成固定资产投资项目节能评估和审查、新能源汽车整车制造、道路机动车辆企业准入及其产品的准入、用地预审、环境影响评价等相关必要手续。甲方还应大力推动蔚来新能源取得新建纯电动乘用车企业资质核准。乙方应对甲方工作提供协助。

双方联合其他成员单位共同成立项目建设协调工作小组（以下简称"**工作组**"见附件五）负责推动尽快完成上述政府手续、核准及资质。甲方负责总体协调工作，乙方协助甲方开展协调工作。其他成员单位为协调工作提供服务支持。由嘉定区人民政府出面协调国家有关部委批复乙方项目的整车资质，协助乙方使得本协议所确定的承租项目厂房的模式通过国家有关部门的审批。

5

NIO0000104800

6.3 甲方在此确认，嘉蔚公司将依法取得地块的土地使用权，并按照本协议附件二、附件三及租赁协议和乙方届时的其他要求自担成本地完成项目厂房的建造，与项目厂房设计与建造相关的证照与审批均由嘉蔚公司负责办理。

6.4 甲方将负责审批办理规划许可、土地出让和相关事宜（包括但不限于地质勘察和环境影响评估）；并协助乙方办理项目审批。甲方应促使相关政府部门对蔚来新能源的设立审批程序以及本项目的其他各项相关审批及许可事宜予以积极支持和所有必要的配合和协助。

6.5 甲方应对乙方就本项目提供的项目建议书、商业计划等进行指导，促使其与国家相关的法律法规和政策相符（包括但不限于投资产业政策、环境保护政策等），以便项目顺利立项并建设。

6.6 甲方不干涉乙方及蔚来新能源正常的经营活动。甲方负责提供良好的社会和周边环境，使得乙方在产业基地内的建设和运营不受外部干扰。甲方应在法律允许的范围内协助蔚来新能源招收员工、处理员工纠纷等问题。

6.7 甲方应向地块提供用电、用水等公用事业接入，原则上应促使并对本项目提供一周七天、一年三百六十五天无间断的电力和用水供应，除非发生不可抗力情况。如公用事业供应因相关部门检修而必须中断，甲方应促使相关部门提前告知蔚来新能源。

6.8 甲方在此保证，蔚来新能源将根据本协议项下约定的条款和条件（包括但不仅限于附件四提及之财政支持项目）被授予财政支持。

6.9 甲方承诺其提供的地块及项目厂房不违反中国任何与环保相关的法律法规。乙方确保按照国家及地方环保法律法规规定设计工厂，并开展生产制造等日常经营活动。在乙方完全履行环保责任的前提下，若因蔚来新能源在该地块和项目厂房的建设和运营等活动引起任何周边居民或其他第三方的异议、抱怨、抵触、不满或因此而导致任何社会矛盾，甲方承诺其将协助政府相关部门处理和解决该等社会矛盾。

6.10 嘉蔚公司作为项目厂房的产权人和建设单位，同意与乙方共同协商，并按照相关法律法规规定的程序来确定本项目建设工程的各类专业承包和供应商。乙方有权依法自主指定本项目甲方建设工程内容以外的其他各类专业承包

6

NIO0000104801

~~和供应商，甲方应予以配合。~~

Commented [CK柯1]: Susanna 对描述进行修改。原则是"双方共同协商"。

**第七条　不可抗力**

7.1　任何一方对由于不可抗力造成的本协议部分或全部不能履行不负责任，但应当采取一切必要的措施以防止或减少不可抗力造成的损失。

7.2　凡因严重自然灾害、火灾、战争或其他不能预见的、其发生和后果不能防止或避免的不可抗力致使任何一方不能履行本协议时，遇有上述不可抗力的一方，应立即通过邮递或传真通知对方，并应在三十（30）日内，提供不可抗力的详情及协议全部或部分不能履行，或需延期履行的理由的证明文件。该等证明文件应由不可抗力发生地区的公证机关出具，或如无法获得经公证的证明文件，则应提供其他有效证明。遭受不可抗力的一方由此而免除相应责任。如该等不可抗力事件持续超过一百二十（120）日，则任何一方均有权书面通知对方终止本协议，且双方在不可抗力影响的范围内均不对对方承担违约责任。

**第八条　协议终止和违约责任**

8.1　如甲方发生以下违约行为之一，乙方有权终止本协议，并有权要求甲方向乙方赔偿乙方所因此遭受的损失。在乙方终止本协议之时，若蔚来新能源已经设立完成，就乙方将蔚来新能源迁址他处或通过清算、注销、股权转让或其他方法处置蔚来新能源等后续事宜，甲方应促使相关政府部门就该等事宜涉及的各项审批、登记及许可予以积极支持和配合：

　8.1.1　非因乙方原因导致本协议第 6.2 条下提及的与项目相关的关键审批无法取得或蔚来新能源无法设立；

　8.1.2　在本协议签署后的[8*]个月内，嘉蔚公司仍未竞得地块使用权或者地块的规划条件与本协议产生重大不符；或者嘉蔚公司建设的项目厂房与乙方的要求产生重大不符；

　8.1.3　由于甲方原因导致蔚来新能源无法取得本协议第 4.1 条约定的相关支持，且在乙方书面催告后[6]个月内仍未提供，对蔚来新能源及项目产生重大负面影响的；

7

NIO0000104802

8.1.4 甲方未能按照本协议的约定履行甲方的其他义务或责任，且在乙方书面催告后一（1）个月内仍未履行，对蔚来新能源及项目产生重大负面影响的，但因本协议第 7 条定义的不可抗力原因造成的延迟或未能履约的情形除外。

8.2 乙方违约责任

若在双方均未违反本协议且已尽最大努力的前提下，项目公司未能通过项目立项，未取得新建纯电动乘用车建设项目核准及道路机动车辆及新能源汽车生产企业准入，或未取得其他关键审批导致本项目实际已无法履行的，经双方协商一致可以终止本协议双方友好协商处理后续相关事宜。

8.3 任何一方违反本协议项下第 12 条约定保密义务，应负责赔偿另一方的实际损失。

**第九条　争议解决**

9.1 在本协议履行过程中及与本协议相关的任何争议应首先由双方通过友好协商的方式解决。任何一方以书面形式将协商要求传达给另一方后双方应立即开始协商。

9.2 如果自要求协商争议的书面通知收到之日起三十（30）天内双方未开始协商或无法协商达成一致，则任何一方有权将争议提交上海国际经济贸易仲裁委员会/上海国际仲裁中心（"**仲裁中心**"）根据该仲裁中心届时有效的仲裁规则仲裁解决。

9.3 仲裁应由三（3）名仲裁员组成的仲裁庭进行，其中甲方应指定一（1）名仲裁员，乙方应指定一（1）名仲裁员，第三名（首席）仲裁员应由双方共同指定，或在双方无法达成一致时，由仲裁委主任指定。

9.4 仲裁程序应在上海进行。

9.5 仲裁裁决为终局裁决，对双方均有约束力。双方应根据仲裁裁决的要求立即执行仲裁裁决。

9.6 仲裁期间，除有争议的条款外，双方应继续履行本协议。

8

NIO0000104803

9.7　仲裁费用的承担应由仲裁庭决定。仲裁败诉方应承担胜诉方的律师费用。

**第十条　条款的可分割性**

本协议的每一条款均可分割且独立于其他条款，如在任何时候本协议的任何一条或多条条款成为无效、不合法或不能执行，本协议其他条款的有效性、合法性和可执行性并不因此而受到影响。

**第十一条　适用法律**

本协议的签署、效力、解释、履行及其争议的解决均适用中华人民共和国（为本协议之目的，不包括香港特别行政区、澳门特别行政区和台湾）的相关法律。

**第十二条　保密**

12.1　未经另一方事先书面同意，一方均承诺将对与本协议相关的任何信息保密且不得披露给任何其他人士。

12.2　上述第 12.1 条的保密义务不适用该等信息：

　　(a) 非因一方过错先前已成为可以公开获得的信息；

　　(b) 一方在接收或持有该等信息前已经合法获得且无保密义务的信息；

　　(c) 已披露给该方的董事、高级管理人员、雇员、代理人、股东、专业顾问或代表的信息，但前提是上述人员应具有与该方同样的保密义务；或

　　(d) 根据任何适用的法律、法规、政府规章、证券交易所上市规则、或对某一方有管辖权的法院要求所披露的信息，但在作出该等披露前该方应就所披露信息的内容和方式事先通知另一方并与另一方进行协商以确定如何减少该等披露的不利影响。

**第十三条　协议效力**

双方同意，本协议在双方授权代表签署后生效。

**第十四条　其他条款**

9

Confidential.

NIO0000104804

14.1 如果将来上级政府（包括国家、上海市）对甲方和/或产业基地的名称、区域范围等进行调整、变动，甲方及其上级主管机关应确保本协议的有效性完整延续。

14.2 任何一方向另一方发出的任何通知应以邮资预付的挂号邮件或传真发送至以下地址和联系方式，邮寄后七（7）天或传真（发送至收件人正确的地址及传真号码）发送后二十四（24）小时视为已送达收件人：

(a) 甲方地址、收件人和传真号码如下：

地址：[请填入]

电话：[请填入]

传真：[请填入]

收件人：[请填入]

(b) 乙方地址、收件人和传真号码如下：

地址：[请填入]

电话：[请填入]

传真：[请填入]

收件人：[请填入]

14.3 本协议所附相关文件均为本协议附件，与本协议具有相等法律效力。对于本协议中未提及的事宜，双方可经协商一致另行签署书面补充协议。

14.4 本协议构成双方就本协议主旨事项的完整协议且取代双方就有关该事项的任何先前的口头或书面讨论、意向书、备忘录、谅解书、会议记录或交流。

14.5 本协议原件一式四（4）份，具有同等效力。其中甲方执两（2）份原件，乙方执两（2）份原件。

[以下无正文]

Confidential.

NIO0000104805

11

Confidential.

NIO0000104806

[投资协议签署页]

**甲方：**

**上海国际汽车城（集团）有限公司**

法定代表人或授权代表：

签字（盖章）：

**乙方：**

**上海蔚来汽车有限公司**

授权代表：

签字：

日期：

12

Confidential.

NIO0000104807

附件一地块示意图

[*待插入*]

13

Confidential.

NIO0000104808

**附件二项目厂房的主要规划设计及建造要求**

1.  [请工程人员列明主要的条件]

14

Confidential.

NIO0000104809

**附件三**

**建设进度**

| 主要节点 | 时间 |
|---|---|
| 建设项目立项、环评 | |
| 概念设计 | |
| 设计方案审查 | |
| 初步设计审批 | |
| 施工图设计审查 | |
| 工程规划许可 | |
| 施工许可 | |
| 隐蔽工程与中期验收 | |
| 竣工验收与备案 | |

[注：根据实际情况及双方协商可调整。]

15

NIO0000104810

**附件四扶持政策**

1.  <u>融资支持</u>

甲方应确保由其或其指定的第三方以合法的方式为蔚来新能源提供人民币 15 亿元的股权和/或债权融资，具体方案如下：

(1) 债权融资：甲方优先承诺将协调金融机构以贷款等合法形式为蔚来新能源提供债权融资人民币 15 亿元。

(2) 股权融资：如果上述金融机构提供的融资额度少于人民币 15 亿元，或发生在授信额度内无法放款，导致蔚来新能源实际取得的融资资金不足人民币 15 亿元的，针对差额部分，甲方承诺将通过甲方或令乙方满意的甲方指定第三方以向蔚来科技注资（认购增资）的方式或其他乙方同意的方式予以补足。针对该种情形，若甲方和/或其指定的第三方以区产业基金股权投资形式注资蔚来科技的，则甲方应确保其指定第三方或区产业基金根据乙方实际资金需求按时向蔚来科技注资。

(3) 在适用股权融资的情况下，甲方同意任何入资蔚来科技的主体（包括甲方和/或甲方指定的第三方）均应当在入资前按乙方要求与蔚来科技届时的其他股东方签署一致行动人协议，约定其向蔚来科技委派的董事、监事等具有表决权的高级管理人员（如有）将与蔚来科技其他股东方委派的该等代表的行动一致，并按照蔚来科技其他股东方委派的该等代表的

16

NIO0000104811

行动行使一致的表决权 ,除非相关表决会导致蔚来新能源从事非法活动。

(4) 甲方将为蔚来新能源在本条项下的融资提供"前五年全额贴息 ,后五年利息再行协商"的政策支持 ,即前五年蔚来新能源应承担的全部资金融资利息实际由甲方协调财政承担并支付。

(5) 上述该等贴息形成的贷款仅用于项目设备投资 ,由蔚来新能源拥有设备产权。甲方同意 ,该等融资将仅以蔚来新能源本身的股权以及蔚来新能源的自身资产作为担保 ,无需蔚来新能源的股东或任何个人股东另行提供担保 ,并且甲方应确保提供融资的金融机构接受上述条件。

2. 专项资金扶持政策 ~~(甲方将设立专项资金)~~ ,对于蔚来新能源缴纳的增值税、企业所得税 ~~,以及高级管理人员的个人所得税~~ 的全部区、镇两级地方留存部分 ,自开始纳税的年度起算的前五个年度内 ,以包含但不限于研发补贴、人才政策等多种形式在每年收到蔚来新能源书面请款函[6]个月内向蔚来新能源全额支付同等的金额作为扶持补贴 ;前五个年度结束以后的支付扶持比例由甲乙双方另行协商。高级管理人员的所得税 ,以年薪大于等于 60 万元人民币以上的中高层员工为基数(不超过 50 人) ,以不超过公司缴纳个调税嘉定区留存部分(总额的 22%)的 70%为标准 ,给予蔚来汽车人才奖励基金 ,扶持期限为 5 年。

3. 优惠待遇    甲方应确保乙方及蔚来新能源在政策、资金、财税等方面享受优

17

Confidential.

NIO0000104812

惠政策。若项目投产并稳定运营五年后，蔚来新能源的经济效益超过现有预

期的，双方可对届时后续的合作方式和扶持政策另作商议。

4. 政策支持　在不影响上述第二项所述专项资金扶持政策的前提下，甲方承诺

通过协调相关政府部门，以确保乙方项目享受对应类型招商引资及产业扶持

政策有关优惠条款，并协助蔚来新能源争取国家及各级政府相关优惠政策

（包括但不限于市级及国家级智能制造、战略性新兴产业发展、产业升级、

技术改造等专项资金），协助蔚来新能源申报高新技术企业、研发中心等资

质认定。甲方承诺通过协调相关政府部门，为蔚来新能源在引进人才方面提

供全方位支持，协助办理相关手续，提供政策落实服务。本条不应当减损上

述第 2 条"税收优惠政策"下甲方应当履行的政策支持。

5. 人才公寓甲方以优惠的租金价格，在地块周边为蔚来新能源提供人才公寓不

少于 【\*】 套，适用的租金标准为：【\*】。

18

Confidential.

NIO0000104813