# EXHIBIT 17

```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
```

```
-------------------------------X Docket#
                                 : 19-cv-01424-NGG-JRC
                                 :
IN RE: NIO, INC.,                : U.S. Courthouse
SECURITIES LITIGATION            : Brooklyn, New York
                                 :
                                 : May 2, 2025
                                 :
-------------------------------X
```

TRANSCRIPT OF CIVIL CAUSE FOR MOTION HEARING
BEFORE THE HONORABLE JAMES R. CHO
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**
**(VIA VIDEO/AUDIO)**

| | |
|---|---|
| **For the Plaintiff**: | **Yu Shi, Esq.** |
| | The Rosen Law Firm, P.A. |
| | 275 Madison Ave, 40th Floor |
| | New York, NY 10016 |
| | |
| **For the Defendant**: | **Judith Flumenbaum, Esq.** |
| | **Robert A. Fumerton, Esq.** |
| | **Michael C. Griffin, Esq.** |
| | Skadden, Arps, Slate, Meagher |
| | & Flom LLP |
| | One Manhattan West |
| | New York, NY 10001 |
| | |
| **Transcription Service**: | **Transcriptions Plus II, Inc.** |
| | 61 Beatrice Avenue |
| | West Islip, New York 11795 |
| | RL.Transcriptions2@gmail.com |

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

THE COURT:  Hi.  Good morning, everyone.  This is Judge Cho here for a conference in In re: NIO Securities Litigation, case number 19-cv-1424.

Can the parties state their appearances for the record starting with the plaintiff?

MR. SHI:  Yu Shi from the Rosen law firm for the plaintiffs.

MS. FLUMENBAUM:  This is Judy Flumenbaum for defendant NIO, and I'm joined by Robert Fumerton and Michael Griffin.  All of us are from Skadden.

UNIDENTIFIED SPEAKER:  Good morning, your Honor.

THE COURT:  All right.  Good morning, everyone.

Let me ask who's going to be speaking today for defendants?

MS. FLUMENBAUM:  I will, your Honor, Judy Flumenbaum.

THE COURT:  All right.  Good morning, everyone.

And Mr. Shi will be speaking for plaintiff I assume?

MR. SHI:  Yes.

THE COURT:  All right.  First of all, I appreciate the parties having worked cooperatively throughout discovery.  It certainly made the Court's life a lot easier.

Proceedings

3

What we're going to address today is docket number 152, the motion filed by plaintiff to compel production of these withheld documents at categories 1 through 4 of the attached privilege log.

Mr. Shi, do you want to be heard on your motion? Well, let me ask you a question. Since this motion was filed, are there any updates that you'd like to make that may implicate this motion?

MR. SHI: No, your Honor. There hasn't been any new developments that would impact this motion.

THE COURT: Okay. All right. Do you want to be heard or do you want to rest on your papers?

MR. SHI: Yes. So would you like me to -- I mean I can make a brief presentation or if you have any specific questions, I'm also happy to address those directly.

THE COURT: It's up to you.

MR. SHI: Okay.

THE COURT: I've reviewed the papers and the exhibits.

MR. SHI: Yeah. So we're here today because NIO has identified possibly 950 documents that are responsive to plaintiff's request for production but which NIO has declined to produce because of various Chinese blocking statute.

Transcriptions Plus II, Inc.

y

Proceedings

And the documents that are being withheld of which -- so there are nine categories and we're only seeking four of them.  And the documents in those four categories are highly relevant to plaintiff's claims in this action and also relate directly to some of the issues that are being briefed right now in the parties' summary judgment motion and cross motion.

So the main allegation in this case is that IPO registration statement that NIO filed was false and misleading because one, it said that the construction of NIO's manufacturing plant began construction when it had not.

And two, it failed to disclose and warn investors that constructing this plan was contingent on NIO having sufficient cash.

And so the documents that are being withheld, they're agreements and communications with the government which was NIO's partner in building this plant.  And then also communications and documents concerning applications for permits and licenses.

And so the reason why these documents are important is because agreements with the government, for example, they could show what conditions and requirements that the government placed on commencing construction. And as for documents about permits and licenses, it could

5

Proceedings

show whether the government might have declined to issue permits that were necessary for construction to begin. Right?

So for example, in NIO's summary judgment motion they argue that well, they didn't need any permits to begin construction. But if there are documents showing that they actually applied for permits, then it will show that well, that permits were necessary.

And furthermore, the communications from the government could also show, for example, maybe there's a document out there were NIO tells the government oh please expedite your processing of the permit application because we can't begin construction without that.

So these documents are highly relevant to the issues in this action and to the summary judgment motions.

And also lastly, the documents also go into the second of the allegations about the construction of the Shanghai facility being contingent on NIO having sufficient cash.

So one of plaintiff's allegations in the complaint is that NIO lied about the reason for terminating this factory ultimately. And so we said that it was -- that the real reason was because they didn't have enough cash. And so communications between NIO and

6

Proceedings

the government, especially around the time that they decided to terminate this plant, could reveal the reasons why NIO decided to terminate.

THE COURT: Okay. Anything else, Mr. Shi?

MR. SHI: You know, not for now but if your Honor has any questions, I'm happy to address.

THE COURT: Let me hear from NIO. Ms. Flumenbaum, same question for you. Since this motion was filed, are there any updates that might implicate this motion?

MS. FLUMENBAUM: So I don't think so, your Honor. I mean we can get into it as, you know, I give our brief presentation. I think the only relevant factor that perhaps wasn't in our papers is that we have scheduled depositions the next two months and we think, you know, given the factors that should be considered as to whether we should produce these documents or not, the fact that we have these depositions scheduled where plaintiffs have an opportunity to, you know, inquire about some of these issues with our fact witnesses, you know, lends itself to no need to compel production of these documents at this stage.

But you know, as Mr. Shi said, the issue in this case is whether defendants misled investors in its IPO documents by stating that construction was underway

Transcriptions Plus II, Inc.

7

Proceedings

at the Shanghai facility.  Here defendants have already produced over 100,000 documents in this litigation including detailed and descriptive progress reports that state what work was completed on site.  And you know, these are the documents that go to the heart of this case.  You know, it describes the landfilling and flattening that occurred, the drainage trenches that were dug, the walls, the power and the water supplies, the trial piling work.  And all this work is undisputed between the parties.  And these are the documents that go, you know, to plaintiff's allegations.  These 700 or so documents do not change what we already know occurred on site.  And this is also why both parties have already moved for summary judgment notwithstanding any additional discovery.

More so, many of these documents predate the IPO, some by almost a year.  And so these documents cannot and do not speak to NIO's knowledge about the construction on a Shanghai facility at the time of the IPO.

You know, also if you look at the specific categories of documents plaintiffs are seeking here, you know, category one is documents related to a cooperation memoranda between NIO and the government.

Category two is other agreements with

8

Proceedings

government agencies.  These documents -- I mean it's known that NIO, you know, worked with the government agencies in building this facility.  The information gleaned from these documents are not going to -- you know, are not relevant for plaintiff's claims here.

And you know, relatedly, plaintiffs have not shown any specific need for the privileged documents. They made no allegations demonstrating that access to these documents will provide them with information different from what has already been produced in this litigation.  And you know, as we noted, there's been over 100,000 documents produced, over 10,500 by the company itself.  You know, 58 documents we just produced last month in response to a new request from plaintiff.

You know, defendants are really trying in good faith to get plaintiff documents here.  But courts have held that if the requested privileged information can be obtained elsewhere, you know, there's no reason to require a party to violate foreign law.  You know, Judge Kaplan in *Dee Dee* (phonetic) just recently dealt with this in finding that, you know, though there's no rush to produce documents sort of similarly withheld on a privilege log based on PRC guidance.

And I think that really resonates here where we have deposition discovery going on through May and June

9

Proceedings

and all of the individuals who are going to be -- well, I should say the four categories of documents, the recipients of those communications include all of the people that are still left to be disposed.

So I mean I would submit that those individuals should at least first be questioned regarding these issues before plaintiffs seek additional production or defendants are forced to violate PRC law.

THE COURT:  Anything else, Ms. Flumenbaum?

MS. FLUMENBAUM:  I mean those are our sort of main points.  I'm happy to go into some of the other elements of the international comity but, you know, defer to you as to what's most useful.

THE COURT:  Let me ask you a question.  So Mr. Shi asked about permits and permitting.  Subsumed within these documents that are being withheld -- well, let me ask you about the actual production that's been made, roughly the hundred thousand or so documents that have been produced already.  Do you know whether any of those documents deal with the issue of permitting that Mr. Shi is inquiring about?

MS. FLUMENBAUM:  So I don't believe directly.  I will say that, you know, first of all, we do believe that there was no permitting required and we were able to move forward with --

10

Proceedings

(Pause in proceedings)

THE COURT: Ms. Flumenbaum, are you still there? I think I lost you for a minute. Ms. Flumenbaum? All right. I'm not sure if it's on her end or mine. Mr. Shi, are you still there?

MR. SHI: Yes, I'm here.

THE COURT: All right. I think we lost her. Ms. Flumenbaum, are you still there? I don't know whether she muted her line or what happened. All right. We'll give her a minute maybe to call back in if necessary.

MR. SHI: Yeah, sure.

MR. GRIFFIN: And your Honor, this is Michael Griffin. I'm offlining with her and she's working on getting back in.

THE COURT: Okay. Or maybe she can call you, Mr. Griffin, and you can patch her in. It seems like your phone line is working.

MR. GRIFFIN: (Inaudible) outset of this and I kept getting booted off. I don't think it likes the conference call. I asked her if she can just dial, you know, drop off and dial back in.

THE COURT: All right.

MR. GRIFFIN: And hopefully we can go.

(Off the record)

Transcriptions Plus II, Inc.

11

Proceedings

THE COURT:  Hi.  Good morning.  This is Judge Cho.  We're back on the record in *In re: NIO*, case number 19-cv-1424.

All right.  Ms. Flumenbaum, the question I had for you before we had technical issues is whether you believe some of the documents that have already been produced relate to this issue of permitting that Mr. Shi is discussing?

MS. FLUMENBAUM:  Sure.  So I don't think the documents discuss, you know, permitting and licensing directly.  You know, we do submit that the question of whether permits or licenses were -- whether the company or the government agencies received those permits or licenses is a bit of a red herring because we do know what construction work occurred on site.  And so whether or not, you know, these permits were required, the work had begun and construction had started.

That being said, you know, our expert had found evidence of the government partner seeking licenses and permits and plaintiff had the opportunity to depose that expert next week.  So you know, we don't think that this really matters for their claims honestly but we do think they will have another opportunity even to find out more from that expert during the deposition.

THE COURT:  Now, in terms of this information

12

Proceedings

your expert obtained, is your expert relying on certain documents that relate to --

MS. FLUMENBAUM:  So public sources.  So you know, plaintiffs are also able to find that same information and they also have done I think similar searches as well.

THE COURT:  So your expert is not relying on documents that are being withheld for that finding.  Is that correct?

MS. FLUMENBAUM:  Correct.

THE COURT:  All right.  Mr. Shi, anything else for you?

MR. SHI:  Yes.  So just to respond to a few of the points that Ms. Flumenbaum made.  So the issue with the permits -- well, so it is correct that there were progress reports produced that showed what activities were done on the construction site.

But one of the key disputes that's currently being briefed in the summary judgment papers is whether those activities constituted construction.  And in plaintiff's view, they do not because Chinese law is very clear that to commence construction you need certain permits.  And there are certain preconstruction activities or preliminary activities to prepare the land for construction that may be done without those

13

Proceedings

construction permits, right?

And so plaintiffs, we argue that the activities that were performed were those preliminary preconstruction activities that may be performed without the necessary permits. But to actually commence construction, you need the permits.

And as to NIO's expert, it is true that we have a deposition scheduled next week to depose NIO's expert. But NIO's expert, the permits and approvals that he speaks of, he's only -- so there are many. There are six types of permits and approvals that are necessary and he only talks about one of them. It's a land approval, or something like that.

And he then also makes the point in his report that you don't need the other permits to formally begin construction again. And so that's why those documents that are currently being withheld are important because look, if NIO or the government or the state owned entity that was partnering with NIO to build this factory did indeed apply for these permits, then that undermines the argument that permits weren't necessary or that permits were not needed to commence construction.

THE COURT: All right. Well, I'm certainly no expert in this area of construction. But Ms. Flumenbaum, let me ask you a question. Hypothetically let's say

Proceedings

14

there were permits that were requested or filed seeking certain rights to engage in construction. Would these permits have been submitted by NIO to the government or would it have been NIO plus the government submitting a request to another entity? Do you know?

MS. FLUMENBAUM: So our 30(b)(6) expert testified that the government was the one tasked to seek those licenses and permits. But you know, as every construction project goes, that process is fairly iterative. So I sitting here today cannot tell you, you know, whether even NIO knew what was done on that front by the time of the IPO.

THE COURT: Understood. So it's your understanding that it's the government's request for these permits to some other entity is what is being prohibited from being disclosed by the Chinese government? Is that fair to say?

MS. FLUMENBAUM: Sorry, could you repeat that?

THE COURT: Yes. Basically if NIO, the defendant, is the one seeking the permit, I'm having difficulty understanding why that might not be disclosed. But if the --

MS. FLUMENBAUM: So NIO --

THE COURT: Go ahead.

MS. FLUMENBAUM: Excuse me. No, no, NIO was

15

Proceedings

not the one seeking the permits.  I'm sorry if I said that incorrectly the first time.  It's the government's responsibility to seek the permits and the licenses.

THE COURT:  Okay.  And it's your understanding that because it's the government that's seeking the permit, that would not be subject to disclosure under Chinese law?  Is that fair to say?

MS. FLUMENBAUM:  So yeah, so the communications that are being withheld are communications with government agencies.  So yes, that's correct.

THE COURT:  I want to make a fine distinction if it's the company that is making the request or engaged in communication with some government entity, I'm having difficulty understanding why that's not subject to disclosure.  If it were a government entity initiating communications, that's a different story.  But what I'm trying to understand is there a DC, a distinction there from your perspective?

MS. FLUMENBAUM:  I don't in this situation given that it's the government, you know, the PRC regulators making the determination.  And you know, we have had numerous communications with them and received guidance from them.  And you know, this isn't sort of one of these cases where we haven't been able to produce anything.  We really have gotten a lot out here.  And

16

Proceedings

these particular documents were the ones that, you know, the MOJ and PRC indicated that, you know, did contain sensitive government information.

THE COURT:  Understood.  But I --

MS. FLUMENBAUM:  And as a reminder, I haven't seen these documents.  The U.S. attorneys haven't.  So you know, no one is relying on them.

THE COURT:  Understood.  But I want to be precise that, for example, let's say I want to renovate my apartment here in New York and I need to get a permit from the city before I renovate my apartment.  Is it your view that in that scenario in this context that request for a permit is not subject to disclosure?

MS. FLUMENBAUM:  So I believe it was the government requesting permits from -- like the local Shanghai regulators requesting permits from a broader government agency is my understanding of the permitting and licensing process.  And it was not NIO's responsibility.  So NIO did not reach out to any government agency to receive any license or permit is my understanding.

THE COURT:  Do you know whether NIO would have seen any of these documents at some point in time?

MS. FLUMENBAUM:  So I mean there are NIO custodians on these documents.  So we have to assume that

Transcriptions Plus II, Inc.

17

Proceedings

they received at least some variation of it.  But I mean we don't even know, you know, whether these documents are requesting these permits are not.  They could have been speaking about permits or, you know, planning in advance. But it's unclear whether these communications are as Mr. Shi describes them.

THE COURT:  Has this issue come up at any deposition so far where a witness has said I've seen a document but I can't discuss it because we're prohibited from disclosing this document?

MS. FLUMENBAUM:  I don't believe in this case.

THE COURT:  Okay.  All right.  Mr. Shi, anything else for plaintiff?

MR. SHI:  Yes.  So just to respond.  So most of these NIO depositions have not yet happened so, and this issue may very well come up when we take the NIO depositions next week and next month.

But so your Honor was trying to make the distinction whether it was NIO or the government partner that was making these applications for the permits. Right?  And so regardless of who was making the application, if we look at the privilege log, for example, the description of the documents specifically say communications regarding non-public information related to government documents including applications

18

Proceedings

for government approval, government decisions and feedback thereto.

So it seemed to say that, it seems to say pretty clearly that this is about, these documents are about the application, applying for permits and the government's feedback and decisions about those permits.

And again, regardless of who was the one responsible for making the permits, the log shows that several individuals from NIO are on these documents. So maybe it's the government partner telling NIO oh, you know, we tried to make this application and it was denied. Either way, it will show that the fact that individuals from NIO were on these documents means that these documents were not just intra-government agency communications.

THE COURT: All right. I understand. Ms. Flumenbaum, anything else for defendant?

MS. FLUMENBAUM: I would say the only thing regarding the category description is, you know, government approval is quite broad here when the government is our partner in building the factory. So you know, I don't believe that necessarily implies that there is licensing or permitting discussions in here.

And also, just as a reminder, you know, plaintiff moved forward with summary judgment here

19

Proceedings

without these documents.  They said they did not need them to win on their summary judgment motion.  And so just, you know, as a reminder of how these documents are so small in relation to the case and really tangential to the main issue in this litigation.

THE COURT:  All right.  I'm going to deny the motion to compel.  I'm concerned about the representation made by defendant that the PRC government has indicated that disclosure of these privileged materials would be prohibited.  I find persuasive that the requested information at this point in time could be obtained from alternative sources.  And as such, I don't find sufficient basis for ordering production of these withheld documents at this point in time especially in light of the fact that they may be of limited relevance given the dates of these documents pre-IPO and my primary concern about violating Chinese law.  So I'm going to deny the motion to compel at this time.  All right?

So let me ask the parties a question.  I know the parties have had some discussion on a prior occasion. I don't want to have any discussion regarding settlement at this time on this public line.  But are the parties open to resuming settlement discussions with the Court? Mr. Shi, let me ask you that question.

MR. SHI:  Your Honor, so we engaged a private

20

Proceedings

mediator.  So the first mediation obviously did not result in a settlement.  But it is my understanding that both parties are still in communication with the mediator so there could potentially be a second mediation at some point.

THE COURT:  Okay.  Ms. Flumenbaum, is that your understanding as well?

MS. FLUMENBAUM:  Yes, that's correct.  We agree with Mr. Shi.

THE COURT:  Okay.  All right.  Anything else for plaintiff today, Mr. Shi?

MR. SHI:  Not at this time.  Although I would like to clarify that -- I know your Honor said that you had denied this motion at this time.  And without getting into too much of a hypothetical, but if let's say for example at a deposition if a party, if a witness refuses to answer a question citing the same issue, at that time would you permit us to bring a renewed motion?

THE COURT:  Yes, you are welcome to renew your motion.  I am finding that you likely could obtain this information from alternative sources.  But if you're unable to for whatever reason, you are allowed to renew your motion.  Okay?

(Matter concluded)

-oOo-

21

## C  E  R  T  I  F  I  C  A  T  E

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **7th** day of **May**, 2025.

_Mary Greco_
Transcriptions Plus II, Inc.