UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------- x

                                                  :   Case No.: 19-cv-1424 (NGG) (JRC)
                                                  :
*In re NIO, Inc. Securities Litigation*           :
                                                  :
                                                  :
                                                  :
-------------------------------------------------- x

### DECLARATION OF YANHUA LIN

I, **Yanhua Lin**, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

## I.    INTRODUCTION

1.    I am over 18 years of age, of sound mind, and otherwise competent to make this declaration. The opinions set forth below are based on my personal experience and knowledge. If called upon to testify as a witness thereto, I could do so competently under oath.

2.    I am a partner at Fangda Partners ("Fangda"), a full service law firm that advises on laws of the People's Republic of China ("PRC"). I was engaged in 2023 by NIO Inc. ("NIO" or the "Company") in the above-captioned action to advise on PRC data laws and regulations relating to exporting documents out of the PRC for production in a U.S. court proceeding as well as other PRC law issues related to this action.

## II.    QUALIFICATIONS

3.    I specialize in dispute resolution and government enforcement matters. I am a member of both the PRC Bar and the New York State Bar. I have over 13 years of experience in practicing PRC law.

4. I obtained bachelor's degrees in economics and law from Peking University, a Master of Common Law (MCL) from the University of Hong Kong, and a master of laws from Columbia University.

## III. COMPENSATION

5. Fangda is being compensated for its time at its standard billing rates and its out-of-pocket expenses at cost. Fangda's compensation is not contingent on any of the opinions expressed herein or the outcome of this litigation.

## IV. CASE BACKGROUND

6. I understand that the key dispute in this action concerns a manufacturing facility NIO was constructing in Shanghai (the "Shanghai Facility"), as disclosed in NIO's Registration Statement filed in relation to its September 12, 2018 initial public offering ("IPO") in the United States.

7. In October 2024, NIO substantially completed its document production in this action and provided Plaintiffs with a categorical privilege log for 950 documents withheld from production on PRC law grounds (the "PRC Log").

8. On February 26, 2025, Plaintiffs moved to compel NIO to produce the documents in Categories 1-4 on NIO's PRC Log, totaling approximately 709 documents. On May 2, 2025, Magistrate Judge James R. Cho denied Plaintiffs' motion. On May 23, 2025, the Court granted Plaintiffs' request to adjourn the summary judgment motion briefing schedule to allow for a renewed motion to compel. Plaintiffs filed their renewed motion to compel on July 3, 2025 (the "Motion") seeking documents in Categories 1 to 7 of NIO's PRC Log created on or after March 1, 2018 (the "PRC Log Documents") totaling approximately 643 documents.

9. Plaintiffs argue in their Motion that the PRC Log Documents "are of critical importance to Plaintiffs' claims and the summary judgment motions" because "the documents show that by September 30, 2018 *at the latest* (*i.e.,* just 18 days after the IPO), NIO knew that the Shanghai government had pulled out of the Shanghai Facility project, withdrawing its funding for the land and construction of the factory." (Mot. at 2, 4-5 (emphasis in original).) Plaintiffs argue that "the truth" about when NIO allegedly was informed that the government was pulling out of the project "is in the documents that NIO is withholding." (Mot. at 5.)

## V.    DOCUMENTS REVIEWED

10. In preparing this declaration, I reviewed the following materials:

a. Previous communications between NIO, its PRC counsel and the Ministry of Justice of the PRC (the "MOJ"), including written responses from the MOJ;

b. Several status reports submitted in this litigation;

c. Plaintiffs' Motion to Compel, dated February 26, 2025, and the transcript of the Motion to Compel hearing, dated May 2, 2025;

d. Plaintiffs' Letter Motion for an extension of the briefing schedule for the parties' cross-motions for summary judgment, dated May 15, 2025, NIO's opposition thereto, dated May 21, 2025, and Plaintiffs' reply, dated May 22, 2025;

e. Plaintiffs' Renewed Motion to Compel, dated July 3, 2025, including the declaration from Professor Zhang Hong and other exhibits;

f. The PRC Log Documents; and

g. The Categorical Log of Defendant NIO Inc. for Documents Withheld Pursuant to PRC Regulations (*i.e.,* the "PRC Log" exchanged with Plaintiffs on October 14, 2024).

3

## VI.     SUMMARY

11.     <u>First</u>, applicable PRC laws and regulations preclude NIO from producing the PRC Log Documents to Plaintiffs in the United States, including (i) Articles 21 and 36 of the Data Security Law (the "DSL"); (ii) Articles 2, 13 and 64 of the Law on Guarding State Secrets; (iii) Article 5 of the Supreme People's Court's Judicial Interpretation on Several Issues concerning the Specific Application of the Law in the Trial of Cases of Stealing, Spying on, Purchasing or Illegally Providing State Secrets or Intelligence to Entities outside the PRC Territory; (iv) Article 2 of the Provisions on the Scope of State Secrets in the Administration of Geographical Mapping Information; (v) Articles 9-10 of the Administrative Measures for Data Security in the Field of Natural Resources; and (vi) Articles 8 and 19 of the Security Assessment Measures for Cross-border Data Transfer.  Article 36 of the DSL is the most relevant here and dispositive by itself because it imposes a threshold prohibition on cross-border production for all seven categories of documents that Plaintiffs seek.

12.     <u>Second</u>, NIO received both written and oral instructions from relevant PRC authorities explicitly prohibiting NIO from producing the categories of documents on the PRC Log.  To comply with Article 36 of the DSL, NIO followed the relevant PRC authorities' instructions to withhold these documents.

13.     <u>Third</u>, violating Article 36 of the DSL carries significant penalties, including business suspension and even revocation of business licenses. Rational business players would not run such existential risks.

14.     <u>Fourth</u>, Plaintiffs have alternative means of obtaining the information they seek from the PRC Log Documents.  For example, I understand that Plaintiffs have completed all fact depositions and questioned NIO's witnesses about these issues, and none refused to answer any questions on the basis of PRC law.  To the extent Plaintiffs still want the PRC Log

4

Documents, they can request them through the Hague Convention. Dozens of foreign parties have successfully obtained documents from China through the Hague Convention, as Professor Zhang concedes.

VII.    **PRC LAWS AND REGULATIONS, INCLUDING ARTICLE 36 OF THE DATA SECURITY LAW, PROHIBIT NIO FROM PRODUCING THE PRC LOG DOCUMENTS**

15.    Applicable PRC laws and regulations preclude NIO from producing the PRC Log Documents to Plaintiffs in the United States, namely (i) Articles 21 and 36 of the DSL; (ii) Articles 2, 13 and 64 of the Law on Guarding State Secrets; (iii) Article 5 of the Supreme People's Court's Judicial Interpretation on Several Issues concerning the Specific Application of the Law in the Trial of Cases of Stealing, Spying on, Purchasing or Illegally Providing State Secrets or Intelligence to Entities outside the PRC Territory; (iv) Article 2 of the Provisions on the Scope of State Secrets in the Administration of Geographical Mapping Information; (v) Articles 9-10 of the Administrative Measures for Data Security in the Field of Natural Resources; and (vi) Articles 8 and 19 of the Security Assessment Measures for Cross-border Data Transfer.

16.    Of these various PRC laws and regulations, Article 36 of the DSL is the most relevant to Plaintiffs' Motion because it imposes a threshold prohibition on cross-border production for all seven categories of documents that Plaintiffs seek. Despite this, Plaintiffs' purported expert, Professor Zhang, focuses almost entirely on the Law on Guarding State Secrets. That focus is misplaced because the DSL prohibition is dispositive by itself.

17.    Article 36 of the DSL states:

> The competent authority of the People's Republic of China shall handle the requests for data provision by foreign judicial or law enforcement organizations in accordance with relevant laws and international treaties and conventions concluded or acceded to by the People's Republic of China, or under the principle of equality and reciprocity. ***Without the approval of***

5

*the competent authority of the People's Republic of China, domestic organizations and individuals shall not provide the data stored within the territory of the People's Republic of China to foreign judicial or law enforcement organizations.* (emphasis added).

18. Article 36 therefore requires NIO to secure approval from competent Chinese government authorities before it can produce data stored in China for the current litigation, regardless of whether the data constitutes state secrets, intelligence, government working secrets or important data. In fact, Article 36 grants broad authority to Chinese government to review and determine which data cannot be produced in specific foreign litigation cases. After considering NIO's document production requests, the competent Chinese government authorities prohibited NIO from producing certain categories of documents. *See infra* § VIII. NIO is bound by this decision.

19. Professor Zhang misconstrues Article 36 of the DSL in two important ways.

20. First, it is incorrect that Article 36 only applies to "important data."[1] While other provisions of the DSL impose measures specifically for "important data," Article 36 of the DSL applies to all "data stored in the territory of the People's Republic of China" and makes no distinction as to the content or relative importance of such data. Article 3 of the DSL broadly defines data to mean "any record of information in electronic or any other forms." Therefore, under Article 36 of the DSL, no data is categorically exempt from the approval requirement.

21. Second, though discovery is initially exchanged between private litigants, it is subsequently submitted to the court through, for instance, attaching relevant documents as exhibits to motions or offering the documents as evidence in the course of trial. Indeed, Plaintiffs assert that the discovery they seek is of "critical importance" to their case, confirming they intend

---

[1]    Zhang Decl. ¶ 72.

6

to submit such documents to the Court through motion practice or in the course of trial. Given that Article 36 of the DSL restricts providing data outside the PRC to "foreign judicial or law enforcement agencies," it squarely applies to producing the PRC Log Documents. Professor Zhang's assertions to the contrary,[2] therefore, ignore the practical realities of U.S. litigation and would render Article 36 of the DSL a nullity, as the statutory mandate could be easily circumvented by providing data to private plaintiffs as an end-run around seeking the necessary approvals from competent PRC authorities.

22.  Finally, Professor Zhang's assertion that Chinese law favors disclosure of government information is inapplicable here.[3]  Article 1 of the Regulations on the Disclosure of Government Information (the "Regulation"), which Professor Zhang cites, explicitly states that these regulations were formulated to increase transparency for "citizens" of the PRC, not foreign (*i.e.*, non-Chinese) litigants.[4]  Further, while the Regulation provides that in principle government information should be made public for the benefit of "citizens" of the PRC, it specifically provides that government information may not be disclosed in certain circumstances.[5]  The relevant government authorities have the authority and discretion to determine which government information falls within the non-disclosable categories.  To my

---

[2]  Zhang Decl. ¶ 68.

[3]  *See* Zhang Decl. Sections II-V.

[4]  *See* Zhang Decl. ¶ 18.

[5]  Articles 14 to 16 of the Regulations on the Disclosure of Government Information provide detailed examples of the categories of government information that should or may not be disclosed to the public, including government information classified as state secrets; government information prohibited from public disclosure by law or regulation; government information, which if released may jeopardize national security, public safety, economic security, or social stability; government information involving trade secrets, individual privacy, or similar matters, the disclosure of which would harm third parties' lawful rights and interests; and/or information concerning internal administrative agency affairs, including deliberative records, pre-decisional documents, consultation communications, requests for instructions, other procedural information generated during administrative functions, and administrative law enforcement files.

knowledge, the PRC Log Documents have not been made public by the relevant government authorities in China.

**VIII.   NIO RECEIVED EXPLICIT INSTRUCTIONS AND GUIDANCE FROM THE RELEVANT PRC AUTHORITIES NOT TO PRODUCE THE CATEGORIES OF DOCUMENTS ON THE PRC LOG**

23.    To fulfill its discovery obligations in the current litigation, NIO followed the procedures outlined by Article 36 of the DSL and sought approval from the MOJ and other competent authorities before making productions to Plaintiffs.

24.    Based on the materials and information provided to me by NIO, including correspondence between NIO and its PRC co-counsel Han Kun Law Offices ("Han Kun"), relevant reports from Han Kun to NIO about Han Kun's communication with the MOJ on behalf of NIO, and status updates on the litigation, I understand the relevant facts to be as follows:

25.    In February 2022, NIO submitted a request to the MOJ to produce 64 documents.  In April 2022, the MOJ approved in writing the production of a subset of documents,[6] which were promptly produced to Plaintiffs on April 27, 2022.  The MOJ verbally declined to approve the production of 15 documents concerning government information and instructed NIO to first obtain approval from the government authorities involved in these 15 documents, *i.e.*, the Jiading District government and the Shanghai Economy & Information Technology Commission.  NIO subsequently requested approval from the Jiading District government and the Shanghai Economy & Information Technology Commission to produce these 15 documents.  To date, NIO has not received approval from these government authorities.

---

[6]    Producing confidential communications from the MOJ to NIO, including written MOJ instructions not to produce the PRC Log Documents, would violate relevant PRC regulations.

8

26. In January 2023, NIO submitted a second request to the MOJ to produce approximately 1,400 documents. In March 2023, the MOJ issued a response letter to NIO (together with the aforementioned verbal instruction, the "MOJ Instructions") instructing NIO to withhold two categories of documents from production: (i) documents containing personal information, which cannot be exported outside of the PRC without individual consent; and (ii) certain documents containing sensitive government information that were not sufficiently related to the litigation. NIO, through its PRC co-counsel Han Kun, confirmed with the MOJ that NIO would follow its instruction and would not export the two categories of documents.

27. In April 2024, NIO received verbal approval from the MOJ for production of another 29 documents.

28. In June 2023, the MOJ informed NIO that it was no longer accepting applications for cross-border document production. Between June and December 2023, NIO sought to identify the appropriate authorities and procedures for producing documents in this litigation. The parties worked together towards this goal: after numerous discussions amongst U.S. counsel, in September 2023, U.S. and PRC counsel for both NIO and Plaintiffs jointly discussed how to proceed. On this call, Plaintiffs' PRC Counsel acknowledged that it was unclear which PRC authority was responsible for overseeing Article 36 applications.

29. In December 2023, NIO subsequently engaged Chinese data experts with experience conducting data security assessments pursuant to PRC laws and regulations. Together with Fangda, these experts reviewed and assessed documents to be produced in this litigation to ensure the productions conform with the MOJ's Instructions and relevant PRC laws. During this review, the data experts and Fangda identified documents that included personal data and sensitive government information that were of the same nature as the documents

previously flagged in the MOJ Instructions, and documents containing non-public geographical mapping information restricted from cross-border transfer. Although the MOJ Instructions do not expressly address all 950 documents in the PRC Log withheld on PRC law grounds—because certain of the documents were identified only *after* the issuance of the MOJ Instructions and after the MOJ ceased accepting applications—the principles contained in the MOJ Instructions apply squarely to all those documents, as the MOJ was vested with the authority to provide binding guidance, and the contents of the 950 documents fall within the prohibition guidance set forth in the MOJ Instructions.

30.  In or around May 2024, the Cyberspace Administration of China ("CAC") verbally instructed NIO that documents could be produced for the purposes of this litigation so long as they did not contain information restricted from export under PRC laws and regulations. NIO subsequently produced more than 10,000 documents from May to October 2024, and withheld additional documents consistent with the MOJ Instructions, the CAC's guidance, and the applicable PRC laws and regulations.

31.  Professor Zhang asserts that government determinations regarding the sensitivity of documents must be made in writing.[7] I disagree with Professor Zhang's understanding. PRC law does not mandate that government instructions must exclusively be in written form. In particular, Article 36 of the DSL itself does not state that government decisions and instructions can only be made in writing. In my experience, instructions from the government can be conveyed verbally or in writing. In fact, here, the instructions from the relevant PRC authorities were conveyed both verbally and in writing. Moreover, in practice,

---

[7]  *See* Zhang Decl. ¶¶ 7, 29-30.

any company that receives an oral government instruction cannot simply disregard or disobey it, even if the instruction is not memorialized in written form.

## IX.    VIOLATING ARTICLE 36 OF THE DSL CARRIES SIGNIFICANT PENALTIES

32.    Article 36 of the DSL contains an explicit statutory penalty provision.  In addition to fines, the most severe consequences of violating Article 36 include suspension of the business, "internal rectification," or even revocation of the company's operating license or business license, as noted in Article 48 of the DSL:

> Whoever violates Article 36 herein and provides data to foreign judicial or law enforcement organizations without the approval of the competent authority, shall be issued a warning by the relevant competent authority, and subject to an additional fine of not less than RMB 100,000 but not more than RMB one million; and, the directly responsible persons in-charge and other directly responsible persons may be subject to a fine of not less than RMB 10,000 but not more than RMB 100,000; where the violation results in serious consequences, a fine of not less than RMB 1 million but not more than RMB 5 million may be imposed; *and the relevant competent authority may issue an order to suspend relevant business, suspend business for internal rectification, or revoke the relevant operating license or business license*; and the directly responsible persons in-charge and other directly responsible persons shall be subject to a fine of not less than RMB 50,000 but not more than RMB 500,000. (emphasis added).

33.    I disagree with Section VII of Professor Zhang's declaration, which asserts that NIO will not face penalties even if it produces the PRC Log Documents in violation of Article 36 of the DSL[8].

34.    The lack of known DSL Article 36 enforcement actions against Chinese companies only underscores the strong deterrent effect of this law, as no company can afford the catastrophic result of losing its business license.  Notably, Professor Zhang does not cite any example of a Chinese company producing PRC-based data to a U.S. litigation plaintiff without

---

[8]    *See* Zhang Decl. Section VII.

11

complying with the DSL or after the relevant PRC authorities failed to approve the production.

## X.    VALID ALTERNATIVES EXIST TO OBTAIN THE PRC LOG DOCUMENTS

35.    There are several valid alternatives to compelling NIO to produce the PRC Log Documents. First, Plaintiffs may request the PRC Log Documents via the 1970 Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention"). Because both China and the U.S. are parties to the Hague Convention, Plaintiffs may plausibly seek the PRC Log Documents this way.

36.    Though Professor Zhang states that the Hague Convention is an inadequate means for Plaintiffs to obtain the PRC Log Documents,[9] she acknowledges that, between 2008 to 2018, there were 66 cases where foreign courts successfully obtained evidence from China via the Hague Convention mechanism.[10]

37.    Second, I am aware that NIO recently proposed an alternative approach to Plaintiffs, through which Plaintiffs may appoint their own PRC counsel to review the PRC Log Documents in the PRC. This will allow Plaintiffs' PRC counsel to review the PRC Log Documents without exporting the data outside of the PRC. In my view, this approach is lawful and prudent provided that certain parameters are in place. Also, this approach would not run afoul of the DSL and related PRC data laws. To the extent Plaintiffs' PRC counsel identifies documents they believe are relevant to the case, the Company could confer with any relevant Chinese government authorities about potentially producing this smaller, more targeted set of documents for the purposes of the litigation.

---

[9]    Zhang Decl. ¶¶ 13, 90.

[10]    Zhang Decl. ¶ 88.

I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 21, 2025
Beijing, China.

/s/ _Yanhua Lin_
Yanhua Lin