# Exhibit H

Page 1

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NEW YORK

----------------------------------------x

                                         :

                                         : Case No.:

                                         : 1:19-cv-01424-NGG-JRC

In re NIO, Inc. Securities Litigation,:

                                         :

                                         :

----------------------------------------x


        VIDEO-RECORDED DEPOSITION of COLLIVEN KE

                    VOLUME 1

                 Friday, May 9, 2025

                      AT:

                    9:00 a.m.


        Taken at:

        Skadden Arps Slate Meagher & Flom

        42nd Floor Edinburgh Tower

        The Landmark

        15 Queen's Road

        Central, Hong Kong


Court Reporter:

BRANDY STULL, CSR

CA CSR No. 13381

P R O C E E D I N G S

VIDEOGRAPHER:  Here begins Video 1 in the rule 26 and 30 video-recorded deposition of Colliven Ke in the matter of NIO, Inc. Securities Litigation in the United States District Court, Eastern District of New York, case number colon -- sorry -- case number 1:19-cv-01424-NGG-JRC.

Today's date is 9th May 2025.  The time on the video monitor is 9 o'clock -- 8 o'clock, sorry.  Sorry, 9 o'clock.  I'm so sorry.  The time on the video monitor is 9 o'clock.

The videographer today is Raymond Lee from One Square Communication.  The court reporter is Brandy Stull from Veritext.

The deposition is taking place at Skadden's Hong Kong office, 42nd Floor Edinburgh Tower, Central, Hong Kong.

Would counsel and interpreter please identify themselves and state whom they represent.

MR. KWOK:  Steve Kwok, Skadden Arps, NIO, Inc.

MS. PATERNO:  Beatriz Paterno, Skadden Arps, NIO, Inc.

MS. FLUMENBAUM:  Judy Flumenbaum, Skadden Arps.

MR. SHI:  Yu Shi, Rosen Law Firm, plaintiffs.

MR. ROSEN:  Laurence Rosen, Rosen Law Firm, from plaintiffs.

INTERPRETER:  Amanda Lin, the interpreter.

MR. KWOK:  We have counsel on the line?

MR. CHENG:  Yes.  Ronald Cheng for defendants Padmasree Warrior, Yaqin Zhang, Xiang Li, Tian Cheng and Louis Hsieh.  I'm from the Pillsbury Winthrop Shaw Pittman law firm.

MS. SUI:  This is Xinshu Sui from Paul Weiss Rifkind Wharton & Garrison representing defendants Xiangping Zhong and Zhaohui Li.

MS. ZHOU:  This is Adeline Zhou from Skadden joining remotely.  I'm for the company.  Thank you.

VIDEOGRAPHER:  Would the court reporter please swear in the interpreter and the witness.

MR. SHI:  Before we begin, could we just have everyone who's -- who's here identify themselves so that we know who everyone is?  I -- I see we have four new people that weren't here on Monday.

MR. KWOK:  Sure.  PRC counsel and company representatives.

Why don't we start from --

MS. LIN:  Yanhua Lin from Fangda Partners.

COURT REPORTER:  I'm sorry, repeat that?

MS. LIN:  Yanhua Lin from Fangda Partners.

Page 8

MS. SHI:  Danting Shi from NIO.

MS. TANG:  Eve Tang from NIO.

MS. XU:  Yilin Xu from NIO.

MR. KWOK:  And I think we have new counsel who just joined the line.

Could we have counsel who just joined remotely identify themselves?

MS. HAMILTON:  This is Elizabeth Hamilton with Milbank, LLP for the underwriter defendants.

MR. KWOK:  That's it?

MR. SHI:  All right.  So I would like to put on the record the same stipulation that we did for the previous deposition.  Any objection by counsel for -- for the witness counts as an objection by any other counsel in this matter.

MR. KWOK:  Agreed.

EXAMINATION

BY MR. SHI:

Q.   Okay.  Ms. Ke, could you state your full name for the record.

A.   Liwen Ke.

Q.   Do you go by any other name?

A.    In the company I use my English name, Colliven Ke.

Q.   So in all work emails you go by

Page 51

A.   I believe Tracy was -- was with procurement.

Q.   Okay.  Let's go to the next page.  It's a draft letter of intent.

A.   Okay.  No problem.

Q.   Is this a letter of intent for NIO to retain Century 3 as a project management company for the Shanghai facility project?

A.   Yes.

Q.   So previously you said that -- that Jiawei hired Century 3; right?

A.   Yes.

Q.   So then why did NIO intend to also enter into a contract for a -- a project management contract with Century 3?

A.   It was for allowing Century 3 to continue to perform project management work.

Q.   So did Century 3 stop their work at some point?

A.   To my knowledge, no.

Q.   So previously -- earlier you responded that this -- that NIO also had -- had to enter into a contract with Century 3 for the purpose of allowing Century 3 to continue to -- to perform project management work.  So could you clarify what

Page 53

        WITNESS:  That question is too long.  I cannot quite catch it.  I don't know how to answer.
BY MR. SHI:
        Q.   So earlier you testified that Century 3 had to suspend work because there was no agreement signed, right, between Century 3 and Jiawei; is that right?
        MR. KWOK:  Objection.  Misstates testimony.
BY MR. SHI:
        Q.   You still have to answer.
        A.   That was the reason according to the statement made by C3 in the weekly report.
        Q.   So then was there already a -- a contract that existed between Century 3 and Jiawei that allowed Century 3 to perform work up to that point?
        A.   That would be the contractual relationship between C3 and Jiawei.  I cannot answer for them.  As for the work performed by C3, based on what I saw, they were doing their work all the time.
        Q.   So let's look at this exhibit.  Let's go back to this exhibit here.  So in the letter -- the draft letter of intent, the second paragraph says:
            "Currently, your project management service contract with Shanghai Jiawei Auto Parts Co., Ltd. has been suspended as of October 30,

company set up by Shanghai Auto City, so I assume that it would be the same person.  But if it's not, then let me know.

A.    Based on the scope of my work, I mainly communicated with Jiawei.

Q.    So you were the primary person -- you were the primary point person between NIO and Jiawei; is that right?

A.    With regard to performing the work, yes.

MR. KWOK:  "Working level."

WITNESS:  With regard to the working level, yes.

BY MR. SHI:

Q.    And what do you mean by "working level"?

A.    The actual implementation level of carrying out the task.

Q.    So did Jiawei ever tell you why their service contract with C3 was suspended?

A.    Based on what I remember, no.

Q.    Did you ask Jiawei?

A.    No.

Q.    Were you curious about why the contract was suspended?

A.    I was not curious.

Q.    So could the Shanghai facility

Page 56

construction continue if -- if Jiawei had suspended the contract with Century 3?

A.   Yes.

Q.   Do you remember when was it exactly that the contract between Jiawei and Century 3 was suspended?

A.   I don't know, but based on this document, it was in the end of October.

Q.   Prior to the official suspension of the contract between Jiawei and Century 3, did anyone -- did Jiawei tell you and NIO that they were considering suspending it?

A.   I don't remember.

Q.   When did you first learn about the suspension of the contract between C3 and Jiawei?

MR. KWOK:   Objection.   Misstate -- misstated testimony.

WITNESS:   The first time I learned about it was when the contract was switched to signing it with NIO, when I was -- when I got involved in handling that.

BY MR. SHI:

Q.   And how did you learn about the suspension of the contract between C3 and Jiawei?

A.   That calls for the details.   I don't