UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
                                    )
IN RE:                              )    1:19-cv-01424-NGG-JRC
                                    )
NIO, INC. SECURITIES                )    Brooklyn, NY
LITIGATION.                         )    October 15, 2025
                                    )    1:38 PM
                                    )
```

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE JAMES CHO
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiffs:         LAURENCE M. ROSEN, ESQ.
                            YU SHI, ESQ.
                            DANIEL TYRE-KARP, ESQ.
                            THE ROSEN LAW FIRM, P.A.
                            275 Madison Avenue
                            40th Floor
                            New York, NY 10016

For the Defendant,          JUDITH FLUMENBAUM, ESQ.
NIO Inc.:                   ROBERT A. FUMERTON, ESQ.
                            MICHAEL C. GRIFFIN, ESQ.
                            SKADDEN, ARPS, SLATE, MEAGHER &
                            FLOM
                            One Manhattan West
                            New York, NY 10001

For the Underwriter         JED M. SCHWARTZ, ESQ.
Defendants:                 MILBANK LLP
                            55 Hudson Yards
                            New York, NY 10001

For the Defendants,         ANDREW J. EHRLICH, ESQ.
Zhaohui Li and Xiangping    XINSHU (SYLVIA) SUI, ESQ.
Zhong:                      PAUL WEISS RIFKIND WHARTON &
                            CARRISON
                            1285 Avenue of the Americas
                            New York, NY 10019

For the Defendants,          CHRISTOPHER C. CAFFARONE, ESQ.
Louis T. Hsieh, Padmasree    PILLSBURY WINTHROP SHAW PITTMAN
Warrior, Tian Cheng,         LLP
Ziang Li, and Yaqin          31 West 52nd Street
Zhang:                       New York, NY 10019

Claire Sigsworth, CDLT-353
eScribers
7227 North 16th Street
Phoenix, AZ 85020
www.escribers.net

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

3

Colloquy

THE COURT:  Civil calls for a motion hearing case Number 19-cv-1424, In Re: NIO, Inc. v. Securities Litigation.

Counsel, please state your name for the record, beginning with the plaintiff.

MR. LAURENCE ROSEN:  Good afternoon, Your Honor. Laurence Rosen from the Rosen Law Firm for plaintiffs.

THE COURT:  All right.

MR. YU SHI:  Good afternoon.  Yu Shi from the Rosen Law Firm, also for the plaintiffs.

MR. DANIEL TYRE-KARP:  Daniel Tyre-Karp from the Rosen Law Firm, also for plaintiffs.

MS. JUDITH FLUMENBAUM:  Good afternoon, Your Honor. Judy Flumenbaum from Skadden for defendant NIO.  I'm with my colleagues, Robert Fumerton and Michael Griffin.

MR. JED SCHWARTZ:  Good afternoon, Your Honor.  Jed Schwartz, Milbank LLP for the underwriter defendants.

MR. ANDREW EHRLICH:  Good afternoon, Your Honor. Andrew Ehrlich from Paul Weiss on behalf of the individual director defendants, with my colleague, Sylvia Sui.

MR. CHRISTOPHER CAFFARONE:  Good afternoon, Your Honor.  Chris Caffarone from Pillsbury Winthrop Shaw Pittman for the former officer and director defendants.

THE COURT:  All right.  Good afternoon, everyone. We're here on Plaintiffs' motion to compel production of the documents that are being withheld and held in China.



Colloquy

All right.  Mr. Rosen, do you want to be heard on the motion, or do you want to rest on your papers?

MR. ROSEN:  I'd like to be heard, if I may, Your Honor.

THE COURT:  Sure.  Go ahead.

MR. ROSEN:  May I go to the lectern?

THE COURT:  It's up to you.  Whatever you prefer.

MR. ROSEN:  Your Honor, before I get started, is there any particular issue before the Court that you'd like me to address, that you've been pondering, that you think needs to be fleshed out?

THE COURT:  I know the parties tried to work it out for weeks.  One of the proposals I read in defendant's letter was, well, let's have the PRC counsel just go ahead and review the documents.  I believe those negotiations were not successful.

I'm happy to hear argument, but I was going to focus on that to see whether that would be a viable alternative here, because they're not precluding you from reviewing the documents, right?  They've said, we will allow your China lawyer or Chinese lawyers to review the documents in China.

What happens thereafter, I think, is the dispute that we have now.  But a part of me thinks, well, why don't you at least look at the documents first, right, to get to that point, because you haven't seen the documents yet.  They have, but you

Colloquy

haven't, or at least their Chinese lawyers have seen it, but obviously you haven't.

So that was an issue that I wanted to address with the parties. But I'm happy to hear any other issue that you want to address first, if you'd like.

MR. ROSEN: Your Honor, I can address that first.

THE COURT: Sure.

MR. ROSEN: Because I understand, and I thought that might be one of the issues you would ask about, because we did attempt to work it out. And I think the problem with -- the reason we didn't come to a conclusion or an acceptable agreement is because we still would end up where we are today, back with a motion. And the motion would perhaps be even more complicated, because first of all, we wouldn't be -- our PRC lawyer would not be allowed to take any notes from the room when he looks at the documents. So he would have no record of --

THE COURT: Would defendants agree with you on that?

MR. ROSEN: They would not let us.

THE COURT: Okay. So that was one of their conditions, not --

MR. ROSEN: Yes.

THE COURT: All right. Okay.

MR. ROSEN: Yes. So we wanted to be able to take notes, and if they were unable to get permission to produce the

Colloquy

documents, come back to the Court and make a motion to compel, and say, we looked at documents 1, 5, 25, and 30, found they're important to the litigation for the following reasons.  Not necessarily describe the documents in any detail, but just a general reason, general basis for why they would be important. It goes to falsity for some reason, or it's scienter, some general, high-level issue sort of spotting and be able to come back to the Court, so that if they couldn't get permission to produce them then we wouldn't be back where we are right here, which is -- in the same, position.

THE COURT:  I understand, but let me be precise, though.  On page 4 of your letter, I get it that you are specifically concerned about one set of documents.  Exactly when did they know, or when did the Shanghai government inform NIO that it was withdrawing from the project?  I think your main focus is on that inquiry.  Is that fair to say?

MR. ROSEN:  Not entirely, Your Honor.  No.  So there's about -- of the seven categories, I would say six are directly on point with issues relevant to the summary judgment motion.

So if we look at the categories of documents at issue, the first one, for example, is a cooperation memorandum with government partner.  And so those are discussions, emails back and forth with the Shanghai government about the project, right.  And that includes their obligation to pay for it, their obligation to provide the land, their obligation to construct

Colloquy

it, and the status of those obligations, of whether they're being fulfilled.

And so that goes directly to falsity and also probably scienter, and also probably loss causation. Because if in fact -- and this goes back to the issue you just raised, which is if in fact the government did withdraw prior to the IPO, then when you look at loss causation, one of their arguments on loss causation is that the misrepresentation doesn't match the disclosure. In other words, the misrepresentation was we hadn't started construction, whereas the disclosure is we're canceling it.

But it becomes a much stronger argument that the cancellation was a -- it was the disclosure of a concealed risk, right. It was a concealed risk that the project would never get off the ground and not get built. When they pulled the financing and they never started construction at all and they had no government partner, the likelihood that it was not going to be built went from whatever percent to ninety-nine percent, right, because they had no ability.

THE COURT: Along those lines, though, since you focus on category 1, it refers to seventy-five documents in that category. What if none of those documents deal with cancellation or withdrawal at all?

MR. ROSEN: Well, they could still go to the status of the construction and when they learned. Because we know it was

Colloquy

terminated, right.  We know the project was terminated.  And the question is -- the dispute is when it was terminated, right.  And now, they say terminate.  But when did the government, the Shanghai government, withdraw, right?  Because there is the withdrawal from the Shanghai government, but it appears that NIO continued to try to find some sort of partner somewhere to take the government's place.

So to say termination of project is really -- the real question is when the government withdrew, and we think the evidence shows they withdrew at the time of the IPO or earlier.

THE COURT:  Understood.  But what if none of these seventy-five documents deal with withdrawal by the Shanghai government?

MR. ROSEN:  Well, it could deal with the permitting process.  It could deal with whether construction had started, right.  It could deal with any number of issues that are at issue at summary judgment right now, because there are a lot of issues, particularly dealing with the permitting and the approvals.  Their expert says, we didn't need permits, we didn't need approvals, or we had them.  And our expert says there were no approvals, there were no permits, and you needed them particularly to start construction.

So that's that issue.  So there are two sets of documents, two categories that are approvals and permits.  There are two categories that are the agreements.  So one they

Colloquy

call cooperation memorandum, the other they call agreements, but both are with the Shanghai government, both categories. I'm not sure why they're different.

And this gets into the merits, Your Honor, of the motion. And I think the real question is this. They say, without any acceptable evidence -- so they have a declaration that's not on personal knowledge. There's a lawyer -- their PRC counsel Yunwa Lin (ph.) provided a declaration that says, I looked at some documents that another law firm, Han Kun (ph.) -- a PRC law firm that used to be their PRC counsel or maybe still is their PRC counsel, who spoke to the MOJ, the Ministry of Justice in China.

And the Ministry of Justice told Han Kun -- I looked at some documents that said that Han Kun spoke to the Ministry of Justice. The Ministry of Justice said you could produce documents that have sensitive government information as long as it's sufficiently related, right. But she has no personal knowledge of anyone having gone to the MOJ or what was actually said. Nor does her declaration say that anyone reviewed those documents, these 950 documents, and made a determination that they're not sufficiently related, right.

What we do know is that those 950 documents were responsive to agreed-upon document requests. They were negotiated document requests. They were negotiated search terms. So they are definitely sufficiently related to the

Colloquy

litigation for production.  And so even under -- even if you were to accept this defective declaration, we show that the documents don't create any conflict of law in the sense that the MOJ has said you can produce them if they're related.

And so where it's clear they're related, particularly the agreements, emails about the agreements, or emails about the permits, which are central to the dispute, emails about the subsidies, which is, one of the -- the government was supposed to subsidize the project, right?  So to the extent these subsidies are no longer available or changing, that's central to the case.

And then another category is -- there's some documents that are just emails between two NIO employees.  It's category 7, I believe.  Two NIO employees exchanged emails about government policy.

We know that the reason -- their stated reason for terminating the project in March 2019 was because they claimed that there was a change in the law back in the fall of 2018 -- not a change in the law, but a change in government policy back in 2018 --related to cooperation with state-owned automobile manufacturers, and that, as a result, they were going to continue their continue the relationship with JAC.

Central to our case is our allegation that that's untrue, that that their stated reason for termination is not the true reason, that they were going to continue their

Colloquy

relationship with JAC regardless of whether they built the factory.  Even if they built the factory, they could continue the relationship, and so those emails are central.  And how could they possibly violate a state secret or create any sense of threat to national security, when you're talking about two individuals discussing their view of government policy on cooperation between NIO and JAC?

So there's really -- there's no description of how any of these documents could possibly, possibly create a conflict of law, possibly be a threat to national security.  And they've conceded that the MOJ said if they're sufficiently related, even if they have sensitive government information, they could produce them.

THE COURT:  Let me ask you this question, though.  If the documents are consistent with all the other documents that the defendants have already produced in this case, do you need them?

MR. ROSEN:  Yeah.  If they're consistent.

THE COURT:  Are you mostly focused on documents that are inconsistent with their story, or any other documents that they've produced?

MR. ROSEN:  Well, I mean, is it possible that of the 950 documents, half of them we won't need?  It's entirely possible.  I mean, it's speculative, right?  We're completely shooting in the dark.

Colloquy

But it's possible that many of the documents are not necessary. Are they related? Yes. Are they important? Yes. But the standard isn't, are they critical? The standard is, is it likely that these documents would be helpful in -- would be relevant to the Plaintiffs' claims. And we know they are relevant to Plaintiffs' claims.

THE COURT: Understood. But wouldn't it be more compelling if your PRC lawyer had actually seen the documents?

MR. ROSEN: So Your Honor, we are willing to look at the documents. The real question is, can the Court hammer out an agreement where we're not just going to waste another two or three years waiting?

THE COURT: Why would it take that long?

MR. ROSEN: Well. Because it's been six years.

THE COURT: Not about the Court, but in terms of the PRC lawyer reviewing 900 or so documents, how long do you think that could take?

MR. ROSEN: Well, it's not going to take a long time for our lawyer to review them. The question is what happens? He's reviewed them. Let's say, of the 950, he identifies 250 -- speculate. I'm just going to take -- say 250 where he thinks these are really important and we want them, right. So what's the next step? Are they willing to give them to us?

I don't think they are, right. Like, at this point, we know that they're sufficiently related, because our lawyer's

saying, hey, these documents are going to help prove your case. You want to get them.

So they're not willing to hand them over. They won't even commit to a next step. They said, well, maybe we'll go to the government and ask. Maybe we'll take another look at them. But even if we get government permission, or even if we decide to give them to you, we still reserve the right to redact them, not for any reason other than they'd like to redact them. And we don't want redacted documents, because there's no reason. I mean, what's the point of documents if --

THE COURT: Right. Understood. I mean, look. It's the Court's position typically to try to narrow the focus of any production as much as possible. And if your PRC lawyer, after reviewing these documents, determines maybe only 250 of these 900 or so documents are germane or relevant to your inquiry at this point, maybe that's the inquiry we should be having, as opposed to just all or nothing at this point.

Okay. But go ahead. Anything else you want --

MR. ROSEN: Well, Your Honor, I mean, another possibility is you order our PRC lawyer to review the documents. And the documents he believes are important to our claims, they're ordered to produce. I mean, that would be fair.

THE COURT: Okay. Understood. Anything else you want to add at this point?

Colloquy

MR. ROSEN:  No, I'll reserve for --

THE COURT:  Sure.  That's fine.

MR. ROSEN:  -- rebuttal.

THE COURT:  All right.

Let me hear from NIO.  Ms. Flumenbaum, do you want to be heard first?  And you can either remain seated or stand or whatever you prefer.  It's up to you.

MS. FLUMENBAUM:  I'll sit, if that's okay.

THE COURT:  That's fine.

MS. FLUMENBAUM:  Thank you.

So to discuss the alternative proposal, I guess, first.  Mr. Rosen is correct that it was our hope that we would be able to narrow the focus here.  It was our proposal that they would be able to review the documents in China and be able to note which documents that -- if any, that they wanted to have produced, and then we can commit to go back to the MOJ or another PRC regulator to get those produced.

Taking a step back here though.  In May, Your Honor denied Plaintiffs' prior motion to compel, because the PRC government prohibited disclosure of these documents, and because plaintiffs could explore the underlying facts at the upcoming deposition.  Your Honor gave leave to renew the motion if plaintiffs were unable to get the requested information during depositions.  In other words, if the witnesses refused to answer Plaintiffs' questions based on PRC law.



Colloquy

That that did not happen here. And it's important to note that NIO witnesses answered every question plaintiffs asked, including the exact questions plaintiffs now purport they need these documents for, and at no point was there any instruction on PRC grounds.

That plaintiffs don't like the answers to those questions is not a reason to renew this motion to compel, much less a basis to reverse Your Honor's prior ruling. And recognizing this, plaintiffs have not merely renewed their motion but now seek even more documents. They're asking for seven of the withheld categories, compared to four on the prior motion, and have concocted an entirely new theory of falsity to support that motion.

The crux of plaintiffs' case is, and always has been, whether NIO misled investors when it stated in its IPO documents that construction had begun on its Shanghai facility. That is what's alleged in plaintiffs' complaint. It's exclusively what they argued in summary judgment, and it's the basis for the earlier motion to compel that Your Honor denied.

And Plaintiffs' new theory is -- as you noted, is that NIO was aware prior to the IPO that the Shanghai government pulled out of the facility project and failed to disclose that to investors. But this theory is meritless and unsupported by the over 100,000 documents in the record and by the testimony from eight witnesses. Moreover, this new theory is time

Colloquy

barred, as Plaintiffs' deadline to amend has passed long ago.

Ultimately, plaintiffs' attempt to seek more discovery here in hopes of pivoting to a new theory of their case after the close of discovery only highlights the weakness in their case and should not be the basis to reverse the denial of the prior motion to compel.

I'm happy to discuss more of the comity factors and why that applies here, if that's useful.

THE COURT:  Let me ask you this question.  If it weren't for the concerns about Chinese law, would these documents have been produced?  If these were housed in the United States, would they have been produced as a matter of course?

MS. FLUMENBAUM:  It's hard for me to say, as I have not produced them and I'm not -- obviously they're relevant to the case given that they're on a privilege log.  But that's sort of the broadest scope of relevance.  How related they are to the specific issues here in this case, I'm not sure.

THE COURT:  Has your PRC lawyer reviewed these documents?  I'm assuming they have.

MS. FLUMENBAUM:  Yes.

THE COURT:  Have they given you any indication at all whether any of these documents contain any information about the withdrawal by the Shanghai government from this project?

MS. FLUMENBAUM:  So first --

Colloquy

THE COURT: Or are they not allowed to tell you that?

MS. FLUMENBAUM: So in thinking of why these are on the log in the first place, the MOJ has reviewed our submissions and then sort of picked specific documents to withhold and then provided certain guidance. And our PRC counsel took that guidance and took those specific documents and was able to reconstruct what the MOJ would have withheld here. So they have done this analysis and have concluded that they're not sufficiently related to this litigation.

THE COURT: So plaintiffs' alternative as well, it was proposed that their PRC lawyer will review the documents and then hopefully narrow the scope from 900 to, randomly, 250 documents, but is that even necessary, right? Because if at the end of the day, all of the documents, all 900 or so documents are somewhat relevant to this litigation, is it even worth having the PRC lawyer look at the documents in the first instance? Or at this point, is it really all or nothing? It's either they're all produced or they're not?

MS. FLUMENBAUM: So we would submit, yes. I mean, their request is not narrowly tailored at all, here. They are asking for seven --

THE COURT: Understood. But these are all documents you've identified in your seven categories, right, as tangentially or in some way related to this litigation, right. Because you're not saying these should not have been identified

Colloquy

or putting Chinese law aside -- going back to my original question -- they would have been produced anyways in this litigation, but for the Chinese law.  Is that fair to say?

MS. FLUMENBAUM:  So where we are today is that the MOJ has instructed us not to produce them.

THE COURT:  Understood.  Let's put aside Chinese law.  Let's say these documents were housed here in the United States.  Based on the search terms and the production that was conducted -- well based on the search of documents, these 900 or so documents were retrieved somehow, right?  And but for this Chinese law, they would have been produced.  Is that fair to say?

MS. FLUMENBAUM:  I think that's fair to say, but I have not personally seen them.

THE COURT:  Understood.  But someone has reviewed them and decided, okay, we likely would have produced these, but now we can't because of this Chinese law.  Is that fair to say?

MS. FLUMENBAUM:  That's correct.

THE COURT:  Okay.  So then is it not necessary, then, to have the PRC lawyers review these documents and try to identify a subset of these documents for production, given what they are ultimately looking for?  So what I'm trying to figure out is, is it even worth going down that road if, at the end of the day, they should all be produced anyways?

MS. FLUMENBAUM:  So I mean, I think this is the

Colloquy

importance of the international comity test factors, because plaintiffs don't -- in the face of MOJ instruction to not produce them, it's hard to just ignore that when the company has been given those guidelines by the government and has to abide by them.  And they can't choose how the MOJ provides its guidance or what it does in its review.

THE COURT:  Right.  No, I understand that.  But putting all that aside, let's say these were U.S. documents, they would have been produced -- is that right? -- during the course of this litigation?

MS. FLUMENBAUM:  Yes.  But the hope here is that that, because the MOJ has instructed us not to produce, we can find a narrower set and then go back to the MOJ with those documents to abide by our obligations in the PRC and in the U.S.

THE COURT:  All right.  Now, who's going to determine that narrower set; you or plaintiff?

MS. FLUMENBAUM:  So in the review, it would be plaintiffs.

THE COURT:  Okay.  So you haven't undertaken the task of identifying what set of documents could be responsive to their more narrow requests at this point; is that right?

MS. FLUMENBAUM:  No.  We haven't done that yet.

THE COURT:  Okay.  Because I'm assuming what the PRC lawyer is probably going to do is say they're all relevant, right?  I mean, that's just been my experience with attorneys

Colloquy

on the other side when it comes to discovery.

MS. FLUMENBAUM:  Yeah.  And I mean, I think, in good faith, that would be unfair, that if you go through the documents, there's one that's entirely on geotechnical mapping, which has nothing to do with their case and can't bear on any of their claims.  The date ranges are large.  I do think there is a way to narrow this down further before -- and then that would allow us to go back to the MOJ and make an additional request.

THE COURT:  Do you have a proposal as to a more narrower inquiry then, or are you going to rely on plaintiff to tell you what they would want in terms of a narrower review?

MS. FLUMENBAUM:  Our proposal was that we would rely on plaintiffs.  We could undergo our own, but we were giving them -- we were letting them look at these.  We don't think there's anything here.  And that's what we would like plaintiffs to know, and we would like to keep this litigation moving and get resolution of our summary judgment motions.  And that's why we offered this in good faith to them, to take a look at the documents in China.

THE COURT:  I understand.  But when you say you don't think there's anything there, you haven't reviewed those documents either, but your PRC lawyers have?

MS. FLUMENBAUM:  Correct.

THE COURT:  But have they conveyed to you, among these

Colloquy

900 documents, there's nothing there?

MS. FLUMENBAUM: Yes.

THE COURT: Okay. Now, when they say there's nothing there, what were they looking for?

MS. FLUMENBAUM: They were looking for whether it was sufficiently related to the litigation.

THE COURT: Is it their view that none of these 900 documents are related to this litigation?

MS. FLUMENBAUM: Well, they're relevant to the case. They concern the Shanghai facility. But the narrow issue that plaintiffs have moved on and have alleged in their complaint is whether construction had begun at the Shanghai facility prior to the IPO. That is the only issue at issue here. Whatever they say about the Shanghai government pulling out, et cetera. The only issue is whether construction began on the Shanghai facility prior to the IPO and whether NIO misled investors.

Testimony from all eight witnesses, all documents that we have support that. We have contemporaneous progress reports from our contractor that show what's done. Our CEO and chairman testified about the electrical setup and the digging and the land flattening. Significant work has occurred on site. Nothing in these documents is going to change that.

UNIDENTIFIED SPEAKER: Yeah. Your Honor, if I may just add?

THE COURT: Sure.



Colloquy

UNIDENTIFIED SPEAKER:  100,000 documents were produced in this case, right?  Those were responsive to search terms.  So yes.  These 900 fall within the 100,000 that were produced, but you wouldn't say that each of the 100,000 is sufficiently relevant to the issue of whether construction had begun, right, which is the dispositive issue on the parties' summary judgment motions.

And these conditions, Your Honor, that we're supposedly imposing, these don't come from us.  This is PRC counsel saying that they can't file an affidavit describing the contents of these documents.  That would violate PRC law.

So the idea of the compromise was the PRC counsel could get in a room.  We could set this up -- Mr. Rosen said two years.  We could set it up next week.  They could review the documents.  They could talk to our PRC counsel, all right, and have a good faith meet and confer about why they think they're sufficiently related, and we'd have a narrower discovery set.

That's what we do in all of discoveries.  We try to work in good faith to narrow these disputes.  So that was the basis of that proposal.  We're not trying to hide the ball.  We've been trying to produce everything in this case for the last six years, right.  We've gotten 100,000 documents out, eight witnesses testified.  They're asked the very question, did the Shanghai government withdraw its funding?  The answer

Colloquy

was no.  They were never notified of that, right.  So we're not trying to hide the ball here.

And the idea that if we offer this compromise, there's somehow downside of PRC counsel getting in a room in the PRC and trying to narrow the dispute.  We don't see any issue with that.

THE COURT:  Right.  No.  I understand that, but let's play this out.  So let's say their PRC counsel do review these documents and sit down with your PRC lawyers to meet and confer over these documents.  And let's say their PRC lawyer says, well, we think this subset of documents, 250, whatever it is, should be produced.  Then what?

UNIDENTIFIED SPEAKER:  Then we can take the 250 and go back to the MOJ or the CAC (ph.) and say, look, here's a narrower set.  These are the reasons that they think they're sufficiently related.  Can we produce these?  And if the answer is no, we'll be back before Your Honor on a subset.  If the answer is yes, we'll have resolved the dispute.

THE COURT:  But you know their concern.  Their concern is if you go back to the MOJ, you may not hear back for a couple of years.

UNIDENTIFIED SPEAKER:  There could be some sort of delay, but this is all rank conjecture and speculation on their part.  They're the party that moved for summary judgment on falsity without any of these documents a couple of years ago

Colloquy

now, right.  A year and a half ago, we cross-moved.  We said there's no factual issue here.

Now they're trying to litigate essentially discovery issues to try to avoid a decision on summary judgment, because, as my colleague pointed out, the undisputed record is that construction had begun, which is the only thing pled in their complaint.

But the idea that this is going to inject more delay -- obviously we can't control what the regulators do or how long they take.

THE COURT:  Well, let me ask you this question, because what I'm trying to avoid is undue delay here.  Is there a mechanism by which, after their counsel has reviewed these documents, that they can share certain information with their domestic counsel here?  Or is it your view that they can't say anything to their lawyers here as to what they viewed in China?

THE COURT:  It's not our view, Your Honor, it's our PRC's counsel view.  Our PRC's counsel's view is that their PRC counsel would be violating Chinese law if they share that information with Mr. Rosen.  Now, that's not our business, obviously, right.  But we can't enter into a stipulation that contemplates violating Chinese law.  That's our concern.

THE COURT:  Right.  No, I understand that.  What I'm trying to figure out if there's a workaround.  In other words, let's say there is a document in there that shows, yes, NIO

Colloquy

knew that the Shanghai government was going to withdraw from this project before the IPO.  Let's say there's an argument that says that --

UNIDENTIFIED SPEAKER:  Right.

THE COURT:  -- blatantly.  Can we use that information in this litigation somehow, without going back to the MOJ?

UNIDENTIFIED SPEAKER:  If that document existed, Your Honor, that document would have been produced.  It would have been sufficiently related to the litigation.  We can assure you that based on our discussions with PRC counsel.  The response I contemplate, Your Honor, is don't take our word for it, right.  Don't take our PRC's counsel's word for it.  And that's why we proposed your PRC counsel can look at this themselves.  And if they see that document, right, and they tell our PRC counsel this document exists that said construction never began on this facility, then it will be produced.

THE COURT:  And that won't be in violation of Chinese law?

UNIDENTIFIED SPEAKER:  No, Your Honor, because it will be sufficiently related to the litigation.  But based on -- it's not just the instructions.  As my colleague pointed out, it's the exemplars.  The exemplars that were ruled on by the MOJ, specific documents, calling up or down on those.  Those were the basis that PRC counsel used to make this determination that these other documents weren't -- the 900 weren't

Colloquy

sufficiently related.  It's the same process we've done with Mr. Rosen in other cases.

THE COURT:  So during this meet and conferral process, if their PRC lawyer convinces your PRC lawyer that these documents are sufficiently related to this litigation, will that document be produced?

UNIDENTIFIED SPEAKER:  Absolutely, Your Honor.

THE COURT:  Okay.  Okay.  Without you having to go back to the MOJ?

UNIDENTIFIED SPEAKER:  Correct.  And if there's a dispute over it, we would still commit to going back to the MOJ.  We want to produce these documents.  We would love to produce all 900.  Our client is concerned with violating PRC law.

THE COURT:  Understood.

Mr. Rosen, anything else you want to add?

MR. ROSEN:  Yes, yes, Your Honor.  I guess one thing is there are a lot of other important allegations in the complaint besides just whether construction had started.  For example, the reasons why they decided to terminate is an important issue.  Another is the financing, whether they knew they weren't going to have sufficient financing, and when they knew that, and what exactly was the cause of the insufficient financing?

The other important point is, Your Honor, if you're --

Colloquy

I understand you're seriously considering an order that requires us to review them in the PRC.  If that's the case, we would like to make sure that the documents are produced by NIO to us in the U.S., that they don't produce them in China to our PRC counsel, who then has his own obligations to go through a whole set of bureaucratic steps to get them out.  In other words, it should be NIO's obligation to deliver them here and not delivered to our PRC counsel.

THE COURT:  Well, I think what we're trying to be mindful of is their concern regarding Chinese law, right.  And that these documents not be removed from the Country or whatever, right.  And so I think the plan was -- at least based on the letters that I received from Skadden, is your PRC lawyer would review the documents, they would let you review these 900 or so documents.

I think their proposal is then their PRC lawyer will sit down with your PRC lawyer, and your PRC lawyer will make a pitch to their lawyer as to why these documents should be produced.  And I encourage defense counsel to take a broad view of what's relevant.  And they said, if it's related to this litigation, they will produce it without having to go to the MOJ again.

MR. ROSEN:  Okay, Your Honor.  But our lawyers should be allowed to take some notes, because how could he have a discussion if he's not allowed to have any notes about what he

Colloquy

reviewed and have access to the documents to discuss what's at issue, right?

THE COURT:  Understood.  Is there going to be an issue with counsel taking notes in China?

UNIDENTIFIED SPEAKER:  As long as the notes don't leave China.  We'll confirm with our PRC counsel.  I think if the notes remain in the PRC, Your Honor, I don't see it's an issue.  What we're concerned with, and what plaintiffs were insisting on, was that the notes would be conveyed to U.S. counsel and/or the Court, which we understand would be a violation.

THE COURT:  Well, let me ask you this question.  Can their PRC counsel have a discussion about the documents that they review with their local counsel here?

UNIDENTIFIED SPEAKER:  Sorry, Your Honor.  Can you say that one more time?

THE COURT:  So look, logistically speaking, their PRC lawyer will review these documents in China.

UNIDENTIFIED SPEAKER:  Correct.

THE COURT:  Are they allowed, from your perspective, to have a conversation about what they saw with counsel here?

UNIDENTIFIED SPEAKER:  Not a substantive discussion, Your Honor.  Just like our PRC counsel can't describe substantively the documents to us.  I know this is -- not trying to be evasive, but this is our understanding of what PRC

Colloquy

counsel requires.  If they want to take notes that remain in China -- again, as a U.S. lawyer, I don't see how that would violate Chinese law, but we can confirm.

THE COURT:  Okay.  Mr. Rosen, any other concerns?

MR. ROSEN:  I just want to make sure that ultimately the documents -- if documents are produced, are produce unredacted and are produced in the United States rather than in PRC so that we can see them.

THE COURT:  After the meeting and confer, or before?

MR. ROSEN:  After.

THE COURT:  We'll address that when we get to that point.

MR. ROSEN:  Okay.  All right.  And as far as what our PRC lawyer could tell us, I don't -- if the MOJ's instructions were it's okay to produce documents that are sufficiently related, if our PRC lawyer identifies a specific document that relates to a particular issue, whether it's the date of termination, the reason for termination, financing, why couldn't he say this -- I identified X documents that relate to this issue of termination or this issue of construction or this issue of financing?

Why -- I mean, how would that -- I mean, that's related to the litigation and it's so broad in general.  I don't see how that could possibly run afoul of MOJ rules.

THE COURT:  Counsel, any concerns there?

Colloquy

UNIDENTIFIED SPEAKER:  Well, I think, Your Honor, I mean, the devil may be in the details, right.  But if counsel is describing the document that specifically says X, Y, or Z or is relevant for X, Y, or Z reasons, that obviously could reveal the contents.  Again, we went to PRC counsel every step along the way with this stipulation and asked them, would these provisions violate PRC law?  Are you comfortable with them?  them?  And this is what they came back to us with.

But again I think what makes most sense is for that meet and confer to happen with the PRC counsel where there's no concerns.  And our PRC counsel may say, look, this document is substantively identical to an exemplar that the MOJ said couldn't be produced, right.  And that discussion can be had.  And if we need to go back to the MOJ for a renewed application, we can do that, right.

But to allow -- for me here, sitting here today to say Mr. Rosen can say the documents are relevant for these six reasons, and those six reasons describe the contents of the documents, our PRC counsel said that wouldn't be permitted.

THE COURT:  All right.  How about this?  Let's take it in baby steps.  All right.  Why don't your lawyers in China, PRC lawyers for plaintiff, go ahead and review the documents?  All right.  And after you've reviewed the documents, have them have a meet and conferral with defense counsel, PRC counsel, about those documents.  And if they can come to an agreement on

Colloquy

what should be produced, then the documents will be produced. All right? If there are any disputes thereafter, we can always revisit it at that point in time, okay?

MR. ROSEN: And Your Honor, these are all 950 on the on the log that he can review; is that correct?

THE COURT: I think that's what defense are offering, correct?

UNIDENTIFIED SPEAKER: Correct.

THE COURT: Yes.

MR. ROSEN: All right. Thank you very much.

UNIDENTIFIED SPEAKER: Hold on. I'm sorry. The seven --

MS. FLUMENBAUM: The seven they're requesting here, not all 950.

UNIDENTIFIED SPEAKER: Seven that are the subject of the motion.

MS. FLUMENBAUM: And with the starting at March 1st, 2018, as they limited their motion.

UNIDENTIFIED SPEAKER: Your Honor, we're trying to narrow disputes, not expand.

MR. ROSEN: So how many documents is that?

THE COURT: All right. One at a time. Don't talk over each other.

UNIDENTIFIED SPEAKER: Yeah. Sorry. Your Honor, we're trying to narrow the dispute. So every document that's

Colloquy

the subject of the motion before Your Honor will be shown to the PRC counsel. We're not going to -- we're not talking about expanding the universe.

MR. ROSEN: Well, so how many documents are at issue now then? So it's not 950. Do you know how many documents are within this time frame?

MS. FLUMENBAUM: Yeah. Our expert has it. It's 643. It's in our declaration.

THE COURT: Okay. All right.

So Mr. Rosen, let me ask you, assuming there are 600 or so documents, how much time do you think your PRC lawyer needs to review those documents?

MR. ROSEN: I don't know if it would take more than a week or two at the most. I don't know. I'm guessing. You could easily do twenty documents a day. So yeah. We probably have to have a meeting with him to discuss all the issues. I don't know. I don't know how long the documents are. So is it a month maximum? Probably it's a month maximum. Is it two weeks? Hopefully it's two weeks. But I think it's two to four weeks. Just not knowing the length and complexity of the documents, I'm afraid to say we'll do it in a week.

THE COURT: All right. How about this then? The parties may confer further on this issue and perhaps in a couple of days file status letter with the Court with the proposed schedule for the completion of the review of these

Colloquy

documents, okay?

MR. ROSEN:  Yes, Your Honor.  And if there's an issue with some disagreement, can we put that in the letter, and you can determine exactly how to deal with it?

THE COURT:  I hope there are no disagreements.  I think it's a very straightforward thing.  Your lawyer will get a chance to look at the documents in China.  All right.  Sure, if there are disagreements, you can put it in the letter.  But I want your lawyer to see the documents sooner rather than later, okay?

MR. ROSEN:  So our lawyer will review the 643 documents.  He can take notes as long as he doesn't take the notes outside of China.  And they will then have a meet and confer about the documents.  And how long after the meet and confer, will they tell us whether they're going to produce them?

THE COURT:  I'm giving the parties a chance to propose a schedule.  All right.  I can impose one right now, if you prefer, but I was going to give you a chance.

MR. ROSEN:  I was just trying to understand it, what we're --

THE COURT:  Right.  My view is, I'll give you a period of time for your lawyers to review the documents.  All right.  Also, within a certain period of time thereafter, the PRC lawyers will meet and confer, all right, and come to an

Colloquy

agreement what documents should or should not be produced.  If they have a dispute, we will reconvene to talk about those disputed documents only.

MR. ROSEN:  Okay.

THE COURT:  All right.

MR. ROSEN:  Understood.

THE COURT:  And hopefully it's a smaller subset of the 600 or so documents, okay.

All right.  Anything else, Mr. Rosen?

MR. ROSEN:  Nothing further, Your Honor.

THE COURT:  All right.  So let me give the parties a deadline, then.  I'll give you the parties one week.  So one week from today, October 22nd, parties to file a letter with the Court with a proposed schedule for completing the review of these documents.  Okay.

All right.  Ms. Flumenbaum, anything else for NIO?

MS. FLUMENBAUM:  No, Your Honor.

THE COURT:  All right.  Mr. Schwartz, what about you for the underwriters?

MR. SCHWARTZ:  No, Your Honor.

THE COURT:  All right.

Mr. Ehrlich?

MR. EHRLICH:  No, Your Honor.

THE COURT:  Mr. Caffaro?

MR. CAFFARONE:  No, Your Honor.



(973) 406-2250 | operations@escribers.net | www.escribers.net

Colloquy

THE COURT:  Okay.  We are adjourned.  Thank you everyone.

(Proceedings concluded at 2:23 o'clock, p.m.)

* * * * *

(973) 406-2250 | operations@escribers.net | www.escribers.net

C E R T I F I C A T I O N

        I, Claire Sigsworth, court-approved transcriber, do hereby certify the foregoing is a true and correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_____          October 20, 2025

_____

Claire Sigsworth, CDLT-353               DATE


eScribers, LLC
7227 North 16th Street
Phoenix, AZ 85020
www.escribers.net